IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
CIVIL DIVISION

| | |
|---|---|
| WILLIAM S. MCLAURINE, II<br>plaintiff, pro se<br><br>v.<br><br>the CITY OF AUBURN, ALABAMA<br>unnamed police DISPATCHER<br>deputy director BENJAMIN WALKER<br>Officer LAVARRO BEAN<br>Lieutenant MATTHEWS<br>Lieutenant KEITH HOWELL<br>Chief FRANK DEGRAFFENRIED<br>DAVID WATKINS<br>director "BILL" JAMES<br>City Manager CHARLES DUGGAN | CIVIL ACTION NO. 3:06cv1014-MEF<br><br>**DEMAND FOR JURY TRIAL** |

BRIEF AND AFFIDAVIT IN SUPPORT OF APPOINTMENT OF COUNSEL

In a previous ORDER this court refused to grant a reconsideration for a MOTION to APPOINT COUNSEL. From the wording of the order it was unclear whether the reconsideration was denied or the motion was denied. It was clear that the court did not consider itself in possesion of facts necessary to appoint counsel. This BRIEF is help provide clarifications to the plaintiff's position on the facts and law concerning whether COUNSEL should be APPOINTED for the plaintiff.

The reasons for need for COUNSEL for the Plaintiff is manifold. Below an itemized list of GROUNDS for the APPOINTMENT OF COUNSEL for the Plaintiff. The Plaintiff requests that this court consider each point as an inidividual GROUND, the list of GROUNDS collectively, and the list of GROUNDS in relation to each other in all possible combinations.

[1]   Lack of Time. The Plaintiff works 50 hours per week as an Assistant Manager at a Restaurant. The hours are irregular from week to week and the Plaintiff is lucky if one day per week can utilized for constructive purposes. This document is being prepared partially during vacation time taken for the purpose of working on this case. The Plaintiff only has a limited supply of vactations and/or personal time. Approximately 14 hours are left, that must be used by the end of the calader year. In January the Plaintiff begins accruing vacations and personal time at weekly rate of approximately 12 days for the calander year of 2007. The defendant expects to need those days for the actual trial though.

One of the Plaintiff's key legal resources, the Auburn University Library, will be reducing its hours over the winter break. This reduction in service impacts the Plaintiff's abililtiy to conduct proper research in the near term.

[2]   Race. The court has already seen the racial component of the existing complaint. It consists of the racially charge statements made by Officer LAVARRO BEAN.

In researching Judicial Immunity the Plaintiff discovered that Judicial Immunity only exists in special circumstances. The Judicial officer must possess jurisdiction. Judicial Immunity may not exist for a civil rights violations. It is unclear to me whether this is an

extension of the jurisdiction argument or a seperate recognition. Judicial immunity only exists for a judicial act that can be appealed. The act must be judicial. Judicial Immunity does not attach to administrative functions. The desription of administrative functions includes acts that do not posses adversarial properties.

The defendant believes that the appointment of counsel is an adminstrative act. The reason race is important here, is that specific laws and rights concerning a refusal to grant aid exist. My understanding of these laws is that they apply government agencies and agencies that receive government funds. Since IN FORMA PAUPERIS has been granted, I believe those laws and rights apply to the person making the decision on whether the Plaintiff can have COUNSEL APPOINTED in this matter.

[3]    The pattern of Denial of Counsel. This not the first time that the Plaintiff has been denied access to counsel when circumstances warranted it. The plaintiff has not yet filed the portion of the complaint concerned with the DUE PROCESS VIOLATIONS. This matter is addressed at a latter time. It is important to note the criminal aspects associated with the Pattern of Denial of counsel.

During the Prosecution of the Plaintiff in the Circuit Court of Lee County, the presiding Judge, Judge JOHN V. DENSON, II, revoked from the Plaintiff, then a criminal defendant, INDIGANT STATUS. This is the Alabama Equivilent to the status of IN FORMA PAUPERIS already granted by this court. The Judge had previously granted INIDIGANT STATUS. The Plaintiff Was attempting to Terminate the services APPOINTED COUNSEL, attorney PHILLIP THOMPSON. THOMPSON had already been denied a request to be relieved of having to defend WILLIAM S. MCLAURINE, II in the Criminal Matter in Circuit Court. WILLIAM S. MCLAURINE, II was attempting to proceed PRO SE, in the Criminal Matter. WILLIAM S. MCLAURINE, II maintains that Attorney PHILLIP THOMPSON, was refusing to provide an adequate criminal defense and was acting in obstructionist manner. After WILLIAM S. MCLAURINE, II was granted the right to proceed PRO SE, Judge JOHN V. DENSON, II found that WILLIAM S. MCLAURINE, II was no longer eligble for INDIGANT STATUS.

The ORDER came as ruling without hearing. Judge JOHN V. DENSON, II made the ruling without any type of notice to WILLIAM S. MCLAURINE, II. It should be noted that this was a reconsideration, not an initial approval. The Rules of Criminal Proceedure in the State of Alabama allows for the reconsideration of INDIGENT STATUS to be made by the defendant, the defendant's attorney, or the prosecutor, but not the Judge.

Attorney PHILLIP THOMPSON is a contract employee of the city of Auburn. He was appointed at the request of Attorney RICK DAVISON, and Attorney MATTHEW WHITE, by Judge JOHN V. DENSON, II. The fact the a civil action by WILLIAM S. MCLAURINE, II was possible was raised at the proceeding in which Attorney PHILLIP THOMPSON was appoint to be the counsel for WILLIAM S. MCLAURINE, II. The knowledge of a conflict of interest was known to Judge JOHN V. DENSON, II; Attorney RICK DAVISON; and Attorney MATTHEW WHITE.

[4]    Complexity of the Current Complaint. This Court has cited the amended complaint as proof the the Plaintiff is not in need of counsel. The ability for a coherent argument is only the beginning of the legal process necessary. The AMENDED COMPLAINT was based on years of research and analyis of the smallest part of the case the Plaintiff wishes to bring. The AMENDED COMLAINT was only prepared after the court gave specific directions on what was necessary. The Plaintiff is again having to respond to a refusal of this Court. The current filings are necessary because the Plaintiff lacked a clear enough understanding of the law to be able compose a proper request for counsel after 2 attempts. In addition to this Plaintiff is extremely lacking in procedural methods of civil cases.

In Addition to the lack of legal expertise possesed the Plaintiff, the case itself is actually

very complex. The defendant does not believe the any of the defendants have a valid legal immunity for their actions in AMENDED COMPLAINT. It is assumed that the defendants may try to raise various immunities. This is complicated field of law requiring professional expertise. The Plaintiff recognizes the conviction was upheld by a jury trial in the criminal matter. The defendant believes that the criminal conviction was only acquired through multiple illegal actions, made by agents of the CITY OF AUBURN, ALABAMA, defendant's currently named, potential defendants, and agents of the third parties, which may or may not be name in legal actions. The defendant claims that such actions were a violations of due process, and as such, the criminal conviction is not Valid. This is a complex argument that must be made, involving multiple actions of multiple actors.

APOST, the Alabama Police Officers Standards and Training Commision and the State of Alabama were removed as defendants because of a lack of clarity concerning Immunity in the AMENDED COMPLAINT as filed. This is a direct result of lack of legal skill on the Part of the Plaintiff. The Plaintiff would like to reintroduce these actors as defendants if possible, but such would require more time or adequate counsel.

The Plaintiff still needs to prepare discovery and interrogatories for the defendants. The Plaintiff may also need to conduct depositions and be deposed. Time and skill are critical factors here.

The Plaintiff will also need time to prepare a comprehensive evaluation of the damage caused the Plaintiff's professional reputation.

[5]   Complexity of the Remaining Case.   Some of the actors in actions not currently listed in the AMENDED COMPLAINT may have varying degrees of Immunity for their actions. Such Immunity must be examined so that an appropriate remedy may be formulated. In additions the defendant would like all possible actors to face a jury trial. Finding a legal mechanism to provide such action will require a knowledge of legal theory and investigative skill beyond the current resources of the Plaintiff.

[6]   Medical Condition(s).   The defendant suffers from a seizure disorder. As a child the defendant was diagnosed with idiopathic epilepsy. That means the defendant had seizures but there was no physicall sign of brain damage to inidicate what was causing the seizures. Recently the defendant learned that many medical practitioners refere to this type seizure disorder as psuedo seizures, or Psychogenic Non-Epileptic Seizures (PNES). Such a seizure disorder is psychiatric in nature, not neurological. A person who suffers from PNES can have seizures triggerd by pyschological stress.

The Plaintiff exhibits many of the symptoms that distinguish PNES suffers from epileptics. The inability of medicine to completely control the condition, and new seizure symptoms are two of the chief ones. Regardless of whether the disorder is neurological or pyschological, the Plaintiff first exhibited the sympom commonly refered to as a "myoclonic jerk" while composing a request to the ACLU for aid in this matter. A "myoclonic jerk" is a momentary convulsion affecting muscle at rest without dramatically affecting consciousness. It is proper to say the Plaintiff actually had a seizure symptom while composing written, legal material in this matter.

The Plaintiff is currently seeking treatment by an epileptolgist to determine the nature of the Plaintiff seizures. Unfortunately the original medical records of Plaintiff have been misplaced. As part of the new patient procedure the Plaintiff will be required to complete a survey for the epileptogist. This will require interviewing family and friends, and composing a narrative from memory, personal records and medical admitance logs in order to give a comprehensive report for proper medical treatment. The apointment with the epileptologist is on or about February 5, 2007. This means that the effort and time needed for acquiring proper medical treatment will compete with the time and effort needed for this lawsuit.

It is important to note that PNES has been describe to me as an anxiety disorder. In 2004 the Plaintiff was seeking counselling by a professional. The pyschologist felt that further sessions were recommended. Due to circumstances at the time, the of Plaintiff was not able to complete those sessions. The defendant states emphatically that this proceding causes severe anxiety.

[7]     Further Complaints. The defendant believes that certain legal remedies may have expired, due to the expiration of certain statute of limitations. Particulary the filing of a false police report a noted in the AMENDED COMPLAINT with the state authority expired already.

The Plaintiff wishes to pursue the criminal prosecution of defendant's named in the AMENDED COMPLAINT. The Plaintiff also wishes to pursue criminal complaints against other actors not named at this time. The Plaintiff wishes to pursue complaints against officers of the courts with the state Judicial Commission and State Bar Association. All of these complaints compete with the available time and resources available to the Plaintiff. It is not just for the Plaintiff's benefit that this argument is raised. If the Complaints to be raised are validated, Officers of the Court of this State, may be removed from such functions. This is as much for the benefit of the Public at Large, as is for the Plaintiff.

[8]     Further Intimidation. Several issues must be examined as excerbating damages. The Plaintiff is in fear for his life. The Plaintiff has obtained more than $100,000.00 in additional life insurance because of this fear.

Specific Statements by at least one defendant must be examined as further illegal intimidation upon the Plaintiff, or at least as evidence of a criminal conspiracy against the Plaintiff. The Plaintiff will deliver more facts on this if the court requires, but request that such facts be related first IN CAMERA, until counsel is obtained.

In late 2006, a drive-by shooting was conducted at the residence of the Plaintiff. This drive-by occurred while the Plaintiff was a candidate for the position of Mayor of the CITY OF MAYOR OF AUBURN, ALABAMA. The shell casings found after the drive by were consistent with Ammunition used by Auburn City Police officers. This tactic is consistent with complaints the Plaintiff is aware of by other residents of Auburn, who have complained about intimidation. This must be investigated, but it is beyond the resources of the Plaintiff without guidance of counsel.

[9]     Another Legal Issue. The Plaintiff is in the process of filing a complaint, unrelated to this matter, over back pay owed, due to possible Labor Law Violations by the Plaintiff's current employer. Such action requires time at the expense of other endeavors as listed above.

I declare under penalty of perjury that the above information is true and correct.

DATE:     December 14, 2006

William S. McLaurine, II
222 Tichenor Avenue #4
Auburn, Alabama 36830
(334) 524-2175