IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| WILLIAM S. MCLAURINE, II ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | 3:06-cv-1014-MEF |
| CITY OF AUBURN, ALABAMA, ) | |
| unnamed police DISPATCHER ) | |
| deputy director BENJAMIN WALKER, ) | |
| Officer LAVARRO BEAN, ) | |
| Lieutenant MATTHEWS, Lieutenant ) | |
| KEITH HOWELL, Chief FRANK ) | |
| DEGRAFFENRIED, DAVID WATKINS, ) | |
| director "BILL" JAMES, and city ) | |
| manager CHARLES DUGGAN, ) | |
| ) | |
| Defendants. ) | |

## OBJECTION TO PLAINTIFF'S MOTION TO
## AMEND COMPLAINT TO ADD EXTENDED COMPLAINT

**COME NOW** the Defendants and object to Plaintiff's Motion to Amend wherein he attempts to add an "Extended Complaint". In the proposed Extended Complaint, Plaintiff attempts to add the following Defendants: Rick Davidson and Matthew White, both of whom are prosecutors; Judge Joe Bailey, who presided over the Municipal Court trial at which Plaintiff was convicted; Judge John V. Denson, who presided over the Circuit Court trial at which Plaintiff was convicted; Phil Thompson, who was apparently Plaintiff's appointed attorney at Circuit Court; D'Arcy Wernette, the City's Risk Manager; and Bill Ham, Mayor of the City of Auburn.

Plaintiff was convicted in Municipal Court. He appealed that conviction to Circuit Court where he had a trial *de novo*. He was also convicted by a jury in Circuit

Court. Plaintiff then appealed to the Court of Criminal Appeals which very recently issued the attached Opinion confirming Plaintiff's conviction.

In his Extended Complaint, Plaintiff basically requests this Court to allow him to re-litigate his criminal trials. Plaintiff's Extended Complaint is barred by the holding of *Heck v. Humphrey*, 512 U.S. 472 (1994). Moreover, Judge Bailey and Judge Denson are entitled to absolute immunity. See, *Pierson v. Ray*, 386 U.S. 547 (1967); *Paisey v. Vitale in and for Broward County*, 807 F.2d 889 (11th Cir. 1986). Davidson and White, both prosecutors, are also entitled to absolute immunity. See, *Imbler v. Pachtman,* 424 U.S. 409 (1976); *Fullman v. Graddock*, 739 F.2d 553 (11th Cir. 1984).

Plaintiff's complaints about his court appointed attorney are convoluted and frivolous. It is clear they have no place in this lawsuit.

The purported complaints against D'Arcy Wernette appear to be that he refused to return the telephone calls of Plaintiff. Such a claim is patently frivolous. It clearly does not rise to the level of a Constitutional deprivation and no state law claims are implicated. See, *Webb ex rel. Webb v. Splitex* (W.D. Tex. 2001) (holding that the mere failure to return telephone calls can sustain a constitutional violation).

The complaint against the Mayor is equally frivolous. The allegations appear to be that the Mayor was on a committee to choose who should be appointed counsel for the City of Auburn, Alabama and was negligent in those duties; such a claim is factually incorrect. Regardless, Plaintiff's allegations again do not rise to the level of a Constitutional violation.

Moreover, Plaintiff specifically couches his claim as the "tort of Malicious Prosecution". Having been convicted, which has now been affirmed, Plaintiff as a

matter of law cannot satisfy the elements of that tort. See attached APJI 24.02. Further, it has long been established an action for Malicious Prosecution will not lie against a City. See, *Neighbors v. City of Birmingham*, 384 So.2d 113 (Ala. 1980).

Plaintiff's Motion to Amend to add the purported Extended Complaint is due to be denied as a matter of law.

    /s/   *Randall Morgan*
RANDALL MORGAN [MOR037]
Attorney for Defendants City of Auburn, Alabama, Benjamin Walker, Officer Lavarro Bean, Lieutenant Matthews, Lieutenant Keith Howell, Chief Frank DeGraffenried, David Watkins, "Bill" James, and Charles Duggan

OF COUNSEL:
Hill, Hill, Carter, Franco, Cole
    & Black, P.C.
425 South Perry Street
P.O. Box 116
Montgomery, Alabama 36101-0116
(334) 834-7600 - Telephone
(334) 263-5969 - Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on this the 14th day of March, 2007, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to the following via email:

William S. McLaurine, II
222 Tichenor Avenue, Apt. #4
Auburn, Alabama 36830

    /s/   *Randall Morgan*
OF COUNSEL

3

Notice: This unpublished memorandum should not be cited as precedent. See Rule 54, Ala.R.App.P. Rule 54(d), states, in part, that this memorandum "shall have no precedential value and shall not be cited in arguments or briefs and shall not be used by any court within this state, except for the purpose of establishing the application of the doctrine of law of the case, res judicata, collateral estoppel, double jeopardy, or procedural bar."

# Court of Criminal Appeals
State of Alabama
Judicial Building, 300 Dexter Avenue
P. O. Box 301555
Montgomery, AL 36130-1555

RELEASED
FEB 28 2007
CLERK
ALA COURT CRIMINAL APPEALS

Received
FEB 27 2007
Human Resources

PAMELA W. BASCHAB
Presiding Judge
H.W. "BUCKY" McMILLAN
GREG SHAW
A. KELLI WISE
SAMUEL HENRY WELCH
Judges

Lane W. Mann
Clerk
Gerri Robinson
Assistant Clerk
(334) 242-4590
Fax (334) 242-4689

MEMORANDUM

CR-05-1600                              Lee Circuit Court CC-05-1600

William S. McLaurine v. City of Auburn

SHAW, Judge.

The appellant, William S. McLaurine, was convicted of obstructing governmental operations, a violation of § 13A-10-2, Ala. Code 1975, as adopted by the City of Auburn in Ordinance No. 1130 and codified in § 13-1 of the Auburn city code. He was sentenced to three months in the county jail; the sentence was suspended, and he was placed on unsupervised probation for one year and fined $500.00.[1]

---

[1] McLaurine was originally convicted in Auburn municipal court. He appealed to the circuit court for a de novo jury trial.

The evidence adduced at trial indicated the following. In the early morning hours of November 27, 2004, Auburn police officer Lavaro Bean, received a radio dispatch regarding a suspicious man that had been seen walking in the area of North College Street and Glenn Avenue in Auburn. The man was described as wearing dark pants and a gray shirt or jacket. Officer Bean responded to that general location, where he found McLaurine, who matched the description that he had been given and who was the only person outside in that area, walking very slowly on the sidewalk, with his hands in his jacket, and looking at houses and apartments normally occupied by students at Auburn University. Officer Bean testified that the houses and apartments in that neighborhood were largely empty on the morning in question because of the Thanksgiving holiday break. He also testified that for that reason, and because a burglary had been reported in that area either that night or the night before, the police department was being especially vigilant in paroling that neighborhood.

Officer Bean testified that he asked McLaurine to stop, but that McLaurine kept walking. Officer Bean asked McLaurine a second time to stop and McLaurine complied. Officer Bean asked McLaurine why he was walking in that neighborhood, to which McLaurine responded, "Officer, I don't have to answer those questions." (R. 304.) Officer Bean then asked McLaurine if he had any weapons on him and he told McLaurine that he could be on his way if he would just show some identification. McLaurine again refused to answer and thereafter repeatedly refused to provide Officer Bean with any identifying information. Officer Bean testified that he asked McLaurine at least 24 times to provide his name, address and/or his destination and that McLaurine refused each time. Officer Bean explained to McLaurine that he needed the identifying information because crime generally went up in that neighborhood during the holiday season and because the police were still investigating a mysterious death that had occurred in the area. After explaining to McLaurine that he did not want to arrest him, Officer Bean called his shift supervisor, Lieutenant Will Matthews, for assistance.[2] Lt. Matthews testified that he responded to the scene and tried repeatedly, but unsuccessfully, to get McLaurine to provide

---

[2] Lt. Matthews was a sergeant at the time of the incident.

2

some identifying information. At one point after Lt. Matthews arrived on the scene, McLaurine stated that he was going to leave unless he was physically detained by the officers. Lt. Matthews testified that he placed his left hand on McLaurine's right arm and informed him that he was being physically detained.

Ultimately, Lt. Matthews requested assistance from Lieutenant Keith Howell, the shift commander and the highest ranking officer on duty that evening. Lt. Howell testified that he responded to the scene and asked McLaurine if he was familiar with the law requiring a person to provide identifying information to the police upon request. According to Lt. Howell, McLaurine responded that he was familiar with the law, but that he disagreed with it. McLaurine was eventually arrested for obstructing governmental operations and transported to the county jail. Once at the jail McLaurine provided his name and other identifying information and for the first time told the officers that he had been walking to a Subway restaurant when he was approached by Officer Bean.

McLaurine, who represented himself at trial, testified in his own defense. He stated that he had refused to cooperate with the officers because he did not think that they had the authority to ask him to stop and identify himself or to ask him where he was going. He admitted that he had threatened to leave the scene unless he was physically detained and that he had taken a step away from the officers. McLaurine also stated that he had filed a notice of claim with the City of Auburn, demanding $250,000,000.00 in damages for what he claimed was an illegal detention by the police.

McLaurine's first argument on appeal, as we understand it, is that the trial court erred in denying his motion to suppress the City's evidence and, thus, his motion for a judgment of acquittal because, he says, the police had no reasonable suspicion to believe that he may have been involved in criminal activity so as to justify detaining him for further investigation. He argues that he was illegally detained and, therefore, that he could not have interfered with or hindered what he says was an illegal governmental activity on the part of the police. The City argues that, based on the totality of the circumstances, Officer Bean had

reasonable grounds to suspect that McLaurine may have been involved in criminal activity.

Section 13A-10-2, Ala. Code 1975, provides in pertinent part:

> "(a) A person commits the crime of obstructing governmental operations if, by means of intimidation, physical force or interference or by any other independently unlawful act, he:
>
>> "(1) Intentionally obstructs, impairs or hinders the administration of law or other governmental function; or
>>
>> "(2) Intentionally prevents a public servant from performing a governmental function."

Alabama's "stop and identify" statute, § 15-5-30, Ala. Code 1975, states:

> "A sheriff or other officer acting as sheriff, his deputy or any constable, acting within their respective counties, any marshal, deputy marshal or policeman of any incorporated city or town within the limits of the county or any highway patrolman or state trooper may stop any person abroad in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or other public offense and may demand of him his name, address and an explanation of his actions."

The evidence indicated that McLaurine was detained because he was walking in the early morning hours in what was essentially a neighborhood that had been temporarily abandoned for the holidays by its usual student inhabitants. Officer Bean observed McLaurine walking very slowly and looking in the direction of the houses and apartments. The evidence also indicated that a burglary had been reported in that immediate vicinity either that night or the night before and that the police were still investigating an unexplained death in the area. We agree with the trial court and the City that Officer Bean was able to articulate specific facts and inferences that

4

gave him reasonable suspicion that McLaurine may have been involved in criminal activity. The evidence indicates that Officer Bean was justified in stopping McLaurine in order to obtain identifying information and to satisfy himself that criminal activity was not afoot. In Richardson v. City of Trussville, 492 So. 2d 625 (Ala. Crim. App. 1985), this Court addressed a similar issue, stating:

> "The evidence shows that Richardson was stopped because he was in the parking lot of a dentist's office that had been previously burglarized. The trial judge found that the stopping was justified and merely constituted 'good law enforcement.' We agree because a police officer does not need probable cause to stop a person for questioning; he need only be able to articulate specific facts and inferences that lead to a reasonable suspicion of criminal activity.
>
> "In Brooks v. State, 460 So. 2d 242 (Ala. Cr. App. 1984), a State Capitol police officer observed unusual activity in a State building parking lot. That reason, coupled with the fact that there had recently been a rash of break-ins involving cars at the State complex, prompted further investigation. In Brooks, we held that a police officer may stop an individual to make an investigation even though probable cause does not exist for an arrest. 460 So. 2d at 243. See also Spradley v. State, 414 So. 2d 170, 173 (Ala. Cr. App. 1982), and Minnifield v. State, 390 So. 2d 1146, 1151 (Ala. Cr. App.), cert. denied, 390 So. 2d 1154 (Ala. 1980).
>
> "The United States Supreme Court answered a similar issue in Terry v. Ohio, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed. 2d 889 (1968), when it recognized that,
>
>> "'a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.'

5

"Terry went on to hold that a stop is permissible 'where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot.' Terry, 392 U.S. at 30, 88 S.Ct. at 1884, 20 L.Ed. 2d 889.

"Moreover, the Alabama Legislature enacted specific legislation dealing with the powers of law enforcement officers to investigate suspected criminal activity. Section 15-5-30, Code of Alabama 1975, reads:

> "'A sheriff or other officer acting as sheriff, his deputy or any constable, acting within their respective counties, any marshal, deputy marshal or policeman of any incorporated city or town within the limits of the county or any highway patrolman or state trooper may stop any person abroad in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or other public offense and may demand of him his name, address and an explanation of his actions.'

"Given the late hour Richardson's car was observed in the dentist's office parking lot and the fact that both police officers had been called to burglaries at that particular office in recent months preceding the date in question, we believe that reasonable grounds existed for the officers to suspect that the individual in the automobile might be involved in criminal activity and that further investigation was warranted.

> "'A policeman who lacks the precise level of information necessary for probable cause to arrest is not required simply to shrug his shoulders and allow a crime to occur or a criminal to escape, and a brief stop of a suspicious individual, in order to determine his identity or to maintain the

> status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.' 6A C.J.S. Arrest § 38 (1975)."

492 So. 2d at 627-28.

Just as in Richardson, the action of Officer Bean and his fellow officers in the present case was a reasonable effort on their part to maintain the status quo momentarily while obtaining more information. This action was authorized by § 15-5-30. McLaurine's subsequent refusal to identify himself gave the officers probable cause to arrest him for obstructing governmental operations. See, e.g., Hiibel v. Sixth Judicial District Court of Nevada, Humboldt County, 542 U.S. 177 (2004). Therefore, the trial court did not err in denying McLaurine's motion to suppress the evidence and the case was properly submitted to the jury.

McLaurine also contends that § 15-5-30 is unconstitutionally vague. The exact basis for this contention is not clear. However, we can find no indication in the record that the trial court was ever asked to rule on a specific constitutional challenge to § 15-5-30. The record does contain a document filed by McLaurine entitled "Notice of Defense," which states:

> "This is formal notice of the some of DEFENSES [sic] raised by the defendant. This notice is not intended to exclude any defense from consideration at this time or any future time. The following defenses should be considered:
>
> "The law or laws used to prosecute the defendant are unconstitutional on some and/or all of the following grounds: Violation of the Fourth Amendment to the Constitution of the United States, and all of its provisions; Violation of the Fifth Amendment to the Constitution of United States, and all of its provisions; the law(s) being used to prosecute the defendant are VOID FOR VAGUENESS; Violation of some an/or all VESTED RIGHTS under the constitutions, statutory, and/or common law of the United States and/or the State of Alabama that allow citizens to

7

>refuse to respond to police during questioning and/or protect citizens from unlawful seizure.
>
>"The DEFENSES raised in this NOTICE should be considered to apply in all proceedings and considerations in this matter, including, but not limited, the burden of proof requirements placed on the prosecution for probable cause and/or reasonable suspicion."

(R. 150.) It does not appear, however, that this document required or prompted any specific response or ruling by the trial court. The only other reference to a constitutional challenge to § 15-5-30 appears in McLaurine's closing argument to the jury, where he argued that the statute was unconstitutional. "Review on appeal is limited to review of questions properly and timely raised at trial." Newsome v. State, 570 So. 2d 703, 716 (Ala. Crim. App. 1989).

Furthermore, we note that even if this issue had been properly raised below, this Court would not review it because McLaurine's brief does not comply with Rule 28(a)(10), Ala.R.Crim.P. Rule 28 requires more than cursory, undelineated, and vague propositions accompanied by citations to cases with no argument as to how those cases support the appellant's contentions. See, e.g., Spradlin v Spradlin, 601 So. 2d 76, 78-79 (Ala. 1992); see also L.J.K. v. State, 942 So. 2d 854 (Ala. Crim. App. 2005).

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed by memorandum.

McMillan, Wise, and Welch, JJ., concur. Baschab, P.J. concurs in the result.

MALICIOUS PROSECUTION                APJI CIVIL 24.02

## APJI 24.02

### CRIMINAL CASE—ELEMENTS OF PROOF

The material averments of the plaintiff's complaint which are in issue are:

(1) A criminal judicial proceeding instituted by the defendant(s) against the plaintiff.
(2) That the judicial proceedings were instigated by the defendant(s) maliciously.
(3) That the judicial proceedings were instigated without probable cause.
(4) That the judicial proceedings have been terminated in favor of the plaintiff.
(5) That the plaintiff suffered damage as a proximate consequence of the prosecution thereof.

---

#### Notes on Use

If any of the above elements are not disputed use only those in issue.

#### References

Delchamps, Inc. v Larry, 613 So 2d 1235 (1992, Ala).
Boothby Realty Co. v Haygood, 269 Ala 549, 114 So 2d 555 (1959).
Birwood Paper Co. v Damsky, 285 Ala 127, 229 So 2d 514 (1969).
Johnston v Duke, 284 Ala 359, 224 So 2d 906 (1969).
52 Am Jur 2d, Malicious Prosecution §§ 128-190.
Admissibility and permissible use, in malicious prosecution action, of documentary evidence showing that prior criminal

651

**APJI CIVIL 24.02**                    MALICIOUS PROSECUTION

proceedings against instant plaintiff were terminated in his favor. 57 ALR2d 1086.

Discharge in habeas corpus proceedings as constituting favorable termination of criminal proceedings requisite to maintenance of malicious prosecution action. 30 ALR2d 1128.