IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
CIVIL DIVISION

2007 MAR 30  A 9: 37

WILLIAM S. MCLAURINE, II
plaintiff, pro se

DERA P. HACKETT,
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

v.                                          )
                                            )
the CITY OF AUBURN, ALABAMA                 )
unnamed police DISPATCHER                   )      CIVIL ACTION NO. 3:06cv1014-MEF
deputy director BENJAMIN WALKER             )
Officer LAVARRO BEAN                        )
Lieutenant MATTHEWS                         )      **DEMAND FOR JURY TRIAL**
Lieutenant KEITH HOWELL                     )
Chief FRANK DEGRAFFENRIED                   )
DAVID WATKINS                               )
director "BILL" JAMES                       )
City Manager CHARLES DUGGAN                 )
                                            )

## AFFIDAVIT FOR DECLARATION OF DISCOVERY

I, William S. McLaurine, II make this declaration as true facts concerning this matter.

[1]    I have filed NOTICE(S) OF COMPLAINT with the office of the City Manager, of Auburn, Alabama in this matter, even though I do not now believe them neccesary to proceed.

[2]    During my arrest by Officer Lavaro Bean, on or about November 24, 2004, shortly after midnight, Officer Lavaro Bean used multiple racially charged statements. Those statements were, "Is it because I'm black" (in reference to why I wouldn't answer his questions), "What nation do you work for." and "Is it because you work for the confederate government?"

At first I was irratated and thought why does it always have to be about race? As the line of question went on I became afraid. I had the tingling sensation you get on the back of your neck. I thought to myself, "These guys can do anything."

Officer Matthews was present and at a range that allowed him to make a comment on my statements at a later time in the interrogation.

[3]    The following information is posted on the website belonging to the city of Auburn, Alabama. The specific web address is
http://www.auburnalabama.org/citycouncil/agenda/2005/122005/Minutes.htm
This information is identified as approved minutes of the city council meeting of December 20, 2005. The following is quote of the statements made on the website listed in this section [3]:

Mr. Zellars said he was also concerned about the use of racial slurs in the statements from the

1

court proceedings. He said he wanted to read from the documents some of the statements made in those court proceedings.

Mr. Watkins said he is not comfortable with citizens slandering City employees in this manner. He said he did not feel this was proper. He said the entire transcript needs to be read in order to get the full grasp of all statements made.

Bishop Dowdell said this is a public hearing and as such under the first amendment laws, Mr. Zellars has a right to read the transcript which is a public document. He felt the City Manager was out of order because Mr. Zellars was addressing the Council.

Councilman Gray called a "point of order" question. He said that under Robert's Rules of Order, a motion to adjourn is always in order.

City Council Minutes

December 20, 2005

Page 30


## 12. **ADJOURNMENT.**

Councilman Gray moved that the meeting be adjourned.

Councilwoman Eckman seconded the motion and all members voted aye.

Mayor Ham declared the meeting adjourned at 9:10 PM.

This is the conclusion of the quote of approved minutes of the City Council of Auburn, Alabama.

[4]    I was approached by an plea offer negotiated between Phil Thompson and Mathew White without my knowledge. The deal was to drop charges in exchange for William S. McLaurine signing a "civil release." I understood this to mean that I would not be prosecuted if I agreed not sue the city. I refused the offer.

[5]    The Plaintiff is a licensed Professional Engineer in the state of California. License number C66284.

I declare under penalty of perjury that the above information is true and correct.

DATE:_____ March 29, 2007 _____    _____
                                       William S. McLaurine, II
                                       222 Tichenor Avenue #4
                                       Auburn, Alabama 36830
                                       (334) 524-2175

# COURT OF CRIMINAL APPEALS
# STATE OF ALABAMA

PAMELA W. BASCHAB
Presiding Judge
H. W. "BUCKY" McMILLAN
GREG SHAW
A. KELLI WISE
SAMUEL HENRY WELCH
Judges



Lane W. Mann
Clerk
Gerri Robinson
Assistant Clerk
(334) 242-4590
Fax (334) 242-4689

## CR-05-1600

William S. McLaurine v. City of Auburn  (Appeal from Lee  Circuit Court: CC05-289)

## ORDER

The Court of Criminal Appeals ORDERS that the certificate of judgment issued by this Court on March 14, 2007 be, and the same is hereby, recalled.  The appellant's request to file a late application for rehearing and supporting brief is GRANTED.  Appellant is given 14 days from the date of this order to file an application for rehearing and supporting brief with this Court.  Due on or before April 5, 2007.

Done this the 22nd day of March, 2007.

*Pamela W. Baschab*

Pamela W. Baschab, Presiding Judge
Court of Criminal Appeals

cc: Hon. John V Denson, II, Circuit Judge
Hon. Corinne Tatum Hurst, Circuit Clerk
J. Victor Price, Attorney
William S. McLaurine, Pro Se
Matthew White, Attorney

# COURT OF CRIMINAL APPEALS
## STATE OF ALABAMA

PAMELA W. BASCHAB
Presiding Judge
H. W. "BUCKY" McMILLAN
GREG SHAW
A. KELLI WISE
SAMUEL HENRY WELCH
Judges



Lane W. Mann
Clerk
Gerri Robinson
Assistant Clerk
(334) 242-4590
Fax (334) 242-4689

## CR-05-1600

William S. McLaurine v. City of Auburn  (Appeal from Lee  Circuit Court: CC05-289)

## ORDER

It is hereby ORDERED that the City of Auburn's motion to strike appellant's motion for rehearing is DENIED.

Done this the 22nd day of March, 2007.

*Pamela W. Baschab*

**Pamela W. Baschab, Presiding Judge**
**Court of Criminal Appeals**

cc: William S. McLaurine, Pro Se
    Matthew White, Attorney

**COURT OF CRIMINAL APPEALS NO.** _____

# APPEAL TO ALABAMA COURT OF CRIMINAL APPEALS
### FROM
**CIRCUIT COURT OF** _____LEE_____**COUNTY, ALABAMA**

**CIRCUIT COURT NO** _____CC 2005 000289_____

**CIRCUIT JUDGE** _____HON JOHN V DENSON II_____

Type of Conviction/ Order Appealed From: _____OBSTRUCTING GOVERNMENTAL OPERATIONS_____

Sentence Imposed: _____3MTHS JAIL TIME SUPSENDED, PLACED ON 1YR UNSUP PROBATION/C/C FINE $500,VCF $25.00_____

Defendant Indigent: ☐ YES ☑ NO

## WILLIAM S MCLAURINE

**NAME OF APPELLANT**

HON J VICTOR PRICE          334 283 3388
(Appellant's Attorney)                    (Telephone No.)
17 SISTRUNK STREET

(Address)
TALLASSEE          AL          36078
(City)                (State)            (Zip Code)

### V.
## CITY OF AUBURN

**NAME OF APPELLEE**

(State represented by Attorney General)

NOTE:  If municipal appeal, indicate above, and enter

name and address of municipal attorney below.

MATHEW WHITE & PATRICK DAVIDSON

P O BOX 2069   OPELIKA  AL  36803-2069

(For Court of Criminal Appeals Use Only)

## *INDEX*

*CASE ACTION SUMMARY* ------------------------------------------------------------------*001*

*COMPLAINT* ----------------------------------------------------------------------- *013*

*NOTICE OF APPEAL TO CIRCUIT COURT AND APPEAL BOND* ------------- *014*

*MOTION FOR TRIAL DE NOVO WITH JURY* ------------------------------------ *017*

*MOTION FOR PERMISSION TO LEAVE STATE WHILE ON BOND* ------------ *018*

*MOTION FOR TRIAL DE NOVO WITH JURY* ------------------------------------ *019*

*MOTION FOR A MORE DEFINITIVE STATEMENT* ------------------------------ *020*

*MOTION FOR DISCOVERY* ------------------------------------------------------- *022*

*MOTION FOR COUNSEL TO BE APPOINTED* ----------------------------------- *023*

*ORDER* ------------------------------------------------------------------------------ *024*

*ORDER* ----------------------------------------------------------------------------- *025*

*DEFENDANT'S WRITTEN REQUEST FOR PRODUCTION OF
INFORMATION BY STATE* ----------------------------------------------------------- *028*

*NOTICE TO CIRCUIT CLERK OF CHANGE OF ADDRESS* --------------------- *034*

*PRODUCTION OF DOCUMENTS FOR IN CAMERA INSPRECTION* --------- *035*

*ORDER* ------------------------------------------------------------------------------ *037*

*MOTION TO COMPEL DISCOVERY* ---------------------------------------------- *039*

*MOTION FOR A SPEEDY TRIAL* --------------------------------------------------- *043*

*REQUEST OF THE COURT CLERK* ------------------------------------------------ *045*

*MOTION TO PROCEED PRO SE* --------------------------------------------------- *046*

*MOTION FOR STATUS CONFERENCE* -------------------------------------------- *048*

*MOTION TO WITHDRAW* ----------------------------------------------------------- *051*

*ORDER* ------------------------------------------------------------------------------ *054*

*ORDER* ------------------------------------------------------------- *055*

*NOTICE TO JUDGE DENSON* ---------------------------------- *056*

*ORDER* ------------------------------------------------------------- *057*

*MOTION TO DISMISS WITH PREJUDICE* ------------------------- *058*

*MOTION TO DISMISS WITH PREJUDICE FOR FAILURE TO*
*ESTABLISH REASONABLE SUSPICION AND/OR PROBABLE CAUSE* --- *062*

*MOTION TO DISMISS WITH PREJUDICE FOR MISCONDUCT OF*
*THE PLAINTIFF* -------------------------------------------------- *079*

*MOTION IN LIMITING* -------------------------------------------- *146*

*INTERROGATORY TO THE COURT* ------------------------------ *148*

*NOTICE OF DEFENSE* --------------------------------------------- *150*

*ORDER* ------------------------------------------------------------- *152*

*ORDER* ------------------------------------------------------------- *153*

*JURY STRIKE LIST* ------------------------------------------------ *155*

*CITY'S REQUESTED JURY CHARGES* --------------------------- *163*

*DEFENDANT'S JURY CHARGES* -------------------------------- *167*

*REQUESTED VOIR DIRE* ------------------------------------------ *168*

*DEFENDANT'S REQUESTED VOIR DIRE* --------------------- *170*

*CITY'S EXHIBIT NO. 1 & NO. 2* -------------------------------- *171*

*NOTICE OF APPEAL OF PRETRIAL ORDER* ------------------- *177*

*CLERK'S NOTICE OF APPEAL TO COURT OF CRIMINAL APPEAL* -- *178*

*NOTICE OF APPEALS TO THE COURT OF CRIMINAL APPEAL OF*
*ALABAMA* --------------------------------------------------------- *179*

*ORDER TO THE CLERK AND/OR MOTION TO APPEND THE*
*RECORD ON APPEAL* --------------------------------------------- *180*

NOTICE TO ATTORNEY GENERAL OF CONSTITUTIONAL
CHALLENGE -------------------------------------------------------------------- 186

COURT OF CRIMINAL DOCKETING STATEMENT ------------------------- 187

REPORTER'S TRANSCRIPT ORDER ------------------------------------- 189

MOTION FOR INCLUSION OF STATEMENT OF FACT INTO THE
RECORD ON APPEAL BY THE DEFENDANT/APPELLANT -------------- 191

AFFIDAVIT FOR INCLUSION IN THE RECORD ON APPEAL ----------- 192

MOTION FOR NEW TRIAL ------------------------------------------------- 194

MOTION TO STRIKE DEFENDANT'S "AFFIDAVIT FOR INCLUSION
IN THE RECORD ON APPEAL" ------------------------------------------ 197

MOTION TO STRIKE DEFENDANT'S MOTION FOR NEW TRIAL ------ 199

SUPPLEMENT TO CITY'S PRIOR MOTION TO STRIKE DEFENDANT'S
"AFFIDAVIT FOR INCLUSION IN THE RECORD ON APPEAL --------- 201

NOTICE OF APPEARANCE ----------------------------------------------- 203

ORDER ----------------------------------------------------------------------- 204

COURT REPORTER'S TRANSCRIPT ----------------------------------- 205

CLERK'S CERTIFICATE OF COMPLETION --------------------------- 440

```
DCS105        A L A B A M A   J U D I C I A L   D A T A   C E N T E R
                         CASE ACTION SUMMARY
                                                 CASE: CC 2005 000289.00
------------------------------------------------------------------------
IN THE CIRCUIT  COURT OF     LEE     COUNTY              JUDGE: JVD

   STATE OF ALABAMA  VS  MCLAURINE WILLIAM S

------------------------------------------------------------------------
 04/26/2005    TEXT    MOTION FOR PERMISSION TRO LEAVE STATE WHILE ON BON
               TEXT    MOTION FOR TRIAL DE NOVO WITH JURY
               TEXT    MOTION FOR A MORE DEFINITE STATEMENT
               TEXT    MOTION FOR DISCOVERY
               TEXT    MOTION FOR COUNSEL TO BE APPOINTED
 05/02/2005    TEXT    COMPLAINT
 05/03/2005    TEXT    NOTICE OF APPEAL TO CIRCUIT COURT/APPEAL BOND
 05/12/2005    JUDG    ASSIGNED TO: (JVD)                        (AR01)
               COMM    4/25/05 NOTICE OF APPEAL/APD MC04-60431   (AR01)
               FILE    CHARGE 01: OBSTRUCTING GOVT OPE/#CNTS: 001 (AR01)
               DAT3    SET FOR:  ARRAIGNMENT ON 08/26/2005 AT 0900A(AR01)
               STAT    INITIAL STATUS SET TO: "B" - BOND         (AR01)
               FILE    FILED ON: 05/12/2005                      (AR01)
               ARRS    DEFENDANT ARRESTED ON: 11/27/2004         (AR01)
               DAT4    SET FOR:  TRIAL ON 09/12/2004 AT 0830A    (AR10)
               CASU    CASE ACTION SUMMARY PRINTED               (AR08)
               ATTH    CAS ATTACHMENT PRINTED                    (AR08)
 05/20/2005    TEXT    ORDER GRANTING DEFT PERMISSION TO LEAVE STATE OF
               TEXT     ALABAMA AND THE BOND CNTINUES IN EFFECT.
 05/25/2005    DAT2    SET FOR:   MOTION ON 06/29/2005 AT 0900A  (AR10)
 05/26/2005    ADD1    ADDR1 CHANGED FROM: 422 W MAGNOLIA AVE.   (AR01)
 06/29/2005    TEXT    ORDER DENYING MTN
 07/01/2005    TEXT    DEFT'S WRITTN REQUEST FOR PRODUCTION OF INFO BY
               TEXT     STATE
 07/13/2005    ATY1    ATTORNEY FOR DEFENDANT: THOMPSON PHILIP ALLE(AR01)
 08/04/2005    ADD1    NOTICE TO CIRCUIT CLERK OF ADDRESS CHANGE
 08/08/2005    ADD1    ADDR1 CHANGED FROM: 549 E GLENN AVE APT 21 (AR01)
 08/09/2005    DOCK    NOTICE SENT: 08/09/2005 DAVIDSON PATRICK C
               DOCK    NOTICE SENT: 08/09/2005 THOMPSON PHILIP ALLEN
               DOCK    NOTICE SENT: 08/09/2005 MCLAURINE WILLIAM S
 08/18/2005    CASU    CASE ACTION SUMMARY PRINTED               (AR08)
 08/22/2005    FESH    FEE SHEET PRINTED                         (AR08)
 08/31/2005    TEXT    PRODUCTION OF DOCUMENTS FOR IN CAMERA INSPECTION
 09/02/2005    TEXT    ORDER SETTING HEARING ON 9/8/05 AT 9AM
 09/12/2005    DAT3    SET FOR:  ARRAIGNMENT ON 11/17/2005 AT 0900A(AR10)
 09/13/2005    DAT4    SET FOR:  TRIAL ON 12/05/2005 AT 0830A    (AR10)
 10/20/2005    TEXT    SERVICE OF PHIL THOMPSON ON THAT DATE.
               TEXT    REQUEST OF THE COURT CLERK-DEFT COMES PRO-SE
               TEXT     IN THIS MATTER AS ON 10/18/05 HAVING TERMINATE
               TEXT    DEFENDANT DEMAND A SPEEDY TRIAL
               TEXT    MOTION TO COMPEL DISCOVERY
               TEXT    MOTION TO PROCEED PRO SE
 10/24/2005    FESH    FEE SHEET PRINTED                         (AR08)
 10/25/2005    DOCK    NOTICE SENT: 10/25/2005 THOMPSON PHILIP ALLEN
               DOCK    NOTICE SENT: 10/25/2005 DAVIDSON PATRICK C
               DOCK    NOTICE SENT: 10/25/2005 MCLAURINE WILLIAM S
               DOCK    NOTICE SENT: 10/25/2005 THOMPSON PHILIP ALLEN
               DOCK    NOTICE SENT: 10/25/2005 DAVIDSON PATRICK C
               DOCK    NOTICE SENT: 10/25/2005 MCLAURINE WILLIAM S
               DOCK    NOTICE SENT: 10/25/2005 THOMPSON PHILIP ALLEN
               DOCK    NOTICE SENT: 10/25/2005 DAVIDSON PATRICK C
               DOCK    NOTICE SENT: 10/25/2005 MCLAURINE WILLIAM S
               FESH    FEE SHEET PRINTED                         (AR08)
               CASU    CASE ACTION SUMMARY PRINTED               (AR08)
 10/26/2005    TEXT    MOTION FOR STATUS CONFERENCE
               TEXT    MOTION TO WITHDRAW
 10/31/2005    TEXT    ORDER GRANTING MOTION TO WITHDRAW AND SETTING FOR
               TEXT     HEARING ON 11/4/05 AT 9AM
 11/01/2005    DAT2    SET FOR: MOTION ON 11/04/2005 AT 0900A    (AR10)
 11/04/2005    TEXT    ORDER CASE SET FOR DOCKET CALL ON 11/17/05 AND
               TEXT     TRIAL ON 12/5/05.
 11/07/2005    TEXT    NOTICE TO JUDGE DENSON
 11/17/2005    TEXT    ORDER
 11/22/2005    TEXT    MOTION TO DISMISS WITH PREJUDICE
               TEXT    MTN TO DISMISS WITH PREJUDICE FOR FAILURE TO EST.
               TEXT     REASONABLE SUSPICION &/OR PROBABLE CAUSE
               TEXT    MTN TO DISMISS WITH PREJUDICE FOR MISCONDUCT OF
```

```
DCS105        A L A B A M A   J U D I C I A L   D A T A   C E N T E R
                          CASE ACTION SUMMARY
                                              CASE: CC 2005 000289.00
|------------------------------------------------------------------------|
|IN THE CIRCUIT COURT OF      LEE       COUNTY              JUDGE: JVD    |
|                                                                        |
|  STATE OF ALABAMA  VS  MCLAURINE WILLIAM S                             |
|------------------------------------------------------------------------|
|  ●  ------------------------------------------------------------------ |
|              TEXT      THE PLAINTIFF                                    |
| 11/29/2005   TEXT   NOTICE OF DEFENSE                                   |
|              TEXT   INTERROGATORY TO THE COURT                         |
|              TEXT   MOTION IN LIMITING                                 |
| 12/02/2005   TEXT   ORDER                                               |
| 12/05/2005   DAT2   SET FOR: STATUS CONF ON 03/21/2006 AT 0900A (AR10) |
|              DAT4   SET FOR: TRIAL ON 05/01/2006 AT 0830A      (AR10)  |
| 03/28/2006   TEXT   ORDER-ALL OF DEFT'S PENDING MOTIONS AS OF THIS DAT |
|              TEXT    ARE DENIED.                                       |
| 04/20/2006   DAT2   SET FOR:  DOCKET CALL ON 04/28/2006 AT 0900A(AR10) |
| 05/04/2006   DJID   DISPOSITION JUDGE ID CHANGED FROM:    TO: JVD      |
|              DISP   CHARGE 01:  OBSTRUCTING GOVT OP/#CNTS: 001  (AR10) |
|              DAT2   SET FOR: SENTENCING DKT/HE ON 05/25/2006 AT 0900A  |
|              DISP   CHARGE 01 DISPOSED BY: CONVICTED ON: 05/01/2006    |
| 05/08/2006   TEXT   NOTICE OF APPEAL                                   |
| 05/09/2006   APPL   CASE APPEALED ON: 05/08/2006              (AR10)  |
|              APPL   APPEAL "TO" TYPE: "U"                      (AR10)  |
|              APDT   APPEAL DATE CHANGED FROM: 00/00/0000       (AR11)  |
|              APTY   APPEAL TYPE CHANGED FROM:                  (AR11)  |
|              INTR   INDTRL TYPE CHANGED FROM:                  (AR11)  |
|              ATYW   ATYW TYPE CHANGED FROM:                    (AR11)  |
|              IRAO   IRA TYPE CHANGED FROM:                     (AR11)  |
|              PROS   PROSECUTOR CHANGED FROM:                   (AR11)  |
|              ATY1   ATTY 1 CHANGED FROM:                       (AR11)  |
|              ATY1   ATTY 1 TYPE CHANGED FROM:                  (AR11)  |
| 05/10/2006   TRAN   TRANSMITTAL NOTICE     SENT TO DEFENDANT   (AR09)  |
|              ADD1   ADDR1 CHANGED FROM: 222 TICHENOR #4        (AR01)  |
|              TRAN   TRANSMITTAL NOTICE     SENT TO DEFENDANT   (AR09)  |
| 05/25/2006   TEXT   DEFT IS SENT 3MTHS IN THE LCDC, SUSP, AND PLACED   |
|              TEXT    ON 1YR UNSUPERVISED PROBATION; DEFT ASSESSED      |
|              TEXT    C/C, $500 FINE AND $25 VCF; CASE SET FOR REVIEW   |
|              TEXT    12/21/06 AT 9AM                                   |
| 05/26/2006   CH01   DEFENDANT SENTENCED ON: 05/25/2006        (AR05)  |
|              CH01   CVCC PROVISION ORDERED BY THE COURT        (AR05)  |
|  ●           CH01   HISTORY FEE PROVISION ORDERED BY THE COURT (AR05)  |
|              CH01   COST PROVISION ORDERED BY THE COURT        (AR05)  |
|              CH01   SUSPENDED CONFINEMENT: 03 MONTHS           (AR05)  |
|              CH01   TOTAL CONFINEMENT: 03 MONTHS               (AR05)  |
|              CH01   FINE IMPOSED: $500.00                      (AR05)  |
|              CH01   PROBATION OF: 01 YEARS                     (AR05)  |
|              CH01   SENTENCE TO BEGIN ON: 05/25/2006           (AR05)  |
|              CH01   FINE PROVISION ORDERED BY THE COURT        (AR05)  |
|              DAT2   SET FOR: REVIEW DOCKET/HEAR ON 12/21/2006 AT 0900A |
|              D0C1   ENFORCEMENT STATUS SET TO:  "I"            (FE52)  |
|              D001   PAYMENT DUE DATE SET TO: 12/21/2006        (FE52)  |
|              CRP1   COURT REPORTER 1 CHANGED FROM:             (AR11)  |
| 06/01/2006   TEXT   NOTICE OF APPEAL                                   |
|              TEXT   DOCKETING STATEMENT/REPORTER'S TRANSCRIPT ORDER    |
| 06/09/2006   TEXT   NOTICE-APPELLANT HAS PAID $100.00 DOCKET FEE       |
| 06/27/2006   TEXT   MOTION FOR A NEW TRIAL                             |
|              TEXT   MOTION FOR INCLUSION OF STATEMENT OF FACT INTO     |
|              TEXT    THE RECORD ON APPEAL BY THE DEFENDANT/APPELLANT   |
|              TEXT   AFFIDAVIT FOR INCLUSION IN THE RECORD ON APPEAL    |
| 06/30/2006   TEXT   MTN TO STRIKE DEFT'S AFFIDAVIT FOR INCLUSION IN    |
|              TEXT    THE RECORD ON APPEAL.                             |
| 07/10/2006   TEXT   MOTION TO STRIKE DEFTS MOTION FOR NEW TRIAL        |
|              TEXT   MOTION TO STRIKE DEFTS "AFFIDAVIT FOR INCLUSION    |
|              TEXT    IN THE RECORD ON APPEAL                           |
|              TEXT   SUPPLEMENT TO CITY'S PRIOR MOTION TO STRIKE DEFTS  |
|              TEXT    "AFFIDAVIT FOR INCLUSION IN THE RECORD ON APPEAL. |
| 07/13/2006   TEXT   NOTICE OF APPEARANCE                               |
| 07/14/2006   TEXT   ORDER SETTING VARIOUS POST-TRIAL MOTIONS FOR       |
|              DAT1   SET FOR: MOTIONS ON 08/17/2006 AT 0900A    (AR10)  |
|              TEXT    HEARING ON 8/17/06 IMMEDIATELY FOLLOWING DOCKET   |
|              TEXT    CALL                                              |
| 07/24/2006   ATY1   ATTY 1 CHANGED FROM: PRS001               (AR11)  |
|              ATY1   ATTY 1 TYPE CHANGED FROM: S               (AR11)  |
|** REQUESTED BY:KAMALA HARDNETT          ON: 07242006 AT: 14:58   **   |
```

● 2

| State of Alabama<br>Unified Judicial System<br><br>Form C-7 Rev. 2/79 | **CASE ACTION SUMMARY**<br>**CONTINUATION** | Case Number<br>CC-05-289 |
|---|---|---|
| | | **YR**        **Number** |

Style:   STATE OF ALABAMA v. MCLAURINE, WILLIAM S.          Page Number _____ of _____ Page

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|---|---|
| 05/25/06 | This Defendant appeared before the Court for sentencing pursuant to his trial that was held before this Court on May 1, 2006; It is the opinion of the Court that the Defendant is sentenced to three (3) months in the Lee County Detention Center, suspended, and placed on one (1) year unsupervised probation; Defendant is assessed Court costs, $500 fine and $25 Victim's Compensation Fund: This case is set for review on December 21, 2006 at 9:00 a.m.<br><br>cc: Matt White; William McLaurine<br><br>FILED IN OFFICE   MAY 2 6 2006 |

| State of Alabama Unified Judicial System' Form C-7 Rev. 2/79' | CASE ACTION SUMMARY CONTINUATION | Case Number CC-05-289 | | |
|---|---|---|---|---|
| | | ID | YR | Number |

Style:    CITY OF AUBURN v. MCLAURINE, WILLIAM S.        Page Number _____ of _____ Page

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|---|---|
| 05/01/06 | The Defendant, WILLIAM S. MCLAURINE,, Pro Se, heretofore having been arraigned upon a complaint on the charge of OBSTRUCTING GOVERNMENTAL OPERATIONS and having plead not guilty thereto, issue joined on said plea. Thereupon comes a jury of men and women, who being duly impaneled, sworn and charged by the Court accordingly to law, before whom the trial of this cause was entered upon and continued from day to day and from time to time, said Defendant, WILLIAM S. MCLAURINE,, Pro Se, being in open Court at each and every stage and during all proceedings in this cause, now on this the 1st day of May, 2006, said jurors upon their oaths do say:

"We, the Jury, find the Defendant, WILLIAM S. MCLAURINE, guilty of OBSTRUCTING GOVERNMENTAL OPERATIONS, the offense as charged."


/s/ Foreperson


The Court therefore adjudges the Defendant guilty of OBSTRUCTING GOVERNMENTAL OPERATIONS.  The Plaintiff requested a Pre-Sentence Report.  The Court set the sentencing in this case for May 25, 2006 at 9:00 a.m. in courtroom number four of the Lee County Justice Center.  The Defendant is to remain on his same bond. |

4

| State of Alabama<br>Unified Judicial System<br><br>Form C-7 Rev. 2/79 | ( ( ACTION SUMMARY<br>CONTINUATION | Case Number |
|---|---|---|

| Case Number |
|---|
| CC _____ - 05 _____ -289 |
| ID          YR          Number |

**Style:** **STATE OF ALABAMA v. WILLIAM McLAURINE**    Page Number _____ of _____ Pages

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|---|---|
| 03/28/06 | Order – All of Defendant's pending Motions as of this date, March 28, 2006, are **DENIED**. |
| | John V. Denson, II, Circuit Judge |

| State of Alabama<br>Unified Judicial System<br>Form C-7 Rev. 2/79 | **CASE ACTION SUMMARY**<br>**CONTINUATION** | Case Number<br>CC-05-289 |
|---|---|---|
| | | ID      YR           Number |

Style: *City of Auburn v. McLaurine Williams*     Page Number _____ of _____ Page

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|---|---|
| 11/17/05 | ☐ Written plea of not guilty and waiver of arraignment filed. The Defendant is granted five days to file motions for special pleas. This case is set for docket call on December 2, 2005 at 9:00 a.m.  This case is set for trial on the December 5th, 2005 8:30 a.m./December 12, 2005 at 8:30 a.m. |
| | ☐ Defendant failed to appear. DISMISSED AND REMANDED TO THE MUNICIPAL COURT OF THE CITY OF AUBURN, ALABAMA |
| | ☐ It appearing to the Court that the Defendant is without and unable to employ counsel and upon Defendant's request, the Court appoints Hon. Phil Thompson, Attorney at law to represent the Defendant. |
| | ☐ On this day the Defendant with his/her attorney, Hon. Phil Thompson Makes application for Youthful Offender Treatment. Hearing on said Application is hereby set for December 2, 2005 at 9:00 a.m. |
| | ☐ After hearing testimony and reviewing documents, said application for Youthful Offender is hereby |
| | ☐ The Defendant in open court accompanied by attorney of record and being duly arraigned does plead not guilty. The Defendant is granted five days to file motions or special pleas. This case is set for trial on the 5th/12th day of December, 2005, at 8:30 a.m. Docket call is set for the 2nd day of December, 2005, at 9:00 a.m. Pending trial Defendant is remain on present bond. |
| | *Trial set for December 5, 2005 at 8:30 am* |
| 12/2/05 | *Continued to Next term of Appeals Court. Status Conference set for March 21, 2006 at 9:00 am* |

FILED IN OFFICE DEC. 0 2 2005

6

| State of Alabama Unified Judicial System Form C-7 Rev. 2/79 | CASE ACTION SUMMARY CONTINUATION | Case Number CC-05-289 |
|---|---|---|

| | | ID | YR | Number |
|---|---|---|---|---|

Style:    STATE OF ALABAMA v. MCLAURINE, WILLIAM S.    Page Number _____ of _____ Page

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|---|---|
| 09/02/05 | Set for Hearing on **September 8, 2005 at 9:00 a.m.** |
| 9/8/05 | Continued for trial to the next Auburn Appeals Docket which is set for November 17, 2005 at 9:00 a.m.; Trial dates for that docket have not yet been determined |
| 11/4/05 | Trial set for December 5, 2005 at 9:00 |

| | |
|---|---|
| **State of Alabama**<br>**Unified Judicial System**<br>Form C-7 Rev. 2/79 | **CASE ACTION SUMMARY**<br>**CONTINUATION** |

**Case Number**

CC 05 289

ID   YR   Number

Style:

State of Alabama vs McLaurine, William S   Page Number _____ of _____ Pages

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|---|---|
| 8/26/05 | |

☐ ~~Written plea of not guilty and waiver of arraignment filed. The Defendant is granted five days to file motions for special pleas.~~ This case is set for docket call on_____. This case is set for trial on the _____ day of at 8:30 a.m.

☐ ~~Defendant failed to appear. Writ issued. Hold without bond. Notify Court upon arrest.~~

● ☐ ~~It appearing to the Court that the Defendant is without and unable to employ counsel and upon Defendant's request, the Court appoints Hon. Attorney at law to represent the Defendant.~~

☐ On this day the Defendant with his/her attorney, Hon. _____. ~~Makes application for Youthful Offender Treatment. Hearing on said Application is hereby set for_____~~

☐ ~~After hearing testimony and reviewing documents, said application for Youthful Offender is hereby _____.~~

☒ The Defendant in open court accompanied by attorney of record and being ~~duly arraigned does plead not guilty. The Defendant is granted five days to file motions or special pleas.~~ This case is set for trial on the _12th_ day of _September_, at 8:30 a.m. Docket call is set for the _8th_ day of _September_, at 9:00 a.m. Pending trial Defendant is remanded to Jail/released on present bond.

● Philip Thompson was appointed earlier in this case

_[signature]_

8

```
CS105          A L A B A M A    J U D I C I A L    D A T A    C E N T E R
                                 CASE ACTION SUMMARY              SE: CC 2005 000289.00
-------------------------------------------------------------------------------------------
IN THE CIRCUIT COURT OF      LEE        COUNTY                              JUDGE: JVD
-------------------------------------------------------------------------------------------
STATE OF ALABAMA   VS   MCLAURINE WILLIAM S
-------------------------------------------------------------------------------------------
  12/05/2005    DAT2    SET FOR: STATUS CONF ON 03/21/2006 AT 0900A (AR10)
                DAT4    SET FOR:  TRIAL ON 05/01/2006 AT 0830A    (AR10)
  03/28/2006    TEXT    ORDER-ALL OF DEFT'S PENDING MOTIONS AS OF THIS DAT
                TEXT     ARE DENIED.
  04/20/2006    DAT2    SET FOR:  DOCKET CALL ON 04/28/2006 AT 0900A (AR10)
  05/04/2006    DJID    DISPOSITION JUDGE ID CHANGED FROM:      TO: JVD
                DISP    CHARGE 01: OBSTRUCTING GOVT OP/#CNTS: 001   (AR10)
                DAT2    SET FOR:  SENTENCING DKT/HE ON 05/25/2006 AT 0900A
                DISP    CHARGE 01 DISPOSED BY: CONVICTED ON: 05/01/2006
  05/08/2006    TEXT    NOTICE OF APPEAL
  05/09/2006    APPL    CASE APPEALED ON: 05/08/2006               (AR10)
                APPL    APPEAL "TO" TYPE: "U"                      (AR10)
                APDT    APPEAL DATE CHANGED FROM: 00/00/0000       (AR11)
                APTY    APPEAL TYPE CHANGED FROM:                  (AR11)
                INTR    INDTRL TYPE CHANGED FROM:                  (AR11)
                ATYW    ATYW TYPE CHANGED FROM:                    (AR11)
                IRA0    IRA TYPE CHANGED FROM:                     (AR11)
                PROS    PROSECUTOR CHANGED FROM:                   (AR11)
                ATY1    ATTY 1 CHANGED FROM:                       (AR11)
                ATY1    ATTY 1 TYPE CHANGED FROM:                  (AR11)
  05/10/2006    TRAN    TRANSMITTAL NOTICE      SENT TO DEFENDANT  (AR09)
                ADD1    ADDR1 CHANGED FROM: 222 TICHENOR #4        (AR01)
                TRAN    TRANSMITTAL NOTICE      SENT TO DEFENDANT  (AR09)
  05/25/2006    TEXT    DEFT IS SENT 3MTHS IN THE LCDC, SUSP, AND PLACED
                TEXT     ON 1YR UNSUPERVISED PROBATION; DEFT ASSESSED
                TEXT     C/C, $500 FINE AND $25 VCF; CASE SET FOR REVIEW
                TEXT     12/21/06 AT 9AM
  05/26/2006    CH01    DEFENDANT SENTENCED ON: 05/25/2006         (AR05)
                CH01    CVCC PROVISION ORDERED BY THE COURT        (AR05)
                CH01    HISTORY FEE PROVISION ORDERED BY THE COURT (AR05)
                CH01    COST PROVISION ORDERED BY THE COURT        (AR05)
                CH01    SUSPENDED CONFINEMENT: 03 MONTHS           (AR05)
                CH01    TOTAL CONFINEMENT: 03 MONTHS               (AR05)
                CH01    FINE IMPOSED: $500.00                      (AR05)
                CH01    PROBATION OF: 01 YEARS                     (AR05)
                CH01    SENTENCE TO BEGIN ON: 05/25/2006           (AR05)
                CH01    FINE PROVISION ORDERED BY THE COURT        (AR05)
                DAT2    SET FOR: REVIEW DOCKET/HEAR ON 12/21/2006 AT 0900A
                D001    ENFORCEMENT STATUS SET TO: "I"             (FE52)
                D001    PAYMENT DUE DATE SET TO: 12/21/2006        (FE52)
-------------------------------------------------------------------------------------------
-------------------------------------------------------------------------------------------
-------------------------------------------------------------------------------------------
-------------------------------------------------------------------------------------------
-------------------------------------------------------------------------------------------
-------------------------------------------------------------------------------------------
-------------------------------------------------------------------------------------------
-------------------------------------------------------------------------------------------
-------------------------------------------------------------------------------------------
-------------------------------------------------------------------------------------------
-------------------------------------------------------------------------------------------
-------------------------------------------------------------------------------------------
  HARDNETT              05262006
```

```
OCS105        A L A B A M | J U D I C I A L    D A T | C E N T E R
                              CASE ACTION SUMMARY      CASE: CC 2005 000289.00
                                                    ------------------------------
|-------------------------------------------------------------------| JUDGE: JVD|
| IN THE CIRCUIT COURT OF    LEE       COUNTY
|
|   STATE OF ALABAMA  VS  MCLAURINE WILLIAM S
|-------------------------------------------------------------------
|  04/26/2005    TEXT    MOTION FOR PERMISSION TRO LEAVE STATE WHILE ON BON
|                TEXT    MOTION FOR TRIAL DE NOVO WITH JURY
|                TEXT    MOTION FOR A MORE DEFINITE STATEMENT
|                TEXT    MOTION FOR DISCOVERY
|                TEXT    MOTION FOR COUNSEL TO BE APPOINTED
|  05/12/2005    JUDG    ASSIGNED TO: (JVD)                          (AR01)
|                COMM    4/25/05 NOTICE OF APPEAL/APD MC04-60431     (AR01)
|                FILE    CHARGE 01: OBSTRUCTING GOVT OPE/#CNTS: 001  (AR01)
|                DAT3    SET FOR: ARRAIGNMENT ON 08/26/2005 AT 0900A (AR01)
|                STAT    INITIAL STATUS SET TO: "B" - BOND           (AR01)
|                FILE    FILED ON: 05/12/2005                        (AR01)
|                ARRS    DEFENDANT ARRESTED ON: 11/27/2004           (AR01)
|                DAT4    SET FOR:  TRIAL ON 09/12/2005 AT 0830A      (AR10)
|                CASU    CASE ACTION SUMMARY PRINTED                 (AR08)
|                ATTH    CAS ATTACHMENT PRINTED                      (AR08)
|  05/20/2005    TEXT    ORDER GRANTING DEFT PERMISSION TO LEAVE STATE OF
|                        ALABAMA AND THE BOND CNTINUES IN EFFECT.
|  05/25/2005    DAT2    SET FOR:  MOTION ON 06/29/2005 AT 0900A     (AR10)
|  05/26/2005    ADD1    ADDR1 CHANGED FROM: 422 W MAGNOLIA AVE.     (AR01)
|  06/29/2005    TEXT    ORDER DENYING MTN
|  07/01/2005    TEXT    DEFT'S WRITTN REQUEST FOR PRODUCTION OF INFO BY
|                TEXT    STATE
|  07/13/2005    ATY1    ATTORNEY FOR DEFENDANT: THOMPSON PHILIP ALLE(AR01)
|  08/08/2005    ADD1    ADDR1 CHANGED FROM: 549 E GLENN AVE APT 21  (AR01)
|  08/09/2005    DOCK    NOTICE SENT: 08/09/2005 DAVIDSON PATRICK C
|                DOCK    NOTICE SENT: 08/09/2005 THOMPSON PHILIP ALLEN
|                DOCK    NOTICE SENT: 08/09/2005 MCLAURINE WILLIAM S
|  08/18/2005    CASU    CASE ACTION SUMMARY PRINTED                 (AR08)
|  08/22/2005    FESH    FEE SHEET PRINTED
|  08/31/2005    TEXT    PRODUCTION OF DOCUMENTS FOR IN CAMERA INSPECTION
|  09/02/2005    DAT3    ORDER SETTING HEARING ON 9/8/05 AT 9AM
|  09/13/2005    DAT3    SET FOR:  ARRAIGNMENT ON 11/17/2005 AT 0900A(AR10)
|                DAT4    SET FOR:  TRIAL ON 12/05/2005 AT 0830A      (AR10)
|  10/20/2005    TEXT    SERVICE OF PHIL THOMPSON ON THAT DATE.
|                TEXT    REQUEST OF THE COURT CLERK-DEFT COMES PRO-SE
|                TEXT    IN THIS MATTER AS ON 10/18/05 HAVING TERMINATE
|                TEXT    DEFENDANT DEMAND A SPEEDY TRIAL
|                TEXT    MOTION TO COMPEL DISCOVERY
|                TEXT    MOTION TO PROCEED PRO SE
|  10/24/2005    FESH    FEE SHEET PRINTED                           (AR08)
|  10/25/2005    DOCK    NOTICE SENT: 10/25/2005 THOMPSON PHILIP ALLEN
|                DOCK    NOTICE SENT: 10/25/2005 DAVIDSON PATRICK C
|                DOCK    NOTICE SENT: 10/25/2005 MCLAURINE WILLIAM S
|                DOCK    NOTICE SENT: 10/25/2005 THOMPSON PHILIP ALLEN
|                DOCK    NOTICE SENT: 10/25/2005 DAVIDSON PATRICK C
|                DOCK    NOTICE SENT: 10/25/2005 MCLAURINE WILLIAM S
|                DOCK    NOTICE SENT: 10/25/2005 THOMPSON PHILIP ALLEN
|                DOCK    NOTICE SENT: 10/25/2005 DAVIDSON PATRICK C
|                DOCK    NOTICE SENT: 10/25/2005 MCLAURINE WILLIAM S
|                FESH    FEE SHEET PRINTED                           (AR08)
|                CASU    CASE ACTION SUMMARY PRINTED                 (AR08)
|  10/26/2005    TEXT    MOTION FOR STATUS CONFERENCE
|                TEXT    MOTION TO WITHDRAW
|  10/31/2005    TEXT    ORDER GRANTING MOTION TO WITHDRAW AND SETTING FOR
|                TEXT    HEARING ON 11/4/05 AT 9AM
|  11/01/2005    DAT2    SET FOR:  MOTION ON 11/04/2005 AT 0900A     (AR10)
|  11/04/2005    TEXT    ORDER CASE SET FOR DOCKET CALL ON 11/17/05 AND
|                TEXT    TRIAL ON 12/5/05.
|  11/17/2005    TEXT    ORDER
|  11/22/2005    TEXT    MOTION TO DISMISS WITH PREJUDICE
|                TEXT    MTN TO DISMISS WITH PREJUDICE FOR FAILURE TO EST.
|                TEXT    REASONABLE SUSPICION &/OR PROBABLE CAUSE
|                TEXT    MTN TO DISMISS WITH PREJUDICE FOR MISCONDUCT OF
|                TEXT    THE PLAINTIFF
|  11/29/2005    TEXT    NOTICE OF DEFENSE
|                TEXT    INTERROGATORY TO THE COURT
|                TEXT    MOTION IN LIMITING
```

```
ACRO370          ALABAMA JUDICIAL INFORMATION SYSTEM     CASE: CC 2005 000289.00
OPER: KAH                 CASE ACTION SUMMARY              RUN DATE: 10/25/2005
PAGE:    2                CIRCUIT   CRIMINAL
                                                                  JUDGE: JVD
IN THE CIRCUIT COURT OF       LEE
CITY OF AUBURN                      VS      MCLAURINE WILLIAM S
                                            222 TICHENOR #4
CASE: CC 2005 000289.00                     AUBURN, AL  36830 0000

DOB: 02/14/1972       SEX: M  RACE: W  HT: 0 00  WT: 000  HR:      EYES:
SSN: 257372944   ALIAS NAMES:
                                                                          OPE
  TRANS DATE     ACTIONS, JUDGEMENTS, AND NOTES
  05/25/2005 | SET FOR:  MOTION ON 06/29/2005 AT 0900A     (AR10)       KAH
  05/26/2005 | ADDR1 CHANGED FROM: 422 W MAGNOLIA AVE.     (AR01)       DOA
  06/29/2005 | ORDER DENYING MTN                                        LEW
  07/01/2005 | DEFT'S WRITTN REQUEST FOR PRODUCTION OF INFO BY          KAH
  07/01/2005 | STATE                                                    KAH
  07/13/2005 | ATTORNEY FOR DEFENDANT: THOMPSON PHILIP ALLE(AR01)       KAH
  08/08/2005 | ADDR1 CHANGED FROM: 549 E GLENN AVE APT 21  (AR01)       KAH
  08/09/2005 | NOTICE SENT: 08/09/2005 DAVIDSON PATRICK C               KAH
  08/09/2005 | NOTICE SENT: 08/09/2005 THOMPSON PHILIP ALLEN            KAH
  08/09/2005 | NOTICE SENT: 08/09/2005 MCLAURINE WILLIAM S              KAH
  08/18/2005 | CASE ACTION SUMMARY PRINTED                 (AR08)       KAH
  08/22/2005 | FEE SHEET PRINTED                           (AR08)       KAH
  08/31/2005 | PRODUCTION OF DOCUMENTS FOR IN CAMERA INSPECTION         KAH
  09/02/2005 | ORDER SETTING HEARING ON 9/8/05 AT 9AM                   KAH
  09/13/2005 | SET FOR:  ARRAIGNMENT ON 11/17/2005 AT 0900A(AR10)       KAH
  09/13/2005 | SET FOR:  TRIAL ON 12/05/2005 AT 0830A      (AR10)       KAH
  10/20/2005 | SERVICE OF PHIL THOMPSON ON THAT DATE.                   KAH
  10/20/2005 | REQUEST OF THE COURT CLERK-DEFT COMES PRO-SE             KAH
  10/20/2005 |  IN THIS MATTER AS ON 10/18/05 HAVING TERMINATE          KAH
  10/20/2005 | DEFENDANT DEMAND A SPEEDY TRIAL                          KAH
  10/20/2005 | MOTION TO COMPEL DISCOVERY                               KAH
  10/20/2005 | MOTION TO PROCEED PRO SE                                 KAH
  10/24/2005 | FEE SHEET PRINTED                           (AR08)       KAH
  10/25/2005 | FEE SHEET PRINTED                           (AR08)       KAH
  10/25/2005 | CASE ACTION SUMMARY PRINTED                 (AR08)       KAH
```

```
ACR0370            ALABAMA JUDICIAL INFORMATION SYSTEM    CASE: CC 2005 000289.00
OPER: KAH                    CASE ACTION SUMMARY
PE:    1                      CIRCUIT  CRIMINAL                RUN DATE: 05/12/2005
====================================================================================
IN THE CIRCUIT COURT OF    LEE                                       JUDGE: JVD

CITY OF AUBURN                        VS      MCLAURINE WILLIAM S
                                              422 W MAGNOLIA AVE.
CASE: CC 2005 000289.00
                                              AUBURN, AL  36830 0000

DOB: 02/14/1972        SEX: M  RACE: W  HT: 0 00  WT: 000   HR:        EYES:
SSN: 257372944  ALIAS NAMES:
====================================================================================
CHARGE01: OBSTRUCTING GOVT OPE CODE01: OGOP  LIT: OBSTRUCTING GO TYP: M #: 001
OFFENSE DATE:                          AGENCY/OFFICER: 0430100

DATE WAR/CAP ISS:                      DATE ARRESTED: 11/27/2004
DATE    INDICTED:                      DATE    FILED: 05/12/2005
DATE    RELEASED:                      DATE   HEARING:
        BOND AMOUNT:         $.00           SURETIES:

DATE 1:              DESC:                   TIME: 0000
DATE 2:              DESC:                   TIME: 0000

TRACKING NOS:                    /                    /

   DEF/ATY:                       TYPE:                          TYPE:

                           00000                       00000

  PROSECUTOR: DAVIDSON PATRICK C
```

```
H CSE:   000000000000 CHK/TICKET NO: MC04-60431          GRAND JURY:
COURT REPORTER:                      SID NO:   000000000
DEF STATUS: BOND                     DEMAND: Y                    OPER: KAH
====================================================================================
  TRANS DATE    ACTIONS, JUDGEMENTS, AND NOTES                          OPE
------------------------------------------------------------------------------------
| 04/26/2005 | MOTION FOR PERMISSION TRO LEAVE STATE WHILE ON BON     | KAH |
------------------------------------------------------------------------------------
| 04/26/2005 | MOTION FOR TRIAL DE NOVO WITH JURY                     | KAH |
------------------------------------------------------------------------------------
| 04/26/2005 | MOTION FOR A MORE DEFINITE STATEMENT                   | KAH |
------------------------------------------------------------------------------------
| 04/26/2005 | MOTION FOR DISCOVERY                                   | KAH |
------------------------------------------------------------------------------------
| 04/26/2005 | MOTION FOR COUNSEL TO BE APPOINTED                     | KAH |
------------------------------------------------------------------------------------
| 05/12/2005 | ASSIGNED TO: (JVD)                          (AR01)     | KAH |
------------------------------------------------------------------------------------
| 05/12/2005 | 4/25/05 NOTICE OF APPEAL/APD MC04-60431    (AR01)     | KAH |
------------------------------------------------------------------------------------
| 05/12/2005 | CHARGE 01: OBSTRUCTING GOVT OPE/#CNTS: 001  (AR01)     | KAH |
------------------------------------------------------------------------------------
| 05/12/2005 | SET FOR:  ARRAIGNMENT ON 08/26/2005 AT 0900A(AR01)     | KAH |
------------------------------------------------------------------------------------
| 05/12/2005 | INITIAL STATUS SET TO: "B" - BOND          (AR01)     | KAH |
------------------------------------------------------------------------------------
| 05/12/2005 | FILED ON: 05/12/2005                        (AR01)     | KAH |
------------------------------------------------------------------------------------
| 05/12/2005 | DEFENDANT ARRESTED ON: 11/27/2004           (AR01)     | KAH |
------------------------------------------------------------------------------------
| 05/12/2005 | SET FOR:  TRIAL ON 09/12/2005 AT 0830A     (AR10)     | KAH |
------------------------------------------------------------------------------------
| 05/12/2005 | CASE ACTION SUMMARY PRINTED                 (AR08)     | KAH |
------------------------------------------------------------------------------------
| 5/20/05    | Hearing on various Motions is set for June 29, 05
|            | at 9:00 a.m.
------------------------------------------------------------------------------------
|            |                                    FILED IN OFFICE  JUN 29 2005
------------------------------------------------------------------------------------
                                    12
```

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA
CRIMINAL DIVISION

THE CITY OF AUBURN, ALABAMA,     )
    A Municipal Corporation,     )    **APPEALED FROM**
                )    **RECORDER'S COURT**
    Plaintiff,     )    **OF THE CITY OF**
                )    **AUBURN, ALABAMA,**
vs.             )    **CASE NO.: _____**
                )
WILLIAM S. MCLAURINE,     )
                )
    Defendant.

**FILED**
**MAY 0 2 2006**
**IN OFFICE**
**CORINNE T. HURST**
**CIRCUIT CLERK**

### COMPLAINT

COMES now THE CITY OF AUBURN, ALABAMA, a municipal corporation of the State of Alabama, by its undersigned attorney, and complains that the said Defendant, WILLIAM S. MCLAURINE, within twelve (12) months before the beginning of the prosecution of this cause within the City Limits of the City of Auburn, or the Police Jurisdiction thereof, by means of intimidation, physical force or interference, or by any other independently unlawful act, did intentionally obstruct, impair or hinder the administration of law or other governmental function, or did intentionally prevent a public servant from performing a governmental function, in violation of § 13A-10-2 of the Code of Alabama (1975), as amended, and as adopted by Ordinance No. 1130 as adopted by the City Council of the City of Auburn. Said Ordinance is codified in § 13-1 of the Code of Auburn, Alabama.

           ADAMS, UMBACH, DAVIDSON & WHITE

           BY:_____
             MATTHEW W. WHITE (WHI086)
             Post Office Box 2069
             Opelika, AL 36803-2069
             (334) 745-6466
             Attorneys for the City of Auburn

| MC-16 (back)   Rev. 1/96 | NOTICE OF APPEAL TO CIRCUIT COURT<br>Municipal Ordinance Violation | Case Number<br>MC04-0060431 |

## APPEAL BOND

I, __WILLIAM S MCLAURINE__ (Defendant), as principal, and

I(We), (please print) __Alabama Bonding Company__, as surety(ies), agree to

pay the Municipality of __AUBURN__, Alabama, the sum of $ __$500.00__

(not to exceed $1,000 or twice the amount of fine and costs) and all costs incurred in this Court and on appeal in this Court unless the above named Defendant appears before the circuit court on the scheduled date and from time to time thereafter until discharged by law to answer this charge of __OBSTRUCTING GOVERNMENTAL OPERATIONS__

_____, or any other charge as authorized by law.

We hereby severally certify that we have property valued over and above all debts and liabilities that have a fair market value equal to or greater than the amount of the above bond and we, and each of us, waive the benefits of all laws exempting property from levy and sale under execution or other process for the collection of debt by the Constitution and laws of the State of Alabama, and we especially waive or rights to claim exempt our wages or salary, that we have under the laws of Alabama and our rights to homestead exemptions that we have under the Constitution of Alabama and the laws of the State of Alabama, as set out in a seperate writing.

It is further agreed and understood that this is a continuing bond which shall remain in full force and effect until such time as the undersigned are duly exonerated.

Signed and sealed this date with notice that false statements are punishable as perjury.

__April 20th, 2005__ _____ (L.S.)
Date                                          Signature of Defendant

__422 W MAGNOLIA AVE__    __AUBURN AL__    __36830__    __AL 5732382__
Address                          City    State    Zip Code    Drivers License #    Telephone Number

## AFFIDAVIT OF SURETY(IES)

In addition to the statements made above, I(We), the undersigned Surety(ies), hereby certify [that I(we) are not an] attorney(s), [a] judicial official(s), or [a] person(s) authorized to take bail and]* that I(we) own property in this state that has a fair market value equal to or greater than the amount of the appeal bond in this cause, exclusive of property exempt from execution and above and over all liabilities, including the amount of all other outstanding appeal bonds entered into by me(us). [If the surety's(ies') property is valued at less than the amount of the bond and is to be aggregated with the property of other sureties, state the value of the surety(ies') property exclusive of liabilities and exemptions].

SURETY NUMBER 1:  Property** _____

Exemptions and Liabilities** _____

Other Outstanding Surety Bonds: Number _____ Aggregate Amount: $ _____

_Alabama Bonding_ _____ _B. Wanda Lynn_ (L.S.)
Surety's Name (Print)    Social Security Number    Signature of Surety

_P.O. Box 2535_    _Opelika,_    _AL_    _36803_    _7452828_
Surety's Address    City    State    Zip Code    Telephone Number

* Does not apply:  Immediate Family Member.  Specify Relationship _____
** Attach a seperate sheet if necessary

SURETY NUMBER 2:  Property** _____

Exemptions and Liabilities** _____

Other Outstanding Surety Bonds: Number _____ Aggregate Amount: $ _____

_____ _____ _____ (L.S.)
Surety's Name (Print)    Social Security Number    Signature of Surety

_____ _____ _____ _____
Surety's Address    City    State    Zip Code    Telephone Number

* Does not apply:  Immediate Family Member.  Specify Relationship _____
** Attach a seperate sheet if necessary

Bond ☒ APPROVED    ☐ WAIVED

this the __26__ day of

__April__ _____
Signature

FILED
MAY 3 2005
NANCE OFFICE
CORINNE T. HURST
CIRCUIT CLERK

I CERTIFY THIS TO BE A VALID
PHOTOCOPY OF AN ORIGINAL DOCUMENT
_Arthur Kate Cox_
_2/29/04_

| State of Alabama<br>Unified Judicial System<br><br>Form MC-16 (front)  Rev. 1/96 | NOTICE OF APPEAL TO CIRCUIT COURT<br>Municipal Ordinance Violation | Case Number<br><br>MC04-0060431 |

**STATE OF ALABAMA**

☐ IN THE DISTRICT COURT OF

THE MUNICIPALITY OF

_____ COUNTY

**AUBURN**
_____
v.

☒ IN THE MUNICIPAL COURT OF

**WILLIAM S MCLAURINE**
_____
DEFENDANT

**AUBURN** _____ , ALABAMA

DATE OF JUDGEMENT: __April 20th, 2005__

DATE OF DENIAL OF POST JUDGEMENT MOTION: _____

 Notice is hereby given that the above named defendant appeals for trial de novo to the Circuit Court of

_____**LEE**_____ County, Alabama, from final judgement of conviction in this

Court adjudging the defendant to be guilty of the offense of _____

_____**OBSTRUCTING GOVERNMENTAL OPERATIONS**_____

☐ TRIAL WITHOUT JURY  ☑ DEFENDANT DEMANDS TRIAL BY JURY

_4-25-05_
_____
Date

_____
Signature of Defendant/Attorney

_____
Name of Attorney

_____
Attorney's Telephone Number

_____
Address of Attorney

### CERTIFICATION ON RECORD ON APPEAL TO CIRCUIT COURT AND COST BILL

 I, the undersigned Clerk of the above court, do hereby certify that on the _20th_ day of __April__ ,

_2005_, the defendant, **WILLIAM S MCLAURINE** _____ , was convicted in this Court of the

offense of **OBSTRUCTING GOVERNMENTAL OPERATIONS** _____ and was sentenced as

follows: Fine $ __$100.00__ , Court Cost $ __$125.00__ , Restitution $ _____ for _____

_____ , such amounts being due and payable to the court, sentenced to _____

☐ days ☐ months in jail, other _____ ; and that on

the _25th_ day of __April__ , _2005_ , the defendant gave Notice of Appeal to the Circuit Court of

_____**LEE**_____ County. I do further certify the following documents annexed hereto are all the records

of the proceedings which are in my possession:

Original Charging Instrument:
☐ Copy of Municipal Ordinance, if Applicable
☒ Non-Traffic Complaint
☐ UTC (# _____ )
☐ Warrant of Arrest
☐ Other: _____

☒ Appeal Bond/Affidavit of Sureties (See back of form)
☐ Driver History Record
☒ Case Action Summary/Record of Disposition Signed
 by Judge Showing Judgement and Sentence of Court

**APRIL 25th, 2005**
_____
Date

_Katie Carr_
☒ Municipal Court Clerk ☐ District Court Clerk

FILE
MAY - 3 2005
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

NOTE: THE ORIGINAL AND COPIES OF THIS NOTICE OF APPEAL MUST BE STAMPED IMMEDIATELY UPON RECEIPT

Filed in this office on this _____

I CERTIFY THIS TO BE A VALID
PHOTOCOPY OF AN ORIGINAL DOCUMENT.

ORIGINAL: Circuit Court COPY: Lower Court COPY: Defendant

_Katie Carr_
_15  2/28/06_

ỰMC

**CASE ACTION SUMMARY**
Case # MC04-0060431  OPEN
Court Date: Thu Feb 17, 2005, 08:00 AM

Printed: Sun Nov 28, 2004  8:34 am

Page #1

─── Defendant ───
WILLIAM S MCLAURINE
422 W MAGNOLIA AVE
AUBURN  AL 36830

Sex:  M
Race:  WHITE/MEX.
DOB:  1972-02-14
SSN:  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

─── Employer ───

─── Charge ───
Charge: OBSTRUCTING GOVERNMENTAL OPERATIONS
Section/Paragraph: 13A-10-0002

─── Complainant ───
CITY OF AUBURN
141 N ROSS ST
AUBURN  AL 36830

(334) 501-3180

─── Sureties ───

─── Witnesses ───

─── Arrest ───
Arrest Date: 2004-11-27        Arresting Officer: BEAN, LAVARRO

─── Dispositon/Notice History ───

2-3(-05:

Atty waived

─── Bench Notes ───

2-17-05: Chg. amended to violation of section 13A-10-2(a)1 & 2
per authority § 15-5-30.

4-20-05

On _____ the defendant appears in open court in person and pleads **not guilty**. After hearing the evidence
it is the judgement of the court that defendant is **guilty** and is fined **100** together with **125**
cost and _____ restitution to the victim and sentenced to _____ days in _____ jail. Defendant to
pay _____ per day for housing and maintenance plus actual medical expenses incurred during the period
of incarceration. Defendant is given _____ days credit for time already served in jail on this charge.
Additional orders:

Go d+p

[ ] _____ per day for _____ days incarcerated (housing and maintenance
Total _____; plus actual medical expenses incurred on behalf of the defendant.

Judge Municipal Court

─── Payments ───

| DATE PAID | RECEIPT # | AMOUNT PAID | METHOD | BALANCE |
|-----------|-----------|-------------|--------|---------|
|           |           |             |        |         |

I CERTIFY THIS TO BE A VALID
PHOTOCOPY OF AN ORIGINAL DOCUMENT.
Allie Kate Cox
2/28/04B

## MOTION FOR TRIAL DE NOVO
## WITH JURY

CITY OF AUBURN,                        )    Action No(s):  MC04-0060431
                                       )                   04015246
    Plaintiff,                    )
                                       )    STATE OF ALABAMA
v.                                     )    In the Circuit Court
                                       )    of Lee County
WILLIAM S. McLAURINE                   )
                                       )
    Defendant                     )

      This is an appeal from the Municipal Court of Auburn to the Lee County Circuit Court.  The defendant was tried on March 31, 2005 and found guilty on April 20, 2005 of Obstructing Government Operations.  The defendant request Trial de Novo with Jury as per rules 2.2(d), 30.1, and 18.1 of the Alabama Rules of Criminal Procedure.

Rules 2.2(d), 30.1, 18.1

April 25, 2005
_____
Date

    William McLaurine, defendant
549 East Glenn #21
Auburn, Alabama

I Certify that this document was mailed to the following address on April 25, 2005.

Lee County Circuit Court Clerk
2311 Gateway Drive Room 104
Opelika, AL  36801

April 25, 2005
_____
Date

    Delores Waltman, Public Notary
233 West Glenn
Auburn, AL  36830

DELORES E. WALTMAN
Notary Public, AL State at Large
My Comm. Expires Feb. 25, 2008

## MOTION FOR PERMISSION
## TO LEAVE STATE WHILE ON BOND

| | | |
|---|---|---|
| CITY OF AUBURN, | ) | Action No(s):  MC04-0060431 |
| | ) | 04015246 |
| Plaintiff, | ) | |
| | ) | STATE OF ALABAMA |
| v. | ) | In the Circuit Court |
| | ) | of Lee County |
| WILLIAM S. McLAURINE | ) | |
| | ) | |
| Defendant | ) | |

FILED

APR 2 6 2005

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

This is request of the court that the defendant be allowed to leave the state of Alabama while on Bond in this matter for personal and professional reasons. The defendant has family members and professional activities to attend to in other states. The defendant was not assessed any terms of confinement in the original municipal judicial proceeding.

Rule 7.3(a)(1)(a)

April 26, 2005
Date

William McLaurine, defendant
549 East Glenn #21
Auburn, Alabama

## MOTION FOR TRIAL DE NOVO
## WITH JURY

| | | |
|---|---|---|
| CITY OF AUBURN, | ) | Action No(s):  MC04-0060431 |
| | ) | 04015246 |
| Plaintiff, | ) | |
| | ) | STATE OF ALABAMA |
| v. | ) | In the Circuit Court |
| | ) | of Lee County |
| WILLIAM S. McLAURINE | ) | |
| | ) | |
| Defendant | ) | |

FILED
APR 26 2005
IN OFFICE
CORINNE T. HURST
CLERK

    This is a notice of appeal from the Municipal Court of Auburn to the Lee County Circuit Court. Similar notices and an appearance bond were filed with the Court Clerk of Auburn, Alabama on April 25, 2005. The defendant was tried on March 31, 2005 and found guilty on April 20, 2005 of Obstructing Government Operations. The defendant request Trial de Novo with Jury as per rules 2.2(d), 30.1, and 18.1 of the Alabama Rules of Criminal Procedure.

Rules 2.2(d), 30.1, 18.1

April 26, 2005
Date

William McLaurine, defendant
549 East Glenn #21
Auburn, Alabama

**MOTION FOR A MORE
DEFINITIVE STATEMENT**

| | | |
|---|---|---|
| CITY OF AUBURN, | ) | Action No(s):  MC04-0060431 |
| | ) | 04015246 |
| Plaintiff, | ) | |
| | ) | STATE OF ALABAMA |
| v. | ) | In the Circuit Court |
| | ) | of Lee County |
| WILLIAM S. McLAURINE | ) | |
| | ) | |
| Defendant | ) | |

F I L E D

APR 2 6 2005

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

This is a motion for a More Definitive statement, as allowed under rule 13.2(e) of the Alabama Rules of Criminal Procedure.

THE GROUNDS FOR THIS MOTION ARE AS FOLLOWS:

The information presented in discovery in this matter contains the charge of "obstructing government operations," 13A-10-2. This statute references other statutes, rules, regulations, and provisions that have not been included in information as required by rule 13.2(b). For this reason the charge is unclear and requires a more definitive statement of the charge as provided for by rule 13.2(e).

By inference, statute 15-5-30 is assumed to be part of this charge, but the provisions of 13.2(a) requiring "ordinary language" be used in a "plain, concise statement of the charge," to the "degree of certainty which will enable the court, upon conviction, to pronounce the proper judgment," have not been met. The specific facts that will enable the "reasonable suspicion" provision of 15-5-30 have not been defined.

Without the requested information the defendant cannot prepare a proper defense.

WHEREFORE, the defendant requests that the prosecution be ordered to provide the following information, as per rule 13.2(e):

1) All the statutes, rules or other provisions of "government operations" that where affected by the alleged actions of the defendant in this matter that constitute grounds for criminal trial under the statute, 13A-10-2, that the defendant is charged with.

2) The specific grounds that enable the "reasonable suspicion" provision of statute 15-5-30, necessary to the "statement of facts" to the "degree of certainty which will enable the court, upon conviction, to pronounce proper judgment."

Rules 13.2(a), 13.2(b), 13.2(e)

April 26, 2005
Date

William McLaurine, defendant
549 East Glenn #21
Auburn, Alabama

## MOTION FOR DISCOVERY

CITY OF AUBURN,                )    Action No(s):  MC04-0060431
                              )                   04015246
        Plaintiff,             )
                              )    STATE OF ALABAMA
v.                            )    In the Circuit Court
                              )    of Lee County
WILLIAM S. McLAURINE          )
                              )
        Defendant             )

FILED
APR 26 2005
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

     The defendant requests that this court issue an order requiring the prosecuting attorney to produce and permit the defense to inspect and copy or photograph, items in possession, custody or control of the State and/or City, pursuant to Rule 16.1 (c) of the Alabama Rules of Criminal Procedure, pertaining to this matter, including but not limited to the following:

1) Written reports and/or documents relevant to the case.

2) Transcripts, reports, Audio and/or Visual recordings made by Auburn Municipal Authorities concerning the complaint or compliants responsible for initiating officer Lavaro Bean's contact with the defendant on or about November 27, 2004.

3) Transcripts, reports, Audio and/or Visual recordings made by Auburn Municipal Authorities concerning the defendant and all participating municipal agents.

4) Transcripts, Audio and/or Visual recordings made or used during the Municipal trial in that matter, including, but not limited to, the transcripts of the court reporter that was present at that trial.

Each of the items sought to be discovered is properly discoverable under Rule 16 of the Alabama Rules of Criminal Procedure.

Rules 16.1 (c)

April 26, 2005
Date

William McLaurine, defendant
549 East Glenn #21
Auburn, Alabama

## MOTION FOR COUNSEL
## TO BE APPOINTED

| | | |
|---|---|---|
| CITY OF AUBURN, | ) | Action No(s):  MC04-0060431 |
| | ) | 04015246 |
| Plaintiff, | ) | |
| | ) | STATE OF ALABAMA |
| v. | ) | In the Circuit Court |
| | ) | of Lee County |
| WILLIAM S. McLAURINE | ) | |
| | ) | APR 26 2005 |
| Defendant | ) | |

F I L E D

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

After this court has considered the other four motions filed by the defendant on this day, of April 26, 2005, which are "MOTION FOR TRIAL DE NOVO WITH JURY", "MOTION FOR DISCOVERY", "MOTION FOR A MORE DEFINITIVE STATEMENT," and "MOTION FOR PERMISSION TO LEAVE THE STATE WHILE ON BOND", the defendant requests the counsel be appointed as per rule 6.1(a) of the Alabama Rules of Criminal Procedure.  The defendant states that he qualifies for the appointment of counsel as rules 6.1(a) and 6.3(a) and will provide any information on financial assets required by the court as rule 6.3(b).  The defendant request expediency in ruling as the defense has several other pretrial motions to prepare that will require the assistance of counsel.

Rules 6.1(a), 6.3(a), 6.3(b)

April 26, 2005
Date

William McLaurine, defendant
(334) 524-2175
549 East Glenn #21
Auburn, Alabama

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

CITY OF AUBURN,                           *
                                          *
      Plaintiff,                          *
                                          *
vs.                                       *    CASE NUMBER: CC-05-289
                                          *
WILLIAM S. MCLAURINE,                     *
                                          *
      Defendant.                          *

### ORDER

This matter is before the Court on a Petition of the Defendant, William S. McLaurine, to leave the state while on bond pending appeal of his case from the Municipal Court of the City of Auburn, Alabama to the Circuit Court of Lee County. The file reflects that he is out on bond with Alabama Bonding in the amount of $500.00. The prosecuting attorney, Mr. Matt White, has no objection to granting permission to leave the State of Alabama pending the appeal and the trial of the case which will be set in August, 2005. Accordingly, permission is hereby GRANTED to the Defendant to leave the State of Alabama and the bond continues in effect. Defendant shall keep Mr. Matthew White and his bonding company informed of his phone number and address at all times prior to trial.

Numerous motions filed by the Defendant on April 26, 2005 are hereby set for Hearing on **June 29, 2005 at 9:00 a.m. in courtroom number four of the Lee County Justice Center.**

DONE this the __20th__ day of __May__, 2005.

_____
John V. Denson, II
Circuit Judge

F I L E D
MAY 2 0 2005
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

cc:    William S. McLaurine
        Matthew W. White
        Alabama Bonding

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

CITY OF AUBURN,  　*
　　　　　　　　　　　*
　　　Plaintiff,　　　*
　　　　　　　　　　　*
vs.　　　　　　　　　*　　CASE NUMBER: CC-05-289
　　　　　　　　　　　*
WILLIAM S. MCLAURINE,　*
　　　　　　　　　　　*
　　　Defendant.　　　*

FILED

JUN 2 9 2005

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

### ORDER

This matter is before the Court on various Motions filed by the Defendant, William S. McLaurine, including a Motion for Trial de Novo with Jury, Motion for Discovery, Motion for More Definite Statement and a Motion to Have Counsel Appointed for Defendant, as he alleges he is indigent. The Defendant had previously filed a Motion for Permission to Leave the State while on bond, which was granted by this Court on May 20, 2005. The Defendant is out on bond.

Appearing at this time for the City of Auburn, Alabama are Mr. Matt White and Mr. Rick Davison. The Defendant appears Pro Se.

The first matter was that the Defendant requested a transcript of this Hearing and the City of Auburn stated that they would like for the Court Reporter to take down the testimony of the Hearing but they did not know if they would request that it actually be put in transcript form. It was agreed that Judge Walker's Court Reporter would take the Hearing today and if either party requested that it be made into a written transcript, the party requesting the same would bear the costs.

The next matter related to matters of discovery raised by the Defendant's Motions. The City of Auburn stated that they had not received copies of any of the Motions and there is no certificate of service on the Motions. The Defendant represented that he was informed by the Clerk that copies could be placed in the respective mail boxes in the Clerk's office, but

**25**

apparently the Motions were not received by the City of Auburn. Nevertheless, the City of Auburn agreed to proceed with the Motions and it was agreed that the City of Auburn would produce all matters that the Defendant is entitled to under the Rules of Evidence. It was specifically mentioned that the Defendant requested a copy of the disc or evidence of the telephone conversation between the arresting officer and the dispatcher on the date of his arrest. The City of Auburn agreed to produce the evidence they have of this call. Furthermore, the Defendant requested any reports or documentary evidence of "prior criminal activity" in the area in which he was arrested, which was a matter raised at the trial in the City Court of Auburn. The City of Auburn agreed to produce any written reports in Beat 3, which includes the area of arrest for one week prior to the arrest and up to the point of time of the arrest.

The next matter related to the Motion for a More Definite Statement. After argument from the Defendant and the City of Auburn, the Court concludes that the City has sufficiently informed the Defendant by their written Complaint and the Defendant is fully aware from the prior trial of the exact nature of the charge against him, failure to properly identify himself to the officer as set out in the Complaint on file. Therefore, the Motion for More Definite Statement is DENIED.

The final matter related to appointment of counsel. The Defendant was placed under oath and testified that he has two engineering degrees from Auburn University. However, he has difficulty being employed due to the fact that he suffers from epilepsy and cannot drive a car, and is forced thereby to take jobs only where transportation is publically provided. He states that his total income since January 1, 2005, up to the present time is $2,000. He has a temporary job remodeling bathrooms with a Mr. Stark. He has no assets and has borrowed extensively from his father in order to come back to Auburn to get another degree. The Court finds that based upon the sworn testimony of the Defendant that he is, in fact, indigent and therefore entitled to appointment of counsel as the charge against him includes a maximum penalty of a one year

sentence. The Court hereby appoints Mr. Philip Thompson of Auburn, Alabama as attorney for the Defendant, William S. McLaurine.

The Defendant was informed by Mr. Matt White that there would be a call of the docket in August, 2005 and a probable trial date in September, 2005. The Defendant was instructed to communicate with his attorney about dates and Court appearances.

DONE this the 29th day of June, 2005.

John V. Denson, II
Circuit Judge

cc:    William S. McLaurine
       Matthew W. White
       Rick Davison
       Philip Thompson

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

FILED
JUL 0 1 2005
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

CITY OF AUBURN,       *

    Plaintiff,       *

              *

v.       *       Case No. CC-05-289

              *

WILLIAM S. MCLAURINE,       *

              *

    Defendant.       *

## DEFENDANT'S WRITTEN REQUEST FOR PRODUCTION OF INFORMATION BY STATE

Defendant, by the undersigned counsel, respectfully requests the prosecution to disclose to Defendant's counsel, and permit him to inspect, copy, test and photograph all items of discovery as provided by law, including the following:

1. To disclose to Defendant's counsel any and all discovery as permitted, authorized and allowed under Rule 16.1, Alabama Rules of Criminal Procedure.

2. All statements, written or oral, made by this Defendant or any co-defendant to any person, at the time of, before or after Defendant's arrest in this case, including the name and address of the person(s) to whom the statement(s) was (were) made, which are relevant to:

        (a) the alleged crime;

        (b) the investigation of that crime; and

        (c) any condition of Defendant, including but not limited to Defendant's mental or physical state:

                (i) at the time of the alleged crime;

                (ii) at the time of any statements of Defendant described in paragraphs 1(a) through (c) above

1

3. The names and addresses of all persons the prosecution proposes to offer as witnesses at the trial or any hearing of this case.

4. The names and addresses of all persons who have given written statements to the prosecution of any law enforcement officer.

5. The names and addresses of all persons who have given oral statements to the prosecution of any law enforcement officer.

6. Copies of the written and/or oral statements referred to in paragraph 3 or 4 above, including memoranda, summaries or recordings of such statements, as well as grand jury testimony.

7. All memoranda, documents and reports to, from and between law enforcement officers connected with the subject matter of this case.

8. All memoranda, documents and reports to, from and between the investigative staff of the prosecution, excluding those portions, if any, which contain the opinions, theories, or conclusions of the prosecuting attorney or members of his legal staff.

9. The criminal records and any list or summary reflecting criminal records of the Defendant and all persons whom the prosecution intends to call as a witness at trial.

10. All evidence in the prosecution's possession or available to the prosecution which is favorable to the Defendant on the issue of guilt, including but not limited to:

(a) Unfavorable evidence with respect to prosecution witnesses;

(b) Any and all evidence disclosing bias and/or prejudice or prejudgment by citizens in Lee County, Alabama, against Defendant and the identity of the persons making statements indicating such views;

(c) Any and all other information respecting any prosecution witness which is favorable to the Defendant on the issue of guilt.

2

(d) Statements made by any persons which are exculpatory with respect to this Defendant.

11. All evidence in the prosecution's possession or available to the prosecution which is favorable to the Defendant on the issue of punishment, including but not limited to evidence disclosing:

(a) the Defendant has no significant history of prior criminal activity;

(b) the offense was committed while the Defendant was under the influence of extreme mental or emotional disturbance;

(c) the victim was a participant in the Defendant's conduct;

(d) the Defendant acted under extreme duress or under the substantial domination of another person; and

(e) the capacity of the Defendant to appreciate the criminality of Defendant's conduct or to conform Defendant's conduct to the requirements of law was substantially impaired.

12. All physical or documentary evidence, including diagrams, sketches, books, papers, documents, photographs or tangible objects in the possession of the prosecution that:

(a) were obtained from or belong to Defendant;

(b) the prosecution intends to offer at any trial or hearing in this case;

(c) the prosecution is retaining for potential use in evidence at any trial or hearing in this case;

(d) any law enforcement official is retaining for potential use in evidence at any trial or hearing in this case;

(e) the prosecution or any law enforcement official has submitted to any professional personnel for examination or analysis in connection with this case.

3

13. All diagrams, sketches and photographs which have been made by or shown to any witnesses or prospective witnesses in this case.

14. All records and reports of every kind reflecting the conduct or results of any medical, pathological, toxicological, chemical, biochemical, criminalistic, laboratory, forensic or scientific examinations, investigations and analysis undertaken in connection with the investigation or preparation of this case.

15. All records and reports relating to Defendant including:

(a) all juvenile detention, jail, prison, parole, probation and presentence investigation reports;

(b) all arrest, conviction, and adult and juvenile criminal offense records;

(c) all records of any law enforcement authority;

(d) all records of any detention or court authority;

(e) all records of any prosecuting authority;

(f) all psychiatric, psychological and mental health records;

(g) all education records;

(h) all records and reports.

16. A statement as to whether the prosecution will rely on prior acts or convictions of a similar nature for proof of knowledge or intent, including a description of each act or conviction to be relied upon, if any.

17. A list of all expert witnesses the prosecution intends to call at trial, along with each expert's qualifications, the subject and a description of his or her contemplated testimony, and his or her report.

4

18. A statement as to whether the prosecution will use prior convictions for impeachment of the Defendant if Defendant testifies, along with the date of conviction and a description of each offense, if any.

This motion is made under the authority of Brady v. Maryland, 373 U.S. 83 (1963); Giles v. Maryland, 386 U.S. (1967); and William v. Dutton, 400 F.2d 797 (5th Circ. 1968) and Rule 16, Alabama Rules of Criminal Procedure.

WHEREFORE, the Defendant requests that the prosecution, its agent or employees, appropriate law enforcement officials, or the prosecuting attorney comply with this request prior to a hearing in this matter.

Respectfully submitted,

Philip A. Thompson, Attorney for Defendant

OF COUNSEL:

HAYGOOD, CLEVELAND, PIERCE,
MATTSON & THOMPSON LLP
611 E. Glenn Avenue
P. O. Box 3310
Auburn, AL 36831-3310
(334) 821-3892

5

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing motion on the following individual by placing a copy thereof, postage prepaid and properly addressed in the U.S. Mail, on this the 30th day of June, 2005.

Matthew W. White, Esq.
Adams, Umbach, Davidson & White, LLP
P. O. Box 2069
Opelika, AL 36803-2069

_____
Of Counsel

6

## NOTICE TO CIRCUIT CLERK
## OF CHANGE OF ADDRESS

CITY OF AUBURN      *

     Plaintiff,      *

     *    CASE NUMBER: CC-05-289

vs.      *

     *    In the Circuit Court of Lee County, Alabama

WILLIAM S. MCLAURINE II,      *

     Defendant.      *

 

I am informing you of a change of address. My current address of 549 East Glenn Avenue, #21, will change to 222 Tichenor, #9, on or about August 5, 2005, and change again to 222 Tichenor, #4, Auburn, AL, on or about August 9, 2005. Please do not attempt to mail anything to me until after August 9, 2005. My Cell Phone number will remain unchanged.

August 3, 2005        William S. McLaurine II

FILED
AUG 4

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

CITY OF AUBURN,                    )
                                   )
        PLAINTIFF,                 )
                                   )
vs.                                )        CASE NO: CC-05-289
                                   )
WILLIAM S. MCLAURINE,              )
                                   )
        DEFENDANT.                 )

**F I L E D**

AUG 3 1 2005

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

## PRODUCTION OF DOCUMENTS FOR *IN CAMERA* INSPECTION

COMES NOW, the City of Auburn, by and through counsel, and produces the attached documents, which are in response to the Court's Order of June 29, 2005, for an *in camera* inspection by the Court. The City requests that the Court determine whether such documents are discoverable by the Defendant, and, if so, whether the documents should be produced to the Defendant. The City of Auburn submits that the attached documentation is not discoverable, as it is not probative of any issue at trial, and furthermore is not discoverable under the *Alabama Rules of Criminal Procedure*.

Respectfully submitted this the 3/ day of August, 2005.

ADAMS, UMBACH, DAVIDSON & WHITE, LLP

_____
MATTHEW W. WHITE (WHI086)
City Prosecutor
P.O. Box 2069
Opelika, AL 36803-2069
(334)745-6466

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing upon:

Philip A. Thompson
HAYGOOD, CLEVELAND & PIERCE
P.O. Box 3310
Auburn, AL 36831-3310

Done this the __31__ day of August, 2005.

OF COUNSEL

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

CITY OF AUBURN,                          *
                                         *
    Plaintiff,                      *
                                         *
vs.                                      *    CASE NUMBER: CC-05-289
                                         *
WILLIAM S. MCLAURINE,                    *
                                         *
    Defendant.                      *

**F I L E D**

SEP - 2 2005

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

### ORDER

This matter is before the Court due to the production of documents for in camera

inspection filed by the City Prosecutor, Mr. Matthew W. White, on August 31, 2005. This

production is in response to this Court's Order of June 29, 2005 in which the Plaintiff's Motion

for Production was GRANTED to the extent that the City of Auburn would produce evidence of

"prior criminal activity" in the area in which he was arrested. The Defendant alleged that this

was a material matter in his trial in the City Court of Auburn. The City of Auburn agreed to

produce any written reports in Beat 3, which includes the area of arrest for one week prior to the

arrest and up to the point of time of the arrest.

    The Court has reviewed the documents produced and it appears to the Court at this time

that the following matters are discoverable but possibly not admissible:

    1.    The Dispatch Call Log, which appears to be in reference to this Defendant for this

specific charge. The remaining documents up to and excluding the Uniform Incident/Offense

Reports appears to be a record of all of the activity of the police within the Beat 3 area for the

time frame involved. The Uniform Incident/Offense Reports do not appear to be matters that are

discoverable or admissible.

    The Court sets for Hearing the question of any objections by the City of Auburn to

the admissibility of the documents the Court has indicated are discoverable. This should be heard at the Docket Call on **September 8, 2005 at 9:00 a.m. in courtroom number of the Lee County Justice Center.**

DONE this the  2nd   day of   September   , 2005.

John V. Denson, II
Circuit Judge

cc:    Matthew W. White
       Philip Thompson

## MOTION TO COMPEL DISCOVERY

CITY OF AUBURN,              )     Action No(s): CC-05-289
                                      )                MC04-0060431
        Plaintiff,           )                04015246
                                        )

v.                                      )     STATE OF ALABAMA
                                        )     In the Circuit Court
WILLIAM S. McLAURINE       )     of Lee County
                                        )
        Defendant         )
                                        )

**FILED**

OCT 2 0 2005

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

The defendant comes Pro Se in this matter as of October18, 2005.

WHEREAS an ORDER was filed with the clerk on June 29, 2005, concerning various matters heard before the court on June 27 ,2005, including specific rulings on discovery, and that prosecution has failed to comply with elements of that ORDER, and that the prosecution has failed to follow the Rules of Criminal Procedure and common law principles of due process of Alabama, the Defenses requests that the Court grant an ORDER TO COMPEL DISCOVERY as per Rule 16.5.

In the ORDER of June 29, the following items were decided:

1) General Discovery would be provided.
2) The conversation between Officer Bean and the dispatcher on the date of the arrest would be provided. During hearing this conversation was identified as the one in which the dispatcher confided to Officer Bean that he believe the person who made the telephone call used a false name.
3) Evidence of prior criminal activity in Beat 3, one week prior to the arrest would be provided.

On August 26, 2005 the defendant was arraigned. Included in the discovery presented on that date were the following:

1) The Complaint filed by Matthew White on May 2, 2005

Page 1 of 3

2) Bond documentation

3) The original Complaint filed by Officer Lavarro Bean on December 6, 2004.

4) The Police report filed by Officer Lavarro Bean

5) The ORDER of Conviction from Municipal Court

6) A Transcript of the Telephone Call.

7) Arrest Record of Defendant

On September 1, 2005 a continuance was requested by Phil Thompson, in concurrence with prosecutor Mathew White, because discovery was still incomplete. The trial was postponed from the week September 8, 2005 to November 7, 2005.

Specifically absent from the discovery material were the following items:

1) Any Video made by the Police of the arrest.

2) The Audio of the telephone call and dispatch recordings, including the conversation between Officer Bean and the dispatcher in which the dispatcher states the caller may have used a fake name. It was stated in the hearing of June 27 by the Prosecution that the Defense would be provided everything they had in reference to Audio.

3) The criminal activity report of Beat B3, 1 week prior to the arrest of the defendant.

As per Rule 16.1(a) of the Rules of Criminal Procedure The Video made by the officers is properly discoverable. As per Rule 16.1(c)(1) the Audio of the Telephone Call is properly discoverable. As the complete set of Audio Recordings in possession of the prosecution was played at the Municipal trial, at the request of the prosecutor, this demonstrates intend use at trial and makes them properly discoverable under Rule 16.1(c)(2). As per rule 16.1(f) the communication between Officer Bean and the dispatcher is also exculpatory material and may not be denied. As the prosecution has mentioned criminal activity in the area of the arrest in the previous trial, and on other occasions, this demonstrates intended use at trial and the criminal activity report is properly discoverable as per Rule 16.1(c)(2).

Page 2 of 3

As both Rule 16.1(a) and 16.1(c) require access to copy and examine, and production of discoverable items within fourteen (14) days of request and it has been more than four (4) months since the original ORDER containing discovery was filed, Defendant Requests, as per rule 16.5 that an ORDER TO COMPELL DISCOVERY be issued by the Court to require the Prosecution to PRODUCE and permit the defendant to INSPECT and COPY or photograph, items in possession, custody or control of the State, pertaining to this matter, pursuant to Rule 16.1 (a), Rule 16.1(c) of the Alabama Rules of Criminal Procedure, including but not limited to the following:

1) Any Video of the Arrest of the Defendant

2) Any Audio Material in possession of the Prosecution, inclusive of the communication between Officer Bean and the dispatcher concerning the validity of the Telephone Caller's name.

3) The criminal activity Reports of beat B3, one week prior to the arrest of the defendant (as deemed relevant to this case by this court).

It is further requested any material, that is properly discoverable, not presented within fourteen (14) days of the ORDER TO COMPELL DISCOVERY be prohibit from introduction to the trial by the prosecution by an ORDER OF LIMINE.

Although written request have been made of the prosecution in the past, let this document serve as written notice of a desire to INSPECT and COPY the Audio and Video in possession of the police and/or prosecution. It is requested that if the Prosecution cannot arrange a time for the defense to INSPECT and COPY these items within fourteen (14) days of this notice, that an ORDER be issued requiring the Prosecution to comply at the convenience of the Defendant.

Rules 16.1 (a), 16.1(c), 16.1(f), 16.5

October 20, 2005
Date

William McLaurine, defendant
(334) 524-2175
222 Tichenor Avenue #4
Auburn, Alabama 36830

I certify delivery or mailing of this document to Mathew White.

October 20, 2005
Date

William McLaurine, defendant
(334) 524-2175
222 Tichenor Avenue #4
Auburn, Alabama 36830

## MOTION FOR A SPEEDY TRIAL

CITY OF AUBURN,                    )    Action No(s): CC-05-289
                                   )                   MC04-0060431
          Plaintiff,               )                   04015246
                                   )
v.                                 )    STATE OF ALABAMA
                                   )    In the Circuit Court
WILLIAM S. McLAURINE               )    of Lee County
                                   )
          Defendant                )

The defendant comes Pro Se in this matter as of October18, 2005.  The defendant waives
any mandatory delay resulting from change of counsel or motion to proceed Pro Se.

The defendant DEMANDS a speedy trial.

The defendant objects to any further delay in this matter and moves that all provision for
a speedy trial be exercised.  No waiver of a speedy trial should be construed to be granted
by the defense or the defendant.

October 20, 2005
Date



                                        William McLaurine, defendant
                                        (334) 524-2175
                                        222 Tichenor Avenue #4
                                        Auburn, Alabama  36830

FILED
OCT 2 0 2005
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

I certify delivery or mailing of this document to Mathew White.

October 20, 2005
Date

William McLaurine, defendant
(334) 524-2175
222 Tichenor Avenue #4
Auburn, Alabama 36830

# REQUEST OF THE COURT CLERK

CITY OF AUBURN,                    )    Action No(s):  CC-05-289
                                  )                   MC04-0060431
    Plaintiff,                )                   04015246
                                  )
v.                                )    STATE OF ALABAMA
                                  )    In the Circuit Court
WILLIAM S. McLAURINE              )    of Lee County
                                  )
    Defendant                 )

FILED
OCT 20 2005
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

The defendant comes Pro Se in this matter as of October 18, 2005, having terminate the service of Phil Thompson on that date. The defendant waives any mandatory delay resulting from change of counsel or motion to proceed Pro Se.

The defendant request that the Court Clerk send documentation of all motions and orders in this case to date, to the defendant at the address listed below. No contact should be made through or by Phil Thompson in this matter, other than to inform him of this notice.

October 20, 2005
Date

William McLaurine, defendant
(334) 524-2175
222 Tichenor Avenue #4
Auburn, Alabama  36830

## MOTION TO PROCEED PRO SE

| | | |
|---|---|---|
| CITY OF AUBURN, | ) | Action No(s):  CC-05-289 |
| Plaintiff, | ) | MC04-0060431 |
| | ) | 04015246 |
| v. | ) | STATE OF ALABAMA |
| WILLIAM S. McLAURINE | ) | In the Circuit Court |
| | ) | of Lee County |
| Defendant | ) | |

FILED

OCT 2 0 2005

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

The defendant comes Pro Se in this matter as of October18, 2005, having terminate the service of Phil Thompson on that date.  The defendant waives any mandatory delay resulting from change of counsel or motion to proceed Pro Se.

The defendant request that the Court Clerk send documentation of all motions and orders in this case to date, to the defendant at the address listed below.  No contact should be made through or by Phil Thompson in this matter, other than to inform him of this notice.

October 20, 2005
Date

William McLaurine, defendant
(334) 524-2175
222 Tichenor Avenue #4
Auburn, Alabama  36830

I certify delivery or mailing of this document to Mathew White.

October 20, 2005
Date

William McLaurine, defendant
(334) 524-2175
222 Tichenor Avenue #4
Auburn, Alabama 36830

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

F I L E D
OCT 2 5 2005
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

| | | |
|---|---|---|
| CITY OF AUBURN, | * | |
| | * | |
| vs. | * | CASE NO. CC-05-289 |
| | * | |
| WILLIAM S. McLAURINE, | * | |
| | * | |
| Defendant. | * | |

## MOTION FOR STATUS CONFERENCE

Comes now the undersigned attorney and files this his motion to set a date for a status conference in the above referenced matter, and as a basis for this motion states as follows:

1. The undersigned attorney was appointed to represent the Defendant on or about June 30, 2005.

2. The undersigned attorney has been informed by the Defendant that he no longer needs the services of the undersigned. (See attached as Exhibit "A").

3. The Defendant is filing pro se motions without the knowledge, advice or consent of the undersigned.

WHEREFORE, the undersigned attorney respectfully requests this Honorable Court schedule a status conference in this matter at the earliest possible date.

Respectfully Submitted,

Philip A. Thompson, Attorney for Defendant

OF COUNSEL:

HAYGOOD, CLEVELAND, PIERCE, MATTSON & THOMPSON LLP
611 East Glenn Avenue
P. O. Box 3310
Auburn, Alabama 36831-3310
(334) 821-3892

## CERTIFICATE OF SERVICE

I, Philip A. Thompson, the attorney of record for the Defendant, hereby certify that I have this day served a copy of the above and foregoing Motion upon:

Matthew W. White, Esq.
Adams, Umbach, Davidson & White LLP
P. O. Box 2069
Opelika, AL 36803-2069

William S. McLaurine
222 Tichenor Avenue #4
Auburn, AL 36830

by placing a copy of the same in the U.S. Mail, postage prepaid this the 25th day of October, 2005.

Of Counsel for Defendant

TO:          Phil Thompson
FROM:        William McLaurine
             222 Tichenor Avenue  #4
             Auburn, AL  36830
SUBJECT:     Notice of Termination
DATE:        October 18, 2005

As of this date you are no longer my lawyer.  Please forward any material for this case to
the above address.


William McLaurine


The above document was received by _Carolyn Hataway_____ for Phil
Thompson on October 18, 2005 at _3:25____.

_Carolyn Hataway_____
Receivers Signature.

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

CITY OF AUBURN,        *

vs.       *       CASE NO. CC-05-289

WILLIAM S. McLAURINE,       *

      Defendant.       *

**F I L E D**

OCT 25 2005

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

### MOTION TO WITHDRAW

Comes now the undersigned attorney and respectfully requests permission from this honorable Court to withdraw from representing the Defendant, William S. McLaurine, and as a basis for this motion states as follows:

1. The undersigned attorney was appointed to represent the Defendant on or about June 30, 2005.

2. The undersigned attorney has been informed by the Defendant that he no longer needs the services of the undersigned. (See attached as Exhibit "A").

3. The Defendant is filing pro se motions without the knowledge, advice or consent of the undersigned.

WHEREFORE, the undersigned attorney respectfully requests this honorable Court to grant this motion to withdraw.

Respectfully Submitted,

Philip A. Thompson, Attorney for Defendant

OF COUNSEL:

HAYGOOD, CLEVELAND, PIERCE, MATTSON & THOMPSON LLP
611 East Glenn Avenue
P. O. Box 3310
Auburn, Alabama  36831-3310
(334) 821-3892

## CERTIFICATE OF SERVICE

I, Philip A. Thompson, the attorney of record for the Defendant, hereby certify that I have this day served a copy of the above and foregoing Motion upon:

Matthew W. White, Esq.
Adams, Umbach, Davidson & White LLP
P. O. Box 2069
Opelika, AL 36803-2069

William S. McLaurine
222 Tichenor Avenue #4
Auburn, AL 36830

by placing a copy of the same in the U.S. Mail, postage prepaid this the 25th day of October, 2005.

_____
Of Counsel for Defendant

TO:          Phil Thompson
FROM:        William McLaurine
             222 Tichenor Avenue  #4
             Auburn, AL  36830
SUBJECT:     Notice of Termination
DATE:        October 18, 2005

As of this date you are no longer my lawyer.  Please forward any material for this case to
the above address.

_William McLaurine_

The above document was received by  *Carolyn Hataway*  for Phil
Thompson on October 18, 2005 at  **3:25**

*Carolyn Hataway*
Receivers Signature.

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

CITY OF AUBURN,                              *
                                            *
        Plaintiff,                          *
                                            *
vs.                                         *        CASE NUMBER: CC-05-289
                                            *
WILLIAM S. MCLAURINE,                       *
                                            *
        Defendant.                          *

## ORDER

This matter is before the Court on two (2) Motions, i.e. Motion for Status Conference

filed on October 25, 2005 by the Defendant's attorney, Mr. Phil Thompson and a Motion to

Withdraw filed on the same date by Mr. Thompson. The Court GRANTS the Motion to

Withdraw and sets this matter for a Status Conference on **Friday, November 4, 2005 at 9:00**

**a.m.** At that time, the Defendant should appear and inform the Court as to whether he will

proceed with or without an attorney and the Prosecutor for the City of Auburn shall appear to

determine if the trial should go forward on **November 17, 2005** which is this Court's next

Docket for Auburn City Appeals cases. The Court will also take up at the Status Conference the

production of documents which have been made and address any other Motions pending.

DONE this the __31st__ day of __October__, 2005.

John V. Denson, II
Circuit Judge

FILED
OCT 3 1 2005
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

cc:     Matthew W. White
        Philip Thompson
        Mr. William McLaurine
        222 Tichenor Avenue, #4
        Auburn, Alabama 36830

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

CITY OF AUBURN,                    *

      Plaintiff,                    *

                               *

vs.                                *    CASE NUMBER: CC-05-289

                               *

WILLIAM S. MCLAURINE,              *

      Defendant.                    *

## ORDER

This matter came on for a Status Conference on today's date. Mr. McLaurine appeared, Pro Se and Mr. Matthew W. White appeared on behalf of the City of Auburn. This case is set for the call of the Docket on **November 17, 2005** and has been set for trial on **December 5, 2005.** The Defendant states that he has received the production of the copy of the audio tape and video tape requested. The Court reviewed its previous Order regarding its documentation. Mr. White was given the documents that the Court considered producing and he was to make copies for the Defendant. Upon returning to Court, Mr. White disclosed that the materials to be produced included more than the one (1) week that had been requested, therefore he removed all but the one (1) week and copies were produced to the Defendant. The Defendant further stated that he would discuss with the Court Reporter who took down the first Hearing and would make arrangements paying for the transcript if he wants that transcript produced. Mr. White and the Defendant informed the Court that there were no other discovery matters and the case is now ready to proceed to trial.

DONE this the ___4th___ day of ___November___, 2005.

_____
John V. Denson, II
Circuit Judge

cc:    Matthew W. White
        Mr. William McLaurine
        222 Tichenor Avenue, #4
        Auburn, Alabama 36830

FILED
NOV - 4 2005
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

## NOTICE TO JUDGE DENSON

CITY OF AUBURN,

F I L E D

NOV 0 7 2005

Plaintiff,

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

v.

WILLIAM S. McLAURINE

Defendant

)
)
)
)
)
)
)
)
)
)

Action No(s):  CC-05-289
MC04-0060431
04015246

STATE OF ALABAMA
In the Circuit Court
of Lee County

As per your request, this notice is to inform you that Court Reporter Janet Smith has informed me the price of the transcript of the special hearing on or about June 27, 2005 in this matter is $ _SU - $ /00_____ . If I am eligible to have the transcript paid for because I have been declared indigent, I would like to exercise this option.

November 7 2005
Date

William McLaurine, defendant
222 Tichenor Avenue #4
Auburn, Alabama 36830

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

CITY OF AUBURN,                          *
                                         *
        Plaintiff,                       *
                                         *
vs.                                      *     CASE NUMBER: CC-05-289
                                         *
WILLIAM S. MCLAURINE,                    *
                                         *
        Defendant.                       *

### ORDER

This matter appeared on the Docket Call for the City of Auburn Appeals on November 17, 2005. The

Defendant appeared. On November 7, 2005 the Defendant filed a written Motion asking that the Court

continue to declare him indigent and to pay for the transcipt of the case in the Auburn City Court case, and gave

an estimate of the costs of Fifty and no/100 Dollars ($50) to One Hundred and no/100 Dollars ($100). The

Defendant testified that he is now employed and the Court finds that he is no longer indigent. On October 25,

2005, Mr. Philip Thompson filed a Motion to Withdraw and on October 31, 2005, the Court Ordered that Mr.

Thompson be allowed to withdraw. The Defendant now wishes to proceed with the case without an attorney.

The Defendant also stated that he had several Motions to present and the Court instructed him that these need to

be submitted in writing and will be heard on December 2, 2005. The jury trial in this case is set for December

5, 2005.

DONE this the __17th__ day of __November__, 2005.


_____
John V. Denson, II
Circuit Judge


cc:    Matthew W. White
       Mr. William McLaurine
       222 Tichenor Avenue, #4
       Auburn, Alabama 36830

FILED

NOV 1 8 2005

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

## MOTION TO DISMISS WITH PREJUDICE

| | | |
|---|---|---|
| CITY OF AUBURN, | ) | Action No(s): CC-05-289 |
| | ) | MC04-0060431 |
| Plaintiff, | ) | 04015246 |
| | ) | |
| v. | ) | STATE OF ALABAMA |
| | ) | In the Circuit Court |
| WILLIAM S. McLAURINE | ) | of Lee County |
| | ) | |
| Defendant | ) | |

FILED

NOV 2 2 2005

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

The Defendant comes before the court to request a MOTION TO DSIMISS WITH PREJUDICE. This defendant maintains that reasonable suspicion and probable cause did not exist at the required times during the incidents of contact and arrest, but this motion does not address all the relevant issues of those claims. Instead this motion is an attempt to expedite the dismissal of this case by demonstrating the lack of a prima facia case of criminal activity.

The defense will recap the accusations by the prosecutions, and show that even if all statements made are true, no criminal activity could have occurred.

AS GROUNDS FOR THE MOTION the defense presents the following summary of the prosecution's case, without regard to the validity of the claims:

1) The defendant was detained in a lawful, investigative, Terry stop, and while detained refused to give the police his name, identification and a reason for being in the area.

2) The police repeated the questions and informed the defendant that he had an "obligation" to respond. The Police claim they informed the defendant that the defendant could not leave, and the manner of that informing was clear.

3) After the police had informed the defendant of the fact that he could not leave, and that fact that he was under an "obligation" to respond, the defendant attempted to leave the scene.

4) The activity of the defendant constitutes a crime for intentionally interfering with a law enforcement officer, pursuant to Alabama Code §13A-10-2.

From United State Code Annotated, IV Amendment, § 903:

"Arrest for arrestee's refusal to identify herself during lawful, investigative, Terry stop and for violation of statute criminalizing resistance to peace officer violated Fourth Amendment proscription against search and seizure."

From item 1 from above, the refusal to comply with the police request for information, is not a valid grounds for arrest.

From United State Code Annotated, IV Amendment, § 783:

"Seizure does not occur when police officer approaches individual and merely asks to examine his identification, so long as officer does not convey message that compliance with request is required."

From United State Code Annotated, IV Amendment, § 783:

"When Officers detained defendant for purposes of requiring him to identify himself, they performed a "seizure" of his person subject to the requirements of this amendment."

From Item 2 above, a seizure was performed prior to the attempt of the defendant to leave the scene.

From United State Code Annotated, IV Amendment, § 835:

"A formal arrest is not valid unless there is probable cause; probable cause exist if the totality of the facts and circumstances know to a reasonable arresting officer would support the belief that the suspect has committed or is committing a crime."

The attempt to leave cannot be used to justify an arrest, as fruit of the poison tree, since the seizure occurred before the attempt to leave happened.

From United State Code Annotated, IV Amendment, § 835:

"An investigative stop requires only that the officer is able to produce articulable facts giving rise to reasonable suspicion that a defendant has been or is about to be engaged in criminal activity; an investigative stop becomes a seizure at the point when a reasonable person would feel that he is not free to leave, and there must also be an intentional acquisition of control."

Even if it is ruled an arrest did not occur, the right to leave the scene was present during the investigative stop and is not criminal.

WHEREAS the defendant has demonstrated that the arrest was not valid, for lack of probable cause and/or prima facie facts to establish a crime, the defendant request the court grant an ORDER TO DISMISS WITH PREJUDICE.

November 22, 2005
Date

William McLaurine, defendant
222 Tichenor Avenue #4
Auburn, Alabama 36830

I certify the delivery and/or mailing of this document, MOTION TO DISMISS WITH
PREJUDICE to Mathew White,


November 22, 2005
Date

William McLaurine, defendant
222 Tichenor Avenue #4
Auburn, Alabama 36830

**MOTION TO DISMISS WITH PREJUDICE FOR FAILURE
TO ESTABLISH REASONABLE SUSPICION AND/OR PROBABLE CAUSE**

| | | |
|---|---|---|
| CITY OF AUBURN, | ) | Action No(s):  CC-05-289 |
| Plaintiff, | ) | MC04-0060431 |
| | ) | 04015246 |
| v. | ) | STATE OF ALABAMA |
| | ) | In the Circuit Court |
| WILLIAM S. McLAURINE | ) | of Lee County |
| Defendant | ) | |

F I L E D

NOV 2 2 2005

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

The Defendant comes before the court to claim that the Police failed to establish reasonable suspicion and/or probable cause at the appropriate times in the stop and/or arrest of the defendant.  The only remedy available is to use the exclusionary rule to limit all observations and interaction of the stopping and/or arresting officers after the improper seizure under the Fourth Amendment.  This limitation will result in either a demonstration that no crime could be commited, or a nullification the authority of the officers by the exclusionary rule, thereby undercutting the critical component of interfering with an authorized action as mentioned in the COMPLAINT.

AS GROUNDS FOR THIS MOTION the defense will state the time line of EVENTS to determine the status of reasonable suspicion and/or probable cause at specific times.  The series of EVENTS will be divided into the following sequential categories:

1) The Telephone Call
2) Officer Bean's Dispatch and Search for a suspect.
3) Officer Bean's Approach and Stop of the Defendant.
4) The Police Questioning and Arrest

It is important to understand the standards of reasonable suspicion to be used in this evaluation. Reasonable Suspicion is generally referenced from *United State v. Cortez* 101 S.Ct 690 (1981) as follows (at 695):

"...Courts have used a variety of terms to capture the elusive concept of what cause is sufficient to stop a person. Terms like 'articulable reasons' and 'found suspicion' are not self defining; They fall short of providing clear guidance dispositive of the myriad factual situations that arise. But the essence of all that has been written is that the totality of the circumstances –the whole picture– must be taken into account. Based on that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.. See, e.g. *Brown v. Texas, supra,* 443 U.S. at 51, 99 S.Ct., at 2640; *United States v. Brignoni-Ponce, supra* 422 U.S., at 884, 95 S.Ct., at 2581.

[5,6] The idea that an assessment of the whole picture must yield a particularized suspicion contains two elements, each of which must be present before a stop is permissible. First the assessment must be based upon all the circumstances. The analysis proceeds with various objective observations, information, information from police reports, if such are available, and consideration of the modes or patterns of operations of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions – inferences and deductions that might well elude an untrained person.

The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common sense conclusion about human behavior; jurors as fact finders are permitted to do the same – and so are law enforcement officers. Finally the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

The Second Element contained in the idea that an assessment of the whole picture must yield a particularized suspicion is the concept that the process just described must a raise a suspicion that the particular individual being stopped is engaged in wrong doing. Chief Justice Warren, speaking for the court in *Terry v. Ohio, supra,* said that, '[t]his demand for specificity in the information upon which police action is predicated is *the central teaching of this Courts Fourth Amendment's Jurisprudence'* Id., 392 U.S., at 21, n. 18, 88 S.Ct. at 1880, n. 18 (emphasis added). See also *Brown v. Texas, supra,* 443 U.S., at 51, 99 S.Ct., at 2640; *Delaware v. Prouse, supra,* at 661-663, 99 S.Ct. at 1400-1401; *United States v. Brigoni-Ponce, supra,* at 884, 95 S.Ct., at 2581."

Alabama Courts have as also weighed in on defining reasonable suspicion in *Spradley v. State*, 414 So. 2d 170 (Ala. Crim. App. (1982) as follows:

"...The detention and investigation may not be based on a peace officer's unsupported intuition, subjective feelings or suspicions, mere hunch, or good faith, but it must based on the objective perception of events, without particularization as to a specific crime. There must be a rational suspicion on the part of the officer that some activity is out of place, some indication to connect the person under suspicion with such activity, and some suggestion that the activity is related to crime."

A Good example of Alabama Courts using the Exclusionary Rule, comparable to this case is *Harris v. State* 568 So. 2d 421 (Ala. Crim. App. 1990), at 424:

"Driving slowly through a neighborhood in the early morning hours is not the type of specificity or factual basis to give rise to a particularized suspicion that this particular person is engaged in wrongdoing. Also relevant is the fact that the appellant apparently continued through the residential, area ultimately being stopped by a Bargain Town Store.

'As for suspicion of burglary residential premises, something more than presence in immediate proximity to those premises will ordinarily be required, for persons have occasion to enter and exit their residence at all hours. This is not to suggest, however, that the time of day is unimportant; conduct which might be deemed innocuous in the day time might be viewed otherwise at night. Even at night, however, something in the way of suspicious conduct should be present, such as stealthy movements, the apparent 'casing' of the premises, efforts to conceal one's presence from passerby, flight from the premises, or other conduct which would not ordinarily be expected from a person who resides there unless the suspect resembles a description with respect to prior burglaries.'

LaFave, *Search and Seizure* § 9.3(c) (1987). The fact that the appellants vehicle was traveling at a slow rate of speed, without more, does not give rise to the implication that the appellant was 'casing' any residences. Cf. *Tillman v. State*, 275 Ark. 275, 630 S.W. 2d 5(1982), cert. Denied, 459 U.S. 1201, 103 S.Ct. 1185, 75 L.Ed.2d 432 (1983) (strange

vehicle seen driving very slowly with driver looking at houses and vehicle then observed in position indicating it had just backed out of driveway); *People v. Cobb*, 690 P.2d 848 (Colo.1984) (sufficient indication of defendant casing a residence where he knocked on the door after midnight and when the door was answered, he stated that he had the wrong address); *Commonwealth v. Wren*, 391 Mass. 705, 463 N.E.2d 344 (1984) (police had reasonable suspicion van was casing a neighborhood where it drove slowly down several dead end streets). See also *People v. Johnson*, 64 N.Y.2d 617, 485 (fact that defendant was 'looking at houses' found insufficient because there is 'little else to look at in a residential neighborhood, and there is no other testimony suggesting that his behavior was furtive or his movements unusual'.)"

The defense also cites *Barnette ex parte*, 624 So.2d 507 (Ala. Crim. App 1993), requiring police to independently corroborate tips from anonymous callers.

AS GROUNDS FOR THE MOTION THE DEFENSE PRESENTS THE FOLLOWING:

I. The Telephone Call.

The defendant submits Exhibit P-1, the transcript of the Telephone Call, also referred to as Audio File 04322.

The defense claims that the Telephone Call conveys only four general assertions. They are as follows:

1) Physical Location and Direction of Travel

     Caller: Yeah, there's a mysterious man, walking on, Ah, Glenn towards Donahue.

     ...

     Operator: From which direction, where, where

     Caller: From college. From college.

2) Opinions of Activity

     Caller: Yeah, there's a mysterious man, walking on, Ah, Glenn towards Donahue.

     ...

Operator: What's suspicious about him?

Caller: He's, He's stopping, and, and, looking, and, and he has something in his hand.

Caller: That's all I saw.

3) Activity Descriptions

Caller: He's, He's stopping, and, and, looking, and, and he has something in his hand.

4) Physical Descriptions

Caller: He's, He's stopping, and, and, looking, and, and he has something in his hand.

…

Operator: What is he wearing.

Caller: Ah, grey shirt.

Operator: Grey shirt, is he a white male, or a black male?

Caller: White. With black pants

The physical location of a suspect may have no bearing on the validity of an arrest unless it was a felony to be in that location. *Ex Parte Hamm*, 564 So.2d 469 (Ala. 1990). It is important to note physical location of the suspect in the Call and the physical location of the defendant in arrest as separate and distinct as they are discussed in the "total picture." The corner of Glenn Avenue and College Street in Auburn, Alabama is major downtown intersection. At the four Corners of that Intersection are Amsouth Bank, A Church Parking lot, and two gas stations, one of which is Chevron, a 24 hour service station. One block away at Glenn Avenue and Gay Street, 2 more 24 service stations, Spectrum and Sunny Foods, also exist. This area is a major commercial district of the downtown Auburn area. During the entire time of this incident, 3 stores where operating in the vicinity. It can in no way be considered "unusual" for a pedestrian to be in this area at this time. That the area of the stop and arrest of the defendant was a "neighborhood" will not be contested by the defense at this time.

The Caller would not leave a full name and refused to leave contact information (See Exhibit P-1a). This prevented the police from ascertaining the identity and/or credibility of the Caller. Without knowledge of who the caller was it was not possible to attach knowledge of special training beyond that of a layman to form opinions on the activity of the suspect. In addition The Opinions of Activity expressed by the caller are only suspicions or hunches, not "objective perceptions of events". The word "mysterious" denotes a lack of knowledge of the subject by the caller. The actions the caller attributes as suspicious are not criminal and do not naturally lead to implications of criminal activity or public danger without speculation or conjecture. It also important to note the Caller never used the word "suspicious," this word was interjected by the dispatcher.

The Activity Descriptions the caller attributes as suspicious are not criminal and do not naturally lead to implications of criminal activity or public danger. It is important to note that the caller never identifies what the suspect is "looking" at. The Anonymous Caller does not clearly articulate what he is describing. The Anonymous Caller does not allege any crime associated with the actions he describes.

II. Officer Bean's Dispatch and Search for a suspect.

See Exhibit P-1, the transcript of the Telephone Call. The defendant also presents Exhibit P-2, a copy of the transcript of the judicial proceedings before the Honorable Joe S. Bailey on Thursday March 31, 2005, as reported by Lyn Daugherty, Certified Shorthand Reporter and Commissioner for the State of Alabama, of Haislip, Ragan, Green, Starkie, & Watson. (Telephone: (334) 263-4455, Address: 566 South Perry Street, Montgomery, Alabama, 36104).

In the Telephone Call, the Anonymous Caller (Ron), did not use the word "house" or "houses." Nor did the Caller, at any time, specify what the suspect WAS LOOKING AT. This introduction of the word houses, is not based on any "objective perception of events," but upon the "hunch" of the dispatcher that the suspect was looking at "houses." Also note from the telephone call that no mention of the word "weapon" was used, only that the suspect was carrying something.

From the Transcript of testimony (Exhibit P-2) of March 31, 2005, we may extract the following statements and implications from Officer Beans Testimony (See Exhibit P-2, Pages 4-23):

1) Officer Bean was dispatched to investigate a suspect.

2) Officer Bean made a thorough inspection of the area.

3) Officer Bean observed the defendant and identified him as the suspect by physical presence on Toomer Street and/or description from the dispatch call.

4) Officer Bean's location prior to approach was at the corner of Glenn Avenue and Toomer Street. This position was north of the defendant.

5) Officer Bean observed the defendant southbound on Toomer Street.

6) Officer Bean approached the defendant from the rear after identifying him.

7) Officer bean, who had no physical opportunity to observe the defendant's face or eyes, because of the direction of approach, determined that the defendant was "looking in the direction of houses" (See Exhibit P-4, page 7, line 22), without specificity as to which house was looked at, or what part of any house was looked at.

8) The defendant was observed to be "walking slowly."

9) The defendant was only observed to have stopped in response to Officer Bean.

At this point the question of whether a reasonable stop of the defendant was made according the provisions of Fourth Amendment to the Constitution.

First, it must be determined if a stop of this type was made. The courts have clearly stated that the Police have the right to approach people in public places without having to perform a stop. But it is clear that officer bean interdicted the travel of the defendant, by Officer Bean's own statements, and also by those of Sergeant Matthews. Officer Bean was asked if he told the "defendant to stop walking," and he replied that at first the

defendant continued to walk and "...I had to draw closer to him. And I called to him again and he finally stopped."(See Exhibit P-2, page 8, lines 9-14)  Sergeant Mathews stated that this event was an "investigative stop" (See Exhibit P-2, page 26, line 8). Clearly, from the testimony of the police officer's this event was a "stop" of the defendant.

While a stop does not require probable cause, it does require reasonable suspicion. Based on the qualification of what reasonable suspicions is from the above cases, what could have possibly been know by Officer Bean is stated as follows:

Assertion A

A "mysterious" man, referred to here as the suspect, was seen walking in a section of the city that had active commercial activity, and is also know as a high traffic area.

Assertion A is not relevant to the development of reasonable suspicion for the following reasons: It was not, "out of the ordinary" for anyone to be in the area because of the 3 different 24 hour convenience stores; the word mysterious, supplied by the Anonymous Caller, denotes a lack of knowledge of the suspect, further indicating that the allegations made by the caller are a "hunch."

Assertion B

The suspect was "stopping, and looking," in that section of the city, without regard to what is being looked at.

Assertion B is not relevant to the development of reasonable suspicion for the following reasons:  it is not clear what is being looked at, and hence the "stopping and looking" is not "articulable"; Glenn Avenue and College Street is major traffic area with pedestrian cross walks, it is not "out of the ordinary" to stop and look for traffic at such a location.

Assertion C

That suspect was "suspicious"

Assertion C is not relevant to the development of reasonable suspicion for the following reasons: This word was interjected by the dispatch caller and never repeated by the Anonymous Caller (Ron), and is a "hunch" of the dispatcher or of the Caller, though the Caller never articulates this word; The actions attributed by the caller "...stopping, and, and, looking, and, and he has something in his hand..." contribute nothing the belief criminal activity as related elsewhere in this document.

<u>Assertion D</u>

That suspect was "looking at houses" in the commercial section of the city.

Assertion D is not relevant to the development of reasonable suspicion for the following reasons: The word "houses" was interjected by the dispatcher after the Telephone Call by the Anonymous Caller (Ron) was completed, and is not an "object perception of events," but is definitely a "hunch.

<u>Assertion E</u>

The defendant fit a description similar to the suspect seen walking.

At this time the defense will not refute this. This will require the analysis of reasonable suspicion for both locations (the observations reported in the call, and the observations by Officer Bean) be considered separately and jointly for the purposes of reasonable suspicion.

<u>Assertion F</u>

The defendant was seen walking slowly on the sidewalk at the location of arrest.

"Walking slowly" is comparable to "driving slowly" as in *Harris v. State, supra* Both walking and driving slowly are definable as reasonable actions of people requiring access to their homes as per Harris v. States quote from *LaFave, supra*. Assertion F is not relevant to the development of reasonable suspicion because it a element of the *Harris v. State, supra* conditions that do contribute to a particularized suspicion.

<u>Assertion G</u>

The defendant was "looking in the direction of houses."


Assertion G is not relevant to the development of reasonable suspicion because it a element of the *Harris v. State, supra* conditions that do not contribute to a particularized suspicion.


<u>Assertion H</u>

The defendant was "looking into houses."


Assertion H is not relevant to the development of reasonable suspicion because it a "hunch" of Officer Beans. At no time has anyone besides officer bean alleged the defendant or the suspect as observed by the Anonymous Caller (Ron), ever suggest "looking INTO houses". Is not based on "objective perceptions of events" and not considerable in the development of reasonable suspicion.


<u>Assertion I</u>

The time of day was approximately 00:30 hours.

The defense recognizes that night time can make certain behavior suspicious, behavior that during the day would be innocuous. This does not change the fact the behavior must lead to a particularized suspicion, and does not mean that any behavior a police officer may define as personally suspicious warrants the level of reasonable suspicion.


<u>Assertion J</u>

The defendant was seen in an "abandoned neighborhood"


Officer Bean states that while he calls the area abandoned, he means that most of the people are gone and that some residents will be present. (See Exhibit P-4 page 21). This means that residence should be expect to have access as per *LaFave, supra*

<u>Assertion K</u>

The defendant was seen in a "high crime area"

The defense recognizes that criminal activity in an area, can make certain behavior suspicious, behavior that elsewhere would be innocuous. This does not change the fact the observed behavior must lead to a particularized suspicion (*See Texas v. Brown, supra*), and does not mean that any behavior a police officer may define as personally suspicious warrants the level of reasonable suspicion. It also important to recongnize what area is actually defined as a "high crime area." The "neighborhood" area may possibly be considered a "high crime area" due the nature of crimes of "burglaries" because of the low number of residents. The commercial area where the suspect was observed has very few residences, and the attendant at the Chevron as a good view of area. The constant presence of the attendant at the Chevron is not different form any other time of year and the commercial area where the suspect was observed cannot be considered a "high crime area" for the purposes of developing reasonable suspicion.

<u>Assertion L</u>

The suspect or defendant was in possession of a weapon.

Assertion L is not relevant to the development of reasonable suspicion because it a "hunch" of Officer Beans. At no time has anyone besides officer bean alleged the defendant or the suspect as observed by the Anonymous Caller (Ron), ever mentions the word "weapon". No weapon was found on the defendant. While it may be reasonable to believe that a weapon might be present under "stop and frisk" rules, it is not based on "objective perceptions of events" and not considerable in the development of reasonable suspicion.

This argument may be summarized as being similar to Harris v. State with 3 minor distinctions.

1) The defendant was walking instead of driving.

This point is moot. Possible modes of travel to a house by a resident must include walking unless that resident plans to sleep in their car. (See *Harris v. State, supra* on *LaFave*)

2) The defendant was reported in an "abandoned neighborhood" at night, that was supposedly designated a "high crime area."

Officer Bean states that while he calls the area abandoned, he means that most of the people are gone and that some residents will be present. (See Exhibit P-2 page 21). All of these issues are environmental. The conditions established in Harris v. State, i.e. the nature of casing a house for a burglary, are the same conditions established for the "high crime" rate of burglary claimed by the police. There is no difference in conditions from *Harris v. State, supra* because of the combination of these factors.

3) The defendant was suspected of "stopping and looking" at something in another section of the city that was commercially active at the time of the report of activity.

In The Telephone Call (Exhibit P-1), the Anonymous Caller (Ron), does not specify what the suspect is looking at. As this Telephone Call is the only "object perception of events" at the commercial location, and the call is not an "articulable" description that can be developed into a reasonable suspicion this matter, no reasonable suspicion can be developed from this incident, solely from this call.

The Telephone Call provided no "objective perception of events" that can be articulated into grounds for reasonable suspicion. It can be viewed as a "hunch" of a layman, not versed in police procedure of observing criminal behavior. The observations made by Officer Bean match the criteria of *Harris v. State, supra* and fail to meet the grounds for reasonable suspicion. Officer Bean's observations can be categorized as a "hunch". The "hunch" by the Anonymous Caller plus the "hunch" of Officer Bean cannot be added to together to add up to obtain reasonable suspicion.

It may not be necessary to consider both observations collectively. Officer Bean stated that the only distinguishing feature between other people in the area and the defendant was that the description of the suspect matched the defendant

(See Exhibit P-4, page 21, line21).   Officer Bean's description of the search and approach to the defendant (See Exhibit P-2, pages 5-8) proceeds as follows on Direct Examination by the Prosecutor:

"A.     As I was passing Toomer Street, I looked down Toomer Street and saw a white male walking along the – probably the west sidewalk fitting the description of the clothing we got.

Q.     About how far way from you was the person when you first saw him?

A.     Anywhere from 40 to 50 yards.

Q.     What did you do?

A.     I backed up and turned down Toomer Street and went to contact him."

It is important to note that Officer Bean did not say he took special precautions to observe the actions of the defendant but proceeded with contact immediately, indicated that he had already made up his mind to approach. His later statement that he proceeded to stop and question the defendant as opposed to others, because the defendant "fit the description," also confirms that Officer Bean took no special precautions to make independent observations of the defendant. Officer Bean has never testified that his personal observations of the defendant play any role in the stop. In fact he went on to take precautions to state the absence of suspicious circumstances about his initial contact, saying "He was walking slowly down the sidewalk looking in the direction of houses just walking on the sidewalk. He wasn't in the yard or anything." (See Exhibit P-2, page 7, line 21 to page 8, line1).

The police did not follow the proper procedure in determining probable cause cited in *Harris v. State, supra* including, but not limited to, independently observing the defendant to verify the veracity and honesty of the caller. The caller was Anonymous, for he refused to completely identify himself, or leave contact information. The police were required to confirm the statements of the Anonymous Caller (Ron) in order for the stop to be considered reasonable based on the caller's information. Since Officer Bean has testified that the defendant

was not observed stopping (See Exhibit P-2 page 16, lines 14-18), this confirmation and corroboration was not done, and the call in not considerable in the development of suspicion.

Coupling the failure to confirm the anonymous call with the fact that no activity giving rise to reasonable suspicion could have been observed by Officer Bean, based on his testimony and the standards of *State v. Harris*, and that Officer Bean has not alleged the attempt to "case" a house by the defendant, there is no "objective perception of events" that can lead to the development of reasonable suspicion, either from each separate observation by the Anonymous Caller or the observations of Officer Bean, or from their collective effect.

WHEREAS the defense has presented facts of this case and the law pertaining to those facts, in clear and detailed manner, and those facts demonstrate that the Police did not have a reasonable suspicion to stop the defendant, the defend request that this court grant a MOTION TO DISMISS WITH PREJUDICE. If this Court decides not grant such a motion, the defense request that the Court consider the following facts pertaining to probable cause to arrest:

ON THE GROUNDS presented previously by the defense in this motion to establish that reasonable suspicion did not exist, and further testimony of the police officers, the defense also claims that probable cause to arrest was not present.

The first issue in determining if probable cause existed was to determine when the arrest, or seizure as defined by the fourth amendment, occurred. The defense presents that the earliest the arrest could have occurred is the stop made by Officer Bean, and the latest the arrest, or seizure, could have come is when the police officers grabbed the defendant. The intervening events must be analyzed to determine if the arrest occurred at some other specific time. The events that must be considered are the following, listed in chronological order:

1) The stop by Officer Bean.

If Officer bean considered the stop to be a mandatory detention from the outset, his mannerism and show of force would represent a seizure.

2) The demand for name and identification that is coercive.

Once a police officer represents that any request for information is mandatory a seizure has occurred. Officer bean stated that the defendant "...has and obligation to give us his name and his address and the reason for being in that area" (See Exhibit P-2 page 10 line 22 to page 11, line 2)

From United State Code Annotated, IV Amendment, § 783:
"Seizure does not occur when police officer approaches individual and merely asks to examine his identification, so long as officer does not convey message that compliance with request is required."

From United State Code Annotated, IV Amendment, § 783:
"When Officers detained defendant for purposes of requiring him to identify himself, they performed a "seizure" of his person subject to the requirements of this amendment."

3) The statement or show of force by the police indicating detention.

Both Police officer's claim that the defendant wanted to leave and each officer informed the defendant that defendant could not leave. Officer Bean stated "...he doesn't have the right to leave right now, were conducting and investigation." (See Exhibit P-4, page 13, lines 12-15). Sergeant Mathews stated that he clearly informed the defendant he should consider himself "detained" (See Exhibit P-4 page 28, lines 7-11)

From United State Code Annotated, IV Amendment, § 835:
"An investigative stop requires only that the officer is able to produce articulable facts giving rise to reasonable suspicion that a defendant has been or is about to be engaged in criminal activity; an investigative stop becomes a seizure at the point when a reasonable person would feel that he is not free to leave, and there must also be an intentional acquisition of control."

4) The physical detainment.

The officers physically detained the suspect. (See Exhibit P-4, page 28, lines 14-22.

The next issue is to determine what was known by the police that might constitute probable cause. The various crimes that must be analyzed include burglary, the Auburn Municipal ordinance against Peeping Toms, and the Obstruction of Government Operations charge. No allegation of "casing" a building has made. No allegation of trespassing has been made to qualify for the crime of being a Peeping Tom, and no officer was actually prevented from making demands of the defendant, there is no probable cause of Obstructing Governement Operations.

WHEREAS nothing as been introduced through information or complaint that will support probable cause on the part the arresting officer(s). The defense request that the court grant an ORDER TO DISMISS WITH PREJUDICE.

November 22, 2005
Date

William McLaurine, defendant
222 Tichenor Avenue #4
Auburn, Alabama  36830

I certify the delivery and/or mailing of this document, MOTION TO DISMISS WITH PREJUDICE FOR FAILURE TO ESTABLISH REASONABLE SUSPICION AND/OR PROBABLE CAUSE to Mathew White,

November 22, 2005
Date

William McLaurine, defendant
222 Tichenor Avenue #4
Auburn, Alabama  36830

## MOTION TO DISMISS WITH PREJUDICE
## FOR MISCONDUCT OF THE PLAINTIFF

| | | |
|---|---|---|
| CITY OF AUBURN, | ) | Action No(s): CC-05-289 |
| | ) | MC04-0060431 |
| Plaintiff, | ) | 04015246 |
| | ) | |
| v. | ) | STATE OF ALABAMA |
| | ) | In the Circuit Court |
| WILLIAM S. McLAURINE | ) | of Lee County |
| | ) | |
| Defendant | ) | |

**FILED**

NOV 2 2 2005

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

The Defendant comes before the court to request a MOTION TO DSIMISS WITH PREJUDICE.

AS GROUNDS FOR THE MOTION the defendant maintains that the defendants rights have been repeatedly violated in this matter, and presents the following:

1) Violation of Fourth amendment by arresting the defendant for failure to identify himself to police officers.

2) Discrimination base on race and national origin by the arresting officer.

3) Failure of the prosecution to provide discovery in a timely manner.

4) Failure of the prosecution to provide complete discovery.

5) Failure of this court to allow examination of evidence in possession of the prosecution, in order to determine if the evidence had been tampered with.

6) Postponement of Trial date in violation of speedy trial rules.

7) Holding Evidenciary and Withdrawal Hearings outside of my presence.

8) Assigning a contract employee of the City, Phil Thompson, as appointed counsel to the defendant, when the city of Auburn was aware of a complaint and possible lawsuit.

9) Improper conduct by Phil Thompson, for refusing to provide a spirited defense and attempting to withdraw from the case for refusal to accept a deal in which the defendant would be required to sign a civil release.

10) Intimidation by Phil Thompson, in which Thompson pointed out the case of "Rober" (pronounced like the French Robert). Thompson insinuated that I would face further criminal charges and be "tried as a terrorist," if I attempted to sue the city.

11) Violation of right to be heard in court under all common law principles, but specifically Article I, Section 6 of the Alabama Constitution, when Phil Thompson indicated that, If I did not pose all questions of the court through him, he would not defend me anymore.

12) Violation of due process in municipal trial by the prosecuting attorney including but not limited to improper use of a prosecuting attorney, and violation of right to petition by Rick Davidson.

13) Violation of due process by Judge Joe Bailey in the procedure and rulings of the original municipal trial.

WHEREAS the defendant has demonstrated that the arrest and prosecution contain multiple violation of the defendants rights, and that this motion does not necessarily contain the full extent or the limit of those violations, the defendant request the court grant an ORDER TO DISMISS WITH PREJUDICE.

November 22, 2005
Date

William McLaurine, defendant
222 Tichenor Avenue #4
Auburn, Alabama 36830

I certify the delivery and/or mailing of this document, MOTION TO DISMISS WITH PREJUDICE FOR MISCONDUCT OF THE PLAINTIFF to Mathew White,

November 22, 2005
Date

William McLaurine, defendant
222 Tichenor Avenue #4
Auburn, Alabama  36830

# EXHIBIT P-1
# TELEPHONE TRANSCRIPT

## Exhibit A-1, Transcript of complaint call
04322.WAV transcript

Estimated length 1:36.

Operator: Auburn Emergency 911
Caller: Yeah, there's a mysterious man, walking on, Ah, Glenn towards Donahue.
Operator: Towards where?
Caller: Towards Donahue.
Operator: From which direction, where, where
Caller: From college. From college.
Operator: To Donahue, on Glenn.
Operator: What's suspicious about him?
Caller: He's, He's stopping, and, and, looking, and, and he has something in his hand.
Caller: That's all I saw.
Operator: Ok, Um. What's he wearing?
Caller: Do What?
Operator: What is he wearing.
Caller: Ah, grey shirt.
Operator: Grey shirt, is he a white male, or a black male?
Caller: White. With black pants.
Operator: OK, Um, What's your name sir?
Caller: My name?
Operator: Yes, sir.
Caller: Ah, Ah, my name is Ron.
Operator: You said, Ron?
Caller: Yes.
Operator: OK, and what's the number you're calling from?
Caller: Ah, I don't wish to give that out?
Operator: OK, that
Caller: All right.
Operator: Thanks.
Caller: Thanks.
Operator: Thank you for the info sir
Caller: Thank you.
Operator: No problem.

I CERTIFY THIS TO BE A VALID
PHOTOCOPY OF AN ORIGINAL DOCUMENT.
83

# EXHIBIT P-2
# COURT TRANSCRIPT

# COPY

1

1

IN THE MUNICIPAL COURT

2

FOR

3

AUBURN, ALABAMA

4

5    CITY OF AUBURN,

6          Plaintiff,

7      vs.

                                 CIVIL ACTION NO.

8                                  MC04-0060431

9    WILLIAM S. McLAURINE,

10         Defendant.

11

12              * * * * * * * * * * * *

13

14    **PROCEEDINGS BEFORE THE HONORABLE JOE S.**

15  **BAILEY,** reported by Lyn Daugherty, Certified

16  Shorthand Reporter and Commissioner for the State

17  of Alabama at Large, at the Auburn Municipal Court,

18  Auburn, Alabama, on Thursday, March 31st, 2005,

19  commencing at approximately 1:15 p.m.

20

21

22              * * * * * * * * * * * *

23

HAISLIP, RAGAN, GREEN, STARKIE & WATSON, P.C.

2

1                          APPEARANCES

2

3    FOR THE PLAINTIFF:

4    Patrick C. Davidson, Esquire
     ADAMS, UMBACH, DAVIDSON & WHITE
5    Attorneys at Law
     205 South 9th Street
6    P.O. Box 2069
     Opelika, Alabama  36803-2069

7

8    FOR THE DEFENDANT:

9    William S. McLaurine, Pro Se

10

11              * * * * * * * * * * * * *

12

13                  EXAMINATION INDEX

14
OFFICER BEAN
15
         DIRECT BY MR. DAVIDSON  . . . . . .    5
16
         CROSS BY MR. McLAURINE  . . . . . .   16
17
         REDIRECT BY MR. DAVIDSON  . . . . .   22
18
19  SERGEANT MATTHEWS

20       DIRECT BY MR. DAVIDSON  . . . . . .   23

21       CROSS BY MR. McLAURINE  . . . . . .   31

22

23              * * * * * * * * * * * * *

3

1      THE COURT:  Sir, you are charged

2          with obstructing governmental

3          operations.  And you

4          previously were before the

5          Court and advised the Court

6          that you understood that you

7          had the right to be

8          represented and that if you

9          could not afford a lawyer the

10         City would appoint a public

11         defender to represent you.  At

12         that time you informed the

13         Court that you did not want to

14         be represented.

15     MR. McLAURINE:  That's still the

16         case.

17     THE COURT:  All right.  I'm going

18         to ask you to sign this form.

19         It's just our standard form

20         that says we've talked about

21         lawyers and you don't want

22         one.

23         Thank you.  How do you

4

```
 1              plead to this charge?  Guilty
 2              or not guilty?
 3         MR. McLAURINE:  Not guilty.
 4         THE COURT:  Are you going to call
 5              any witness to testify other
 6              than yourself?
 7         MR. McLAURINE:  Other than Officer
 8              Bean, no.
 9         THE COURT:  Is the prosecution
10              ready to go forward?
11         MR. DAVIDSON:  Yes, sir, Your
12              Honor.
13         THE COURT:  I'm going to ask
14              everybody that's going to
15              testify to please raise their
16              right hand.
17         (All witnesses were sworn at this
18              time.)
19         THE COURT:  All right, Counselor,
20              call your first witness.
21         * * * * * * * * * * * *
22              OFFICER BEAN
23    The witness, after having first been duly sworn
```

5

1  to speak the truth, the whole truth and nothing but

2  the truth testified as follows:

3  DIRECT EXAMINATION

4  BY MR. DAVIDSON:

5  Q.   Officer Bean, would you tell the Court

6       whether or not you had an occasion to

7       contact the defendant --

8  A.   Yes, sir.

9  Q.   -- back in November?

10 A.   Yes, sir, I did.

11 Q.   And on November 27th, 2004, about what time

12      was it that you contacted the defendant?

13 A.   Approximately 038 hours or 045 hours,

14      somewhere in that time frame.

15 Q.   Before we get to the actual contact, let's

16      talk about first what, if anything, you

17      were doing that evening on patrol?

18 A.   Yes, sir.  I was on routine patrol in the

19      area of Glenn Avenue and Gay Street.

20 Q.   About 12:30 or 12:45, what happened that

21      led to your contact?

22 A.   We were -- I received a call from dispatch

23      to respond to the area of West Glenn Avenue

6

1    and North College Street in reference to a

2    suspicious white male possibly looking into

3    houses and stopping along the sidewalk on

4    the -- probably the south side of the

5    street on Glenn Avenue.

6  Q.  Did the dispatch give you any more

7      information?

8  A.  They gave me a clothing description.

9  Q.  What was that?

10  A.  I can't remember offhand.  I believe it was

11      something tan at the time.  Tan pants or

12      jacket.

13  Q.  Could it be dark pants?

14  A.  Yes.

15  Q.  If there's other evidence that says it was

16      dark pants, you don't dispute that?

17  A.  No, sir.

18  Q.  Did you proceed to the area where the

19      dispatch had said the call had come from?

20  A.  Yes, sir.

21  Q.  And where was that?

22  A.  I -- It was at College and West Glenn

23      Avenue.  I didn't locate anybody upon that

7

1      area.

2    Q.   What did you do next?

3    A.   I continued to slowly drive down West Glenn

4       passing Wright Street and come up on Toomer

5       Street.

6    Q.   Tell us what happened when you got to

7       Toomer Street?

8    A.   As I was passing Toomer Street, I looked

9       down Toomer Street and saw a white male

10     walking along the -- probably the west

11     sidewalk fitting the description of the

12     clothing thing we got.

13   Q.   About how far away from you was the person

14     when you first saw him?

15   A.   Anywhere from 40 to 50 yards.

16   Q.   What did you do?

17   A.   I backed up and turned down Toomer Street

18     and went to contact him.

19   Q.   As you approached the defendant, what was

20     he doing or what did you observe?

21   A.   He was walking slowly down the sidewalk

22     looking in the direction of houses just

23     walking on the sidewalk.  He wasn't in the

8

1    yard or anything.

2  Q.  And you described his pace as slow?

3  A.  Slow.

4  Q.  What did you do when you got up close to

5      where he was walking?

6  A.  I advised dispatch that I'm out on the

7      possible suspect and I told them I would be

8      out on him.

9  Q.  At that point did you -- were you able to

10     tell the defendant to stop walking?

11  A.  I got out and I called to him.  And at

12     first he continued to walk and I had to

13     draw closer to him.  And I called to him

14     again and he finally stopped.

15  Q.  At that point what, if anything, did you

16     ask him?

17  A.  I asked him what was his name and what was

18     his reason for being in that area.

19  Q.  What did he tell you?

20  A.  He said, Officer, I really don't want to

21     answer those questions; you know, I'm not

22     doing anything; I'm just walking.

23  Q.  Did you say anything else to him at that

9

1    point?

2    A.    Yes, sir.  I asked him for some

3          identification.  He refused.  I asked him

4          two or three other times for identification

5          and he refused and also for his reason for

6          being there.

7    Q.    Okay.  Did you ever tell him why it was

8          that you were there?

9    A.    Yes, sir.

10   Q.    What did you tell him?

11   A.    I told him that we had gotten a call about

12         him walking in the area possibly looking

13         into houses.  I asked him also was he

14         carrying any type of weapon.

15   Q.    When you asked him that, what did he say?

16   A.    He said, no, he wasn't.  At that point in

17         time I told him I was going to conduct a

18         pat-down search.  He had on a large

19         jacket.  He had some bulges in his pants

20         and I was going to check and make sure he

21         didn't have a weapon on him.

22   Q.    Did you do that?

23   A.    Yes, sir.  He said he didn't mind.

10

Q.   And did you find any weapons?

A.   No, I didn't.

Q.   What did you do next?

A.   About that time Lieutenant Dorman showed up
     and we continued to try to get him to tell
     us who he was.

Q.   Did you ask him the same question, what's
     your name?

A.   Yes, sir.

Q.   What did he tell you when you asked him
     again?

A.   He just continued to tell me he was just
     out for a walk.

Q.   Did at some point you ask him why it was
     that he wasn't giving you a name or what,
     if anything, he had as a reason of
     explanation for not doing that?

A.   Yes, sir.

Q.   What did you ask him?

A.   I explained to him that when he's contacted
     by a law enforcement officer and he
     recognizes that fact that he has an
     obligation to give us his name and his

11

1    address and the reason for being in that

2    area.

3  Q.  What did he tell you in response to that?

4  A.  He told me that -- He said, Officer, I

5     understand your interpretation of the law,

6     but I don't agree with it and I'm not going

7     to give it to you.

8  Q.  And this occurred -- he was still on the

9     sidewalk?

10 A.  Right.

11 Q.  Where were you?

12 A.  I was on the sidewalk with him.

13 Q.  At some point you said Officer Dorman

14    arrived on the scene?

15 A.  Yes, sir.

16 Q.  And did he make some attempts to talk to

17    the defendant?

18 A.  Yes, sir, he did.

19 Q.  At some point there did you call for some

20    assistance or to speak with one of your

21    supervisors?

22 A.  Yes, sir.  I called Sergeant Matthews here

23    and asked him to come to the scene to

12

```
 1        further explain to him the law in this

 2        matter.

 3   Q.   So that we're clear at this point, have

 4        you, at this point in the chronology of the

 5        events, informed the defendant that you are

 6        a law enforcement officer and have you

 7        asked him does he recognize you as a law

 8        enforcement officer?

 9   A.   Yes, sir.

10   Q.   And what did he say?

11   A.   He said, Officer, I recognize you as a law

12        enforcement officer, but I'm still not

13        going to tell you my name.  And during that

14        process I also asked him for his wallet.  I

15        said, have you got any ID in your wallet?

16        He says, I'm not going to tell you that.

17   Q.   At some point did you ask him if he was a

18        member of a militia?

19   A.   Well, yes, sir, I did.

20   Q.   And when you asked him that, what did he

21        say?

22   A.   He said, militia?  I said, yeah, a

23        militia.  I said, there are some groups
```

13

1    that don't recognize the laws of this state

2    or this nation and basically they will not

3    give you any information based on their

4    interpretation of the law.

5    Q.    And, in fact, after y'all had that

6          discussion, did you talk to Officer Dorman?

7    A.    Yes.

8    Q.    And then you called Sergeant Matthews?

9    A.    Yes, sir, I did.

10   Q.    What, if anything, did the defendant do

11         while you were talking to Officer Dorman?

12   A.    He kept telling us at one point that he was

13         going to leave.  And I explained to him he

14         doesn't have the right to leave right now,

15         we're conducting an investigation.

16   Q.    Did you ever inform him you had a

17         supervisor on the way?

18   A.    Yes, sir, I did.

19   Q.    After you told him the supervisor was on

20         the way, what did the defendant do?

21   A.    He stood there until Sergeant Matthews

22         drove up.

23   Q.    When Sergeant Matthews drove up, had you

HAISLIP, RAGAN, GREEN, STARKIE & WATSON, P.C.
(334) 263-4455

14

```
 1          already spoken with him over the radio or
 2          do you remember?
 3    A.    I believe I -- Yes, sir, I did.
 4    Q.    When Sergeant Matthews arrived, tell the
 5          Court what happened next.
 6    A.    Sergeant Matthews -- I informed Sergeant
 7          Matthews further on what's going on here,
 8          and he walked over to Mr. McLaurine and
 9          began to question him.
10    Q.    We're going to talk with Sergeant Matthews
11          in just a second about what he did from
12          that point on.  But later in the discussion
13          after Sergeant Matthews arrived and talked
14          to him, did you ever have an occasion to
15          ask the defendant any other reason why he
16          wouldn't be talking to you?
17    A.    Yes, sir.
18    Q.    What did you ask him?
19    A.    Well, as we was waiting on Lieutenant --
20          sorry -- Sergeant Matthews was -- went back
21          to his unit to do something.  I believe he
22          went to call Lieutenant Howell.  I asked
23          him at one point -- just joking just to get
```

15

1   him to say something to us -- I said,

2   you're not talking to me because I'm

3   black?

4   Q.   What did he say, if anything?

5   A.   He just got a little smirk on his face and

6        didn't say a word.

7   Q.   Did you have any other conversations with

8        the defendant at the scene before he was

9        placed under arrest?

10  A.   No, sir.

11  Q.   And at any time --

12  A.   Other than reading him his Miranda rights.

13  Q.   Okay.  At any time prior to him being

14       placed under arrest, did he ever offer the

15       information that you were asking for?

16  A.   No, sir.

17                MR. DAVIDSON:  That's all I have

18                   of this witness.

19                THE COURT:  All right, sir.  In a

20                   little while you're going to

21                   have an opportunity to tell me

22                   whatever you want to tell me.

23                   At this point I want to know

16

 1              if you have any questions that

 2              you want to ask this witness.

 3              MR. McLAURINE:  Yes, sir, I do.

 4              THE COURT:  All right.  Proceed.

 5                   CROSS-EXAMINATION

 6    BY MR. McLAURINE:

 7    Q.   What observations did you make of me on the

 8         night in question prior to contacting me?

 9    A.   You mean on the sidewalk?

10    Q.   (Nods head).

11    A.   Yes, sir.  I saw you slowly walking down

12         the sidewalk looking in the direction of

13         houses.

14    Q.   Your police report and complaint you filed

15         indicated that I was contacted while

16         walking.  Did you observe me stopping other

17         than to address you?

18    A.   No, sir.

19    Q.   What procedures do you use to verify the

20         information provided by the caller?

21              MR. DAVIDSON:  Judge, I'm going to

22              object to that question.

23              That's not at issue in this

17

1     case.  It's not relevant if he

2     uses any procedures.  What's

3     relevant is he did get a

4     dispatch and he acted and

5     responded thereto.

6              MR. McLAURINE:  I understand that,

7          Your Honor.  But the motions I

8          filed previously were on

9          probable cause and reasonable

10         suspicion, which you indicated

11         would be reviewed at the time

12         of the trial when the evidence

13         was presented.  This goes to

14         probable cause.

15             THE COURT:  State your question

16         again.

17   Q.   What procedures did you use to verify the

18        information provided by the caller?

19             MR. DAVIDSON:  Judge, this is in

20         line of a civil question about

21         a civil matter.  If we're

22         talking about what procedures

23         the City of Auburn has in

18

1   place or what the officer

2   uses, that's not relevant at

3   this case in this matter.  If

4   he wants to ask him what his

5   probable cause was, that's a

6   fair question and we'll be

7   glad to answer those.

8   MR. McLAURINE:  Very well.  I'll

9   do that.  I'm sorry.  I need

10  to find this particular

11  document here.  Procedures

12  established in common law for

13  verifying the veracity of

14  anonymous callers require

15  independent observation of

16  police officers.  That is what

17  I'm particularly trying to

18  address, what information or

19  what actions did the officer

20  take prior to contacting me to

21  establish probable cause other

22  than the call from the

23  anonymous caller.  That's

19

1          basically what I'm trying to

2          get to here.

3          MR. DAVIDSON:  Judge, that's all

4          well and good, but this isn't

5          the right time or place.

6          THE COURT:  It's not any evidence

7          before the Court, unless I had

8          a mental lapse; that it was an

9          anonymous call, is there?

10         MR. McLAURINE:  The caller refused

11         to identify himself or leave

12         any way to contact, anything

13         but his first name.  He

14         refused to have -- I have the

15         audiotape if you want to hear

16         it.

17         THE COURT:  Huh-uh (negative

18         response).

19         MR. DAVIDSON:  Judge, the City has

20         not offered that call.  We're

21         not here about what dispatch

22         was told.  We simply begin

23         this case and are prosecuting

20

1     based on what the officer was

2     told and what happened

3     thereafter.

4          THE COURT:  I'm going to sustain

5          the objection and ask you to

6          move forward.

7          MR. McLAURINE:  All right.

8   Q.   In the police report and complaint that you

9        filed that I was in an abandoned

10       neighborhood.  Why do you think the area

11       was an abandoned neighborhood?

12  A.   I believe it was during the Thanksgiving

13       break, holiday break where the majority of

14       the students are out of town.  And that's

15       when we have the majority of our burglary

16       calls.

17  Q.   Have you seen the videotape from your car

18       of the arrest?

19  A.   No, sir, I have not.

20  Q.   That evening do you recall that if the

21       neighborhood was abandoned why you and your

22       fellow officers waved by four other cars in

23       the span of 10 minutes on the videotape?

21

1    A.    You said wave?

2    Q.    Yeah.  There were four other cars that went

3          by on the videotape where you had to wave

4          them by because your car was blocking the

5          road.  If it was an abandoned neighborhood,

6          why were those people allowed to pass

7          through the neighborhood?

8    A.    When I say abandoned, I mean there's hardly

9          any residents there.  Normally there's cars

10         lining both sides of the street.  Other

11         than that, at that particular day it was

12         abandoned.  Nobody was there but you.

13   Q.    No.  I'm talking about moving cars.  I'm

14         not talking about parked cars.  Four people

15         drove past, one of which you personally

16         waved by.  I'm asking you, if the

17         neighborhood was abandoned and no one

18         should have been there, why weren't those

19         people stopped and questioned by you and

20         the other police officers?

21   A.    Because you fit the description.

22                MR. McLAURINE:  Okay.  Your Honor,

23                   most of the rest of the

22

1            questions I have go to the

2            probable cause and the

3            strikage issues that you said

4            would be dealt with after we

5            hear the evidence.  So I have

6            no further questions at this

7            time from this witness.

8            THE COURT:  Any redirect?

9            REDIRECT EXAMINATION

10  BY MR. DAVIDSON:

11  Q.   Officer Bean, at some point you told us in

12       your prior testimony that the defendant was

13       placed under arrest?

14  A.   Yes, sir.

15  Q.   You read him his rights?

16  A.   Yes, sir.

17  Q.   And he was handcuffed and transported to

18       the county jail?

19  A.   Yes, sir, he was.

20  Q.   And he was charged for obstructing

21       governmental operations?

22  A.   Yes, sir, he was.

23  Q.   And what was the operation that was

23

1    obstructed?

2    A.    He had an obligation to give his name and

3          address to a law enforcement officer when

4          asked, especially in an official capacity.

5          And he told me out of his own mouth that he

6          recognized me as a law enforcement officer,

7          and that's why he was placed under arrest

8          under that statute.

9                    MR. DAVIDSON:  Okay.  That's all I

10                   have of this officer.

11                   THE COURT:  Do you have any other

12                   questions?

13                   MR. McLAURINE:  Again, not until

14                   later.

15                   THE COURT:  Call your next

16                   witness.

17             * * * * * * * * * * * *

18                   **SERGEANT MATTHEWS**

19         The witness, after having first been duly sworn

20    to speak the truth, the whole truth and nothing but

21    the truth testified as follows:

22                   DIRECT EXAMINATION

23    BY MR. DAVIDSON:

24

1   Q.   Sergeant Matthews, do you recall the

2        incident we're talking about here today?

3   A.   I do.

4   Q.   And were you called to the scene that you

5        heard described?

6   A.   I was.

7   Q.   About what time, if you remember?

8   A.   I was called to the scene at approximately

9        42 minutes after midnight.

10  Q.   Tell the Court what you observed when you

11       arrived there.

12  A.   Officer Bean and Lieutenant Dorman were on

13       the scene.  Mr. McLaurine was standing on

14       the sidewalk on the -- the sidewalk of

15       Toomer Street in front of one of the

16       two-story residences between Glenn Avenue

17       and Genelda Avenue.

18  Q.   What was the first thing you did upon

19       arrival?

20  A.   I met with Officer Bean to find out what

21       the situation was that he needed my

22       assistance with.

23  Q.   Based on what y'all discussed, did you take

25

1    any action?

2    A.    Yes.  I approached Mr. McLaurine and

3          identified myself as the patrol

4          supervisor.  I asked Officer Bean if he had

5          been -- a pat-down search had been

6          conducted because he had on a -- I believe

7          it was a leather coat.  Officer Bean said

8          that he had.  I asked if he had been

9          Mirandized and I asked Officer Bean if he

10         had his video equipment on.  At that point

11         I engaged Mr. McLaurine in a conversation

12         about why he would not identify himself.

13   Q.    Before you asked him why he wouldn't

14         identify himself, did you ever ask him what

15         his name was?

16   A.    I did.

17   Q.    What did he tell you?

18   A.    He said that he wasn't going to answer that

19         question.

20   Q.    And then you asked him what his reasons

21         were?

22   A.    I did.

23   Q.    What did he tell you?

26

1    A.    He said that he did not feel like that he

2          needed to answer that question.  He didn't

3          feel like that we had any reason to stop

4          him.

5    Q.    In response to that, what did you do?

6    A.    I informed him that we had received a call

7          from a complainant that the officer had

8          stopped him based on an investigative stop

9          to find out why he was in a neighborhood

10         that is mostly unpopulated at this time of

11         the night.  And I explained to him that,

12         you know, the officer had a duty to

13         investigate any calls that he receives and

14         also explained to him that he had a duty

15         and was compelled to answer the basic

16         identifying questions if the officer

17         directed him to do so.

18   Q.    You mentioned that it was mostly an

19         abandoned neighborhood that particular

20         night.  Why is that?

21   A.    It was during one of the holiday breaks and

22         that neighborhood is the majority of

23         University students.  It's right next to

27

1    campus.  During that time in the

2    Thanksgiving break most of those houses and

3    apartments are vacant.  We have every

4    season an increase in burglary activity in

5    those areas.  As a matter of fact, we had

6    had one right across the street on Glenn

7    Avenue either that night or the night

8    before that had been reported.

9  Q.  And were you aware of that when you arrived

10    at the scene that evening?

11  A.  Yes.

12  Q.  And you explained to the defendant why you

13    were asking for all this information?

14  A.  Yes.

15  Q.  Did he ever acknowledge or say that he

16    didn't understand why you were asking --

17  A.  He did not.  As a matter of fact, he said

18    that he understood that the law says that

19    he was compelled to answer, but he did not

20    agree with that interpretation.  We

21    discussed the recent Supreme Court ruling

22    on that fact, and he said that he was aware

23    of that ruling and did not agree with it.

28

Q.   At some point did you inform the defendant
     that you needed to go to the car and make a
     phone call?

A.   I did.

Q.   And what did the defendant say when you
     told him that?

A.   He said that he was going to go ahead and
     leave.  At that point I informed him that
     he could not leave, and he said that he was
     going to leave unless I detained him.  And
     I told him to consider himself detained.

Q.   Did he ever take any steps to leave at that
     point?

A.   He said that he was going to leave unless I
     physically detained him and started to take
     one step.  And I put my left hand on his
     shoulder and I said, consider yourself
     physically detained at this point and I
     don't expect you to leave until I get back;
     I need to check with my supervisor and see
     if he wants to come to the scene for
     further conversation with him.

Q.   Did you ask him if he was going to leave if

29

```
 1         you removed your hand from him?

 2    A.   I did.

 3    Q.   What did he tell you?

 4    A.   And he said that he would, and so I

 5         instructed Officer Bean to physically

 6         detain him until I returned.  I explained

 7         to Mr. McLaurine that I just needed to make

 8         one phone call and it would only take a

 9         minute.

10    Q.   At that point Officer Bean and the

11         defendant were together?

12    A.   Yes.

13    Q.   You made your call and then came back?

14    A.   That's correct.

15    Q.   Did you have any other communications with

16         the defendant before Lieutenant Howell

17         arrived?

18    A.   I did.  When I finished with the phone

19         conversation with Lieutenant Howell, I got

20         out of the car.  At this point

21         Mr. McLaurine and Officer Bean and

22         Lieutenant Dorman had moved in front of

23         Officer Bean's patrol car in view of the
```

30

1    video camera, so they were actually

2    standing in the street. I again approached

3    Mr. McLaurine and offered him I guess what

4    you would call a last chance and said, you

5    know, I've called the shift commander. I

6    again explained that all we needed was his

7    name and address just to make sure that he

8    wasn't a career burglar, a wanted person, a

9    terrorist, you know, something like that;

10   if he checked out clean and everything was

11   fine, he would be free to go.

12   Q.  And what, if anything, did he do?

13   A.  He said he understood that, but he wasn't

14       going to answer the question. And then I

15       explained to him -- or I asked him if he

16       was willing to go to jail over something as

17       trivial as giving his name, and he said if

18       that's what has to happen.

19   Q.  What happened after Lieutenant Howell

20       arrived?

21   A.  When Lieutenant Howell arrived, I spoke

22       with him very briefly. I had already

23       explained the situation over the phone.

31

1    Lieutenant Howell had a short conversation

2    with him and then we placed him under

3    arrest.

4    Q.   After he was placed under arrest, you, in

5         fact, did another pat-down and obtained ID?

6    A.   Correct.  We searched his person incident

7         to the arrest and found his wallet which

8         contained his identification.

9                   MR. DAVIDSON:  That's all I have

10                  of this witness.

11                  THE COURT:  Do you have any

12                  questions of this witness?

13                  MR. McLAURINE:  Yes, sir, I do.

14                  CROSS-EXAMINATION

15   BY MR. McLAURINE:

16   Q.   You're sure that I tried to physically

17        leave after I was physically contacted by

18        police officers?

19   A.   You did take a step away from me.

20   Q.   Okay.  You're sure that I said that I

21        disagreed with the decision of the Supreme

22        Court and not that I disagreed with your

23        interpretation of the Supreme Court?

32

A.  We discussed that point on two or three

different occasions.  I don't remember your

exact words, but you made it very clear

that you did not agree with my

interpretation or the Court's

interpretation.  I told you I had just read

the Court's decision, and you said that you

didn't agree with it.

            MR. McLAURINE:  Okay.  For now

                that's all I have of this

                witness.

            THE COURT:  Any redirect?

            MR. DAVIDSON:  No, sir.

            THE COURT:  Call your next

                witness.

            MR. DAVIDSON:  I think the City

                will rest at this point.

            THE COURT:  All right.  Sir, at

                this time you can present

                whatever evidence you like.

            MR. McLAURINE:  Is it possible at

                this time to address probable

                cause?

33

1    THE COURT:  Yes, sir.  Go ahead.

2    MR. McLAURINE:   In -- There's

3    several issues of probable

4    cause that I have issue

5    with -- and reasonable

6    suspicion.  Principally the

7    issue is Alabama v. White and

8    Illinois v. Gates reference

9    that police officers may not

10   strictly use an anonymous

11   phone call in order to -- or

12   an unverified phone call

13   unless the call represents

14   immediate physical danger to

15   the public or represents a

16   felony charge.  The actual

17   call which I have here and I'd

18   like to play for you so that

19   you can hear what was actually

20   made in the complaint call,

21   the description of what was

22   actually listed.  May I do

23   that now?  I have a transcript

34

1                if you prefer to read it.

2        MR. DAVIDSON:  Judge, I'm going to

3                object to the introduction of

4                the transcript.  I think the

5                tape is the best evidence, if

6                it's the tape.  I know what

7                the City has provided, but I

8                don't know if what he's going

9                to give you is what the City

10               provided.

11       MR. McLAURINE:  Well, if the City

12               would like to provide that,

13               I'd be more than willing to

14               listen to their version of it.

15       THE COURT:  Let me back up.  You

16               started quoting those two

17               cases and you said that it

18               prohibited an officer from ...

19               But you never got around to --

20       MR. McLAURINE:  From using that

21               solely.  Basically the officer

22               would have to perform

23               independent observation of the

35

subject to identify that what
the caller said was probably
true.

THE COURT:  For -- To justify an
arrest?

MR. McLAURINE:  To justify
probable cause.

THE COURT:  Do you have copies of
those cases with you?

MR. McLAURINE:  No, sir, I don't.
But I do have the citations in
this addendum to the motion.

THE COURT:  Does the City care to
respond?

MR. DAVIDSON:  Judge, without
having the opportunity to see
the cases and know what they
say, I think it would be not
very prudent at this point.  I
don't think we're dealing with
probable cause to talk to
him.  I think that's being
confused with probable cause

36

1     to make an arrest, which is a

2     whole separate issue.

3     THE COURT:  Do you want to give me

4     those cites?

5     MR. McLAURINE:  Yes, sir.  I can

6     give you this copy here.

7        There's several other

8     issues that I want to raise on

9     probable cause.  Let me give

10     you a copy as well.  That's

11     the gist of the first one.

12     The second one is --

13     THE COURT:  Let me ask you this

14     question:  On this sheet of

15     paper that you just handed me,

16     under paragraph number two it

17     says, the facts presented by

18     the City of Auburn do meet

19     grounds for probable cause per

20     Harris --

21     MR. McLAURINE:  That's a typo.

22     I'm sorry.  That should say do

23     not.  And that refers to --

37

1    The specific statute I'm

2    charged with violating is

3    15-5-30, I believe.  This is a

4    Xerox of the Alabama Code's

5    commentary on 15-5-30.  If

6    you'll look at the second

7    column here where it starts

8    with driving, it specifically

9    says that driving slowly in a

10    neighborhood in the morning

11    early is not the type of

12    specific or factual basis to

13    give rise to a particularized

14    suspicion; that is, this

15    particular person is engaged

16    in wrongdoing.  That's an

17    Alabama citation.  Basically

18    what it's saying is that being

19    in a neighborhood in the wee

20    hours of the morning is not in

21    and of itself probable cause.

22    MR. DAVIDSON:  Judge, may I

23    respond?

38

THE COURT: No. That's not what
it says. It says driving a
car slowly.

MR. McLAURINE: Okay. So you're
distinguishing that there is a
difference between suspicion
between someone walking and
someone driving?

THE COURT: I didn't say that. I
just corrected your
misstatement.

MR. McLAURINE: Do you agree that
walking through a neighborhood
in the wee hours of the
morning is grounds --

THE COURT: I don't think it's my
position to agree or disagree
with that at this point.

MR. McLAURINE: All right. The
third is the facts presented
being in -- me being in -- the
defendant being in an
abandoned neighborhood are

39

1    false.  The video evidence

2    demonstrates that the area was

3    not abandoned and there were

4    four people -- four cars that

5    passed through the area.

6    Usage patterns and city

7    records indicate that the area

8    is not distinctly a

9    residential neighborhood.  The

10   City has zoned the area as

11   US.  In the previous motion I

12   gave a copy of this particular

13   city ordinance indicating that

14   the zone is used for

15   residential, institutional --

16   basically for University

17   purposes -- and commercial

18   uses as well.

19       My actual purpose for

20   being in the neighborhood that

21   evening was I was on my way to

22   Subway, which is a restaurant

23   a few hundred yards away that

40

1      was open until one o'clock in

2      the morning.

3           The assertions by the

4      City that this area was

5      abandoned and had no -- nobody

6      had any business being in that

7      area are not true.  Their

8      argument is flawed.

9           Those are my issues for

10     probable cause.  I have

11     reasonable suspicion issues as

12     well, but if the prosecutor

13     would like to respond to those

14     in any way.

15     THE COURT:  Mr. Davidson, do you

16     care to respond to that

17     presentation?

18     MR. DAVIDSON:  Judge, first, we're

19     not taking the position that

20     he didn't have a right to be

21     on the street.  We're not here

22     about whether or not you can

23     be in a public sidewalk in an

41

1   area of town where students

2   predominantly live who are out

3   of town during that time

4   period. What he's charged

5   with is not the violation

6   under Section 15, although

7   that was an unlawful act and

8   he could have been charged

9   with that. What he is charged

10  with is violation of

11  13A-10-2, which is obstructing

12  governmental operations. And

13  at the very basis of that

14  statute is when a person

15  commits the crime of

16  obstructing of governmental

17  operations they can do that by

18  committing some other unlawful

19  act. In this case the

20  unlawful act is not giving the

21  information; the name, the

22  identification. And we've got

23  the intent clearly established

42

here. He's asked four or five or six or a dozen times do you recognize me as a police officer, do you understand the law says you have to answer and are you going to answer, and repeatedly he says no. So we think we've satisfied the intentional requirement of 13A-10-2.

And then we've also established a violation of the other Code section, which quite frankly he could have been prosecuted for, which he is not being prosecuted for. But that establishes all the elements. If this is taken as some type of motion to dismiss at this juncture in the case, we would think the City has presented more than ample evidence not only to get past

43

1   this stage of the trial, but

2   for a conviction.

3   THE COURT:  Well, sir, I have not

4   read the cases that you've

5   given me citations for, but

6   reading the -- this brief

7   section of the notes after

8   Section 15-5-30, it appears to

9   me that you're confusing

10  probable cause for an arrest

11  and probable cause for a

12  stop.  But the stop that we

13  have before the Court began as

14  a noncustodial stop, and you

15  just don't really have to have

16  much probable cause to make

17  one of those.

18  MR. McLAURINE:  Okay.

19  THE COURT:  And I think the fact

20  the dispatch called and said

21  the person was acting

22  suspiciously in this

23  neighborhood -- and I don't

44

want us to spend too much time
on this abandoned issue.  I'm
supposed to come into every
case blind, but I would be a
village idiot if I didn't
recognize that during the
Thanksgiving break this town
sort of disappears.

    Do you have anything else
that you want to say at this
time?

MR. McLAURINE:  I guess on
probable cause, no.  But I
would like to address
reasonable suspicion.  I would
also like to point out one
other issue.  I don't think
the prosecutor was here at the
other hearings in which we
specifically identified that I
would be charged with 15-5-30
and it was amended to the
record.  I don't know if he

45

1    was aware of that.  Do you

2    recall doing that?

3    THE COURT:  I don't have

4    independent recollection of

5    that.  That's why I write

6    everything down.

7    MR. DAVIDSON:  Your Honor, I can

8    say on behalf of the City,

9    we're prosecuting this case

10   today until the City rests,

11   which -- under 13A-10-2, which

12   is what he was charged with

13   the night of the incident.

14   THE COURT:  It seems to me like,

15   if my memory is jogged a

16   little bit, if I'm recalling

17   correctly, the City indicated

18   that they were going to go for

19   it under both of those

20   statutes; is that correct?

21   MR. McLAURINE:  It was both parts

22   of 13-10-2-A [sic], and it was

23   my prompting that basically

46

1    made you realize that -- The

2    point about it is is there's

3    nothing in 13-10-2-A that

4    specifically says I have to

5    give my identification to a

6    police officer when

7    presented.  It basically gives

8    a vague thing basically saying

9    if you interfere with a

10    legitimate government

11    process.  15-5-30 establishes

12    that under certain conditions

13    police officers do have the

14    right under Alabama law to

15    demand identification.  The

16    question that we're dealing

17    with here in reasonable

18    suspicion is -- that's --

19    we're doing multiple --

20    THE COURT:  Mr. McLaurine, let's

21    do this.  Let's go ahead with

22    this trial and let's do all of

23    this argument after all of the

47

1    evidence is presented.

2    MR. McLAURINE:  May I quickly

3    address reasonable suspicion?

4    Because that's very relevant

5    to the case.

6    THE COURT:  I just got through

7    telling you that I wanted to

8    have argument after all the

9    evidence is admitted.  Do you

10    have any evidence you want to

11    admit?

12    MR. McLAURINE:  Yes, sir.  I have

13    what was presented in

14    discovery to me.

15    THE COURT:  Well, let's go forward

16    with that.

17    MR. McLAURINE:  The audiotape, I'd

18    like to play it if the

19    prosecutor --

20    THE COURT:  Does the City have any

21    objection?

22    MR. DAVIDSON:  Judge, only to the

23    extent that I don't know

48

1    what's on the tape, but for --

2    I don't know if there's been

3    any alterations. I'm not

4    suggesting there is. But I

5    know what was given to me and

6    it is on a CD that the Court

7    can hear and I'll agree to put

8    that into evidence. You don't

9    have to listen to it right

10    now, but you can take that

11    under advisement.

12    MR. McLAURINE: If they want to

13    play that one, I don't have an

14    objection to doing that.

15    THE COURT: How long is it?

16    MR. McLAURINE: The whole thing is

17    10 minutes, but we only need

18    the first few minutes because

19    that's just the call. It's

20    like 90 seconds, I believe,

21    something like that.

22    MR. DAVIDSON: Judge, with all due

23    respect, we're going to play

49

1    the whole thing and we're

2    going to give the Court every

3    opportunity to listen to it.

4    I don't have the ability to do

5    it right here, but we can

6    certainly offer it, let the

7    Court go into chambers, put it

8    in the computer and listen to

9    it at this time or some other

10   time when Mr. McLaurine can

11   step back there with you and

12   listen to it while we do some

13   other business.  Makes no

14   difference to me.

15   THE COURT:  Let's try to do that

16   as soon as we get done with

17   everything else.  Go ahead and

18   do it today.

19   MR. DAVIDSON:  Okay.

20   MR. McLAURINE:  I guess basically,

21   Your Honor, I'll just say what

22   I have to say, then, if we're

23   going to do this afterward.

50

1    THE COURT:  I understand that

2    you're not an attorney, but do

3    you have any more evidence you

4    want to admit?

5    MR. McLAURINE:  I'd like to tell

6    my side of the story.

7    THE COURT:  All right.

8    MR. McLAURINE:  Basically I was

9    walking on my way to Subway to

10   get some food.  The police

11   officer pulled up.  He stopped

12   me.  He asked me for ID.  I

13   refused.  I asked him why he

14   wanted identification.  He

15   said, we got a call about

16   somebody carrying something.

17   I told him I found that

18   insufficient reason why I

19   should have to tell him what

20   I'm doing, that somebody was

21   carrying something.

22       Most of the other facts

23   are fairly close to what

51

happened.  I disagree that I tried to leave after I was physically seized by the officers.  I disagree that they told me they were going to pat me down before they started searching me.  And I disagree with their assertion that I said I disagreed with the Court's decision.  I told them that they needed to look at the details of the Court decision that they were referring to before they made a decision about arresting me.  And the reason is because the Court decision itself -- the name of it is Heibel -- does not offer absolute authority for a police officer to demand identification from a person walking down the street.

52

1          And this basically comes

2     down to I was walking down the

3     street going to get something

4     to eat and the police wanted

5     to know what I'm doing.  This

6     is not the first time this has

7     happened to me.  And I --

8     That's why I refused.  I've

9     done everything in my power to

10    basically stop the police from

11    continually harassing me at

12    night and --

13    THE COURT:  I don't want to get

14    into any of that.  We've got

15    one charge.

16    MR. McLAURINE:  That's fine.  That

17    was my motivation behind it.

18          Let's see.  Other

19    evidence I might have, other

20    than what has already been

21    introduced in previous

22    motions, no.

23    THE COURT:  Does the defense rest?

53

1       MR. McLAURINE:  Yes, sir.

2       THE COURT:  Argument?

3       MR. DAVIDSON:  Judge, you already

4           heard the City's position how

5           we're traveling under

6           violation of a statute that

7           rises to obstructing

8           governmental operations.

9           Title 15 requires the

10          defendant to identify

11          himself.  He didn't do that.

12          Under 13A-10-2 we've told the

13          Court the person can commit

14          the crime of obstructing

15          governmental operations if

16          they commit some other

17          independently unlawful act

18          intentionally.  We think we've

19          established that element and

20          we think the unlawful act is

21          the Title 15 problem.

22      THE COURT:  All right, sir.  Do

23          you have any argument you want

54

1        to give me?

2            MR. McLAURINE:  Yes, sir.  On the

3        reasonable suspicion issue,

4        the actual phrasing of

5        15-5-30, which is the statute

6        that I'm accused of unlawfully

7        doing, it says the officer

8        must have reasonable suspicion

9        that a crime is about to be

10       committed, has been committed,

11       such-and-such basically along

12       those lines.

13            Terry v. Ohio, the Terry

14       stop case, the Court quoted a

15       lower court when describing

16       someone who saw someone

17       casing -- identification.  The

18       description in the -- in Terry

19       v. Ohio is of an officer

20       seeing three men walk back and

21       forth in a pattern 24 times

22       obviously casing a building

23       and what appeared to him to be

55

1    conspiring to rob the joint --

2    rob the building.

3    The lower court stated in

4    the Supreme Court quoting that

5    it would be stretching the

6    facts beyond reasonable

7    comprehension to find that

8    Officer McFaddin had probable

9    cause to arrest the man before

10    he patted him down for

11    weapons.

12    THE COURT:  Sir, you have just

13    confirmed what I said

14    previously.  There's a

15    difference between probable

16    cause for an arrest and

17    justification for a

18    noncustodial stop, and I don't

19    think you comprehend that

20    difference.

21    MR. McLAURINE:  Okay.

22    THE COURT:  Those are two

23    completely different things in

56

```
 1              the eyes of the law.
 2       MR. McLAURINE:  Okay.
 3       THE COURT:  Do you have further
 4          argument?
 5       MR. McLAURINE:  Only that I would
 6          like to call the officers back
 7          to describe what procedures
 8          they took under the first
 9          cause of the probable cause
10          issue that they have to have
11          in order to have reason to --
12       THE COURT:  Arrest.
13       MR. McLAURINE:  Well, I'm
14          identifying probable cause as
15          reason to stop and reasonable
16          suspicion as cause to arrest.
17          If my terminology is wrong, I
18          apologize.  But that's what
19          I'm -- basically what I'm
20          arguing.
21       THE COURT:  What specific question
22          or questions do you want to
23          ask?
```

57

1    MR. McLAURINE:  I want to know

2        what independent actions the

3        police took to verify what the

4        caller basically had to say

5        and that the -- the caller

6        actually alleged that a crime

7        was being committed.  Because

8        if there was no crime being

9        committed, then it's basically

10       hearsay, as I understand it,

11       what the complaint call was.

12   MR. DAVIDSON:  Your Honor, the

13       defendant has rested.  There

14       is no provision allowing him

15       to call another witness at

16       this point.

17   MR. McLAURINE:  This is the

18       reasonable suspicion issue

19       that you said you wanted to

20       handle after the arguments.

21   THE COURT:  I said I wanted to

22       hear the argument regarding

23       that issue.  I would not -- I

58

1    would have sustained an

2    objection to that had we gone

3    forward with that line of

4    questioning earlier.

5         Again, I want to state

6    that I think that you, in your

7    legal research, have

8    misconstrued what is required

9    for an officer to make a

10    noncustodial stop versus what

11    is required to support a valid

12    arrest.  Now, do you want to

13    give any argument regarding

14    the total case as to why the

15    Court should find you not

16    guilty?

17         MR. McLAURINE:  Other than that,

18    Your Honor, other than I was

19    walking down the street.  I

20    feel that they need a

21    reasonable -- that a crime was

22    being committed.  They have to

23    have some form of information

59

1      indicating that a crime was

2      being committed in order for

3      them to stop me -- or about to

4      be committed.  And they've

5      presented no evidence that a

6      crime was committed or about

7      to be committed by me in any

8      way, shape or form.

9      THE COURT:  Anything else you want

10         to tell me?

11     MR. McLAURINE:  Other than the

12         previous motions and I'd like

13         to have the tape heard.  Other

14         than that ...

15     THE COURT:  Mr. Davidson, do you

16         have any rebuttal?

17     MR. DAVIDSON:  Nothing further,

18         Your Honor.

19     THE COURT:  Well, what I'm going

20         to do is lay this file aside

21         for a brief period.  Let's see

22         if we can get some of these

23         other folks out of here and

60

1                    then we'll have a tape

2                    listening.

3                 (Proceedings were concluded at

4                 approximately 2:00 p.m.)

5

6           * * * * * * * * * * * * *

7

8                REPORTER'S CERTIFICATE

9 STATE OF ALABAMA:

10 MONTGOMERY COUNTY:

11           I, Lyn Daugherty, Certified Shorthand

12 Reporter and Commissioner for the State of Alabama

13 at Large, do hereby certify that I reported the

14 proceedings in the matter of:

15           CITY OF AUBURN,

16           Plaintiff,

17           vs.

18           WILLIAM S. McLAURINE,

19           Defendant.

20           IN THE MUNICIPAL COURT FOR

21           AUBURN, ALABAMA

22           Civil Action No. MC04-0060431

23 on Thursday, March 31st, 2005.

61

1    The foregoing 59 computer-printed pages

2    contain a true and correct transcript of the

3    examination of said witnesses by counsel for the

4    parties set out herein.

5    I further certify that I am neither of kin

6    nor of counsel to the parties to said cause nor in

7    any manner interested in the results thereof.

8    This 13th day of April 2005.

9

10

11

12    Lyn Daugherty,
       Certified Shorthand Reporter
13    And Commissioner for the
       State of Alabama at Large

14

15

16

17

18

19

20

21

22

23

## MOTION IN LIMITING

| | |
|---|---|
| CITY OF AUBURN, | ) Action No(s):  CC-05-289 |
| Plaintiff, | ) MC04-0060431 |
| | ) 04015246 |
| v. | ) STATE OF ALABAMA |
| | ) In the Circuit Court |
| WILLIAM S. McLAURINE | ) of Lee County |
| Defendant | ) |

The defense requests that prosecution and its witnesses be limited in the ability to introduce material pertaining to the telephone call prior establishing the proper predicate of independent police corroboration of anonymous telephone calls as required in *Barnette ex parte*, 624 So.2d 507 (Ala. Crim. App 1993).

November 29, 2005
Date

William McLaurine, defendant
222 Tichenor Avenue #4
Auburn, Alabama  36830



FILED
NOV 29 2005
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

I certify the delivery and/or mailing of this document, MOTION IN LIMITING to Mathew White,

November 29, 2005
Date

William McLaurine, defendant
222 Tichenor Avenue #4
Auburn, Alabama  36830

## INTERROGATORY TO THE COURT

CITY OF AUBURN,                           )       Action No(s):  CC-05-289
                                          )                      MC04-0060431
    Plaintiff,                        )                      04015246
                                          )
v.                                        )       STATE OF ALABAMA
                                          )       In the Circuit Court
WILLIAM S. McLAURINE                      )       of Lee County
                                          )
    Defendant                         )

The defendant request that the court determine as a matter of law of the State of
Alabama, based all appropriate material, if failure to produce a name, identification, and
reason for being present in an area, at the demand of law enforcement agent, constitutes a
crime enforceable under Alabama Law. It is further requested that the court determine
this question for the cases of reasonable suspicion being present, and reasonable
suspicion not being present.

November 29, 2005
Date

William McLaurine, defendant
222 Tichenor Avenue #4
Auburn, Alabama  36830



FILED
NOV 2 9 2005
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

I certify the delivery and/or mailing of this document, INTERROGATORY TO THE COURT to Mathew White,

November 29, 2005
Date

William McLaurine, defendant
222 Tichenor Avenue #4
Auburn, Alabama 36830

## NOTICE OF DEFENSE

CITY OF AUBURN,        )  
                          )  
       Plaintiff,       )  
                          )  
v.                     )  
                          )  
WILLIAM S. McLAURINE     )  
                          )  
       Defendant      )

Action No(s): CC-05-289  
                MC04-0060431  
                04015246

STATE OF ALABAMA  
In the Circuit Court  
of Lee County

This is formal notice of the some of DEFENSES raised by the defendant. This notice is not intended to exclude any defense from consideration at this time or any future time. The following defenses should be considered:

The law or laws used to prosecute the defendant are unconstitutional on some and/or all of the following grounds: Violation of the Fourth Amendment to the Constitution of the United States, and all of its provisions; Violation of the Fifth Amendment to the Constitution of United States, and all of its provisions; the law(s) being used to prosecute the defendant are VOID FOR VAGUENESS; Violation of some an/or all VESTED RIGHTS under the constitutions, statutory, and/or common law of the United States and/or the State of Alabama that allow citizens to refuse to respond to police during questioning and/or protect citizens from unlawful seizure.

FILED  
NOV 2 9 2005  
IN OFFICE  
CORINNE T. HURST  
CIRCUIT CLERK

The DEFENSES raised in this NOTICE should be considered to apply in all proceedings and considerations in this matter, including, but not limited, the burden of proof requirements placed on the prosecution for probable cause and/or reasonable suspicion.

November 29, 2005  
Date

William McLaurine, defendant  
222 Tichenor Avenue #4  
Auburn, Alabama 36830

I certify the delivery and/or mailing of this document, NOTICE OF DEFENSE to Mathew White,

November 29, 2005
Date

William McLaurine, defendant
222 Tichenor Avenue #4
Auburn, Alabama 36830

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

CITY OF AUBURN,⬤    *
         Plaintiff,    *
                       *
vs.                    *    CASE NUMBER: CC-05-289
                       *
WILLIAM S. MCLAURINE,  *
         Defendant.    *

## ORDER

This matter came before the Court on the Docket Call on this date. At the request of the City of Auburn, Alabama Prosecutor, the trial of this case is continued to **May 1, 2006 at 9:00 a.m. in courtroom number four of the Lee County Justice Center.** A status conference is set for **March 21, 2006 at 9:00 a.m.** and all pending Motions will be argued at that time.

DONE this the _2nd_ day of _December_, 2005.



John V. Denson, II
Circuit Judge

cc:    Matthew W. White
       Mr. William McLaurine
       222 Tichenor Avenue, #4
       Auburn, Alabama 36830

FILED

DEC 0 2 2005

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

# IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

CITY OF AUBURN,
      Plaintiff,

vs.

WILLIAM McLAURINE,
      Defendant.

        \*
        \*
        \*
        \*     Case No. CO-05-269
        \*
        \*
        \*

**FILED**

MAR 2 8 2006

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

## ORDER

This matter came before the Court pursuant to this Court's Order of December 2, 2005 setting the matter for a Status Conference and Hearing on all pending Motions. Present in Court was Mr. Matthew W. White, Prosecutor for the City of Auburn, and the Defendant, William S. McLaurine, *Pro Se*. Mr. McLaurine argued extensively on all pending Motions, basically contesting the "probable cause" for this arrest.

The facts as the Court understands them to be are:

In the early morning[1] of November 27, 2004 Officer Bean, Auburn Police Department (APD), responded to a telephone call from an anonymous caller, known only as "Ron," who stated that a "mysterious man" was walking on a particular street in Auburn. The caller stated that the man was stopping and looking in to various buildings and that he had something in his hand. The caller also gave the APD a general description of the clothing the man was wearing.

Officer Bean stated that APD was concerned about people walking around at this time of the night because this was during the Thanksgiving Holidays when many of the students were gone. The past experience of the APD is that it is during times like this, especially late at night, when the students are gone and their apartments are unattended, that a number of crimes, break-ins, burglary, etc., occur.

When the Officer responded to the call he arrived on the scene and observed the Defendant, walking slowly down the sidewalk. The Defendant met the description the Officer had received from the dispatcher at APD. The Defendant was stopped and questioned pursuant to §15-5-30, *Code of Alabama*, 1975, as amended. The Defendant refused to give the Officers his name, address, and reason for being in the area as required by §15-5-30 of the *Code*. Several other Officers arrived and also requested that

---

[1] About 12:30 or 12:45 AM, testimony of APD Officer Bean, Trial transcript, at p. 5.

1

the Defendant provide the required information. He continued to refuse to provide any information requested. The Officers then placed the Defendant under arrest for violation of §13A-10-2, *Code of Alabama*, 1975, as amended, for failure to provide information required by §15-5-30 of the *Code*.

The Defendant was convicted in the City Court of Auburn, Alabama, on April 20, 2005 of violation of §13A-10-2(a) (1) & (2), *Code of Alabama*, 1975, as amended. The Defendant gave notice of appeal of his being found Guilty of this offense by the City Court. This case is before this Court for a trial *de novo*.

After hearing the arguments made by the Defendant as to all of his pending Motions, the Court **DENIES** each and every Motion and finds that there was "probable cause" for his arrest. The Court in making its determination of a finding that "probable cause" existed at the time of the arrest relies on Hiibel V. 6th Judicial District of Nevada, Humboldt County, 542 U.S. 177, 124 S.Ct 2451 (2004). The Court further finds that pursuant to the "stop and identify statute, §15-5-30 of the *Code*, and the telephone call from the unidentified caller, the Officers had "probable cause" to confront the Defendant and to ask him for his name, address and what he was doing in the area at this time of night. The Defendant's failure to provide the information pursuant to this section of the *Code* gave the Officers sufficient cause to arrest the Defendant for violation of §13A-10-2, of the *Code*.

The Defendant insists on representing himself and proceeding *pro se*, and has discharged his Court appointed attorney.

Therefore it is **ORDERED, ADJUDGED** and **DECREED** that:

a.   All pending Motions of the Defendant are DENIED; and,

b.   This case is set for Trial, *de novo*, on May 1, 2006.

DONE this 28 day of March, 2006.

John V. Denson, II
Circuit Judge

Copy to:
   Matthew W. White
   Mr. William McLaurine
   222 Tichenor Ave., #4
   Auburn, AL 36830

DENSON    Panels: 1,2,6,9

```
IR210                    ALABAMA JUDICIAL INFORMATION SYSTEM              PAGE:        1
ER: PLC                          LEE COUNTY                      RUN DATE: 05/01/2006
                           STRIKE LIST BY: PANEL #               RUN TIME: 10:26:02
RM DATE: 05/01/2006    PANEL: ALL    STATUS: A
```

| IKE | JUROR# | JUROR'S NAME/COMMENTS | BIRTH DATE | SEX | RAC | PNL | STATUS | #DFR |
|---|---|---|---|---|---|---|---|---|
| | | ~~BROWN HERBERT DALE~~ H745.2956/C740.0774 | 12/19/1934 | M | W | 01 | ACTIVE | 00 |
| | | H334.214.9772/W706.324.1234/C706.575.2629 | 02/03/1960 | F | W | 01 | ACTIVE | 01 |
| | | H821.6322/C524.5234 | 12/12/1947 | F | W | 01 | ACTIVE | 00 |
| | | H737.1983/W298.2554 | 03/06/1960 | M | W | 01 | ACTIVE | 00 |
| 77) | 028979 | HEILMAN URSULA JUNG H887.8069/C703.5190 | 09/11/1947 | F | W | 01 | ACTIVE | 00 |
| 08 | 011991 | ~~LEWIS CAROLINE MARSH~~ C334.524.7791 | 03/05/1980 | F | W | 01 | ACTIVE | 00 |
| 13) | 035110 | MILLER KENNETH NOLAN 749.6023/705.8408 | 10/22/1948 | M | W | 01 | ACTIVE | 03 |
| 78 | 012991 | ~~VANCE JOHN SPRINGER~~ C524.4849/W821.3399 | 09/05/1949 | M | W | 01 | ACTIVE | 00 |
| | | H745.3155/W705.8100/C444.271 | 12/18/1957 | F | B | 01 | ACTIVE | 00 |
| 02) | 009938 | ~~BURR TD DANNY JAY~~ H749.9970/W705.8100/C703.7927 | 02/04/1966 | M | W | 02 | ACTIVE | 02 |
| 17) | 014491 | BRACKIN MICHAEL GLENN H826.7820/W750.4110 | 01/06/1958 | M | W | 02 | ACTIVE | 00 |
| | 004197 | ~~HENDERSON VICKIE CHARLYNE~~ H826.5340/W745.7121/C332.8882 | 01/02/1970 | F | B | 02 | ACTIVE | 00 |
| 31 | 010111 | HOFFMAN CHARLES EDWARD H749.1039 | 11/04/1954 | M | W | 02 | ACTIVE | 00 |
| | | H887.7357/W844.3300/C703.6010 | 10/06/1957 | M | W | 02 | ACTIVE | 00 |
| 6) | | H745.4524 | 09/23/1933 | M | W | 02 | ACTIVE | 01 |
| 2) | 000032 | MOSS GLENDA HUGHLEY H502.4745/W887.8038 | 09/01/1951 | F | B | 02 | ACTIVE | 00 |
| | | H74?.3698/W749.9487/C703.3976 | 07/02/19 | | B | 03 | ACTIVE | 01 |
| | | H?5.09??/C750.40?? | 04/19/1957 | M | W | 03 | ACTIVE | 00 |
| | | H48.48??/W448.70?? | 06/25/1945 | | | 03 | ACTIVE | 01 |
| | | H502.57??/W745.?062/C4??.6102 | 01/??/1974 | M | W | 03 | ACTIVE | 01 |
| | | H741.4155/W50?.23??/C87?.536.??? | 08/11/1965 | M | W | 03 | ACTIVE | |
| | | H745.5269/C787.0165 | ?/09/1928 | F | B | 03 | ACTIVE | 00 |
| | | H737.3026/W334.727.0540/C444.5855 | 01/31/1966 | F | B | 03 | ACTIVE | 00 |

*City vs. William McLaurine*
*Obstructing Gov. Off.*

```
R210                          ALABAMA JUDICIAL INFORMATION SYSTEM                    PAGE:        2
ER: PLC                              LEE COUNTY                        RUN DATE: 05/01/2006
                              STRIKE LIST BY: PANEL #                  RUN TIME: 10:26:02
RM DATE: 5/01/2006       PANEL: ALL      STATUS: A

KE JUROR   JUROR'S NAME/COMMENTS          BIRTH DATE SEX RAC PNL STATUS      #DFR
```

| | | BIRTH DATE | SEX | RAC | PNL | STATUS | #DFR |
|---|---|---|---|---|---|---|---|
| | H720.0274/W706.596.3301/C706.566.7104 | 04/07/1948 | M | W | 03 | ACTIVE | 00 |
| | H9PL.5085/W844.2289 | 11/21/1953 | M | W | | CTIVE | 00 |
| | H741.7 4 | 10/07/1957 | F | | 04 | ACTIVE | 00 |
| | H821.5860/706.683.8839/C334.332.4096 | 08/28/1949 | | W | 04 | ACTIVE | 01 |
| | H501.5847/W 5.4711/C750.2777 | 07/11/18 | F | W | 04 | ACTIVE | 00 |
| | 502.8400 | 05/ 1939 | F | W | 04 | ACTIVE | 00 |
| | H214.9005/W298.93 | 13/1960 | M | B | 04 | ACTIVE | 00 |
| | 448.2515/706.257.137 70 | 04/25/1965 18.7546 | F | W | 04 | ACTIVE | 03 |
| 03140 WAKE CHRISTOPHER HEL | H749.4333/WS01.8807/ 0398 | 08/12/1979 | M | W | 04 | ACTIVE | 00 |
| | H745.6386/C707.04 | 07/16/1947 | M | W | 04 | ACTIVE | 00 |
| | H444.4821/W334 7.4471X506/ 34.559.1011 | 10/13/1953 | | W | 05 | ACTIVE | |
| | H298.6318/W .4656/C706.566.32 | 16/1969 | F | W | 05 | ACTIVE | 00 |
| | H887.183 706.645.4509 | 08/ 1948 | M | W | 05 | ACTIVE | 00 |
| | H887 5/W528.4002/C740.6919 | 03/06/ 51 | F | B | 05 | ACTIVE | 01 |
| | H .0172/W745.9711 | 08/19/19 | F | W | 05 | ACTIVE | 00 |
| TIMOTHY SHANE | 45.6696/W745.2159/C444.1957 | 05/06/1957 | M | W | 05 | ACTIVE | 00 |
| | H298.7137/C706.315.0312 | 11/16/1942 | | W | 05 | ACTIVE | 00 |
| TAYLOR JR | W887.7557 | 07/01/1975 | M | | 05 | ACTIVE | 01 |
| | H297.8875/W706.641.3632/C706.366.0401 | 08/15/1955 | | W | 06 | ACTIVE | 00 |
| FRI | H297.8292/W298-0026/C706.888.5422 | | | | | | 00 |
| 042314 BURKHALTER VERLYN MIMS | 826.6395 | 10/16/1939 | F | W | 06 | ACTIVE | |
| CJ | H502.9603/W844.1862/C332.4639 | 11/01/1962 | M | W | 06 | ACTIVE | 00 |
| 045819 FLYNN CLAUDE VICTOR | H745.0679/W745.5181/C332.0194 | 12/18/1932 | M. | W | 06 | ACTIVE | 00 |

```
R210                    ALABAMA JUDICIAL INFORMATION SYSTEM
ER: PLC                          LEE COUNTY                        RUN DATE: 05/01/2006    PAGE: 3
                            STRIKE LIST BY: PANEL #                RUN TIME: 10:26:02
RM DATE: 05/01/2006      PANEL: ALL      STATUS: A                 RUN TIME: 10:26:02
RIKE JUROR# JUROR'S NAME/COMMENTS              BIRTH DATE  SEX  RAC  PNL  STATUS    #DFR

      028074 MAULDIN WILLIAM WILEY
             H826.3080/W501.0257/C728.2979    10/11/1943   M    W   06   ACTIVE     00
             H821.3614/W844.3638/C740.0890    07/06/1969   F    W   06   ACTIVE     00
             H826.1795/C444.0415              07/10/1984   
             H502.6104/C559.0904              09/04/1963   F    B        ACTIVE     00
       001240 W     5585/C334.275.1367        04/01/1981   M    W   07   ACTIVE     01
             H826.6   /W705.5550              10/14/19     M    B   07   ACTIVE     
             H749.7228/   2.0454              12/8   937    M    W   07   ACTIVE     00
             WK 745.7599/GN    9.5746         03/1967      M    W   07   ACTIVE     00
             H502.4328                        11/16/1949   M    W   07   ACTIVE     00
             H741.8555/W705.5340/     5264    04/06/1962   M    W   07   ACTIVE     00
             04/07/1944   M    W   07   ACTIVE     00
             H706.577.3181   06.322.2411      /14/1956     M    W   08   ACTIVE     00
             H745.451   24.5022                07/  1947   F    W   08   ACTIVE     01
             H821   /W821.1127/C559.8494      06/08/1      F    B   08   ACTIVE     
             .8107/W826.8700/C332.1277        10/04/1947   M    W   08   ACTIVE     
             H749.8674/W887.6688              01/10/1971   F        28   ACTIVE     00
             H742.2043/W742.9098/C524.7004    09/07/1970   M    W   0    CTIVE      03
             07/06/1961   F    B   08   AC
       004997 HOERR FREDERIC JOHN
             H887.5618/W844.4987              05/02/1952   M    W   09   ACTIVE     00
       002003 KNIGHT JOHNNIE WARD C
             H745.0965/W745.9333              07/01/1947   F    B   09   ACTIVE     00
       029826 MCREYNOLDS CHRISTI STEWART N    09/12/1976   F    W   09   ACTIVE     00
             H706.315.8650/W706.221.9536
             H291.0140/W480.8868/C706.442.0540  05/01/1963  F   B   09   ACTIVE     00
       7969  NORTON HARVEY RUSSELL            08/15/1959   M    W   09   ACTIVE     00
             C706.570.0411
```

```
JR210                    ALABAMA JUDICIAL INFORMATION SYSTEM              PAGE:      4
ER: PLC                          LEE COUNTY                        RUN DATE: 05/01/2006
                         STRIKE LIST BY: PANEL #                   RUN TIME: 10:26:02
RM DATE: 05/01/2006      PANEL: ALL      STATUS: A
E JUROR# JUROR'S NAME/COMMENTS              BIRTH DATE SEX RAC PNL STATUS        #DFR
```

| | BIRTH DATE | SEX | RAC | PNL | STATUS | #DFR |
|---|---|---|---|---|---|---|
| H745.2433/W749.6168 | 05/05/1966 | F | W | 09 | ACTIVE | 00 |
| H887.3173 | 10/18/1940 | M | W | 09 | ACTIVE | 00 |
| 188) 021985 WOLFE PATRICIA ANN | 07/09/1969 | F | W | 09 | ACTIVE | 00 |
| H749.5760/W528.6867/C703.0191 | | | W | 10 | ACTIVE | 00 |
| H741.5423/W332.2146 | 09/02/1954 | M | W | | TIVE | 00 |
| 29  7450/298.4547 | 07/02/1951 | M | W | | ACTIVE | 01 |
| H821.  84/W887.3741 | 07/14/1960 | M | | 10 | ACTIVE | 00 |
| H749.485  W705.8514 | 05/12/1969 | | W | 10 | ACTIVE | 00 |
| H298-0827/  6.681.5740/C706.681.2684 | 06/14/197 | M | W | 10 | ACTIVE | 01 |
| H  6571/W20A 71.3240/C706.326.5 | 03/14/  5 | F | W | 10 | ACTIVE | 00 |
| H749.8994/W706.77  1133 | | | | | | 00 |
| H448.9975/W706.570.2  3/C448  37 | 02/1958 | M | W | 11 | ACTIVE | 00 |
| GARRISON KEREA | 09/09/1956 | F | W | 11 | ACTIVE | 01 |
| H826.7416/W844.3180/C55  4 | 01/31/1961 | F | B | 11 | ACTIVE | 01 |
| H334.214.0814/W334.8  107 | 12/02/1964 | M | B | 11 | ACTIVE | 00 |
| 887-5904/749-5651  -319-0427 | /10/1978 | M | W | 11 | ACTIVE | 07 |
| H749.0404/W741.  8/332.3722 | 07/  /1947 | F | W | 11 | ACTIVE | 03 |
| H887.8776/W70  999/C334.703.5969 | 08/03  960 | F | W | 11 | ACTIVE | 01 |
| H  /  /C703  5 | 04/17/19  | F | W | 11 | ACTIVE | 00 |
| ADAMS  H741.93  W706.257.6522/C706.464.8829 | 05/0 /19 5 | | W | 12 | ACTIVE | 00 |
| H745.  03/C444.7073 SULLIVAN | 11/03/1952 | F | W | 12 | ACTIVE | 00 |
| H8  0148/C334.728.0347 | 09/07/1936 | F | | 12 | ACTIVE | 00 |
| H  0285/W749.3411/C559.8400 | 12/16/1963 | M | W | 2 | ACTIVE | 00 |
| 821-9559 CLINTON | 01/04/1942 | M | W | 1 | ACTIVE | 02 |

Alternate    DENSON    Panels: 1, 2, 6, 7

R210
ER: PLC
ALABAMA JUDICIAL INFORMATION SYST.
LEE COUNTY
STRIKE LIST BY: PANEL #

RM DATE: 05/01/2006    PANEL: ALL    STATUS: A

RUN DATE: 05/01/2006    PAGE: 1
RUN TIME: 10:26:02

| RIKE JUROR# | JUROR'S NAME/COMMENTS | BIRTH DATE | SEX | RAC | PNL | STATUS | #DFR |
|---|---|---|---|---|---|---|---|
| | H745.2956/C740.0774 | 12/19/1934 | M | W | 01 | ACTIVE | 00 |
| | H334.214.9772/W706.324.1234/C706.575.2629 | 02/03/1960 | F | W | 01 | ACTIVE | 01 |
| | CIAMPI LAURENCE GALE H821.6322/C524.5234 | 12/12/1947 | F | W | 01 | ACTIVE | 00 |
| | H737.1937/W748.2554 | 03/06/1960 | M | W | 01 | ACTIVE | 00 |
| | H887.8067/C703.5190 | 09/11/1947 | F | W | 01 | ACTIVE | 00 |
| | C334.524.7791 | 03/05/1980 | F | W | 01 | ACTIVE | 00 |
| | MILLER KENNETH HELEN 747.6023/705.8408 | 10/22/1948 | M | W | 01 | ACTIVE | 03 |
| | C524.4849/W821.3399 | 09/05/1949 | M | W | 01 | ACTIVE | 00 |
| 84) 046477 | WELCH VERNELL COOKS H745.3155/W705.8109/C444.2214 | 12/18/1957 | F | B | 01 | ACTIVE | 00 |
| 07 009938 | BARRETO DANNY JAY H749.9970/W705.8100/C703.7927 | 02/04/1966 | M | W | 02 | ACTIVE | 02 |
| | H826.7820/W750.4110 | 01/06/1958 | M | W | 02 | ACTIVE | 00 |
| | H826.5340/W745.7121/C332.8882 | 01/02/1970 | F | B | 02 | ACTIVE | 00 |
| | ALLEN EDWARD H749.1039 | 11/04/1954 | M | W | 02 | ACTIVE | 00 |
| | H887.7357/W844.3300/C703.6010 | 10/06/1957 | M | W | 02 | ACTIVE | 00 |
| | H745.4524 | 09/23/1933 | M | W | 02 | ACTIVE | 00 |
| | H502.6745/W887.8038 | 09/01/1951 | F | B | 02 | ACTIVE | 00 |
| | BARR BRENDA HARRIS H74.3808/W749.9487/C703.3976 | 07/02/19 | | B | 03 | ACTIVE | 01 |
| | COLA RANDELL 725.07 /C750.40 | 04/19/1957 | M | W | 03 | ACTIVE | 00 |
| | BURNS IVAN PHIL 448.48 /W448/7 | 06/2 /1945 | M | W | 03 | ACTIVE | 01 |
| | VANCE JOSHUA ADAMS 1502.575 /W745. 062/C4 .6102 | /1974 | M | W | 03 | ACTIVE | 01 |
| | H747.4155/W50 23 3/C87 536.0 | 08/11/1965 | M | W | 03 | ACTIVE | 00 |
| | H745.5269/C787.0165 | 1/09/1928 | F | B | 03 | ACTIVE | 00 |
| | BULLATTE WANDA EDWARDS H737.3026/W334.727.0540/C444.5855 | 01/31/1966 | F | B | 03 | ACTIVE | 00 |

City vs. William McLaurin
Obstructing Gov.

```
R210                        ALABAM.  JUDICIAL INFORMATION SYST
ER: PLC                              LEE COUNTY                      RUN DATE:   PAGE:    2
                            STRIKE LIST BY: PANEL #                  RUN DATE:  05/01/2006
RM DATE: 5/01/2006    PANEL: ALL    STATUS: A                        RUN TIME:  10:26:02
KE JUROR  JUROR'S NAME/COMMENTS              BIRTH DATE SEX RAC PNL STATUS    #DFR
    017338                                   04/07/1948  M   W  03  ACTIVE     00
          H  0.0274/W706.596.3301/C706.566.7104
          H88 085/W844.2289                  11/21/1953  M   W  0   CTIVE     00
          H741.7                             10/0 /1957  F      04  ACTIVE     00
 074388                                      08/28/1949      W  04  ACTIVE     00
          H821.586  706.683.8839/C334.332.4096
          H501.5847/W  5.4711/C750.2777      07/11/1       F   W  04  ACTIVE    01
          502.8400                           05/   1939  F   W  04  ACTIVE     00
          H214.9005/W298.9                    13/1960  M   B  04  ACTIVE     00
          448.2515/706.257.137    70   18.7546   04/25/1965  F   W  04  ACTIVE   03
 03 40                                       08/12/1979  M   W  04  ACTIVE     00
          H749.4333/W501.8807/C     0398
          H745.6386/C707.04                  07/16/1947      W  04  ACTIVE     00
          H444.4821/W334   7.4471X506/  34.559.1011  10/13/195   W  05  ACTIVE   00
          H298.6318/W     4656/C706.566.3    16/1969  F   W  05  ACTIVE     00
          H887.183   706.645.4509            08/  /1948  M   W  05  ACTIVE     00
          H887    5/W528.4002/C740.6919      03/06/ 51  F   B  05  ACTIVE    01
          H   .0172/W745.9711                08/19/19    F   W  05  ACTIVE     00
          745.6696/W745.2159/C444.1957       05/06/1957  M   W  05  ACTIVE     00
          H298.7137/C706.315.0312            11/16/1942      W  05  ACTIVE     00
          W887.7557                          07/01/1975  M      05  ACTIVE    01
          H297.8875/W706.641.3632/C706.366.0401  08/15/1955  F   W  06  ACTIVE   00
          H297.8292/W298-0026/C706.888.5422                       06  ACTIVE     00
          826.6395                           10/16/1939  F   W  06  ACTIVE     00
 000470   DENNEY THOMAS STEWART JR           11/01/1962  M   W  06  ACTIVE     00
          H502.9603/W844.1862/C332.4639
          H745.0679/W745.5181/C332.0194      12/18/1932  M.  W  06  ACTIVE     00
```

```
R210                    ALABAI  JUDICIAL INFORMATION SYST M          RUN DATE:    PAGE:    4
ER: PLC                            LEE COUNTY                         RUN DATE: 05/01/2006
                        STRIKE LIST BY: PANEL #                       RUN TIME: 10:26:02
RM DATE: 05/01/2006    PANEL: ALL    STATUS: A
```

| E JUROR# | JUROR'S NAME/COMMENTS | BIRTH DATE | SEX | RAC | PNL | STATUS | #DFR |
|---|---|---|---|---|---|---|---|
| 185) 011992 | WEBSTER MARIE ENNIS | 05/05/1966 | F | W | 09 | ACTIVE | 00 |
| | H745.2433/W749.6168 | | | | | | |
| | WHATLEY | | | | | ACTIVE | 00 |
| | H887.3173 | | | | | | |
| | GRAY SARAH T | 07/09/1969 | F | W | 09 | ACTIVE | 00 |
| | H749.5760/W528.6867/C703.0191 | | W | 10 | | | 00 |
| | H741.5423/W332.2146 | 09/02/1954 | M | W | | ACTIVE | |
| 29 | 7450/298.4547 | 07/02/1951 | M | W | | ACTIVE | 01 |
| | ALEXANDER ROSS | 07/14/1960 | M | | 10 | ACTIVE | |
| | H821. 284/W887.3741 | | | | | | |
| | WAYNE | 05/12/1969 | | W | 10 | ACTIVE | |
| | H749.485 /W705.8514 | | | | | | |
| | N MICHAEL | 06/14/197 | M | W | 10 | ACTIVE | 01 |
| | H298-0827/W .681.5740/C706.681.2684 | | | | | | |
| | DAWN | 03/14 5 | F | W | 10 | ACTIVE | |
| | H88 . 0521/W706. 71.5240/C706.326.5 | | | | | | |
| | ENNIS MA | | | | | | 00 |
| | H749.8994/W706.77 1133 | | | | | | |
| | LEE | 02/1958 | M | W | 11 | ACTIVE | 00 |
| | H448.9975/W706.570.2 3/C448 37 | | | | | | |
| | HARRISON | 09/09/1956 | F | W | 11 | ACTIVE | 01 |
| | H826.7416/W844.3180/C55 | | | | | | |
| | MARY SMITH | 01/31/1961 | B | 11 | | ACTIVE | 01 |
| | H334.214.0814/W334.85 5107 | 12/02/1964 | M | B | 11 | ACTIVE | 00 |
| | 887-5904/749-5651 4-319-0427 | 10/1978 | M | W | 11 | ACTIVE | 07 |
| | H749.0404/W741. 8/332.3722 | 07/ 0/1947 | F | W | 11 | ACTIVE | 03 |
| | H887.8776/W 4999/C334.703.5969 | 08/03 960 | F | W | 11 | ACTIVE | 01 |
| | CHELLE | 04/17/ 4 | F | W | 11 | ACTIVE | 00 |
| | H741.931 /W706.257.6522/C706.464.8229 | 05/08/17 5 | | W | 12 | ACTIVE | 00 |
| | H745. 3/C444.7073 IVAN | 11/03/1952 | F | W | 12 | ACTIVE | 00 |
| | H8 148/C334.728.0347 SHO | 09/07/1936 | F | | 12 | ACTIVE | 00 |
| | 9.0285/W749.3411/C559.8400 AY | 12/16/1963 | M | W | 12 | ACTIVE | |
| | 821-9559 CLINTON | 01/04/1942 | M | W | 1 | ACTIVE | 02 |

City vs. William McLaurine    Obstructing Gov. Op.

CC.05-289                    5-1-06

City                              Dept.

3 - 122                           3 - 172

2 - 97                            2 - 79

1 - 102                           1 - 107

Alternate

1 - 46                                1 - 183

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

CITY OF AUBURN,                    )
                                   )
        PLAINTIFF,                 )
                                   )
vs.                                )        CASE NO: CC-05-289
                                   )
WILLIAM S. MCLAURINE,              )
                                   )
        DEFENDANT.                 )

## CITY'S REQUESTED JURY CHARGES

### REQUEST #1

Asking questions is an essential part of police investigations. In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment.

*Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County,* 542 U.S. 177, *185, 124 S.Ct. 2451, **2458 (U.S.Nev.,2004)

### REQUEST #2

A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

*Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County,* 542 U.S. 177, *186, 124 S.Ct. 2451, **2458 (U.S.Nev.,2004); citing *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

### REQUEST #3

Obtaining a suspect's name in the course of a *Terry* stop serves important government interests. Knowledge of identity may inform an officer that a suspect is wanted for another offense, or has a record of violence or mental disorder. On the other hand, knowing identity may help clear a suspect and allow the police to concentrate their efforts elsewhere.

*Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County,* 542 U.S. 177, *186, 124 S.Ct. 2451, **2458 (U.S.Nev.,2004).

### REQUEST #4

The principles of *Terry* permit a State to require a suspect to disclose his name in the course of a *Terry* stop.

*Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County,* 542 U.S. 177, *187-188, 124 S.Ct. 2451,**2459 (U.S.Nev.,2004).

### REQUEST #5

The request for identity has an immediate relation to the purpose, rationale, and practical demands of a *Terry* stop. The threat of criminal sanction helps ensure that the request for identity does not become a legal nullity.

*Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County,* 542 U.S. 177, *188, 124 S.Ct. 2451, **2459 (U.S.Nev.,2004).

### REQUEST #6

A state law requiring a suspect to disclose his name in the course of a valid *Terry* stop is consistent with Fourth Amendment prohibitions against unreasonable searches and seizures.

*Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County,* 542 U.S. 177, *188, 124 S.Ct. 2451, **2459 (U.S.Nev.,2004)

### REQUEST #7

generally ignorance or mistake of law is no defense."

Boyd v. State 2006 WL 250832, *2 (Ala.Crim.App.) (Ala.Crim.App.,2006)

### REQUEST #8

Ignorance of the law is no excuse. Citizens are deemed to have constructive knowledge of the

law."

Howell v. State 618 So.2d 134, *142 (Ala.Cr.App.,1992)

### REQUEST #9

There is a presumption of law to the effect that every person intends to do that which he does, and the accused must be presumed to have designed not only what he did, but also the necessary consequences of his act. In other words, criminal intent necessarily follows from an act intentionally done, when such act is unlawful or criminal.

Weeks v. State 24 Ala.App. 198, *199, 132 So. 870, **871 (Ala.App. 1931)

### REQUEST #10

It is true intent is generally an element of crime, but whatever one voluntarily does he of course intends to do, and whenever an act is criminal, the party doing the act is chargeable with criminal intent. Every person is presumed to know the law, and ignorance of the law does not excuse the perpetrator of an unlawful act.

Weeks v. State 24 Ala.App. 198, *199, 132 So. 870, **871 (Ala.App. 1931)

1.

MATTHEW W. WHITE (WH086)
PROSECUTOR, CITY OF AUBURN

OF COUNSEL:
ADAMS, UMBACH,
DAVIDSON & WHITE
Post Office Box 2069
Opelika, Alabama 36803-2069
334-745-6466

### CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon Defendant, by hand delivery in open court; this the _____ day of _____, 2006.

_____

OF COUNSEL

Jury Charge.

The jury must ask the following questions:

Did the officer have reasonable suspicion, as required by statute 15-5-30, in order to stop the defendant for questions?

Did the officer articulate the facts of his suspicions to the defendant, in a complete manner?

Did the officer articulate the facts of his suspicions in a credible manner that could be understood and believed by the defendant?

Did the defendant lack a reasonable belief that the defendant was acting within his lawful rights?

Did the defendant take actions contrary to the law as charged in this case?

Did the defendant knowingly take actions contrary to the law as charge in this case?

If the jury fails to answer yes to any question they must vote "NOT GUILTY".

The defence delivered this document in Court

William S. McLaurine    5-1-06

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

CITY OF AUBURN,                    )
                                   )
        PLAINTIFF,                 )
                                   )
vs.                                )        CASE NO: CC-05-289
                                   )
WILLIAM S. MCLAURINE,              )
                                   )
        DEFENDANT.                 )

## REQUESTED VOIR DIRE

1.  Does any member of the jury panel know the Defendant, William McLaurine, or any

    member of his family?

2.  Has any member of the jury panel ever been stopped by an Auburn Police officer, and felt

    for any reason that you were treated unfairly?

        -Stopped by any police officer?

3.  Me or my firm been on an opposite side of a case from you?

4.  At the close of this case, the Judge will explain law to you - Is there anybody who cannot

    follow the law?

        -Even if you disagree with it?


                            _____
                            MATTHEW W. WHITE  (WHI086)
                            PROSECUTOR, CITY OF AUBURN


OF COUNSEL:
ADAMS, UMBACH,
DAVIDSON & WHITE
Post Office Box 2069
Opelika, Alabama 36803-2069
334-745-6466

## **CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing upon Defendant, by hand delivery in open court; this the ___/___ day of _____, 2006.

_____
OF COUNSEL

Defendants Requested Voir' Dire

Do you know or recognize any person who is a witness or part of the prosecution?

Do you know or recognize the defendant?

Do you believe the fact that the defendant is proceeding without an attorney might prevent you from accepting legal arguments or facts of the case presented by the defense?

Are you or any of your close relatives involved in the law enforcement community, including professional or social organizations such as the bar, or police associations?

Do you believe that racial discrimination or intimidation based on race is acceptable at any time during a police interrogation?

Do you have any difficulty understanding that the burden of proof is on prosecution, and each and every requirement of the law must be proven beyond a reasonable doubt?

Will you have any difficulty rendering a not guilty verdict based on legal reasoning that contradicts your own personal feelings on a subject?

Do you understand that simply being arrested is not enough to be convicted of a crime, and that it's you responsibility as jurors to act as the conscience of the community?

STATE OF ALABAMA
LEE COUNTY

    The Court Reporter having certified that the City's Exhibit No. 2
is a ___VNS tape_____ and the reproduction of said
exhibit is difficult or impractical, I heareby certify that the same is on
file in the office of the Circuit Clerk of Lee County.

                                        *Corinne T Hurst*
                                    Corinne T. Hurst, Circuit Clerk
                                    Lee County

STATE OF ALABAMA

LEE COUNTY

 The Court Reporter having certified that the reproduction of City's
Exhibit No. / is difficult or impractical, I hereby attach said City's
Exhibit No. / to this page of the transcript and certify the same as a
part of the record.

          Corinne Hurst, Circuit Clerk
          Lee County



# City of Auburn
### Home of Auburn University

## CERTIFICATE

I, David F. Watkins, City Manager of the City of Auburn, Alabama, do hereby certify that the attached Ordinance is a true and exact copy of Ordinance No. 1130 as adopted by the City Council of the City of Auburn, Alabama, on the 18th day of August 1983 and is codified in the Code of Auburn, Alabama as Section 13-1.

Witness my hand, under the Seal of the City of Auburn, Alabama, this 1st day of October 2004.

_____
City Manager

SEAL

144 Tichenor Avenue, Suite 1 • Auburn, Alabama 36830
(334) 501-7260 • FAX: (334) 501-7298 • www.auburnalabama.org

Chapter 13

## MISCELLANEOUS PROVISIONS AND OFFENSES

### Sec. 13-1. State offenses adopted.

(a) Any person committing an offense within the corporate limits of the city or within the police jurisdiction thereof, which is declared by a law of the state now existing or hereafter enacted to be a misdemeanor, shall be guilty of an offense against the city.

(b) Any person committing an offense within the corporate limits of the city, or within the police jurisdiction thereof, which is declared by a law of the state now existing or hereafter enacted to be a violation, shall be guilty of an offense against the city.

(c) Any person committing within the corporate limits of the city, or within the police jurisdiction thereof, an offense as defined by Section 13A-1-2 of the Code of Alabama which offense is not declared by a law of the state now existing or hereafter enacted to be a felony, misdemeanor or violation, shall be guilty of an offense against the city.

(d) Any person found to be in violation of subsections (a), (b) or (c) upon conviction shall be punished as provided in section 1-9 of this Code.
(Ord. No. 999, §§ 1—4, 1-8-80; Ord. No. 1130, §§ 1—4, 8-16-83)
**Cross references**—Violation of state statutes or rules on alcoholic beverages, § 3-4; enforcement of state law by police, § 18-2; adoption of penalty for violation of state law prohibition on driving under the influence of alcohol, § 22-10.5.

### Sec. 13-2. Accessory before the fact.

Whoever aids in the commission of any offense punishable by any ordinance or is accessory thereto, whether he directly commits the act constituting the offense, or aids or abets in its commission, though not present, shall be arrested, and tried as principal.
(Code 1956, § 15-1)

### Sec. 13-3. Accessory after the fact.

Any person who, knowing that another has committed a felony, and not occupying the legitimate relation of parent, child, brother, sister, husband or wife to such offender, conceals or gives any other aid to such offender with intent to enable him to avoid or escape from arrest, trial, conviction, or punishment is an accessory after the fact, and upon conviction shall be punished as provided in section 1-9 of this Code.
(Code 1956, § 15-2)

### Sec. 13-4. Use of weapons.

(a) It shall be unlawful for any person to shoot, fire or discharge an air rifle, slingshot, rifle, pistol, shotgun or discharge gravel shooter, blowgun, rubber sling, or implement or device of like character anywhere within the corporate limits of the city.

ORDINANCE NO.   1130

BE IT ORDAINED by the City Council of the City of Auburn, Alabama, as follows:

Section 1.  Any person or corporation committing an offense within the corporate limits of the City of Auburn, Alabama, or within the police jurisdiction thereof, which is declared by a law or laws of the State of Alabama now existing or hereafter enacted to be a misdemeanor, shall be guilty of an offense against the City of Auburn, Alabama.

Section 2.  Any person or corporation committing an offense within the corporate limits of the City of Auburn, Alabama, or within the police jurisdiction thereof, which is declared by a law or laws of the State of Alabama now existing or hereafter enacted to be a violation, shall be guilty of an offense against the City of Auburn, Alabama.

Section 3.  Any person or corporation committing within the corporation limits of the City of Auburn, Alabama, or within the police jurisdiction thereof, an offense as defined by Section 13A-1-2 of the Alabama Criminal Code, which offense is not declared by a law or laws of the State of Alabama now existing or hereafter enacted to be a felony, misdemeanor or violation, shall be guilty of an offense against the City of Auburn, Alabama.

Section 4.  Any person found to be in violation of Sections One (1), Two (2) or Three (3) of this ordinance shall, upon conviction, be punished by a fine of not less than One Dollar ($1.00) nor more than Five Hundred Dollars ($500.00) and/or may be imprisoned or sentenced to hard labor for the City for a period not exceeding six (6) months, at the discretion of the Court trying the case, unless otherwise provided by Sections One (1), Two (2), or Three (3) of this ordinance shall, upon conviction, be punished by a fine of not less than One Dollar ($1.00) nor more than Five Hundred Dollars ($500.00), at the discretion of the Court trying the case.

ORDINANCE NO. 1130
Page 2

Section 5. Any person found to be in violation of Section 32-5A-191, Code of Alabama, 1975, as amended, shall, upon conviction, be punished by a fine of not more than Five Thousand Dollars ($5,000.00) and/or may be imprisoned or sentenced to hard labor for not more than one year.

Section 6. Any ordinance heretofore adopted by the City Council of the City of Auburn, Alabama, which is in conflict with this ordinance is hereby repealed to the extent of such conflict.

Section 7. If any part, section or subdivision of this ordinance shall be held unconstitutional or invalid for any reason, such holding shall not be construed to invalidate or impair the remainder of this ordinance, which shall continue in full force and effect notwithstanding such holding.

Section 8. This ordinance shall take effect upon its approval by the Mayor or upon its otherwise becoming law, but shall be published as required by law and codified as part of the Code of Auburn, Alabama, 1955.

ADOPTED AND APPROVED by the City Council of the City of Auburn, Alabama, this the 16th day of August, 1983.

President of the City Council

ATTEST:

City Manager

TRANSMITTED to the Mayor, this the 17th day of August, 1983.

City Manager

ACTION BY THE MAYOR

APPROVED this the 18th day of August, 1983.

Mayor

ATTEST:

City Manager

176

## NOTICE OF APPEAL OF PRETRIAL ORDER

CITY OF AUBURN,                          )      Action No(s):  CC-05-289
                                         )                     MC04-0060431
     Plaintiff,         )                     04015246
                                         )
v.                                       )      STATE OF ALABAMA
                                         )      In the Circuit Court
WILLIAM S. McLAURINE                     )      of Lee County
                                         )
     Defendant          )


On or about March 28, 2006 Judge Denson issued an order in this case.  This is a
NOTICE OF APPEAL of the rulings of that order as per rule 3(a)2 of the Alabama Rules
of Appellate Procedure, filed withing 42 days of the order, as required by rule 4(b)1.  The
defense request that the circuit clerk notify the proper parties of this notice.


May 8, 2006
Date

William McLaurine, defendant
222 Tichenor Avenue #4
Auburn, Alabama  36830
(334) 524-2175



FILED
MAY 0 8 2006
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

ACR371

**NOTICE OF APPEAL TO THE ALABAMA COURT OF CRIMINAL APPEALS**
ALABAMA JUDICIAL DATA CENTER
BY THE TRIAL COURT CLERK
IN THE CIRCUIT COURT OF
STATE OF ALABAMA VS MCLAURINE WILLIAM S        LEE COUNTY
JUDGE: JOHN V. DENSON II

APPEAL DATE: 05/08/2006

INDIGENCY STATUS:
GRANTED INDIGENCY STATUS AT TRIAL COURT:
APP. TRIAL COUNSEL PERMITTED TO W/D ON APPEAL:     ___ YES   X__ NO
INDIGENT STATUS REVOKED ON APPEAL:                ___ YES   X__ NO
INDIGENT STATUS GRANTED ON APPEAL:                ___ YES   X__ NO
                                                  ___ YES   X__ NO

DEATH PENALTY: NO

APPEAL TYPE: MUNICIPAL CONVICTION

THIS IS AN APPEAL FROM A CONVICTION.

DATE OF CONVICTION: 05/01/2006        DATE OF SENTENCE: 05/25/2006

YOUTHFUL OFFENDER STATUS: DENIED

CO/CASE NUMBER: 43/CC 2005 000289 00
CODE: OGOP    CONVICTION: OBSTRUCTING GOVT     ACTION: CONVICTED
                                               STATUTE: 13A-010-002
SENTENCE:   CONF: 00 YRS 03 MOS 000 DAYS
SENTENCE:   PROB: 01 YRS 00 MOS 000 DAYS       LIFE: NO    LIFEWO: NO

POST-JUDGMENT MOTIONS FILED:       DT FILED    DT DENIED    CON BY AGREE
___ MOTION FOR NEW TRIAL
___ MOTION FOR JUDG. OF ACQUIT
___ MOTION TO W/D GUILTY PLEA
___ MOTION FOR ATTY TO W/DRAW
___ OTHER

COURT REPORTER(S):
ADDRESS:                           *Willie Bennett*
                                   *281 Gateway Dr*
                                   *Opelika AL 36801*
APPELLATE COUNSEL #1:
ADDRESS:                           PRO SE

PHONE NUMBER:
                                   000-000-0000  '      00000
APPELLATE COUNSEL #2:
ADDRESS:

PHONE NUMBER:

APPELLANT (PRO SE):
ADDRESS:                           MCLAURINE WILLIAM S
                                   222 TICHENOR AVE #4
AIS #:                             AUBURN            , AL   368300000
                                   000000
APPELLEE (IF CITY APPEAL):         *Patrick Davidson*
ADDRESS:                           *PO Box 2069*
                                   *Opelika Al 36803*

I CERTIFY THAT THE INFORMATION PROVIDED
ABOVE IS ACCURATE TO THE BEST OF MY                      OPERATOR: KAH
KNOWLEDGE AND I HAVE SERVED A COPY OF                    PREPARED: 05/26/2006
THIS NOTICE OF APPEAL ON ALL PARTIES TO
THIS ACTION ON THIS _26_ DAY OF _May_, _2006_    _____
                                                  CIRCUIT COURT CLERK

## NOTICE OF APPEALS TO THE
## COURT OF CRIMINAL APPEALS OF ALABAMA

| | | |
|---|---|---|
| WILLIAM S. McLAURINE | ) | Action No(s):  CC-05-289 |
| Appellant | ) | MC04-0060431 |
| | ) | 04015246 |
| v. | ) | STATE OF ALABAMA |
| | ) | In the Circuit Court |
| CITY OF AUBURN, and or | ) | of Lee County |
| THE STATE OF ALABAMA | ) | |
| | ) | Dates of Judgments: April 28, 2006; |
| Appellee | ) | May 1, 2006; May 25, 2006 |

In this case, on or about April 28 and/or May 1, 2006 Judge Denson presided over proceedings that led to a conviction in a trial by jury. On or about May 25, 2006 the defendant/appellant was sentenced to $500 in court cost and fines, 3 months incarceration, which was suspended, and one year of unsupervised probation. This is a NOTICE OF APPEAL of the orders, rulings, judgments, verdict(s), and sentences of those proceedings, as per rule 3(a)2 of the Alabama Rules of Appellate Procedure, (and others rules as may be required) filed withing 42 days of the orders and/or rulings, as required by rule 4(b)1.

WHEREAS the 3 month incarceration is already suspended, The defendant/appellant waives stay of probation and fines as per §12-22-173 of the Code of Alabama. This notice of waiver of stay by the defendant/appellant does convey any concept, idea or method of recognition that this sentence is fair or appropriate. The completion of unsupervised probation will hasten the end of the duress experience by the defendant/appellant, and the defendant/appellant recognizes that any condition(s) of bond will be greater than unsupervised probation and the fines and fees already leveed.

June 1, 2006
Date

FILED
JUN 0 1 2006
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

William McLaurine, defendant/appellant
222 Tichenor Avenue #4
Auburn, Alabama  36830
(334) 524-2175

## ORDER TO THE CLERK AND/ OR MOTION TO APPEND
## THE RECORD ON APPEAL

| | | |
|---|---|---|
| WILLIAM S. McLAURINE | ) | Action No(s): CC-05-289 |
| | ) | MC04-0060431 |
| Appellant | ) | 04015246 |
| | ) | STATE OF ALABAMA |
| v. | ) | In the Circuit Court |
| | ) | of Lee County |
| CITY OF AUBURN, and or | ) | Dates of Judgments: March 29, |
| THE STATE OF ALABAMA | ) | 2006; April 28, 2006; May 1, 2006; |
| | ) | May 25, 2006 |
| Appellee | ) | |

On or about June 1, 2006 the defendant filed a NOTICE OF APPEALS TO THE COURT OF CRIMINAL APPEALS OF ALABAMA AND THE SUPREME COURT OF ALABAMA. The defendant/appellant requests that all information and/or proceding of the clerk's record be included. The defendant is filing concurrent with this motion ARAP 1C- "Recorders Transcript Record-Criminal", for inclusion of transcripts. T he defendant/appellant further requests that the RECORD ON APPEAL be amended to include information normally omitted from the RECORD ON APPEAL as per Rule 10 of the Alabama Rules of Appellate Procedure (hereafter referred to as ARAP).

The appellant requests that as per Rule 10(a)1 ARAP, that subpoenas or summons for any witness or the order therefor, and for the defendant be included in the RECORD ON APPEAL. The appellant requests that as per Rule 10(a)2 ARAP, motions and orders of continuance be included in the RECORD ON APPEAL. The appellant requests that as per Rule 10(a)4 ARAP, that all pretrial discovery material that is not made part of the trial court's proceedings be included in the RECORD ON APPEAL.

June 1, 2006
Date

William McLaurine, defendant/appellant
222 Tichenor Avenue #4
Auburn, Alabama 36830
(334) 524-2175



FILED
JUN 0 1 2006
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

## CERTIFICATE OF SERVICE

WILLIAM S. McLAURINE     )

         Appellant     )

                       )

v.                     )

                       )

CITY OF AUBURN, and or     )

     THE STATE OF ALABAMA     )

                       )

         Appellee     )

Action No(s):  CC-05-289
                 MC04-0060431
                 04015246
STATE OF ALABAMA
 In the Circuit Court
of Lee County

The defendant attests that the devices entitled ARAP-1C "REPORTER'S TRANSCRIPT ORDER-CRIMINAL", and "ATTACHMENT TO ARAP 1C 'REPORTER'S TRANSCRIPT ORDER-CRIMINAL" were sent by registered mail to the following pursuant to the Alabama Rules of Appellant Procedure, including, but not limited to Rule 44 for appeals of Constitutional Law:

Judge John V. Denson II

2311 Gateway Dr.

Opelika, Alabama 36801

District Attorney Nick Abbot

2311 Gateway Drive

Opelika, Alabama 36801

Prosecutor Matthew White

C/O Adams, Umbach, Davidson, & White

Post Office Box 2069

Opelika, Alabama 36803-2609



FILED
JUN 0 1 2006
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

Court of Criminal Appeals
300 Dexter Avenue
Montgomery, Alabama  368104

Willie Bennet
C/O office of Judge John V. Denson II
2311 Gateway Dr.
Opelika, Alabama 36801

Janet Smith
C/O office of Judge Walker
2311 Gateway Dr.
Opelika, Alabama  36801

Kim Ingram
709 Lee Road 34
Opelika, Alabama  36804

Lyn Daugherty
C/O Haislip Ragan, Green, Starkie, & Watson, P.C.
566 South Perry Street #201
Montgomery, AL  36104

Troy King
Office of the Attorney General
Alabama State House
11 South Union Street, Third Floor
Montgomery, AL  36130

Charles Duggan
Office of the City Manager
144 Tichenor Avenue, Suite 1
Auburn, Alabama  36830

June 1, 2006
Date

William McLaurine, defendant/appellant
222 Tichenor Avenue #4
Auburn, Alabama  36830
(334) 524-2175

## CERTIFICATE OF SERVICE

WILLIAM S. McLAURINE )

     Appellant )

v. )

CITY OF AUBURN, and or )
    THE STATE OF ALABAMA )

    Appellee )

Action No(s): CC-05-289
         MC04-0060431
         04015246
STATE OF ALABAMA
 In the Circuit Court
of Lee County

The defendant attests that the devices entitled ARAP-26 "COURT OF CRIMINAL APPEALS DOCKETING STATEMENT", "NOTICE OF APPEALS TO THE COURT OF CRIMINAL APPEALS OF ALABAMA" ,"ORDER TO THE CLERK AND/OR MOTION TO APPEND THE RECORD ON APPEAL", and "NOTICE TO ATTORNEY GENERAL OF CONSTITUTIONAL CHALLENGE" were sent by registered mail to the following pursuant to the Alabama Rules of Appellant Procedure, including, but not limited to Rule 44 for appeals of Constitutional Law:

Judge John V. Denson II

2311 Gateway Dr.

Opelika, Alabama 36801

Prosecutor Matthew White

C/O Adams, Umbach, Davidson, & White

Post Office Box 2069

Opelika, Alabama 36803-2609

District Attorney Nick Abbot

2311 Gateway Drive

Opelika, Alabama 36801



FILED

JUN 0 1 2006

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

Court of Criminal Appeals
300 Dexter Avenue
Montgomery, Alabama  368104

Troy King
Office of the Attorney General
Alabama State House
11 South Union Street, Third Floor
Montgomery, AL  36130

Charles Duggan
Office of the City Manager
144 Tichenor Avenue, Suite 1
Auburn, Alabama  36830

June 1, 2006
Date

William McLaurine, defendant
222 Tichenor Avenue #4
Auburn, Alabama  36830
(334) 524-2175

## NOTICE TO ATTORNEY GENERAL OF
## CONSTITUTIONAL CHALLENGE

| | | |
|---|---|---|
| WILLIAM S. McLAURINE | ) | Action No(s):  CC-05-289 |
| | ) | MC04-0060431 |
| Appellant | ) | 04015246 |
| | ) | STATE OF ALABAMA |
| v. | ) | In the Circuit Court |
| | ) | of Lee County |
| CITY OF AUBURN, and or | ) | |
| THE STATE OF ALABAMA | ) | |
| | ) | |
| Appellee | ) | |

This is notice to the Attorney General of Alabama that a challenge to the constitutional validity of a law of Alabama, and the law as adopted by City of Auburn, is being made. The appellant claims that that the law and statutes charged in this case are unconstitutional under either or both of the constitutions of Alabama and of the United States of America.

June 1, 2006
Date

William McLaurine, defendant/appellant
222 Tichenor Avenue #4
Auburn, Alabama  36830
(334) 524-2175



FILED

JUN 0 1 2006

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

| State of Alabama Unified Judicial System Form ARAP-26 (front)   8/91 | COURT OF CRIMINAL APPEALS DOCKETING STATEMENT | Criminal Appeal Number CC-05-289 |
| --- | --- | --- |

**A. GENERAL INFORMATION:**

☑ CIRCUIT COURT ☐ DISTRICT COURT ☐ JUVENILE COURT OF _Lee_

_William McLaurine_ COUNTY

_____, **Appellant**

v.  ☐ STATE OF ALABAMA  ☑ MUNICIPALITY OF _Auburn_

| Case Number _CC-05-289_ | Date of Complaint or Indictment _May 2, 2005_ | Date of Judgment/Sentence/Order _March 29 2006_ _April 28 2006 ; May 1, 2006, May 25 2006_ |
| --- | --- | --- |
| Number of Days of Trial/Hearing _1 day thru / 7 day of non sentencing days_ | Date of Notice of Appeal  Oral: _May 25, 2006_ | Written: ~~May~~ _June 1 2006_ |
| Indigent Status Requested: ☑ Yes ☐ No | | Indigent Status Granted: ☐ Yes ☑ No  _Granted and then revoked_ |

**B. REPRESENTATION:**

Is Attorney Appointed or Retained? ☐ Appointed ☑ Retained. If no attorney, will appellant represent self? ☑ Yes ☐ No

_the defendant/appellant currently to proceed pruse but request the right to hire an attorney_

Appellant's Attorney (Appellant if pro se) (Attach additional pages if necessary)

_William McLaurine_   Telephone Number _334-524-2175_

Address _222 Tichenor Ave #4_  City _Auburn_  State _AL_  Zip Code _36830_

**C. CODEFENDANTS:** List each CODEFENDANT and the codefendant's case number.

| Codefendant | Case Number |
| --- | --- |
| Codefendant | Case Number |
| Codefendant | Case Number |

FILED
JUN 01 2006
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

**D. TYPE OF APPEAL:** Please check the applicable block.

1 ☐ State Conviction
2 ☐ Post-Conviction Remedy
3 ☐ Probation Revocation
4 ☐ Pretrial Order
5 ☐ Contempt Adjudication
6 ☐ Municipal Conviction
7 ☐ Juvenile Transfer Order
8 ☐ Juvenile Delinquency
9 ☐ Habeas Corpus Petition
10 ☑ Other, (Specify) _Combination of Pretrial Orders Multipart Trial, Sentencing, Constitutional challenges_

**E. UNDERLYING CONVICTION/CHARGE:** Regardless of the type of appeal checked in Section D, please check the box beside each offense category for which the appellant has been convicted or charged as it relates to this appeal. Also include the applicable section of the Code of Alabama for State convictions.

1 ☐ Capital Offense - §
2 ☐ Homicide - §
3 ☐ Assault - §
4 ☐ Kidnapping/Unlawful Imprisonment - §
5 ☐ Drug Possession - §
6 ☐ Trafficking in Drugs - §
7 ☐ Theft - §
8 ☐ Damage or Intrusion to Property - §
9 ☐ Escape - §
10 ☐ Weapons/Firearms - §
11 ☐ Fraudulent Practices - §
12 ☐ Offense Against Family - §
13 ☐ Traffic - DUI - §
14 ☐ Traffic - Other - §
15 ☑ Miscellaneous (Specify) - _Obstruction for arrest - § 13A-10-2 Operating_

**DEATH PENALTY:**

Does this appeal involve a case where the death penalty has been imposed? ☐ Yes ☑ No

**TRANSCRIPT:**

1. Will the record on appeal have a reporter's transcript? ☑ Yes ☐ No
2. If the answer to question "1" is "Yes," state the date the Reporter's Transcript Order was filed. _June 1 2006_ (Date)
3. If the answer to question "1" is "No":
   (a) Will a stipulation of facts be filed with the circuit clerk? ☑ Yes ☐ No
   (b) Will the parties stipulate that only questions of law are involved and will the trial court certify the questions? ☐ Yes ☑ No
4. If the appeal is from the district or juvenile court and the answer to question "1" is "No," then a positive response is required for question 3(a) or 3(b).

Form ARAP-26 (back)  8/91

## COURT OF CRIMINAL APPEALS DOCKETING STATEMENT

**H. POST-JUDGMENT MOTIONS:** List all post-judgment motions by date of filing, type, and date of disposition (whether by trial court order or by the provisions of Rules 20.3 and 24.4 (ARCrP)):

*Does not include Oral filings*

| DATE OF FILING | | | TYPE OF POST-JUDGMENT MOTION | DATE OF DISPOSITION | | |
|---|---|---|---|---|---|---|
| Month | Day | Year | | Month | Day | Year |
| May | 8 | 2006 | Appeal of Pretrial Order | | | |
| June | 1 | 2006 | ARAP-26, ARAP-26 w/ attachment Notice of Appeal, 2 Notice & Amend Record of Clerk, Notice to Attorney General of Constitution challenge | | | |

**I. NATURE OF THE CASE:** Without argument, briefly summarize the facts of the case.

The defendant was asked to provide name, identification, and ~~reason~~ explanation of actions. Defendant refused, and was Charged with 13A-10-2 with mention of 15-5-30.

**J. ISSUE(S) ON APPEAL:** Briefly state the anticipated issues that will be presented on appeal. (Attach additional pages if necessary.)

Trial & Pretrial Orders Regarding Reasonable Suspicion, Probable Cause, & and Prima facie Cases. Appeal of ~~the~~ motion to Acquit, Due Process Consideration, ~~for~~ and Speedy trial. New trial request. Appeal of Sentence.

**K. SIGNATURE:**

6-1-06

Date                    Signature of Attorney/Party Filing this Form

| State of Alabama Unified Judicial System Form ARAP-1C        8/91 | REPORTER'S TRANSCRIPT ORDER -- CRIMINAL See Rules 10(c) and 11(b) of the Alabama Rules of Appellate Procedure (A.R. App.P.) | Criminal Appeal Number CC- 05-289 |
|---|---|---|

**TO BE COMPLETED BY COUNSEL FOR THE APPELLANT OR BY THE APPELLANT IF NOT REPRESENTED AND FILED WITH THE WRITTEN NOTICE OF APPEAL OR FILED WITHIN 7 DAYS AFTER ORAL NOTICE OF APPEAL IS GIVEN.**

☑CIRCUIT COURT   ☐ DISTRICT COURT   ☐JUVENILE COURT OF  *Lee* _____ COUNTY

V.   ☐ STATE OF ALABAMA   ☑MUNICIPALITY OF *Auburn* _____, **Appellant**

| Case Number CC-05-289 | Date of Judgment/Sentence/Order |
|---|---|
| Date of Notice of Appeal Oral: May 25, 2006   Written: June 1, 2006   *May 8, 2006* | Indigent Status Granted: ☐ Yes   ☑ No   *Granted Revoked* |

**PART 1. TO BE SIGNED IF THE APPEAL WILL NOT HAVE A COURT REPORTER'S TRANSCRIPT:**
I CERTIFY THAT NO REPORTER'S TRANSCRIPT IS EXPECTED AND THAT THE RECORD ON APPEAL SHALL CONSIST OF THE CLERK'S RECORD ONLY. IF THE APPEAL IS FROM DISTRICT COURT OR JUVENILE COURT, I ALSO CERTIFY (1) THAT A STIPULATION OF FACTS WILL BE INCLUDED IN THE CLERK'S RECORD AND THAT THE APPELLANT WAIVES HIS RIGHT TO A JURY TRIAL IF SO ENTITLED; OR (2) THAT THE PARTIES HAVE STIPULATED THAT ONLY QUESTIONS OF LAW ARE INVOLVED AND THAT THE QUESTIONS WILL BE CERTIFIED BY THE JUVENILE/DISTRICT COURT FOR INCLUSION IN THE CLERK'S RECORD (SEE RULE 28(A)(1), ALABAMA RULES OF JUVENILE PROCEDURE, AND §12-12-72, CODE OF ALABAMA 1975).

Signature _____   Date _____   *JUN 0 1 2006*   *IN OFFICE CORINNE T. HURST*   Print or Type Name

**PART 2. DESIGNATION OF PROCEEDINGS TO BE TRANSCRIBED.** Request is hereby made to the court reporter(s) indicated below for a transcript of the following proceedings in the above referenced case (see Rule 10(c)(2), Alabama Rules of Appellate Procedure (A.R.App.P.)):

**MARK PROCEEDINGS REQUESTED:**          **COURT REPORTER(S)**

A. ☑TRIAL PROCEEDINGS - Although this designation will include the judgment and sentence proceedings, a transcript of the organization of the jury and arguments of counsel must be designated separately.   *Willie Bennet*  *Kimberly Ingram*

B. ☐ ORGANIZATION OF THE JURY - This designation will include voir dire examination and challenges for cause. Note that in noncapital cases the voir dire of the jury will not be recorded unless the trial judge so directs. (See Rule 19.4, ARCrP.)

C. ☑ARGUMENTS OF COUNSEL - Note that in noncapital cases the arguments of counsel will not be recorded unless the trial judge so directs. (See Rule 19.4, ARCrP.)   *As listed on DA's*

IN ADDITION TO ANY PROCEEDINGS DESIGNATED ABOVE, SPECIAL REQUEST IS HEREBY MADE TO INCLUDE THE FOLLOWING PROCEEDINGS IN THE REPORTER'S TRANSCRIPT PORTION OF THE RECORD ON APPEAL. (ATTACH ADDITIONAL PAGES IF NECESSARY.)

| ADDITIONAL PROCEEDINGS REQUESTED | DATE | COURT REPORTER(S) |
|---|---|---|
| D. *Municipal Court Transcript* | *March 31 2005* | *Lyn Daughtery* |
| E. *Initial Appearance in Circuit Court* | *June 29, 2005* | *Janet Smith* |
| F. *Status Conference* | *March 21, 2006* | *Willie Bennet* |
| G. *Sentencing* | *March 25, 2006* | *Kimberly Ingram* |

**IMPORTANT NOTICE:** The court reporter who reported the proceedings for which a transcript is requested must be identified on this form to be effective. Additionally, it is important to note that the appellant may not be permitted to raise any issue on appeal relating to any proceedings in the case that are not specifically designated on this form for inclusion in the reporter's transcript. A general designation such as "all proceedings" is not sufficient. (See Rule 10(c)(2), A.R.App.P.)

**PART 3. MUST BE SIGNED IF THE APPEAL WILL HAVE A COURT REPORTER'S TRANSCRIPT:**
I CERTIFY THAT I HAVE DISTRIBUTED THIS FORM AS SET OUT BELOW. I ALSO CERTIFY (1) THAT I HAVE MADE SATISFACTORY FINANCIAL ARRANGEMENTS WITH EACH COURT REPORTER LISTED ABOVE FOR PREPARING HIS OR HER PORTION OF THE REPORTER'S TRANSCRIPT HEREIN REQUESTED; OR (2) THAT THE APPELLANT PROCEEDED AT TRIAL AS AN INDIGENT AND THAT THAT STATUS HAS NOT BEEN REVOKED; OR, (3) THAT THE APPELLANT HAS BEEN GIVEN PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS.

*See Attachment*
Signature _____   Date *6-1-06*   *William McLaurine*   Print or Type Name

**DISTRIBUTION:** Original filed with Clerk of Trial Court and copies mailed to:   (1) Clerk of the Court of Criminal Appeals,   (2) the District Attorney, (3) the Attorney General or the municipal prosecutor in lieu of the District Attorney and the Attorney General if the appeal is from a municipal conviction, and (4) to each Court Reporter who reported proceedings designated for inclusion in the reporter's transcript.

**ATTACHMENT TO ARAP 1C**
**"REPORTER'S TRANSCRIPT ORDER- CRIMINAL"**

WILLIAM S. McLAURINE )

    Appellant )

              )

v. )

              )

CITY OF AUBURN, and or )

    THE STATE OF ALABAMA )

              )

    Appellee )

Action No(s): CC-05-289
MC04-0060431
04015246
STATE OF ALABAMA
In the Circuit Court
of Lee County

F I L E D

JUN 0 1 2006

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

The defendant has made arrangements for all court reporters except Willie Bennet. The appellant has made multiple attempts to obtain an estimate of the cost of the transcript(s) of Mr. Bennet records, but Mr. Bennet has been non-responsive. Judge Denson's Secretary has informed the appellant that Mr. Bennet is sick and unable to perform his duties.

The appellant wishes this attachment to be notice to Mr. Bennet, and the courts, that as soon as Mr. Bennet, or his agent contacts the defendant/appellant with an estimate, final price or other financial requirement, Mr. Bennet will be paid, whatever the amount. The appellant can do no more than this, and considers this to be a "satisfactory financial arrangement."

The appellant further requests that if extra time or special consideration needs to be dispensed by any court so that the transcript(s) of Mr. Bennet be included, that the appropriate court do so.

June 1, 2006
Date

William McLaurine, defendant/appellant
222 Tichenor Avenue #4
Auburn, Alabama 36830
(334) 524-2175

## MOTION FOR INCLUSION OF STATEMENTS OF FACT
## INTO THE RECORD ON APPEAL BY THE DEFENDANT/APPELLANT

WILLIAM S. McLAURINE                    )
                                        )    Action No(s):  CR-05-1600
                                        )                   CC-05-289
                                        )                   MC04-0060431
        Appellant                       )                   04015246
                                        )    STATE OF ALABAMA
v.                                      )     In the Circuit Court
                                        )    of Lee County
CITY OF AUBURN, and or                  )
        THE STATE OF ALABAMA            )    F I L E D
                                        )
        Appellee                        )    JUN 2 7 2006
                                             IN OFFICE
                                             CORINNE T. HURST
                                             CIRCUIT CLERK

This is a MOTION to request that the AFFIDAVIT FOR INCLUSION IN THE
RECORD ON APPEAL of the defendant/appellant be included in the RECORD ON
APPEAL.  Should a hearing be required to include this information in the RECORD ON
APPEAL the defenendant/appellant MOVES that such a hearing be granted and further
MOVES that a court reporter be present to record the event.


June 26, 2006
Date

                                        William McLaurine, defendant/appellant
                                        222 Tichenor Avenue #4
                                        Auburn, Alabama  36830
                                        (334) 524-2175

# AFFIDAVIT FOR INCLUSION IN THE RECORD ON APPEAL

WILLIAM S. McLAURINE )
  )  Action No(s): CR-05-1600
  )         CC-05-289
  )         MC04-0060431
     Appellant )         04015246
  )  STATE OF ALABAMA
v. )  In the Circuit Court
  )  of Lee County
CITY OF AUBURN, and or )
     THE STATE OF ALABAMA )  **F I L E D**
  )  JUN 2 7 2006
     Appellee )  IN OFFICE
                                     CORINNE T. HURST
                                     CIRCUIT CLERK

This is a statement of true facts by the defendant/appellant that may or may not be reflected in the RECORD ON APPEAL. The defendant/appellant believes that the facts presented in this AFFIDAVIT are relevant to consideration during the APPEAL. This affidavit is not meant to represent a comprehensive record of misconduct and/or errors by others, or a comprehensive record of events.

Phil Thompson was assigned to the defendant's/appellant's case as defense council During the weeks leading up to the defendants arraignment Mr. Thompson, refused to meet with the defendant/appellant on multiple occasions. At the arraignment Mr. Thompson indicated that a meeting should be scheduled for the following week. At the scheduled meeting the following week Mr. Thompson indicated he had worked out a deal with the prosecution to drop charges in exchange for the defendant/appellant, William McLaurine, signing a civil release for the city of Auburn. The defendant/appellant refused. Mr. Thompson then told the defendant/appellant that the last person who tried to sue the city of Auburn was going to be tried as a terrorist. Mr. Thompson also said the eh would not help me get up on my "soapbox." Mr. Thompson then then said he would not discuss my case, because he was going to ask Judge Denson to allow Mr. Thompson to withdraw.

The next time the defendant/appellant saw Mr. Thompson was at the next court appearance the following week. At the time Mr. Thompson approached the

defendant/appellant and asked one question concerning video tape evidence. Mr. Thompson walked away after receiving a "yes" answer. At some point the defendant's/appellant's case came before Judge Denson. A discussion about postponing the trial so that the prosecution could complete discovery was going on. The defendant/appellant wanted to know how long it would take. Mr. Thompson indicated that I should not talk and that all communication to the court should go through Mr. Thompson. I asked if I could ask him a question now, and he said "no."

Mr. Thompson meet with defendant/appellant the following week. When asked what the Judge had said about allowing Mr. Thompson to withdraw, Mr. Thompson had indicated that Judge Denson had said the defendant/appellant would not be any easier to handle with another lawyer.

At one point, the defendant/appellant had raised with Judge Denson two facts regaurding Mr. Thompson. The first was of the conflict of interest Mr. Thompson faced as a contract city employee and the potentional civil action between the defendant/appellant. The second was the fact that the Mr. Thompson was willfully unprepared during the arraignment. The defendant/appellant requested to be arraigned again.

Prosecutor Mathew White was instructed to try and find the original video tape evidence, so that it could be examined by the defendant/appellant. The defendant/appellant secured a recording device for the purpose of acquiring a format consistent copy of the tape. Mr. White indicated that while the defendant/appellant would allow the defendant/appellant to view the original tape, the defendant/appellant would not be allowed to copy the tape.

June 26, 2006
Date

William McLaurine, defendant/appellant
222 Tichenor Avenue #4
Auburn, Alabama 36830
(334) 524-2175

## MOTION FOR NEW TRAIL

WILLIAM S. McLAURINE )

)

)

Appellant )

)

v. )

)

CITY OF AUBURN, and or )
THE STATE OF ALABAMA )

)

Appellee )

Action No(s):  CR-05-1600
CC-05-289
MC04-0060431
04015246
STATE OF ALABAMA
In the Circuit Court
of Lee County

**FILED**

JUN 2 7 2006

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

This is a MOTION for a NEW TRIAL.  Based on the improper conduct of the

prosecution and the Judge in this case, the defense requests a new trial.  The misconduct

has been describe in previous motions, information already in the record, and the

concurrent filing of MOTION FOR INCLUSION OF STATEMENTS OF FACT INTO

THE RECORD ON APPEAL BY THE DEFENDANT/APPELLANT.  Should this court

require further information to support this MOTION the defendant/appellant requests that

a HEARING on this matter be granted.  Should a hearing be necessary, the

defendant/appellant MOVES that a COURT REPORTER be present to record the

hearing.

June 26, 2006
Date

William McLaurine, defendant/appellant
222 Tichenor Avenue #4
Auburn, Alabama  36830
(334) 524-2175

## CERTIFICATE OF SERVICE

WILLIAM S. McLAURINE    )
                     )    Action No(s): CR-05-1600
                     )                   CC-05-289
        Appellant     )                   MC04-0060431
                     )                   04015246
v.                    )    STATE OF ALABAMA
                     )    In the Circuit Court
CITY OF AUBURN, and or   )    of Lee County
        THE STATE OF ALABAMA   )
                     )
        Appellee      )

The defendant/appellant attests that the devices entitled

"MOTION FOR NEW TRAIL"

"MOTION FOR INCLUSION OF STATEMENTS OF FACT INTO THE RECORD ON APPEAL BY THE DEFENDANT/APPELLANT"

"AFFIDAVIT FOR INCLUSION IN THE RECORD ON APPEAL"

were sent by registered mail to the following:

Circuit Clerk's Office

2311 Gateway Dr.

Opelika, Alabama 36801

Judge John V. Denson II

2311 Gateway Dr.

Opelika, Alabama 36801

Prosecutor Matthew White

C/O Adams, Umbach, Davidson, & White

Post Office Box 2069

Opelika, Alabama  36803-2609

Court of Criminal Appeals

300 Dexter Avenue

Montgomery, Alabama  368104

June 26, 2006
Date

William McLaurine, defendant
222 Tichenor Avenue #4
Auburn, Alabama  36830
(334) 524-2175

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

CITY OF AUBURN,　　　　　　　　　)

　　　　PLAINTIFF,　　　　　　　　)

vs.　　　　　　　　　　　　　　　　)　　CASE NO: CC-05-289

WILLIAM S. MCLAURINE,　　　　　　)

　　　　DEFENDANT.　　　　　　　　)

F I L E D
JUN 2 9 2006
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

## MOTION TO STRIKE DEFENDANT'S "AFFIDAVIT FOR INCLUSION IN THE RECORD ON APPEAL"

COMES NOW, the City of Auburn, by and through counsel, and moves this Honorable Court to strike Defendant's "Affidavit for Inclusion in the Record on Appeal." In support of said motion, the City states as follows:

1. There is no procedural mechanism which allows a defendant to file a self serving affidavit or document which attempts to shape or misconstrue the official Clerk's record and transcript of this case.

2. The "Affidavit for Inclusion in the Record on Appeal," is not in the proper form of an affidavit and is due to be stricken for that reason alone.

3. The "Affidavit for Inclusion in the Record on Appeal," is essentially the Plaintiff's unsolicited testimony, which is not subject to cross examination. Defendant had ample opportunity to testify at trial, and did so. To allow the Defendant to again testify via affidavit is improper.

WHEREFORE, The City of Auburn moves this Honorable Court to strike Defendant's "Affidavit for Inclusion in the Record on Appeal."

Respectfully submitted this the _29_ day of June, 2006.

ADAMS, UMBACH, DAVIDSON & WHITE, LLP

MATTHEW W. WHITE (WHI086)
City Prosecutor
P.O. Box 2069
Opelika, AL  36803-2069
(334)745-6466

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing upon:

William McLaurine
222 Tichenor Avenue #4
Auburn, AL 36830

Done this the ____ day of June, 2006.

OF COUNSEL

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

CITY OF AUBURN,                  )
      PLAINTIFF,            )
                           )
vs.                              )      CASE NO: CC-05-289
                           )
WILLIAM S. MCLAURINE,            )
                           )
      DEFENDANT.            )

FILED

JUL 1 0 2006

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

### MOTION TO STRIKE DEFENDANT'S MOTION FOR NEW TRIAL

COMES NOW The City of Auburn, by and through counsel, and moves this Honorable Court to Strike Defendant's Motion for New Trial. As grounds for said motion, City of Auburn states as follows:

1. The Defendant was convicted of Obstructing Government Operations on May 1, 2006.

2. Defendant was sentenced by this Court on May 25, 2006.

3. Pursuant to Rule 24.1, *A.R.Cr.P.*, the Defendant had 30 days after his sentence in which to file a post-trial motion, including a motion for new trial.

4. Defendant's 30 day deadline to file his post-trial motion fell on June 24, 2006. However, June 24 fell on a Sunday; thus, the Defendant's deadline was extended to Monday, June 26, 2006 by operation of law.

5. However, Defendant did not file his post-trial motion until Tuesday, June 27, 2006.

6. As stated in *Moore v. State*, 814 So. 2d 308 *(Ala. Crim. App. 2001)*,[i]n the absence of a motion for new trial or a request to modify a sentence, filed within 30 days after sentencing, the trial court loses all jurisdiction to

modify a sentence at the end of the 30th day.

7. Thus, Defendant's Motion for new Trial is not timely filed and is due to be stricken.

WHEREFORE, The City of Auburn moves this Honorable Court to strike Defendant's Motion for New Trial.

Respectfully submitted this the ___7___ day of July, 2006.

_____
MATTHEW W. WHITE (WHI086)
CITY PROSECUTOR
CITY OF AUBURN

OF COUNSEL:

ADAMS, UMBACH,
DAVIDSON & WHITE, LLP
P.O. BOX 2069
OPELIKA, AL 36803-2069
334-745-6466

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing upon:

William McLaurine
222 Tichenor Avenue #4
Auburn, AL 36830

Done this the ___7___ day of July, 2006.

_____
OF COUNSEL

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

CITY OF AUBURN,                    )

PLAINTIFF,                         )

vs.                                )    CASE NO: CC-05-289

WILLIAM S. MCLAURINE,              )

DEFENDANT.                         )

FILED
JUL 1 0 2006
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

### SUPPLEMENT TO CITY'S PRIOR MOTION TO STRIKE DEFENDANT'S "AFFIDAVIT FOR INCLUSION IN THE RECORD ON APPEAL"

COMES NOW, the City of Auburn, by and through counsel, and as a supplement to its prior Motion to Strike Defendant's Affidavit for Inclusion in the Record on Appeal states as follows:

1.    Defendant filed his Notice of Appeal on May 8, 2006.

2.    Defendant has not timely filed a motion for a new trial or any other post trial motion.

3.    Thus, this Court has lost jurisdiction over this matter.

WHEREFORE, The City of Auburn moves that this Court strike Defendant's "Affidavit for Inclusion in Record on Appeal."

Respectfully submitted this the ___7___ day of ~~June~~ July, 2006.

ADAMS, UMBACH, DAVIDSON & WHITE, LLP

_____

MATTHEW W. WHITE (WHI086)
City Prosecutor
P.O. Box 2069
Opelika, AL 36803-2069
(334)745-6466

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing upon:

William McLaurine
222 Tichenor Avenue #4
Auburn, AL 36830

Done this the ____ day of July, 2006.

_____
OF COUNSEL

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

CITY OF AUBURN,                    )
                                   )
        PLAINTIFF,                 )
                                   )
VS.                                )         CASE NO:  CC-05-289
                                   )
WILLIAM S. MCLAURINE,              )
                                   )
        DEFENDANT.                 )

## NOTICE OF APPEARANCE

COMES NOW the undersigned attorney and hereby gives notice of his appearance as attorney of record for the appeal of the above styled case to the Alabama Court of Criminal Appeals.

Respectfully submitted this the 11th day of July 2006.



J. VICTOR PRICE (PRI015)

OF COUNSEL:

Law Offices of J. Victor Price
17 Sistrunk Street
Tallassee, AL  36078
(334) 283-3388

F I L E D

JUL 1 2 2006

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document upon the following by placing a copy of the same in the United States mail, postage prepaid and properly addressed, on this 11th day of July 2006.

Matthew W. White, Esq.
PO Box 2069
Opelika, AL  36803-2069

OF COUNSEL

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

CITY OF AUBURN,

     Plaintiff,

vs.                      CASE NUMBER: CC-05-289

WILLIAM S. MCLAURINE,

     Defendant.

## ORDER

Various post-trial Motions have been filed in this case. The same are set for a Hearing before the Court on August 17, 2006 immediately following the Docket Call in courtroom number four of the Lee County Justice Center.

DONE this the __14th__ day of __July__, 2006.



John V. Denson, II
Circuit Judge

cc:   Matthew W. White
      Mr. William McLaurine
      222 Tichenor Avenue, #4
      Auburn, Alabama 36830

FILED
JUL 14 2006
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

1

IN THE CIRCUIT COURT

FOR THE COUNTY OF LEE

STATE OF ALABAMA

THIRTY-SEVENTH JUDICIAL CIRCUIT

CRIMINAL

CITY OF AUBURN,

    PLAINTIFF,

VS.                                    CASE NO.:  CC- 05-289

WILLIAM MCLAURINE,

    DEFENDANT.

_____/

PROCEEDINGS


BEFORE:

    John Denson, Circuit Court Judge,
      Lee County Justice Center, Opelika,
        Alabama.

APPEARANCES:
    <u>For the Plaintiff:</u>
    Matt White, Esq.
    Opelika, Alabama


    <u>For the Defendant, Pro se:</u>

2

PROCEEDINGS HAD IN OPEN COURT

(Parties present and the following proceedings were had.)

THE COURT:  All right.  This is the case of the City of Auburn versus William S. McLaurine.  And present are -- the attorneys for Auburn is Rick Davidson and Mr. Matt White.  And present is the Defendant, William McLaurine, representing himself.

This is a case of -- where the Defendant has filed motions relating to various matters on this appeal from the City of Auburn conviction that he had earlier. And, as I understand it, you want to present your discovery motion, and the City of Auburn, as I understand it, is willing to concede that you are entitled to that.  Do you want to -- do you see any reason to go into it?

MR. MCLAURINE:  Yes, sir.  There are three issues involved here.  I assume this would just be a general motion for discovery. I didn't realize we were going to need to argue over the specifics of it.  But there are three things that I would like to make sure that we understand are included in this.

3

1   One is the -- the court reporting records,

2   which I think they conceded.  The second one

3   is --

4        THE COURT:  The court reporting records?

5   What is that?

6        MR. WHITE:  Judge, the City of Auburn had

7   a court reporter at the City Court Trial of the

8   matter.

9        THE COURT:  Okay.

10        MR. WHITE:  I don't know if he is

11   entitled to that or not.  I think unless he

12   is considered indigent, he would not be

13   entitled to that.  If he wants to pay for --

14   pay the court reporter for a copy of the

15   transcript, he is certainly entitled to do

16   that, but to require us to produce that if

17   he has not been declared indigent, I don't

18   believe he is entitled to that.

19        THE COURT:  All right.  Are you willing

20   to pay for the transcript of the court

21   reporter?

22        MR. MCLAURINE:  At this time, yes, sir.

23        THE COURT:  Well, at this time, if you are

24   doing it, it's going to be from --

25        MR. MCLAURINE:  What's the fee?  I don't

4

1    know.

2         THE COURT:  Okay.  All right.  So in

3    regard to the transcript of the trial in the

4    lower court, that will be produced and paid

5    for by the Defendant.

6         MR. MCLAURINE:  As I -- do we know what

7    the fee is?  That's the only thing.

8         MR. WHITE:  I don't know right off hand.

9    The only way we know is when we get a bill

10   from the court reporter.  Generally you have to

11   pay for that in advance.  So --

12        MR. MCLAURINE:  Okay.  Well, as long as

13   that's the case, then I am -- then let's not

14   worry about that right now.  As long as I have

15   the opportunity to acquire it.

16        THE COURT:  Well, this -- this is the day

17   we are going to decide it.  Not -- we are going

18   to worry about it today.

19        MR. MCLAURINE:  All right.

20        THE COURT:  So I am going to allow that to

21   be produced and you will pay for it in advance

22   before it's produced to you, and then you will

23   be entitled to it.

24        MR. MCLAURINE:  Okay.

25        THE COURT:  All right.  Will you see that

5

1    that court reporter is notified?

2        MR. WHITE:  Yes, sir.

3        THE COURT:  And then get a bill to the

4    Defendant.  And that will be produced.

5            All right.  What's the next

6    item?

7        MR. MCLAURINE:  The second issue is that

8    in a previous discovery in a previous trial,

9    I was presented a set of audio from the City

10    and --

11        THE COURT:  A set of audio recordings?

12        MR. MCLAURINE:  Recordings concerning the

13    issue.  At the trial, the audio that was

14    played contained some files not given to me

15    in discovery, and I wanted to make sure that

16    those were included in this particular

17    discovery.  In particular --

18        THE COURT:  Are you talking about the

19    audio of the trial mentioned certain things

20    that you were not given?

21        MR. MCLAURINE:  The audio recording

22    between the police officer in the field that

23    they recorded of the actual arrest.

24        THE COURT:  Oh, okay.

25        MR. MCLAURINE:  The commentary after

that.  What was not presented in discovery
was a communication between the dispatcher
and the arresting police officer after the
arrest had been made where the police officer
was confirming details of the case.  In that
particular instance, the dispatcher indicated
that he did not believe the person who made
the complaining call that the police officer
was responding to gave a truthful name.  And as
far as that goes to probable cause or
reasonable suspicion, I believe that's
exculpatory.  I am entitled to it.  I would
like to make sure that's included in what is
provided this time.

THE COURT:  This is a telephone call
between the complaining witness and the
dispatcher?

MR. MCLAURINE:  No, sir.  This is a
telephone call.  That -- that was already
provided.

THE COURT:  Okay.

MR. MCLAURINE:  This is a -- this is a
-- either a telephone call or a radio
transmission between the arresting officer and
the dispatcher.

1    THE COURT:  Okay.  What about that?

2    MR. DAVIDSON:  Your Honor, we will give

3    him the disk that we have in our possession.

4    That is not a problem.  We will make a copy

5    again and provide that.

6    MR. MCLAURINE:  And --

7    THE COURT:  All right.  Okay.

8    MR. MCLAURINE:  -- and the third issue in

9    discovery that I would like to make sure it

10    was brought up:  In the previous trial, there

11    was a mention of some criminal activity in

12    the vicinity of the location in which I was

13    stopped, and I believe there was some instance

14    that that was going to be used to justify the

15    stop.  I have received no information of the

16    particulars involving me with that criminal

17    activity, and if the State wants to present

18    that, I would like to make sure that they give

19    me those particulars.

20    THE COURT:  This is -- this is alleged

21    criminal activity that was taking place before

22    the incident involving you?

23    MR. MCLAURINE:  Yes, sir.

24    MR. DAVIDSON:  Judge, all that was the

25    basis of some of our officers' state of mind

1    at the time the Defendant was stopped.  This

2    arrest occurred -- incident occurred at

3    Thanksgiving break over near campus at the

4    time when the town was vacated and early

5    morning hours, et cetera.  There has been

6    some other criminal activity in the

7    neighborhood that week.  I believe that is

8    what he is referring to.  I don't know how we

9    would produced that criminal activity, but --

10        MR. WHITE:  I don't know that that's --

11    it's certainly not exculpatory evidence.

12    The call that was received from the complaining

13    -- the telephone call made to the Auburn

14    Police Department about 12:45 in the morning

15    saying there is a suspicious looking white

16    male looking in windows over here on West

17    Glenn, and Officer Bean responded to the scene

18    and encountered the Defendant that matched --

19    his clothing matched the description given by

20    the person calling in, and that's why they

21    stopped this man.  Now, to get into all --

22        THE COURT:  Well, has he -- he has a

23    copy of that -- that telephone call?

24        MR. WHITE:  He has a copy.  That was

25    produced in City Court.

1    THE COURT:  And that's all that you know

2  about is -- so far as the prior criminal

3  activity is what this alleged witness said?

4    MR. DAVIDSON:  There are some other

5  officers who testified that they were aware

6  of other incidences that went on, but they

7  weren't necessarily the investigating officer

8  of those incidences.  It's just stuff that

9  comes to them in daily reports and what's

10  going on, such as that.  So I don't know how --

11    THE COURT:  Is that something you can

12  produce to him; those daily reports?

13    MR. DAVIDSON:  Well, I don't know what

14  -- we -- I have never had it.  I don't know

15  what it is.  I am not sure that there is a

16  report.  Your Honor, I just think it may be

17  talk in the patrol room.

18    MR. WHITE:  That's right.

19    MR. DAVIDSON:  We have never -- I have

20  never been given anything that says a report --

21  a written report was taken of a break in of a

22  window on Glenn at a certain date and time.  If

23  that exists, we will produce it.

24    THE COURT:  All right.  Why don't you make

25  search to see if it exists, and if it does

10

1    exist, if you have any objection to producing

2    it, you can --

3        MR. DAVIDSON:  Yes, sir.

4        THE COURT:  -- bring that to the Court's

5    attention.  Otherwise, that will be produced to

6    the Defendant.  That's the audio or written

7    reports of prior criminal activity.

8        MR. WHITE:  Well, I guess we need to

9    limit that in time somehow.  I mean, for how

10   long before -- before this incident are we

11   talking?  One month or --

12       MR. MCLAURINE:  Anything you choose to

13   present as justification for the stop in this

14   case is what I am asking for.  So if you don't

15   choose to present anything, then --

16       MR. DAVIDSON:  Your Honor, we will --

17   our justification for the stop is a call,

18   period.  So -- and I don't think I have to

19   tell him why we made a stop.  That will all

20   come out from the officer.

21       THE COURT:  All right.  Well, why don't

22   we limit this in time to a week before, and

23   let's see what you get.

24       MR. DAVIDSON:  And, Judge, just so we

25   are clear about this, these officers -- every

11

break -- every holiday break in Auburn is a --
is a time when crime occurs, and it escalates.
Christmas break.  Thanksgiving break.  When
the students are gone, that's when these
things happen.  So I can't produce to him an
officer's eight year or ten year or twelve
year history of dealing with these problems
during break, but we all know they happen.  And
it's mental process.  So I don't want the Court
to be --

    THE COURT:  Well, this is limited to a
specific area.

12

1   <u>REPORTER'S CERTIFICATE</u>

2        I do hereby certify that the above

3   and foregoing transcript of proceedings in the

4   matter aforementioned was taken down in machine

5   shorthand, and that the questions and answers

6   thereto reduced to writing under my personal

7   supervision, and that the foregoing represents

8   a true and correct transcript of the

9   proceedings.

10        I further certify that I am neither of

11  counsel nor related to the parties to the

12  action, nor am I in any wise interested in the

13  result of said cause.

14        DATED this the 19th day of July, 2006.

15

16

17

18        _____

19        JANET C. SMITH

20        OFFICIAL COURT REPORTER

21

22

23

24

25

13

IN THE CIRCUIT COURT OF

LEE COUNTY, ALABAMA

37th JUDICIAL CIRCUIT


CITY OF AUBURN,

       Plaintiff,

vs.                         CIVIL ACTION AT LAW
                                CASE NO. 05-289

WILLIAM S. MCLAURINE,

       Defendant.


* * * * * * * * * * *

Before the Honorable John V. Denson, II,
on May 1, 2006, commencing at approximately
9:00 a.m.


* * * * * * * * * *

APPEARANCES

FOR THE PLAINTIFF:

MATTHEW WHITE
Opelika, Alabama

FOR THE DEFENDANT:

WILLIAM S. MCLAURINE, Pro Se

14

```
 1    PROCEEDINGS HAD IN OPEN COURT
 2    THE COURT:  At this time, the Court
 3         calls for trial the case of the
 4         City of Auburn versus William S.
 5         McLaurine.  What says the City?
 6    MR. WHITE:  City is ready, Your Honor.
 7    THE COURT:  What says the defendant?
 8    MR. MCLAURINE:  May I get a list of the
 9         jurors, Your Honor?  That was too
10         fast for me to keep up with, Your
11         Honor.
12    THE COURT:  No, sir.  You have to --
13         You have a list there, don't you?
14    MR. MCLAURINE:  I have the complete
15         list here, sir, not the list of
16         the people who are present.
17    THE COURT:  Well, she can get that to
18         you in a little bit.
19    CLERK:  I can get you the list, but
20         you'll have a more updated list
21         later on.
22    THE COURT:  All right.  The remaining
23         cases on the docket now can be
24         released until tomorrow morning at
25         9 o'clock, the two remaining
```

1    cases.  All right.  At this time,
2    I will read the complaint.  Did
3    you announce ready, Mr. McLaurine?
4    MR. MCLAURINE:  Ready, sir.
5    THE COURT:  All right.  The complaint
6        in this case charges that comes
7        now the City of Auburn, Alabama, a
8        municipal corporation of the State
9        of Alabama, by its undersigned
10       attorney, complains that the said
11       defendant, William S. McLaurine,
12       within twelve months before the
13       bringing of the prosecution of
14       this case, within the city limits
15       of the City of Auburn or the
16       police jurisdiction thereof, by
17       means of intimidation, physical
18       force, or interference, or by any
19       other independently unlawful act,
20       did intentionally obstruct,
21       impair, or hinder the
22       administration of law or other
23       governmental function or did
24       intentionally prevent a public
25       servant from performing a

1  governmental function in violation

2  of Section 13A-10-2 of the Code of

3  Alabama as amended and its adopted

4  ordinance number 1130 as adopted

5  by the City Council of Auburn.

6  Said ordinance is codified in

7  Section 13-1 of the Code of

8  Alabama -- Code of Auburn,

9  Alabama.

10     In addition, this statute is

11  involved.  Section 15-5-30, a

12  sheriff or other officer acting as

13  sheriff, sheriff's deputy, or any

14  constable acting within their

15  respective counties, any marshal,

16  deputy marshal, or policeman of

17  any incorporated city or town

18  within the limits of the county,

19  or any highway patrolman or state

20  trooper, may stop any person a

21  broad in a public place whom he

22  reasonably suspects is committing,

23  has committed, or is about to

24  commit a felony or other public

25  offense and may demand his name,

17

1  address, and explanation of his

2  actions. Now, that complaint and

3  that statement of code section are

4  not evidence in the case. At this

5  time, I would call on the City of

6  Auburn to introduce who will be at

7  the table and -- Mr. White?

8  MR. WHITE:  Good morning.  My name is

9  Matt White.  I'm one of the city

10  prosecutors for the City of

11  Auburn, and I'll be prosecuting

12  this case on behalf of the City of

13  Auburn.  With me at counsel table

14  is Officer Lavaro Bean.  If you

15  will just raise your hand.

16  Lt. Matthews.  And Lt. Howell.

17  THE COURT:  All right.  Thank you,

18  sir.  Mr. McLaurine?

19  MR. MCLAURINE:  My name is William

20  McLaurine.  I'm the defendant

21  today and I will be defending

22  myself and be the only witness in

23  the case.

24  THE COURT:  All right.  Thank you.  All

25  right.  At this time, I need for

1   all of you to raise your right

2   hand and be sworn again.  Do you

3   and each of you solemnly swear or

4   affirm that you will well and

5   truly answer all questions

6   propounded to you, touching on

7   your qualifications as a juror and

8   that you will well and truly try

9   all issues submitted to you and

10  true verdicts render, according to

11  the law and evidence, so help you

12  God?  Say I do.

13  PROSPECTIVE JURORS:  I do.

14  THE COURT:  Put your hands down.  These

15  are the following qualification

16  questions that I will ask you, and

17  you need to respond.  Or if you

18  prefer not to respond in front of

19  the other jurors, I will give you

20  a chance to come back afterwards

21  when the other jurors are out and

22  you can explain your answer to

23  these questions.

24  When I conclude my questions,

25  the lawyers will then ask you

19

questions also.  And these
questions are not designed, either
by the Court or the lawyers, to
cause you any embarrassment or any
problem.  They are designed to get
information useful to the
attorneys and the parties in
regard to trying the case.  So if
there's some question you need to
respond to privately outside the
presence of the other jurors, you
will have an opportunity at the
end to go out, come back in, and
tell us the answer to those.  So
at this time, please listen to the
following questions by the Court.

Have any of you been indicted
within the last 12 months for the
offenses I have read to you in
this case?

(No response.)

Do any of you have any
interest either in the conviction
or the acquittal of this
defendant?

20

1        (No response.)

2        Have you made any promises or

3    given any assurances you would

4    either convict or acquit this

5    defendant?

6        (No response.)

7        Do you know anything about

8    this case that would influence

9    your verdict in any way?

10        (No response.)

11        Do any of you have a fixed

12    opinion as to the guilt or

13    innocence of this defendant?

14        (No response.)

15        Are any of you a surety on the

16    defendant's bond?

17        (No response.)

18        Are any of you a witness in

19    this case?

20        (No response.)

21        Has anyone talked to you about

22    this case?

23        (No response.)

24        Do you have a fixed opinion

25    against jail or penitentiary

21

1    punishment?

2             (No response.)

3    Do you think a conviction

4    should not be had on

5    circumstantial evidence?

6             (No response.)

7    Are any of you related by

8    blood or marriage or know the

9    defendant?

10            (No response.)

11   Do any of you have any

12   religious or moral reservations

13   about sitting in judgment of

14   another?

15            (No response.)

16   Are any of you related by

17   blood or marriage to Mr. Matt

18   White, the city attorney?

19            (No response.)

20   Are any of you related by

21   blood or marriage to the

22   defendant?

23            (No response.)

24   And if there's any reason any

25   of you feel like you cannot serve

22

1    on this case, I'll give you an

2    opportunity to come back at the

3    end and tell us what those are.

4        At this time, Mr. White, if

5    you would, ask your voir dire

6    questions.

7    MR. WHITE:  Yes, sir.  If it please the

8        Court, good morning again.  I have

9        just very few questions for you

10       this morning.  The judge asked you

11       just now do you know

12       Mr. McLaurine, and I'm going to

13       ask you that same question just

14       kind in a more detailed one.  I

15       believe Mr. McLaurine was a

16       student at Auburn University and

17       has been to engineering school

18       over there.  Do any of you here

19       know him when you see him or

20       recognize him from school or

21       recognize him from class or

22       anything of that nature?  Anybody

23       recognize him or think you may

24       know him?  Yes, sir?

25   PROSPECTIVE JUROR:  I may have seen him

23

1          within and around the university

2          in classes and stuff like that.

3     MR. WHITE:  You've just seen him

4          around?

5     PROSPECTIVE JUROR:  Yes, the

6          university.

7     MR. WHITE:  What's your name, sir?

8     PROSPECTIVE JUROR:  Tom Denney.

9     MR. WHITE:  Tom Denny.  Thank you,

10         sir.  Any other responses similar

11         to Mr. Denney's where you think

12         you know him when you see him?

13         Yes, sir?

14    PROSPECTIVE JUROR:  Engineering

15         professor.  I believe I've seen

16         Mr. McLaurine running around

17         campus.

18    MR. WHITE:  You think you've seen him?

19    PROSPECTIVE JUROR:  Yes.

20    MR. WHITE:  And you are an engineering

21         professor you say?

22    PROSPECTIVE JUROR:  Yes.

23    MR. WHITE:  And what's your name?

24    PROSPECTIVE JUROR:  Roy Knight.

25    MR. WHITE:  All right.  Do you recall

24

1          ever having him in class or
2          teaching him or anything of that
3          nature?
4     PROSPECTIVE JUROR:  I don't recall
5          that.
6     MR. WHITE:  Okay.  Thank you.  Next
7          question.  This is -- This case
8          involves a stop made by the Auburn
9          Police Department.  My question to
10         you is, has anybody here on this
11         jury panel ever been stopped by an
12         Auburn police officer and, for
13         whatever reason, felt that maybe
14         you weren't treated fairly during
15         that stop?  And it's okay to have
16         that opinion.  I'm not going to
17         ask you any details about it.  And
18         if you would like to come up later
19         when the judge asks to you come up
20         later, you can do that.  But my
21         question is, have any of you been
22         pulled over by a police officer
23         and for whatever reason just felt
24         like you were treated unfairly.
25         And like I say, you may come up

25

1    afterwards to answer that

2    question.

3        And the follow-up to that

4    question would be not only Auburn

5    police officers but any police

6    officer? If you felt like for any

7    reason you have been pulled over

8    by a police officer either here or

9    anywhere else and felt that you

10   were treated unfairly, I would

11   like to know about that. And if

12   you would like to come up later to

13   talk about that, that's fine.

14       (No response.)

15       Next question is, I served as

16   one of the city prosecutors for

17   the City of Auburn, and I'm also a

18   a lawyer in the law firm of Adams,

19   Umbach, Davidson & White. And my

20   question to you is, have I or has

21   any member of my law firm ever

22   been on the opposite side of a

23   case from you? Whether it be a

24   criminal case or a civil case, a

25   domestic matter, anything of that

26

nature? Phil Adams, Arnold
Umbach, Rick Davidson, Michael
Short, myself. Have I or any of
my law partners ever been on the
opposite side of a case from you
or a member of your family? Any
response to that?

　　　　(No response.)

　　Next question. The judge has
read some law to you. And at the
close of the case he's going to
read that same law to you again.
And I have one very simple
question for you, is if you are
selected to sit on this jury, do
you feel like you can follow the
law? In other words, you're going
to take an oath to follow the
law. Is there anybody here that
doesn't feel like they can follow
the law when asked to do so? No
response to that?

　　　　(No response.)

　　Last question, and this may be
a sensitive subject, and I would

27

1    invite you to come up later when

2    the judge invites you to.  The

3    question is, have you or any

4    member of your family been

5    convicted of a crime?  And when I

6    say a crime, I'm talking about

7    anything from a DUI on up.  Okay.

8    I'm not talking about speeding or

9    running a red light or anything

10   like that.  I'm talking about a

11   DUI or worse.  So if you are

12   convicted of a crime or if your

13   close family -- I'm not talking

14   about cousins or aunts and uncles,

15   I'm talking about your immediate

16   family -- been convicted of a

17   crime, we would like to know.

18   And, again, you can come up later

19   to answer that question.  That's

20   all the questions I have.

21        THE COURT:  Mr. McLaurine?

22        MR. MCLAURINE:  Morning.  My questions

23        are fairly similar.  Do you know

24        or recognize any person who is a

25        member of the defense or a

28

witness?  Yes, sir?

1 PROSPECTIVE JUROR:  I know Mr. Howell.

2 MR. MCLAURINE:  And your name, sir?

3 PROSPECTIVE JUROR:  John Vance.  It's

4 just business dealings.  We have

5 never broken bread together or

6 taken showers.

7 MR. MCLAURINE:  I hope not.  You know

8 Mr. Howell, sir?

9 PROSPECTIVE JUROR:  Yes, just through

10 business.

11 MR. MCLAURINE:  Yes, ma'am?

12 PROSPECTIVE JUROR:  I know Mr. White.

13 MR. MCLAURINE:  How do you know him?

14 PROSPECTIVE JUROR:  Professional.

15 MR. MCLAURINE:  And your name?

16 PROSPECTIVE JUROR:  Melissa Morris.

17 MR. MCLAURINE:  Anyone else?  I'm

18 defending myself today.  Do you

19 believe the fact that I am

20 proceeding without an attorney

21 might prevent you from accepting

22 legal arguments or facts of the

23 case as presented by the defense?

24 Again, you can come up and tell us

29

in private.

(No response.)

Are you or any of your close relatives involved in the law enforcement community, including professional or social organizations such as the bar or police associations?

(No response.)

Do you believe that racial discrimination or intimidation based on race is acceptable at any time during police interrogation?

(No response.)

Do you have any difficulty understanding that the burden of proof is on the prosecution and that each and every requirement of the law must be proven beyond a reasonable doubt?

(No response.)

Do you understand that simply being arrested is not enough to be convicted of a crime and that you -- it's your responsibility as

30

jurors to act as the conscience of
the community?

(No response.)

Mr. White asked you if you had
ever been on the same side of a
case or the opposite side of the
case. Have you ever been on the
same side of the case with any of
the people he mentioned?

(No response.)

That's all I have, Your
Honor.

THE COURT: All right. Those of you
who wish to respond need to go
with the bailiff who will be right
over here by this door. Y'all go
into the jury room there. The
remainder of you go into the jury
assembly room. Is there anyone
you specifically -- any of the
attorneys want to remain for
specific questions?

MR. WHITE: Yes, sir. Dr. Knight.

THE COURT: Dr. Knight, if you would
remain. Anyone else? All right.

31

```
 1        Those of you who will respond
 2        along with Dr. Knight, if you
 3        would follow the bailiff here, and
 4        the rest of you go back to the
 5        jury assembly room, and we will be
 6        in touch.
 7             All right.  Bring in the first
 8        one.  If you would, come up and
 9        have a seat up here, please, sir.
10        You need to speak into that
11        microphone, the tallest one
12        there.  And your name, please,
13        sir?
14   PROSPECTIVE JUROR:  Danny Beretta.
15   THE COURT:  Danny Beretta?
16   PROSPECTIVE JUROR:  Yes.
17   THE COURT:  And what is it you need to
18        respond to?
19   PROSPECTIVE JUROR:  Well, my father, he
20        had a DUI when I was a teenager.
21   THE COURT:  All right.  All right.
22        Anything else?
23   PROSPECTIVE JUROR:  Yes.  My sister,
24        she's a dispatcher with the City
25        of Opelika.
```

32

```
1    THE COURT:  What's her name?

2    PROSPECTIVE JUROR:  Penny Beretta.

3    THE COURT:  Kenny?

4    PROSPECTIVE JUROR:  Penny.

5    THE COURT:  Penny Beretta?  All right,

6         sir?

7    PROSPECTIVE JUROR:  That's it.

8    THE COURT:  All right, sir.  Thank

9         you.  Any questions from the

10        attorneys?

11   MR. WHITE:  No, sir.

12   THE COURT:  Mr. McLaurine?

13   MR. MCLAURINE:  Do you feel that your

14        connection -- your wife, the

15        dispatcher with the city of

16        Opelika, do you feel that that

17        would interfere with your ability

18        to understand that government

19        officials are limited in what they

20        can do and that you might feel an

21        association with police or any

22        other government official and

23        would try and defend them or

24        excuse illegal action for them?

25   PROSPECTIVE JUROR:  No.
```

33

```
 1    MR. MCLAURINE:  That's all I have.
 2    THE COURTm:  Anything further?  Thank
 3         you very much.  If you would just
 4         go back to the jury assembly
 5         room.
 6             Come up and have a seat up
 7         here, please, sir.  Give us your
 8         name.
 9    PROSPECTIVE JUROR:  Mauldin, William
10         David.
11    THE COURT:  William Mauldin?
12    PROSPECTIVE JUROR:  Mauldin,
13         M-A-U-L-D-I-N.
14    THE COURT:  All right, sir.  What is it
15         you need to respond to?
16    PROSPECTIVE JUROR:  Well, I think the
17         question he had about a DUI,
18         wasn't it?
19    MR. WHITE:  Convicted of any crime DUI
20         or greater.
21    THE COURT:  Did you say anybody in your
22         family or --
23    MR. WHITE:  Just immediate family, yes,
24         sir.  Meaning wife, children.
25    PROSPECTIVE JUROR:  Well, what I'm
```

34

saying is I had one 25 years ago.
But I never -- as far as I know, I
don't know whether I was ever
convicted.  I've forgotten
everything about the thing.  I
wasn't fined or anything, but I
was -- you know.

MR. WHITE:  Okay.

THE COURT:  All right, sir.  Just a
minute.  Do you have any questions
for him, Mr. McLaurine?

MR. MCLAURINE:  No, sir.  No, sir.
Thank you very much.  Just go back
to the jury assembly room.

PROSPECTIVE JUROR:  Okay.

THE COURT:  Come around here, please,
ma'am, up here, and sit in that
second chair and talk into that
microphone.  The second chair is
closest to the microphone that's
working.

PROSPECTIVE JUROR:  Okay.

THE COURT:  Give us your name, please,
sir

PROSPECTIVE JUROR:  Verlyn Burkhalter.

35

THE COURT:  Burkhalter?  What is it you
need to comment on?

PROSPECTIVE JUROR:  Okay.  Two things.
One, my brother was convicted of
child molestation in the state of
Texas.

THE COURT:  How long ago?

PROSPECTIVE JUROR:  It's been a long
time.  He was in jail out there
for seven years.

THE COURT:  So he went to prison seven
years?

PROSPECTIVE JUROR:  Uh-huh.

THE COURT:  All right.

PROSPECTIVE JUROR:  It's been -- it's
been like probably like 20 years
ago.

THE COURT:  Twenty years ago, okay.
All right.  Anything else?

PROSPECTIVE JUROR:  One more thing.
Mr. Umbach was my divorce attorney
about fifteen years ago.  But it
was not a contested divorce.  It
was just paperwork.

THE COURT:  Let me ask you this.  Would

1    either one of -- is there anything

2    else?

3    PROSPECTIVE JUROR:  No.  That's all.

4    THE COURT:  Would either one of these

5        instances keep you from following

6        the evidence and the law that's

7        given to you by the Court and

8        rendering a fair and impartial

9        verdict in this case?

10   PROSPECTIVE JUROR:  No.

11   THE COURT:  Okay.  You think you can be

12       fair to both sides in the case?

13   PROSPECTIVE JUROR:  Yes.  I don't have

14       grudges against either one.

15   THE COURT:  Mr. White?

16   MR. WHITE:  No questions, Your Honor.

17   THE COURT:  Mr. McLaurine?

18   MR. MCLAURINE:  I don't have anything.

19   THE COURT:  All right.  Thank you very

20       much.

21   PROSPECTIVE JUROR:  Thank you.

22   THE COURT:  Go back this way to the

23       jury assembly room and we'll call

24       you in a few minutes.  Come up and

25       have a seat, please, sir, right up

37

1      here in this second chair.  And

2      then speak to that tall microphone

3      there.  Come over here.  Yes,

4      sir.

5          Give us your name first.

6   PROSPECTIVE JUROR:  Herbert Brown.

7   THE COURT:  Mr. Brown?

8   PROSPECTIVE JUROR:  Yes, sir.

9   THE COURT:  All right, sir.  What is it

10     you need to comment on?

11  PROSPECTIVE JUROR:  One thing, I was

12     stopped for DUI in 1969, I believe

13     it was.  I haven't had a drink

14     since 1972.  And also I've got

15     a -- I don't know how far this

16     family member or somebody

17     convicted of a crime, but I've got

18     a grandson downstairs right now,

19     and I believe that he was on

20     parole.  I believe the charges are

21     bad checks and drugs and things

22     such as that.

23  THE COURT:  What is his name, if you

24     don't mind?

25  PROSPECTIVE JUROR:  Michael Weldon.

38

1    THE COURT:  Michael Weldon?

2    PROSPECTIVE JUROR:  Yes, sir.

3    THE COURT:  Anything else?

4    PROSPECTIVE JUROR:  No, sir.

5    THE COURT:  Would either one of these

6          experiences, either your DUI or

7          the fact your grandson is being

8          charged, keep you from being fair

9          and impartial to both sides in

10          this case?

11    PROSPECTIVE JUROR:  No, sir.  I don't

12          believe so.

13    THE COURT:  Could you listen to the

14          facts as coming from the witness

15          stand and the evidence and the

16          jury instructions that the court

17          gives you as to the law and follow

18          that, and apply the law to the

19          facts and render a fair and

20          impartial verdict?

21    PROSPECTIVE JUROR:  Yes, sir.

22    THE COURT:  All right, sir.  Mr. White?

23    MR. WHITE:  No questions.

24    THE COURT:  Mr. McLaurine?

25    MR. MCLAURINE:  Nothing.

39

```
 1          THE COURT:  Come back to the jury
 2              assembly room back here where you
 3              were originally and we'll be in
 4              touch.
 5              Come up and have a seat,
 6              please, ma'am, in that second
 7              chair, and speak directly into
 8              that tall microphone.
 9          PROSPECTIVE JUROR:  Okay.
10          THE COURT:  Give us your name first,
11              please, ma'am.
12          PROSPECTIVE JUROR:  Glenda Moss.
13          THE COURT:  Moss?
14          PROSPECTIVE JUROR:  Yes.
15          THE COURT:  All right.  What is it you
16              need to disclose, please, ma'am?
17          PROSPECTIVE JUROR:  The question they
18              asked had anybody been convicted,
19              I had my son about three years
20              ago.
21          THE COURT:  And what was he convicted
22              of?
23          PROSPECTIVE JUROR:  Theft, breaking and
24              entering.
25          THE COURT:  Was that here in Lee
```

40

1    County?

2    PROSPECTIVE JUROR:  Yes.

3    THE COURT:  Did he serve some time?

4    PROSPECTIVE JUROR:  Yes.

5    THE COURT:  And how long did he serve?

6    PROSPECTIVE JUROR:  Three months.

7    THE COURT:  All right.  Anything else?

8    PROSPECTIVE JUROR:  No.

9    THE COURT:  Do you think that the fact

10        about your son, would that keep

11        you from being fair and impartial

12        to both sides in this case?

13    PROSPECTIVE JUROR:  Yes.

14    THE COURT:  You could be fair and

15        impartial to both?

16    PROSPECTIVE JUROR:  Yes.

17    THE COURT:  You could follow the facts

18        and the law and apply that and

19        render a fair and impartial

20        verdict?

21    PROSPECTIVE JUROR:  Yes, uh-huh.

22    THE COURT:  All right.  Mr. White?

23    MR. WHITE:  No questions.

24    THE COURT:  Mr. McLaurine?

25    MR. MCLAURINE:  No questions.

41

```
 1    THE COURT:  All right.  Thank you very
 2         much.  If you would, go back to
 3         the jury assembly room where you
 4         started out originally.
 5              Come up and have a seat,
 6         please, ma'am, in this second
 7         chair and speak into that tall
 8         microphone.
 9              Okay.  Tell us your name
10         first.
11    PROSPECTIVE JUROR:  Johnnie Pearl
12         Knight.
13    THE COURT:  Knight?  Ms. Knight, what
14         is it you wish to disclose?
15    PROSPECTIVE JUROR:  Well, you asked if
16         any relative had been convicted.
17    THE COURT:  Okay.
18    PROSPECTIVE JUROR:  And my son.
19    THE COURT:  All right.  What was he
20         convicted of?
21    PROSPECTIVE JUROR:  Oh, gee.  Some of
22         everything.  Well, he used to
23         steal.  No drugs, just stealing, I
24         think, most of the time, something
25         like that.  It been awhile, but
```

42

1    you asked the question so --

2    THE COURT:  All right.  But he's

3        convicted of some felony, crime

4        involving moral turpitude,

5        stealing?

6    PROSPECTIVE JUROR:  Yes.

7    THE COURT:  Did he serve time in jail

8        or the penitentiary?

9    PROSPECTIVE JUROR:  Yes.

10   THE COURT:  How long?

11   PROSPECTIVE JUROR:  Maybe -- I don't

12       exactly know how long he stay, but

13       it's been like 15, nearly 20 years

14       since he's been in any real

15       trouble.

16   THE COURT:  This occurred then some 15

17       or 20 years ago?

18   PROSPECTIVE JUROR:  Yes.

19   THE COURT:  Anything else?

20   PROSPECTIVE JUROR:  No.  That's it.

21   THE COURT:  Would this fact and this

22       experience keep you from being a

23       fair and impartial juror in the

24       case?

25   PROSPECTIVE JUROR:  No.

43

1    THE COURT:  Would you tend to favor one

2         side or the other because of

3         this?

4    PROSPECTIVE JUROR:  No.

5    THE COURT:  Could you listen to the

6         evidence and to the law the Court

7         gives you and apply that law to

8         the facts and render a verdict

9         that would be fair and impartial

10        to both sides?

11   PROSPECTIVE JUROR:  Yes.

12   THE COURT:  All right.  Mr. White?

13   MR. WHITE:  Just one question.  What

14        was your son's name?

15   PROSPECTIVE JUROR:  Stephen Staples.

16   MR. WHITE:  Stephen Staples.  That's

17        all I have.  Thank you.

18   THE COURT:  Mr. McLaurine?

19   MR. MCLAURINE:  Ma'am, am I correct in

20        assuming that your spouse works

21        for the Auburn Water Board?

22   PROSPECTIVE JUROR:  Yes.

23   MR. MCLAURINE:  Would you have any

24        problems with having to deal with

25        accusations of misconduct of city

44

1   employees?  Do you think that
2   would set up a conflict of
3   interest for you?
4   PROSPECTIVE JUROR:  No.  Because it
5   happens.  Sometimes, you know,
6   things -- conduct is not always --
7   everybody don't conduct themselves
8   properly.  So if you do -- if
9   you're wrong, you're just wrong.
10  I can't, you know, just be on your
11  side because of who you work for.
12  THE COURT:  Anything else?
13  MR. MCLAURINE:  That's it.
14  THE COURT:  All right.  Thank you very
15  much.  Go back to the jury
16  assembly room out front where you
17  first came from.
18  PROSPECTIVE JUROR:  Okay.
19  THE COURT:  Come in, please, ma'am, and
20  come up here to this second chair
21  and speak into that tall
22  microphone.  Tell us your name
23  first, please, ma'am.
24  PROSPECTIVE JUROR:  Carolyn Lewis.
25  THE COURT:  What's your last name?

45

```
 1    PROSPECTIVE JUROR:  Lewis, L-E-W-I-S.
 2    THE COURT:  L-E-W-I-S?
 3    PROSPECTIVE JUROR:  Yes, ma'am.
 4    THE COURT:  What is it you need to
 5         disclose?
 6    PROSPECTIVE JUROR:  I've got two
 7         younger brothers and they both had
 8         DUIs.  One of them for like --
 9    THE COURT:  All right.  How long ago
10         was that?
11    PROSPECTIVE JUROR:  One less than a
12         year ago.  I mean almost -- I'm
13         not sure.
14    THE COURT:  Okay.
15    PROSPECTIVE JUROR:  And the other
16         probably I think within a month of
17         each other two -- not this past
18         Thanksgiving, but the Thanksgiving
19         before.
20    THE COURT:  Were either one of those
21         charged by the City of Auburn?
22    PROSPECTIVE JUROR:  Yes.
23    THE COURT:  Both of them the City of
24         Auburn?
25    PROSPECTIVE JUROR:  All three of them.
```

46

1    THE COURT:  All three charges were?

2    PROSPECTIVE JUROR:  Yes.

3    THE COURT:  Two by one brother and one

4         on the other, all three were

5         Auburn?

6    PROSPECTIVE JUROR:  Yes.

7    THE COURT:  All right.  Anything else?

8    PROSPECTIVE JUROR:  No.

9    THE COURT:  Would the fact your

10        brothers have been charged -- Were

11        both of them convicted?  Both of

12        them convicted?

13   PROSPECTIVE JUROR:  Yes.

14   THE COURT:  Would those facts keep you

15        from being fair and impartial in

16        the case?

17   PROSPECTIVE JUROR:  It might.  Yes,

18        sir.

19   THE COURT:  You don't think you could

20        listen to the facts and the law

21        and follow that and render a fair

22        and impartial verdict?

23   PROSPECTIVE JUROR:  I can listen to the

24        facts, yes, sir.

25   THE COURT:  Do you think you would tend

47

1    to favor one side or the other
2    because of those experiences of
3    your brothers?
4    PROSPECTIVE JUROR:  No.
5    THE COURT:  Okay.  You think you could
6    be a fair and impartial juror?
7    PROSPECTIVE JUROR:  Yes.
8    THE COURT:  Mr. White?
9    MR. WHITE:  Ms. Lewis, did you -- do
10    you or your family members have
11    any, I guess, animosity towards
12    the City of Auburn or its
13    officers --
14    PROSPECTIVE JUROR:  No, sir.
15    MR. WHITE:  -- about the DUIs?  Did
16    they think that it was -- Do your
17    brothers believe that they were
18    handled fairly by the City of
19    Auburn?
20    PROSPECTIVE JUROR:  Yes.
21    MR. WHITE:  Okay.  Do you know whether
22    your brothers contested the DUIs?
23    In other words, did they hire
24    lawyers and go to court over it,
25    or did they just go to court and

48

```
 1              plead guilty?
 2    PROSPECTIVE JUROR:  I believe the one
 3              that had two, the second time he
 4              did -- my dad did get a lawyer for
 5              him.  But I don't know if that was
 6              just to help to lessen his
 7              punishment or -- I'm not sure.
 8    MR. WHITE:  Okay.  But the only reason
 9              I'm asking, when the judge first
10              asked you something about could
11              you be fair and impartial or --
12              you said it might.  Do you know
13              what you were talking about there?
14    PROSPECTIVE JUROR:  Yes.  Well, then he
15              asked if I could listen to the law
16              and do it that way.
17    MR. WHITE:  Right.
18    PROSPECTIVE JUROR:  I can do --
19    MR. WHITE:  What were you getting ready
20              to say though?
21    PROSPECTIVE JUROR:  Just that they both
22              had DUIs and -- that was it.
23    MR. WHITE:  You or your family don't
24              bear any grudge toward the city
25              over your brothers being
```

49

1    prosecuted for DUI?

2    PROSPECTIVE JUROR:  No.

3    MR. WHITE:  Okay.

4    THE COURT:  Anything further?

5    MR. WHITE:  Not from me.

6    THE COURT:  Mr. McLaurine?

7    MR. MCLAURINE:  No.

8    THE COURT:  If you would go, back out

9         this door to the jury assembly

10        room.

11            Come up and have a seat up

12        here, please, sir, in that second

13        chair and the speak into the tall

14        microphone.  Give us your name

15        first.

16    PROSPECTIVE JUROR:  It's Tom Denney.

17    THE COURT:  Mr. Denney, what is it you

18        need to disclose to us, please,

19        sir?

20    PROSPECTIVE JUROR:  The question was

21        asked whether you've been

22        connected or convicted of a DUI or

23        anything higher, and I was

24        convicted of a DUI.

25    THE COURT:  How long ago was that?

50

```
 1          PROSPECTIVE JUROR:  When I was 21, so
 2              that's 19 -- I guess it's '83.
 3      THE COURT:  About 1983?
 4      PROSPECTIVE JUROR:  Yes, sir.
 5      THE COURT:  And who was the charging
 6              agency?  Was it the City of Auburn
 7              or Opelika or Lee County, or who
 8              was it?
 9      PROSPECTIVE JUROR:  No.  It was in
10              North Carolina.
11      THE COURT:  In North Carolina?  All
12              right.  Anything else?
13      PROSPECTIVE JUROR:  That's it.
14      THE COURT:  Would that fact keep you
15              from being fair and impartial in
16              the case?
17      PROSPECTIVE JUROR:  I don't know what
18              the case is.
19      THE COURT:  All right.  Do you think
20              that that experience would keep
21              from you listening to the facts
22              and the law and applying that law
23              to the facts and rendering a fair
24              and impartial verdict?
25      PROSPECTIVE JUROR:  I don't think so.
```

51

```
 1          THE COURT:  Do you think you could be
 2              fair and impartial?
 3      PROSPECTIVE JUROR:  Yes.
 4      THE COURT:  All right.  Mr. White?
 5      MR. WHITE:  No questions.
 6      THE COURT:  Mr. McLaurine?
 7      MR. MCLAURINE:  Mr. Denney, you're a
 8              professor of engineering at Auburn
 9              University?
10      PROSPECTIVE JUROR:  (No audible
11              response.)
12      THE COURT:  You have to speak up and
13              say yes or no.
14      PROSPECTIVE JUROR:  Yes.
15      MR. MCLAURINE:  Do you recognize me in
16              any way shape or form?
17      PROSPECTIVE JUROR:  You look -- I may
18              have seen you around on campus.
19              And I teach some courses that
20              have, like Engineering 1100, a lot
21              of students, and I may have had
22              you in one of those classes.
23      MR. MCLAURINE:  I graduated -- my last
24              degree graduation was in 2004.
25      PROSPECTIVE JUROR:  Okay.
```

52

```
 1        MR. MCLAURINE:  I also work at Arby's
 2             on Magnolia.  You may recognize me
 3             from there.
 4        PROSPECTIVE JUROR:  That could have
 5             been it, too.
 6        MR. MCLAURINE:  Okay.
 7        THE COURT:  Anything further?
 8        MR. MCLAURINE:  Okay.
 9        THE COURT:  All right, sir.  Thank you
10             very much.  If you would, go out
11             this back door here and go back to
12             the jury assembly room.  We
13             appreciate it.
14             Come up and have a seat up
15             here in this second chair and
16             speak into that tall microphone.
17             You are Professor Knight?
18        PROSPECTIVE JUROR:  Yes, sir, I am.
19        THE COURT:  All right.  I know you were
20             asked to come back.  Is there
21             anything that you wish to
22             disclose?
23        PROSPECTIVE JUROR:  Yes, sir.  I have
24             a -- was convicted of a DUI five
25             years ago.
```

53

1    THE COURT:  And where was that?

2    PROSPECTIVE JUROR:  In this court.

3    THE COURT:  And who was the charging

4        agency?

5    PROSPECTIVE JUROR:  Lee County.

6    THE COURT:  Lee County?  Anything else?

7    PROSPECTIVE JUROR:  No, sir.

8    THE COURT:  Would that fact keep you

9        from being fair and impartial to

10        both sides in this case?

11    PROSPECTIVE JUROR:  No, sir, it would

12        not.

13    THE COURT:  Can you listen to the

14        evidence and the law that the

15        court gives you and apply that and

16        render a fair and impartial

17        verdict?

18    PROSPECTIVE JUROR:  Yes.  I believe I

19        can.

20    THE COURT:  All right, sir.  Thank

21        you.  Mr. White?

22    MR. WHITE:  Yes, sir.  During that DUI

23        five years ago, do you think -- do

24        you feel like you were treated

25        fairly by law enforcement?

54

1    PROSPECTIVE JUROR:  Yes, I was.

2    MR. WHITE:  Did you have any beef with

3         the way you were treated by them

4         at all?

5    PROSPECTIVE JUROR:  No, I did not.

6    MR. WHITE:  Did you contest the DUI?

7         In other words, did you come to

8         court and fight it and try to get

9         off, or did you plead guilty?

10   PROSPECTIVE JUROR:  I pled guilty.

11   MR. WHITE:  Was that downstairs?

12   PROSPECTIVE JUROR:  I had -- yes, it

13        was downstairs.  Yes, it was.

14   MR. WHITE:  Was that your first offense

15        DUI?

16   PROSPECTIVE JUROR:  First and only

17        offense, yes, sir.

18   MR. WHITE:  That's all I've got.

19   THE COURT:  Mr. McLaurine?

20   MR. MCLAURINE:  Mr. Knight, I believe

21        you eat at Arby's on a fairly

22        regular basis?

23   PROSPECTIVE JUROR:  Yes, sir.

24   MR. MCLAURINE:  So you do recognize me?

25   PROSPECTIVE JUROR:  Yes, I do.

1    MR. MCLAURINE:  I know you eat with
2        Dr. Silbing and Dr. Bafanani on a
3        regular basis?
4    PROSPECTIVE JUROR:  Yes, sir.
5    MR. MCLAURINE:  And I know you know
6        Dr. Jones?
7    PROSPECTIVE JUROR:  Right.
8    MR. MCLAURINE:  I've discussed this
9        case with each of them in some
10       regard.  Have you had the
11       opportunity to discuss that with
12       them?
13   PROSPECTIVE JUROR:  Dr. Silbing has
14       told me some of what you have said
15       with him, yes.
16   MR. MCLAURINE:  Okay.  Do you think
17       that what you've heard will cause
18       you to have a pre-formed opinion
19       about what this case means?
20   PROSPECTIVE JUROR:  No, I don't.
21   MR. MCLAURINE:  Okay.  And do you
22       recognize me from any of your
23       classes?
24   PROSPECTIVE JUROR:  No, I don't.
25   MR. MCLAURINE:  I've never had you.

56

```
 1    PROSPECTIVE JUROR:  Okay.  I was going
 2           to say, that doesn't mean I didn't
 3           teach you, although I do not
 4           recognize you from any of my
 5           classes.
 6    MR. MCLAURINE:  Do you recognize -- Has
 7           Dr. Bafanani ever discussed me as
 8           a student, him being the director
 9           of undergraduate students, has he
10           ever discussed me in any way with
11           you about my personal character or
12           qualities or anything like that?
13    PROSPECTIVE JUROR:  No, he has not.
14    MR. MCLAURINE:  Okay.  Nothing further.
15    THE COURT:  Anything further,
16           Mr. White?
17    MR. WHITE:  The fact that you've had
18           some discussions with somebody
19           about this case, do you think that
20           would enter into your mind as you
21           sit and and hear the evidence in
22           the case?
23    PROSPECTIVE JUROR:  I don't think so.
24    MR. WHITE:  Well, I mean if evidence
25           comes in to court here today
```

57

1        that's contrary to the impression

2        that you had in your mind, are you

3        going to tend to go with the

4        impression you had in your mind or

5        with the evidence that you

6        receive?

7    PROSPECTIVE JUROR:  I would go with the

8        evidence that I see in court.

9    MR. WHITE:  You don't have any

10       predisposed bias to believe that

11       Mr. McLaurine is not guilty of

12       these charges?

13   PROSPECTIVE JUROR:  No. I don't.

14   MR. WHITE:  All right.  That's all I

15       have.

16   MR. MCLAURINE:  Just one more

17       question.  Have you and I ever had

18       a conversation that you can

19       remember?

20   PROSPECTIVE JUROR:  With you?

21   MR. MCLAURINE:  Personally?

22   PROSPECTIVE JUROR:  Not that I can

23       remember.  We have nodded and said

24       hello at the Arby's.  I think

25       that's it.

58

```
 1        MR. MCLAURINE:  Thank you, sir.

 2        THE COURT:  Anything further?

 3        MR. MCLAURINE:  No, sir.  All right.

 4        THE COURT:  All right, sir.  Thank you

 5             very much.  If you would just go

 6             back to the jury assembly room.

 7             Attorneys have any comments on any

 8             of these jurors?  Any motions?

 9             All right.  We will --

10        MR. MCLAURINE:  Actually --

11        THE COURT:  Do you have a list?

12        THE CLERK:  No.

13        THE COURT:  How much time you need?  We

14             need to take a recess?

15        THE CLERK:  No.  You can go ahead and

16             do the prelims.

17        THE COURT:  We're going to draw out 18

18             names.

19        THE CLERK:  Do we we need an alternate?

20        THE COURT.  Yes, I think we do need an

21             alternate.  We will draw three out

22             for one alternate, if that's all

23             right.  One, two, three, four,

24             five, six, seven, eight, nine,

25             ten, eleven, twelve, thirteen,
```

59

```
 1              fourteen, fifteen, sixteen,

 2              seventeen, eighteen.  All right.

 3              That's your eighteen.  I'm going

 4              to draw three out for the

 5              alternates.  One, two, three.

 6              These are the ones that were not

 7              used.

 8                  While, she's doing that list,

 9              let me ask the parties how much

10              time you want for opening

11              statement.  Mr. White?

12     MR. WHITE:  I think ten minutes will be

13              plenty for me.

14     THE COURT:  Mr. McLaurine?

15     MR. MCLAURINE:  Ten, maybe fifteen.

16     THE COURT:  Fifteen?

17     MR. MCLAURINE:  I think I could

18              possibly get done in ten, but I

19              can't guarantee it.

20     THE COURT:  I'll give you both fifteen

21              if you need it.

22     MR. MCLAURINE:  Thank you, sir.

23     THE COURT:  You got all your exhibits

24              marked?

25     MR. WHITE:  I don't right offhand, but
```

60

1    I'll be doing that here.

2    THE COURT:  Do you already have that

3    statute you mentioned?  You want

4    to put that in the record at this

5    time --

6    MR. WHITE:  Yes, sir.

7    THE COURT:  -- the resolution?

8    MR. MCLAURINE:  Just want to make sure

9    I understand.  It's just basically

10    saying that the City's adoption of

11    that particular piece of law has

12    the same identical meaning that it

13    does at the state level; is that

14    correct?

15    MR. WHITE:  That's correct.  But not --

16    it says that we've adopted all the

17    laws of the State of Alabama, not

18    just this particular law.  The

19    violation of the laws of the State

20    of Alabama are a violation of the

21    laws of the City of Auburn.

22    That's all it says.

23    MR. MCLAURINE:  I just needed to

24    clarify.

25    THE COURT:  Now, that's State's Exhibit

61

```
 1              #1; is that right?
 2         MR. WHITE:  City's Exhibit #1.
 3         THE COURT:  City Exhibit #1?  All
 4              right.  That will be admitted.
 5              All right.  If you will mark your
 6              others and -- do you have -- any
 7              exhibits that you are going to
 8              have offered, you need to mark
 9              them.
10         MR. MCLAURINE:  Okay.
11         THE COURT:  They will have to have a
12              defendant's tab and you can number
13              them.  And I assume the court
14              reporter has got those tabs.
15         MR. WHITE:  Your Honor, do you have any
16              idea on a timeline?  It looks like
17              we're running up on 12:00.  We're
18              going to pick a jury before
19              lunch.  Do you want to come
20              back -- you want to do openings
21              before lunch or --
22         THE COURT:  I think not.  I think we
23              can get through about 12:00 and
24              then take about an hour and hour
25              and fifteen minutes and come back
```

62

1          and do opening statements.

2     MR. MCLAURINE:  That should be fine.

3          Your Honor, do I need to mark

4          rebuttal evidence?

5     THE COURT:  No.

6     MR. MCLAURINE:  I need to get a couple

7          of those tabs then.

8     THE COURT:  He's got them right over

9          here.  All right.

10    MR. WHITE:  Judge, you want to take up

11         a motion?

12    THE COURT:  Yes, I would like to do

13         that.

14    MR. WHITE:  The first motion that I

15         have is based upon this issue of

16         probable cause or reasonable

17         suspicion.  And you've already

18         entered an order to the effect

19         that the officers had probable

20         cause or reasonable suspicion to

21         approach and question

22         Mr. McLaurine.  And as you know,

23         the issue of probable cause is an

24         issue of law for the Court to

25         decide.  It is not an issue for

63

1    the jury to decide.  And you've

2    already made that decision.  So I

3    would ask for a motion limine to

4    prohibit Mr. McLaurine from

5    arguing that the officers never

6    had reasonable suspicion or

7    probable cause to arrest or detain

8    him or to question him in any way.

9    THE COURT:  Mr. McLaurine?

10   MR. MCLAURINE:  Two issues with that.

11   First is that I have already tried

12   to raise the motion and the facts

13   as you understood them in the

14   motion you issued do not match the

15   facts that were presented in the

16   case and, therefore, the motion

17   is -- the original ruling is not

18   based on the total picture of

19   what's going on.

20   The second issue is that while

21   I would agree that under most

22   normal circumstances reasonable

23   suspicion is a matter of law to be

24   determined by the judge of what

25   the standards are, in this case,

64

1               it is specifically identified in

2               the statute as being required to

3               establish whether a police officer

4               was legitimately acting in his

5               capacity as a state official.  And

6               since that must be present and it

7               must be articulated to the

8               defendant, those -- as part of

9               establishing that, that the

10              defendant knew what was going on,

11              that makes it a matter of fact for

12              the jury to decide whether or not

13              it's true or not.

14      THE COURT:  All right.  I ruled on that

15              earlier based on what was

16              presented to me.  I'll wait and

17              see what's offered in this case

18              and rule on it as it comes in from

19              the witnesses.

20      MR. WHITE:  Also, as you know, Your

21              Honor, we have made a plea offer

22              in this case, and Mr. McLaurine is

23              representing himself.  I don't

24              know if he's aware of the rule,

25             but any mention of a plea offer is

65

1       not appropriate.

2       MR. MCLAURINE:  Yes, sir.  I'm aware of

3           the rule and I understand that.

4       THE COURT:  All right.  I'll grant that

5           motion.  Anything further?

6       MR. WHITE:  That's all.

7       THE COURT:  Mr. McLaurine, you have any

8           motion in limine to present?

9       MR. MCLAURINE:  Not specifically, Your

10          Honor.  I just want to make sure

11          that the prosecution follows all

12          the rules of entering evidence

13          properly, that they have to

14          establish the predicates before

15          they can enter the evidence so

16          that the jury won't hear

17          information they shouldn't if the

18          prosecution isn't capable of

19          presenting the proper precedents.

20      THE COURT:  I'll rule on that as we

21          come to it.

22      MR. MCLAURINE:  Okay.

23      THE COURT:  We may have time for me to

24          give instructions to the jury

25          about what their conduct is to be

66

1       outside the presence once the --

2       we'll see how long it takes y'all

3       to pick a jury and then come back

4       and do opening statements.  Let's

5       take about a five-minute break

6       until she gets the list.

7                   (Brief recess)

8       MR. MCLAURINE:  I wanted to present

9       rulings of the Supreme Court and

10      state rulings as to evidence of

11      what my understanding of the law

12      was in order to determine the

13      mistake of law defense.  And I

14      believe you had ruled that I am

15      not allowed to enter those?  Is

16      that what you had --

17      THE COURT:  Yes.  I'm not going to let

18      you introduce court decisions or

19      citations to the jury.  You can --

20      you have a jury charge as to the

21      law.  That's what jury charge

22      is -- That's what that's supposed

23      to be about.

24      MR. MCLAURINE:  Right.  And --

25      THE COURT:  The evidence is the facts

67

1    of the case.  Your argument is

2    what you think the effect of that

3    evidence is.

4    MR. MCLAURINE:  Yes, sir.  And part of

5    the burden of proof of the

6    prosecution is to establish that I

7    had an intent to obstruct a

8    government officer and that if my

9    belief was that that officer was

10   not acting in his official

11   capacity, based on my

12   understanding of the law, I could

13   have no intent to do what was

14   said.

15   THE COURT:  Well, that's argument.

16   MR. MCLAURINE:  Okay.

17   MR. WHITE:  Your Honor, the mistake of

18   law is no defense.

19   MR. MCLAURINE:  It is when a state of

20   mind is necessary.

21   THE COURT:  All right.  Anything else?

22   All right.  Bring the 13 in.  Do

23   you have the names of those?

24   MR. MCLAURINE:  No, I don't.

25   THE CLERK:  You just want the 13?

68

1    THE COURT:  And the others need to be
2        released and to stay in touch by
3        code-a-phone.  They can go for
4        today.  Which are the thirteen?
5    PROSPECTIVE JUROR:  We are.
6    THE COURT:  All right.  Ladies and
7        gentlemen, you have been selected
8        to be the jury in this case.
9        There are thirteen of you.  Twelve
10       of you are the regular jury.  One
11       is an alternate.  That person will
12       not be identified until the case
13       has completely concluded and the
14       case is ready to be submitted to
15       you for your verdict.  That's
16       after all the evidence and after
17       the charge by the Court and the
18       lawyers' presentation.  So one of
19       you is an alternate, but all
20       thirteen of you need to try this
21       case at this point.
22           I need to first give you your
23       oath and then I want to give you
24       some instructions, and then I'm
25       going to release you for lunch and

1 we will come back for the opening

2 arguments. So at this time, if

3 you would raise your right hand to

4 be sworn? Do you solemnly swear

5 that you will well and truthfully

6 try all issues which may be

7 submitted to you during the trial

8 of this case and true verdicts

9 render according to the evidence,

10 so help you God? Say I do.

11 PROSPECTIVE JURORS: I do.

12 THE COURT: All right. Thank you.

13 Now, these are some instructions

14 for you to follow regarding your

15 conduct during the case and also

16 to tell you sort of an outline of

17 what's going to happen as the case

18 proceeds. It's important that you

19 observe these rules of conduct

20 during your service as a juror in

21 the case. These rules are

22 directed to your conduct when you

23 are outside the jury box, whether

24 it be during a recess or an

25 overnight separation. Strict

1  compliance with these rules will
2  help ensure a fair trial to all
3  concerned.  Failure to comply with
4  these rules on the other hand
5  could result in the case having to
6  be tried again.
7      These rules are conduct are as
8  follows.  You should have no
9  discussions with anyone about this
10  case nor should you allow anyone
11  to discuss it in your presence or
12  hearing.  If anyone, including a
13  member of your family, seeks to
14  engage you in conversation about
15  the case, you should respond that
16  you are under a court order not to
17  discuss the case.  It would be
18  improper for you to discuss the
19  case even with a fellow juror
20  except during deliberation in the
21  jury room.  Once a verdict has
22  been returned in the case and your
23  service as a juror in the case is
24  complete, then you may discuss the
25  case with whomever you wish to

71

whatever extent you wish or not at
all if you wish.

You should not reed any
newspaper account of the case nor
should you watch watch account of
this on TV or listen to any
account on the radio.

You should not have any
conversation with any attorney or
party or witness in the case, even
about matters unrelated to the
case, for it might appear to
others that you were discussing
the case.

You should not seek to make
any investigation of your own
regarding the case.

You should not visit the scene
of any occurrence which is at
issue in the case and you should
not conduct any experiment
regarding the case.

You should not consult any
resource material such as a law
book, a dictionary, encyclopedia,

72

or the Bible about any issue in the case.

The law contemplates that your verdict will be based upon the evidence and the law presented to you during the trial and your reliance upon any other information gained as a result of a private investigation would be improper.

You should isolate yourself from any circumstance which might influence your verdict in the case, and you should guard against any conduct which would give anyone in the case reason to doubt your fairness and impartiality in the case. The Court would appreciate your compliance with these rules.

Now, let me tell you something about the process that you'll be seeing as the trial progresses. Counsel for the City of Auburn will make an opening statement in

73

1    the case.   The defendant

2    represents himself and he will be

3    making a statement outlining the

4    defenses in the case.   Each side,

5    in the opening statement, will be

6    confined to an outline of the case

7    and a statement of what they

8    expect the evidence to show.   This

9    statement is intended to

10   familiarize you and the Court with

11   the case so that you will be

12   familiar with the theories and

13   contentions of each side from the

14   beginning.

15       An attorney is an officer of

16   the court.   It's his duty to

17   present evidence on behalf of his

18   client and to make such objections

19   as deemed proper and to fully

20   argue the client's cause.   An

21   attorney's statements and

22   arguments are intended to help you

23   understand the evidence and to

24   apply the law.   However, they are

25   not evidence and you should

1    disregard regard remark,

2    statement, or argument which is

3    not supported by the evidence or

4    by the law as given to you by the

5    Court.

6       Likewise, statements made by

7    the Court are not evidence and are

8    not to be considered by you.

9       Mr. McLaurine represents

10   himself, so he's operating as his

11   own attorney.  But when he takes

12   the stand under oath, then he

13   would he would testifying in the

14   case.  Otherwise, he is acting as

15   an attorney in the case until he

16   is sworn and put on the witness

17   stand.

18      Following the opening

19   statements by counsel, witnesses

20   will first be called by the City

21   of Auburn to testify.  After the

22   City of Auburn has presented

23   witnesses, the defendant will then

24   be permitted to call witnesses to

25   testify.  All witnesses will be

75

sworn and will testify under
oath.   Their testimony will be
evidence.   There may be exhibits
offered which, if received by the
Court, will also be evidence.   It
will be upon all this evidence
that you will arrive at your
verdict.

When a judge and a jury sit
together as a court of law, it's
the duty of the judge to see that
the trial progresses in an orderly
fashion, to rule upon all legal
matters that are presented, to
define the issues that are
involved and instruct the jury as
to the law applicable to the
particular case.

It will be your duty as jurors
to follow the law as so stated to
you by the judge.  You will
therefore rend a verdict in
accordance with the facts you
determine them from the evidence
and the law as given to you by the

1    Court.  You will be the sole and

2    exclusive judges of the facts.  It

3    will be your duty to attempt to

4    reconcile the testimony of all the

5    witnesses so as to make them all

6    speak the truth.  If this can be

7    done reasonably.  If you cannot

8    reasonably reconcile all the

9    testimony, it is in your duty to

10   consider the testimony with the

11   view of determining what the true

12   facts are.  In so doing, you may

13   accept or reject any part of the

14   testimony of any witness and

15   accept only the testimony you

16   consider worthy of belief.

17       In determining what the true

18   facts from the evidence are, you

19   may take into consideration any

20   natural interest or bias a witness

21   may have as a result of any

22   connection with the case.  You may

23   take into consideration the

24   interest or bias a witness may

25   have may have shown while

77

1    testifying.

2        You may take into

3    consideration the demeanor of any

4    witness, as to whether the witness

5    has apparently testified frankly

6    or evasively.

7        You may take into

8    consideration any matter which you

9    would, in your everyday affairs,

10   in passing upon the truthfulness

11   and accuracy of the testimony.

12   Weigh the testimony in light of

13   your common observation and

14   experience and reach a verdict

15   that will be based upon the truth

16   as you determine it from the

17   evidence.

18       During the trial, I will rule

19   on objections by counsel as to the

20   admissibility of evidence and

21   other evidence.  It will be the

22   privilege of the counsel and his

23   duty to make such objections to

24   the offer of evidence which

25   counsel deems illegal and

78

improper. You must not concern yourself with the reason for my ruling since they are controlled and required by rules of law. You are not to speculate as to what possible answers to questions would have been which I do not require to be answered.

The overruling of objections to evidence is not intended to indicate the the weight to be given such evidence by you. Such admitted evidence will be considered along with all other evidence. You are to disregard all evidence which the Court may exclude.

Following the close of the evidence, the case will then be -- argument of counsel will proceed and it will be the privilege of the counsel to address you at that time. This is sometimes referred to as the summation. We refer to it as the argument of counsel.

79

1    Counsel have the right to discuss

2    the evidence and all reasonable

3    inferences to be drawn therefrom

4    to help you arrive at a just and

5    and verdict.

6    Counsel for the City of Auburn

7    will have the right to open the

8    arguments.  Counsel for the

9    defendant has the right to follow

10   the opening argument.  Counsel for

11   the city has the right to make a

12   closing argument after that.

13   Following the arguments of

14   counsel, it will be the duty of

15   the court to state to you the

16   applicable rules to guide you in

17   arriving at your verdict.  The

18   case will then be submitted to you

19   for your deliberation and

20   verdict.

21   Upon retiring to the jury room

22   to consider your verdict, you will

23   elect one of your number as a for

24   person to moderate your discussion

25   and to sign and return the verdict

80

1    arrived at by you to the court.

2         All right.  What says the City?

3    MR. WHITE:  City is satisfied.

4    THE COURT:  What says the defendant?

5    MR. MCLAURINE:  Satisfied.

6    THE COURT:  All right.  You are going

7         to be excused now for lunch.  You

8         need to be back here at 1:30.

9         Give you a little over an hour.

10        You will be handed note pads -- I

11        don't know if you've already

12        handed them -- All right.  You

13        will be given note pads when you

14        come back to the jury room.  Come

15        back here so you'll be ready to

16        come in at 1:30.

17             You need to write your name on

18        your note pad and that will be

19        yours to leave in the jury room

20        when you leave during the day or

21        at night, and you are not to carry

22        that outside the courthouse or the

23        jury room other than bringing it

24        in here for you to make notes

25        during the trial.  And you are to

1                stay in touch with the

2                code-a-phone as to further

3                directions from the court.

4                So, at this point, I'm going

5                to dismiss you, and you will

6                follow the directions of the

7                bailiff. He will tell you how to

8                go out and come back in. You

9                going to show them how to come

10               back in without going through the

11               security? And you'll then go

12               directly to the jury room and wait

13               to be called in, and then we will

14               start the trial of the case. And

15               the first thing you will hear will

16               be the opening statements of the

17               attorneys, and then they will put

18               on the evidence in the case. All

19               right. Thank you and we will see

20               you back here at 1:30.

21               (Jury exits the courtroom.)

22      THE COURT: All right. We will be in

23               recess until 1:30.

24               (Recess for lunch)

25      THE COURT: All right. Everyone is

82

back.  All right.  The jury is in
the box and the parties and
attorneys are present.  Mr. White,
you may make your opening
statement.

MR. WHITE:  Thank you, Your Honor.  May
it please the Court.  The judge,
at the beginning of the case, went
over a few statements of law that,
as a background to this case, I
would like to just talk to you
about briefly.  Okay?

First statement is, this is a
statute in the State of Alabama.
Can all of y'all read that?  Is
that close enough?  Basically says
any sheriff or other officer
acting as a sheriff -- basically
any law enforcement officer, any
highway patrolman, any state
trooper -- and here begins the
important part -- may stop any
person abroad in a public place
whom he reasonably suspects is
committing, has committed, or is

83

about to commit a felony or other
public offense and may demand of
him his name, address, and an
explanation of his actions.
Okay?  Can y'all read that?
Barely?

This is what the defendant is
charged with.  This is the actual
charging -- this is the crime that
the defendant is alleged to have
committed at this point,
obstructing government
operations.  A person commits a
crime of obstructing governmental
operations if by means of
intimidation, physical force or
interference, or by any other
independently unlawful act he
intentionally obstructs, impairs,
or hinders the administration of
law or other governmental
function; or, two, intentionally
prevents a public servant from
performing a governmental
function.  That's just as way of

84

background so that you'll know
what we're talking about in this
case.

Let me tell you what the case
is factually about.  On November
27, 2004, at about 12:45 in the
morning, the Auburn Police
Department received a 911 call of
a mysterious man walking through a
neighborhood.  The caller said he
was stopping and looking and that
he had something in his hand.
Keep in mind this is 12:45 in the
morning on November 27, 2004.
That's during the period of the
Thanksgiving holidays for Auburn
University students.  The location
of this call, this complaint came
in from, was right over there near
campus.  If you're familiar with
Magnolia Avenue, as you are coming
up Magnolia Avenue toward downtown
Auburn, there's a McDonald's there
on your left, there's a Wendy's
there on your left.  It's the

85

1    neighborhood back in there, back

2    behind -- I know it as the Lamda

3    Chi house, that area back behind

4    there.  That's where this call

5    came from.

6        And the evidence is going to

7    be that during that period of

8    time, during the Thanksgiving

9    holidays, is a period where many

10   students leave for the

11   Thanksgiving holidays, and that

12   area there is essentially vacant

13   or very -- not very many people

14   there during that period of time.

15   And it's also a period of time

16   when the police officer will

17   testify that Auburn experiences an

18   elevated crime rate -- burglaries,

19   thefts, that kind of thing --

20   related to student housing.

21       So Lavaro Bean gets a call on

22   his radio from dispatch regarding

23   this 911 call.  This is Officer

24   Lavaro Bean.  He gets a call

25   responding to this area of a

86

1    suspicious or mysterious man

2    walking in the neighborhood, who

3    is stopping and looking and may

4    have something in his hand.

5        So he responds to that area,

6    and immediately upon responding to

7    that area, he sees Mr. McLaurine,

8    the defendant, walking down the

9    roadway on Toomer Street, which

10   the officer will tell you is just

11   right off Gay Street, in that

12   general area that I'm talking to

13   you about.

14       Officer Bean gets out of his

15   car, questions Mr. McLaurine.

16   Hey, what's your name?  Where you

17   going?  What you doing?

18   Immediately, the defendant will

19   not respond to his questions.

20       Just tell me your name.

21       No, sir.  I don't have to tell

22   you my name.

23       Where are you going?  What are

24   you doing?

25       No.  I think he says something

87

1    like, I don't have to participate

2    in your illegal investigation.

3    Refuses to give any basic

4    identifying information, refuses

5    to give an explanation of his

6    whereabouts, refuses to give his

7    address.

8         Officer Bean is, you know, to

9    be honest, is dumbfounded.  He's

10   like, just tell me your name.

11   What are you doing?  Just give me

12   some information.

13        Stonewalled.  The defendant

14   will not give him any

15   information.

16        So officer Bean gets on the

17   phone to his supervisor, which is

18   Sgt. Matthews, who is now

19   Lt. Matthews.  And Sgt. Matthews

20   will be here to testify as well.

21        Sgt. Matthews responds to the

22   scene and goes through the same

23   line of questioning with

24   Mr. McLaurine.  What's your name?

25   What are you doing out here this

88

1    time of night?  What's your
2    address?
3        No, sir, I don't have to
4    respond to that.  No, sir, I'm not
5    going -- I'm not going to give you
6    that information.
7        They went so far as to tell
8    him, listen, if you'll just give
9    us this information, we'll send
10    you on your way.  If you're not
11    wanted for a burglary or if you're
12    not a terrorist, we're going to
13    send up on your way, but you have
14    to give us this basic
15    information.
16        No, sir.  I'm not going to --
17    I'm not going to do that.  I
18    refuse to do that.
19        Lt. Howell is called, the
20    shift supervisor for that night.
21    Lt. Howell arrives sometime
22    later.  Same line of questioning.
23    Mr. McLaurine, you understand that
24    if you don't give us this
25    information we're going to have to

89

1    place you under arrest.  You're

2    going to give us no other choice

3    but to place you under arrest.

4        Yes, sir, I understand that.

5        Well, will you give us your

6    name?

7        No.

8        Will you give us your

9    address?

10        No.

11        Are you going to tell us what

12    you're doing out here this time of

13    night?

14        No.

15        And at that point,

16    Mr. McLaurine is placed under

17    arrest for obstructing government

18    operations, for hindering their

19    investigation of this potential

20    crime.

21        Now, the evidence will show

22    that Mr. McLaurine was given

23    repeated opportunities to identify

24    himself, to give basic information

25    which is required by the statute

90

1            that you just saw, and he refused

2            to do that.  And based upon that,

3            he was charged with obstructing

4            government operations.  And based

5            upon those same set of facts, are

6            going to ask that you convict him

7            of obstructing government

8            operations.  Thank you.

9       THE COURT:  All right, sir.

10           Mr. McLaurine?

11      MR. MCLAURINE:  I want you to look at

12           the same information he just

13           showed you.  I want you to notice

14           that 13A-10-2 automatically

15           charged with obstructing

16           government operations is the

17           criminal code.  15-5-30 is the

18           statute authorizing a police

19           officer to make a demand, as the

20           statement says, when he has

21           reasonable suspicion.  This law

22           does not say it's illegal not to

23           give a police officer

24           identification.  It requires that

25           certain actions be initiated by me

91

1    by means of intimidation, by

2    physical force or interference, or

3    by any independently unlawful

4    act.  That has to happen first.

5    Then that act has to be

6    intentionally obstructing or

7    impairing or hindering the

8    administration of law or other

9    governmental function.

10        The key word there is

11   intentional.  I had to form an

12   intent to obstruct, impair, or

13   hinder or, in the second clause

14   here, to prevent a public servant

15   from performing a government

16   operation.  That's what's

17   necessary to convict me.  You have

18   to agree that those things

19   occurred.  Just because I refused

20   to give a police officer

21   identification doesn't mean I

22   broke the law.

23        In order to form that intent,

24   I had to know that the police

25   officer was performing in his

92

1          capacity as a public servant or

2          during the administration of law.

3          That means he had to be

4          authorized.  May I show the other

5          document that you just showed?

6     MR. WHITE:  Sure.

7     MR. MCLAURINE:  Is it over there?

8     MR. WHITE:  I believe it is, yes, sir.

9     MR. MCLAURINE:  The key phrase here is

10         whom he reasonably suspects is

11         committing, has committed, or is

12         about to commit a commit a felony

13         or other public offense.  And

14         that's the key part.  Reasonably

15         suspect, as a definition of law,

16         for which the judge will instruct

17         you what it is.  It will be your

18         job to make sure that the evidence

19         they present meets that minimum

20         standard.  If it doesn't, I could

21         not obstruct a government official

22         in his capacity as an official

23         because he wasn't there.  That's

24         all I have, Your Honor.

25     THE COURT:  All right.  Call your first

93

1             witness.

2             MR. WHITE:  City calls Officer Bean.

3             THE COURT:  Come right over here and

4             raise your right hand.

5                         LAVARO BEAN

6        The witness, having first been duly

7   sworn to speak the truth, the whole truth and

8   nothing but the truth, testified as follows:

9             THE COURT:  Come around here and have a

10                 seat and speak directly into that

11                 microphone.

12                 DIRECT EXAMINATION

13  BY MR. WHITE:

14  Q.   Officer, state your name for the Record,

15       please, sir.

16  A.   Lavaro Bean.

17  Q.   And how are you employed?

18  A.   Patrolman with the City of Auburn.

19  Q.   And how long have you been employed in that

20       capacity?

21  A.   16 years.

22  Q.   And is that also the same period of time that

23       you have been in law enforcement in general?

24  A.   Yes, sir.

25  Q.   Are you familiar with the area that this

94

1          incident occurred?

2     A.   Yes, sir.  Toomer Street and Genelda Avenue.

3     Q.   If I ask you just to draw behind you a basic

4          sketch of the area where this incident

5          occurred, would you be able to do that?

6     A.   Yes, sir.

7     Q.   Could you do that for me, please?

8     A.   Yes, sir.

9     Q.   Taking into account it's not to scale, just

10         to give the jurors an idea of where this

11         thing this happened?

12    A.    (Witness complies.)

13    Q.   So you've drawn a basic sketch there and it

14         shows Glenn at the bottom -- I think I may

15         have said Gay earlier, but Glenn at the

16         bottom, Magnolia at the top.  Where would

17         College Street be on this scale?

18    A.   College Street is that way.

19    Q.   Okay.  Point to where the McDonald's on

20         Magnolia would be.

21    A.   It would be in this area up here.

22    Q.   And where would -- where would Toomer's

23         Corner be?

24    A.   It would be back over this way.

25    Q.   All right.  And then the street that you have

95

1    named there, I don't know if the jury can

2    read that.  This is Toomer Street here; is

3    that correct?

4  A.  Yes, sir.

5  Q.  And then this is Genelda?

6  A.  Yes, sir.

7  Q.  Okay.  Thank you.  All right.  Now, let me

8    direct your attention back to the early

9    morning hours of November 27, 2004.  Were you

10   dispatched to that area?

11 A.  Yes, sir, I was.

12 Q.  Okay.  Can you give the jury the nature of

13   the dispatch call that you received?

14         MR. MCLAURINE:  Objection, hearsay.  He

15                was not privy -- Officer Bean was

16                not privy to the conversation.

17         THE COURT:  Well, he's asking the

18                nature of the call.  Overruled.

19 Q.  You received a dispatch call for you to

20   respond to a certain area; is that correct?

21 A.  Yes, of a suspicious or mysterious person

22   walking in the area of North College Street

23   and Glenn Avenue.  And he should be walking

24   westbound toward Donohue.

25 Q.  Westbound toward Donohue would be which

96

| | | |
|---|---|---|
| 1 | | direction? |
| 2 | A. | Would be -- if you keep going, Glenn Avenue |
| 3 | | would be about three blocks that way. |
| 4 | Q. | And did you respond to that location? |
| 5 | A. | Yes, sir, I did. |
| 6 | Q. | Okay.  What, if anything, did you observe |
| 7 | | upon responding at that location? |
| 8 | A. | When I received the call, I was at the |
| 9 | | intersection of Glenn and Gay, and I |
| 10 | | responded immediately over to College and Gay |
| 11 | | Street -- I mean College and Glenn, and I |
| 12 | | didn't see anybody fitting that description. |
| 13 | Q. | Okay.  Then what did you do? |
| 14 | A. | I proceeded through the light.  I continued |
| 15 | | down Glenn Avenue, passing Wright Street, and |
| 16 | | finally came to this point as I was about to |
| 17 | | pass Toomer Street.  I looked in that |
| 18 | | direction and saw a -- the only person |
| 19 | | walking period, which was McLaurine. |
| 20 | Q. | Okay.  And when you received the dispatch, |
| 21 | | were you given a clothing description? |
| 22 | A. | I was. |
| 23 | Q. | Do you remember what that clothing |
| 24 | | description was? |
| 25 | A. | I believe it was dark pants and maybe a gray |

97

1      shirt.
2    Q.   Gray?
3    A.   Or jacket.
4    Q.   Okay.  Did Mr. McLaurine's appearance
5         generally match the clothing description that
6         you were given?
7    A.   Yes, sir, it did.
8    Q.   And what, if anything, did you do when you
9         observed Mr. McLaurine?
10   A.   As I backed up, I noticed he was about 40 to
11        50 yards down Toomer Street.  I proceeded
12        down Toomer Street, noticed that he had on
13        white cap, and I radioed dispatch and let
14        them know that he was also wearing a white
15        cap and that I was about to be out.
16   Q.   Okay.  What, if anything, did you notice
17        about him before you got out on him?  Did you
18        notice anything about his gait or the way he
19        was behaving or the anything of that nature?
20   A.   Yes.  As I watched him walk, he was walking
21        on I believe it's going to be the east side
22        of the sidewalk on this side of the street.
23        He was walking very slowly, had his hands in
24        his jacket, and he was looking in the area of
25        the houses on this area.

98

1    Q.    Okay.  Tell me about November 27,

2          Thanksgiving holidays.  As a police officer

3          in the city of Auburn, what's important about

4          that period of time?

5    A.    That's definitely one of the two times

6          a year when our burglaries happens,

7          especially the apartments along those areas.

8          We often put officers on the ground,

9          especially that late at night, to walk those

10         areas to make sure that we don't have many

11         burglaries.

12   Q.    So Thanksgiving holidays is one of those

13         periods of times?

14   A.    Yes, sir.

15   Q.    And then Christmas holidays would be the

16         other one?

17   A.    Yes, sir.  And then spring break.

18   Q.    Spring break, okay.  And so when you get a

19         call of a suspicious individual in that area,

20         that rings a bell with you, so to speak,

21         doesn't it?

22   A.    Yes, sir, it does.

23   Q.    Okay.  And so you responded to

24         Mr. McLaurine.  What did you do immediately

25         upon arriving upon?

1    MR. MCLAURINE: Objection. Officer
2         Bean has not established a
3         reasonable suspicion to approach.
4    THE COURT: Overruled.
5  A.  I got out of my car. I called to him. I
6       said, hey, stop. He didn't stop. He
7       continued to walk and basically ignored me.
8  Q.  Uh-huh.
9  A.  One of the things I like to do is when I'm
10      approaching a suspicious person is to take
11      kind of a cover. Because he didn't stop, I
12      had to come out of the door in my car and
13      pursue after him.
14 Q.  What happened after that?
15 A.  I called to him a second time to say, hey,
16      stop, a little louder. And he did at that
17      point.
18 Q.  Okay. After he stopped, what, if anything,
19      did you say to him?
20 A.  I -- first thing I asked him, I asked him who
21      he was and why was he here.
22 Q.  Okay. Let me ask you this, first of all.
23      Were you in a marked patrol car?
24 A.  Yes, sir.
25 Q.  And were you wearing your uniform?

100

1    A.    Yes, sir, I was.

2    Q.    And you asked him who he was and what he was

3          doing there?

4    A.    Yes, sir.

5    Q.    And did he respond to you?

6    A.    He told me, Officer, I don't have to answer

7          those questions.

8    Q.    That was his first response to you?

9    A.    Yes, sir.

10   Q.    Okay.  Did he give you a reason why he said

11         he didn't have to respond to those questions

12         at that point?

13   A.    No, he did not.

14   Q.    So tell me what happened at that point.  What

15         did you say to him?  What did he say to you?

16   A.    At that point, I basically said Mr.  -- I

17         said, sir, do you have any weapons on you?  I

18         said, all I need to see is some ID and you

19         can be on your way.  I said, but I have to

20         see some ID or you need to tell me your name

21         or something.  And he refused.

22   Q.    And do you have an estimation of how many

23         times you asked Mr. McLaurine that evening to

24         state his name or tell you where he was going

25         or give you his address?

101

1    A.    Until he was arrested, it probably was 24,
2          couple dozen times.
3    Q.    And how long -- I know some other officers
4          arrived later, but how long were you there
5          with Mr. McLaurine from the time that you
6          first approached him and questioned him until
7          he was ultimately placed under arrest?
8    A.    I think it was inside of 30 minutes.
9    Q.    All right.  Tell me what, if anything, you
10         did -- I realize at some point you called
11         Sgt. Matthews.  And tell the jury what
12         Sgt. Matthews is in relation to you.
13   A.    He was the sergeant at the time, shift
14         supervisor.
15   Q.    Okay.  And at some point in time, you called
16         Sgt. Matthews; is that correct?
17   A.    Yes, sir.
18   Q.    And why did you do that?
19   A.    Well, I explained to Mr. McLaurine that I
20         was -- that he was giving me no other options
21         but to possibly place him under arrest.  I
22         didn't want to make an arrest on him if I
23         could possibly get out of it, so I called my
24         shift supervisor.  Maybe he knew some other
25         way to talk with him, see if he could get him

1        to talk with us.

2   Q.  Okay.  And then Sgt. Matthews arrived at the

3        scene?

4   A.  He did.

5   Q.  And were you present when Sgt. Matthews

6        talked to the defendant?

7   A.  Yes, I was.

8   Q.  Okay.  Do you remember what Sgt. Matthews

9        said to the defendant?

10   A.  Not everything.

11   Q.  Just to the best of your recollection, what

12        did Sgt. Matthews say?

13   A.  He basically went over the same things that I

14        told him, that he has to -- we told him, the

15        law says you must give us your name and

16        address.  And we asked him -- he asked him

17        repeatedly.  He said, are you refusing to do

18        this?  The response was, yes, I'm not going

19        to give you anything.

20   Q.  And, at some point, was a question asked of

21        him, do you recognize us as being law

22        enforcement officers of the City of Auburn?

23   A.  Yes, sir.

24   Q.  Okay.  Who asked that?

25   A.  I asked that first, before Matthews got

103

| | |
|---|---|
| 1 | | there.  His response was, I understand your |
| 2 | | interpretation of the law, but I'm not going |
| 3 | | to answer your questions.  And he repeated |
| 4 | | that when Sgt. Matthews asked him. |
| 5 | Q. | Did he tell you that he disagreed with your |
| 6 | | interpretation of the law? |
| 7 | A. | That's true. |
| 8 | Q. | Okay.  All right.  So Sgt. Matthews gets |
| 9 | | there, goes through the same thing that you |
| 10 | | just told us; is that correct? |
| 11 | A. | Yes. |
| 12 | Q. | What, if anything, happened after |
| 13 | | Sgt. Matthews arrived?  After Sgt. Matthews |
| 14 | | had gone through that line of questioning |
| 15 | | with the defendant, what happened at that |
| 16 | | point? |
| 17 | A. | He told us to watch McLaurine.  He got on the |
| 18 | | telephone and he called the shift commander, |
| 19 | | which is Lt. Howell. |
| 20 | Q. | Lt. Howell was the shift commander; is that |
| 21 | | correct? |
| 22 | A. | That is correct. |
| 23 | Q. | And he would have been the highest person on |
| 24 | | duty that night with the Auburn Police |
| 25 | | Department; is that correct? |

104

1   A.   That is correct.

2   Q.   Now, let me back up just a minute.  Before he

3       called Lt. Howell, he asked you to do

4       something.  What was that?

5   A.   He told me to make sure that my -- turn the

6       camera on and also to provide Mr. McLaurine

7       with his rights.

8   Q.   Now, we are going to see a video here in just

9       a minute, but the video picks up at the point

10      in time where you have already spoken to the

11      defendant and Sgt. Matthews has already

12      spoken to the defendant; is that right?

13  A.   Yes, sir.

14  Q.   Okay.  And while I'm on the issue of the

15      video, part of the video doesn't have sound.

16      Do you know why that is?

17  A.   Yes, sir.

18  Q.   Why is that?

19  A.   The -- We have a microphone that connects to

20      the unit transmitter, and it was -- for some

21      odd reason, it didn't work that night and had

22      a short in it, found out later.

23  Q.   So we have visual but we don't have audio --

24  A.   Correct.

25  Q.   -- correct?

308

105

| | | |
|---|---|---|
| 1 | A. | Yes, sir. |
| 2 | Q. | All right.  So going back to where we left |
| 3 | | off, Sgt. Matthews gets on the phone to |
| 4 | | Lt. Howell. |
| 5 | A. | Right. |
| 6 | Q. | And Lt. Howell, does he arrive at the scene? |
| 7 | A. | Yes, sir, he does. |
| 8 | Q. | And were you present when Lt. Howell spoke |
| 9 | | with the defendant? |
| 10 | A. | I was. |
| 11 | Q. | And do you recall, best of your recollection, |
| 12 | | what Lt. Howell said to the defendant? |
| 13 | A. | Just repeated the same thing; basically, we |
| 14 | | need your name and number and you're free to |
| 15 | | to go.  All we need to know is your name so |
| 16 | | we can run a computer check, make sure you're |
| 17 | | not wanted anywhere.  And if you're not |
| 18 | | wanted, you're free to go.  But he refused. |
| 19 | Q. | Okay.  Would you say that you gave him many |
| 20 | | opportunities to give you his name, address, |
| 21 | | and basic information, and he refused those |
| 22 | | many opportunities? |
| 23 | A. | Yes, sir. |
| 24 | Q. | Now, at some point during your |
| 25 | | conversation -- I believe it was when |

106

| | | |
|---|---|---|
| 1 | | Sgt. Matthews goes back to call Lt. Howell -- |
| 2 | | you tried to joke around with him a little |
| 3 | | bit to loosen him up; isn't that right? |
| 4 | A. | Yes, sir, I did. |
| 5 | Q. | Okay.  What did you say to him when you were |
| 6 | | trying to joke around with him? |
| 7 | A. | I kept begging him.  I kept telling him, just |
| 8 | | give us your name.  And I would throw in |
| 9 | | there -- I said, you're not talking to me |
| 10 | | just because I'm black, are you?  And kind of |
| 11 | | got a little smirk out of him.  But he still |
| 12 | | wouldn't. |
| 13 | Q. | You said that just as a way to try to loosen |
| 14 | | things up and see if he might talk to you? |
| 15 | A. | Right. |
| 16 | Q. | Okay.  Didn't work? |
| 17 | A. | No, sir. |
| 18 | Q. | Okay.  Officer, I'm going to play this |
| 19 | | videotape. You've viewed this videotape |
| 20 | | before today, haven't you? |
| 21 | A. | Yes, sir. |
| 22 | Q. | Does it fairly and accurately depict what |
| 23 | | transpired out there that evening from the |
| 24 | | time that it starts until the time it stops? |
| 25 | A. | Yes, sir. |

1        MR. WHITE:  This is City's Exhibit 2.
2               I move to admit City's Exhibit 2.
3        THE COURT:  Any objection?  All right.
4               Exhibit 2 is admitted.  So that
5               the record is clear, Mr. McLaurine
6               indicated no objection.  Don't
7               just shake your head.  You have no
8               objection?
9        MR. MCLAURINE:  Actually -- No.  No
10              objection.
11  Q.   Now, Officer, just so we know, how long does
12       this last; do you know?  Approximately ten
13       minutes?
14  A.   Yes, sir, I believe so.
15              (tape played)
16  Q.   While that's still running, let me ask you
17       one question.  When you get back in the car,
18       the internal microphone picks up at that
19       point; is that correct?
20  A.   That is correct.
21  Q.   Excuse me.  I would like the jury to see the
22       entire tape.  I thought you turned it off.
23       I'm sorry.Officer Bean , there was some radio
24       traffic there at the end.  Were you a part of
25       some of that radio traffic?

108

1    A.   Yes, sir.

2    Q.   And what did you say into the radio?

3    A.   What I did was I asked the dispatcher to

4         check county wide and see if he had any

5         warrants county wide, that I was headed to

6         the jail with him.

7    Q.   You said 10-8 I believe.  What does that

8         mean?

9    A.   That means in service.

10   Q.   And did you -- I believe I heard you say

11        obstructing?

12   A.   Yes, sir.  I just let the dispatcher know

13        what he was charged with.

14   Q.   So you said 10-8, obstructing?

15   A.   Yes, sir.

16   Q.   All right.  You drive Mr. McLaurine to the

17        county jail?

18   A.   Yes, sir.

19   Q.   What, if anything, happened at the county

20        jail?

21   A.   Once I got Mr. McLaurine inside the booking

22        area of the jail, he -- I started to take the

23        handcuffs off of him.  He turns to me and

24        said, am I charged with a crime?

25             I said, what?

1        He said, am I charged with a crime?

2        I said, yes, you're charged.  I said, I

3    charged you out on the scene.

4        He said, I want to know if I'm

5    officially charged with a crime.

6        I said, you are under arrest for -- and

7    I told him obstructing governmental

8    operations.

9        And he said, okay, then I'll do whatever

10   you want me to do.

11   Q.  Okay.  And so, at that point, did he give you

12       his name?

13   A.  Yes, sir.  He provided his name, information.

14   Q.  He provided you his name, his information.

15       Did he tell you what he was doing out there

16       that night?

17   A.  I think he said something about walking to a

18       restaurant or Subway.

19   Q.  Walking to Subway?

20   A.  Yes, sir.

21   Q.  He told you that when he got to the jail

22       house?

23   A.  Yes, sir.

24   Q.  But he wouldn't tell you that at the scene;

25       is that correct?

110

1    A.    That is correct.

2          MR. WHITE:  I believe that's all I have

3               for this officer.

4          THE COURT:  All right, sir.

5               Cross-examination?

6               CROSS EXAMINATION

7    BY MR. MCLAURINE:

8    Q.    Officer Bean , did I speak with anyone, to

9          your knowledge, besides police officers from

10         the moment you contacted me until the moment

11         you put handcuffs on me?

12   A.    No, sir.

13   Q.    Did you ever explain why you wanted to have

14         my identification and what I was doing and my

15         name?

16   A.    Yes, sir, I did.

17   Q.    What was your explanation?  I don't believe I

18         heard any testimony.

19   A.    One of the things I am explained to you is

20         that in that particular neighborhood,

21         basically, the crime does go up at that

22         particular time of year; that I just can't

23         let you walk away, because if something has

24         happened, I need to know who you are and how

25         to get in touch with you.

1          And I also explained to you that there

2    has been a mysterious death in that

3    neighborhood and that it's still unexplained

4    to this day.

5    Q.  Did you ever offer an explanation that

6         specifically identified something I did as

7         suspicious?

8    A.   I just told you I responded to a suspicious

9         person complaint.

10   Q.   But you can't articulate any particular

11        action that you found suspicious?

12   A.   Yes, sir.

13   Q.   And what was the specific objective fact you

14        found suspicious?

15   A.   That you were walking down an abandoned

16        neighborhood during the time of the year and

17        time of night that we have -- that's when

18        normally our burglars come out.

19   Q.   So that was the only piece of information?

20        There wasn't anything else?

21   A.   Not that I know of.

22   Q.   I would like to ask you a question about a

23        statement you said you read me my rights or

24        something to that effect.  Are you referring

25        to the Miranda, sir?

112

| 1 | A. | Yes, sir. |
|---|---|---|

1   A.   Yes, sir.

2   Q.   You also testified -- well, at what point did

3        you read the Miranda?

4   A.   After Sgt. Matthews showed up.

5   Q.   So that was before the start of that tape?

6   A.   Yes, sir.

7   Q.   Would you read the Miranda for the jury right

8        now, please?

9   A.   I don't know if I recall all of it.

10           MR. WHITE:  Your Honor, I object.  May

11                I approach on this?

12           THE COURT:  Yes.

13           MR. WHITE:  Miranda doesn't apply in

14                this situation.  It's not

15                custodial interrogation and he

16                clearly had the duty to respond to

17                the officer's interrogation.  He's

18                trying to make an argument that he

19                had a right to remain silent when

20                he doesn't -- under that statute,

21                he doesn't.  He still has to

22                provide basic information under

23                the statute.  He's trying to

24                confuse the jury.

25           MR. MCLAURINE:  The important issue

113

1          here, sir, is whether or not I

2          understood the instructions of the

3          officer.  I wanted to make sure

4          that all instructions that he gave

5          me were presented to the jury so

6          they could make a decision about

7          whether I knew specifically what I

8          had to do.

9      MR. WHITE:  I think the jury knows what

10          the Miranda rights are.  There's

11          no sense in him reading them out

12          loud here in court.

13      THE COURT:  Sustain the objection.

14          Sustain.

15  Q.  You testified you asked questions beyond my

16      name, my identification, and what I was doing

17      in the area?

18  A.  Yes, sir.

19  Q.  What authorized you to do that?

20  A.  I'm an employee of the City of Auburn as a

21      patrolman and I'm obligated to fulfill my

22      function.

23  Q.  So there's no other statute that authorized

24      to you ask those questions that you can name?

25  A.  I don't understand the question.

114

```
1   Q.    The question is --
2               MR. WHITE:  Your Honor, I object.  He
3                    doesn't have to have a statute to
4                    ask a question, okay, if that's
5                    what he was asking.  I object to
6                    this line of questioning.
7               THE COURT: Overruled.  Go ahead.
8               MR. MCLAURINE:  You're overruling his
9                    objection?
10              THE COURT:  Yes.  Go ahead.
11  Q.    My question is, the statute specifically
12        authorized three questions for you to ask.
13        The other questions you asked, what statute
14        or provision of law authorized you to ask
15        those questions?
16  A.    Basically Title XV, Alabama law.
17  Q.    You cited a section of the code, but you
18        haven't cited any particular part of the
19        code.
20  A.    When I respond to a suspicious person and I
21        reasonably believe that he's about to commit
22        or has committed a crime, the law says I can
23        come up and ask those questions.
24  Q.    Was there a crime you believed that had been
25        committed?
```

115

```
 1   A.   I believed there's a crime afoot.
 2   Q.   What was it?
 3   A.   The whole investigation was to determine
 4        whether or not a crime has been committed.
 5   Q.   So did you not have any knowledge that a
 6        crime had been committed?
 7   A.   No, sir.
 8   Q.   Did you have knowledge that a crime was being
 9        committed at the moment that you saw me?
10   A.   No, sir.
11   Q.   Did you have knowledge that a crime was about
12        to be committed?
13   A.   That was to be determined.
14   Q.   But you did not have specific knowledge that
15        a crime was about to be committed?
16   A.   No, sir.
17   Q.   You mentioned racial statements that you
18        made?
19   A.   Yes, sir.
20   Q.   Did I give you any reason to believe that I
21        harbored racial sentiments myself?
22   A.   No, sir.
23   Q.   Is it standard practice to interject racial
24        questions into an interrogation?
25   A.   During my 16 years, I have found that certain
```

116

```
1          people respond to certain officers, yes, sir.
2     Q.   Was I one of those certain people you
3          believed that might respond?
4     A.   That's what I was trying to determine.
5     Q.   Did you make any other racial statements that
6          evening?
7     A.   No, sir, not that I know of.
8     Q.   Did you make any other statements about
9          national origin?
10    A.   No, sir.
11    Q.   Did you make any statements using the word
12         Confederate or Confederacy?
13    A.   Yes, sir.
14    Q.   What was the statement you made?
15    A.   I advised you that early in my career I
16         responded to a call with an officer and this
17         particular gentleman had warrants for his
18         arrest.  When that officer contacted him, he
19         told that officer, I refuse to answer any of
20         your questions because I'm part of the League
21         of Confederate States and we do not recognize
22         the laws of the United States.  And he told
23         us our action was illegal.  And I told you I
24         asked you that question to see if, you know,
25         that was your thinking also.
```

117

1    MR. MCLAURINE:  I'd like to show you

2        the statute again.  Just turn it

3        on or -- do I need to turn the

4        television on to use this

5        projector?

6    THE COURT:  Yes.  Go ahead.

7    MR. MCLAURINE:  Where is the on

8        button?  Do I need to --

9    MR. WHITE:  Video 1.

10    MR. MCLAURINE:  Video 1?

11  Q.  Officer, what actions did you observe me

12      perform which you consider intimidation?

13  A.  One of the actions you performed was, as I

14      got through explaining to you what may happen

15      to you, you said, Officer, if you're done

16      with me, I'm leaving.  And you tried to walk

17      away.

18  Q.  Did you feel that you were in -- you or any

19      other person was in danger of physical harm

20      by the action that I proposed?

21  A.  Yes, sir.  When you first -- when I first

22      approached you, I got a feeling that

23      basically your actions was not normal.  And

24      that's why I asked you to, you know, see if I

25      could pat you down for weapons.

118

1    Q.  So that's it.  I was not normal.  That's what
2        you considered a specific reason why someone
3        might be in danger, because of the action of
4        me leaving as I proposed it, that specific
5        thing?
6    A.  Well, it's your answer, sir.
7    Q.  Did I use physical force at any time?
8    A.  No, sir.
9    Q.  Did I use physical interference at any time?
10   A.  Other than verbal, no, sir.
11   Q.  Can you describe any unlawful act I performed
12       that evening?
13   A.  When you refused to give your name, address.
14   Q.  Any independently unlawful act?
15   A.  I don't understand that question.
16   Q.  The statute requires that an act be
17       independently unlawful.
18       MR. WHITE:  Your Honor, I object to his
19            arguing the law with the witness.
20       THE COURT:  Sustained.
21   Q.  Officer, Section 13A of the state code is the
22       section of the criminal code.  Is there any
23       action contained solely within the criminal
24       code that you observed?
25       MR. WHITE:  Your Honor, again, I

1          object.  There's no legal basis to

2          restrict it to 13A.  There are

3          other criminal acts that occur

4          outside of 13A, namely, 15-330

5          which he's charged with violating.

6      THE COURT:  Sustained.

7      MR. MCLAURINE:  All right.  Your Honor,

8          I believe I'm charged with abiding

9          13A-10-2 with respect to 15-5-30,

10         and that I did not violate 15-5-30

11         until I obstructed the officer in

12         his actions, therefore, that not

13         being an independently unlawful

14         act.

15      THE COURT:  So the objection is

16         sustained.

17 Q.  Okay.  So the two actions you believe qualify

18   under the statute are my telling you that I

19   was going to leave and my refusal to provide

20   identification, name, all that other stuff as

21   an independent unlawful act.

22     My next question is, there are two

23   portions here for this section.  Let's move

24   it over some.  Let's look at the second one

25   first.  Intentionally prevents a public

120

```
 1          servant from performing a governmental
 2          function.  Did I prevent you from performing,
 3          as a public servant, any governmental
 4          function?
 5     A.   Yes, sir, you did.
 6     Q.   What was that?
 7     A.   Your refusal.
 8     Q.   You eventually did acquire the information
 9          you wanted?
10     A.   That was after you were placed under arrest.
11     Q.   Yes, sir.  And -- but the statute says that I
12          did actually prevent you.  The first part of
13          the code says obstructs, impairs, or hinders,
14          meaning make it difficult for it to happen.
15               So my question is, did I prevent you
16          from performing what you wanted to prevent --
17          what you -- what your goal was?
18     A.   Yes, sir.
19     Q.   I thought you stated earlier that once we got
20          to the police station and I identified that I
21          was under arrest, I performed basically
22          whatever you wanted?
23     A.   Yes, sir, you did.
24     Q.   So how did I prevent you from performing a
25          governmental function?  You were not -- what
```

121

1       I'm asking is, you were completely stopped

2       from being able to do what you wanted to do?

3    A.  Yes, sir.  I would have let you go free if

4       you had performed this -- if you had complied

5       with the law.

6    Q.  All right.  The first part, intentionally

7       obstructs, impairs, or hinders the

8       administration of law or other government

9       function.

10          THE COURT:  What's the question?

11          MR. MCLAURINE:  I'm go to get to it,

12              sir.

13   Q.  What evidence can you offer that shows a

14       pattern of attempting to obstruct, impair, or

15       hinder?

16          MR. WHITE:  Objection, Your Honor.

17          THE COURT:  Sustained.

18          MR. WHITE:  There's no call for --

19   Q.  I'm sorry.  At any time, did I give you

20       reason to believe that you were not

21       performing a lawful investigation?

22   A.  Yes, sir.

23   Q.  Did you believe my statements to those

24       effects?

25   A.  I don't understand.

122

Q.   Did you consider my communication to be an
     attempt to mislead you in what I was trying
     to do?

A.   I believed it to be your attempt to hinder
     the investigation, yes, sir.

Q.   I'm not so concerned with did you believe I
     was telling the truth, that I believed the
     investigation --

          MR. WHITE:  Objection.

          THE COURT:  When are you talking about
               in time?

          MR. MCLAURINE:  Sir?

          THE COURT:  When are you talking
               about?  Identify the time frame in
               which you are asking did he
               believe what you were saying at
               what time.

Q.   The statement that this was an unlawful
     investigation.  Did you believe I was telling
     you the truth?

          MR. WHITE:  Objection.  Calls for a
               mental operation, Your Honor.

          THE COURT: Overruled.

          MR. WHITE:  I'm not sure I understand
               the question, Your Honor.

123

THE COURT:  It's a confusing question.

MR. MCLAURINE:  Withdrawn.

THE COURT:  All right.  Anything

further?

Q.   Officer Bean , when you recently viewed the
tape, did you notice any other activity
besides the police and myself on the tape?

A.   The cars passing.  Lt. Dorman in the
background.

Q.   Was there a reason you didn't stop those
cars?

A.   I was in the middle of an investigation.

Q.   I believe you testified earlier that the
specific reason why I was stopped was because
I was in this area of this neighborhood at
this time of year, day, and night.  How many
other police officers were present that
evening?

A.   At the end of it, it was four.

Q.   Okay.  Is there a reason they didn't stop any
of those people?

A.   They were all in the middle of the same
investigation.

THE COURT:  Anything further?

MR. MCLAURINE:  Yes, sir.  It will be a

124

1          few minutes.  I need to step

2          through this.

3    Q.   Can you draw on the map you put up there the

4         approximate location where you first observed

5         me?

6    A.   It's not to scale.  It's about 40 feet -- you

7         would be about right here, walking this

8         direction.

9    Q.   Okay.  And roughly the approximate place

10        where when you finally got to me and stopped

11        me?

12   A.   About right here.

13   Q.   I think you testified you had stopped your

14        car and called to me?

15   A.   Yes, sir.

16   Q.   And you stated that I did not stop?

17   A.   Yes, sir.

18   Q.   And you called again.  How far did I walk?

19        Basically drawing the car and where I was

20        when you stopped the car to call to me and

21        how far I walked, just roughly.  I know it's

22        not exact.  I just want to get an idea.

23   A.   Car probably stopped about right here.  And,

24        like I said, it's not to scale.  This is

25        Genelda Avenue.  You walked about another 15,

125

1     20 steps?

2  Q.  Okay.  And you stated I was traveling south,

3     which would be toward the top of the map?

4  A.  Yes.

5  Q.  And you approached from your patrol car from

6     the north, from behind me?

7  A.  Yes, sir.

8  Q.  Could you see clear my face before you called

9     to me?

10  A.  Only your profile as you looked toward these

11     buildings.

12  Q.  You stated earlier I was looking in the

13     direction of houses?

14  A.  Yes, sir.

15  Q.  Were you able to observe me looking at any

16     specific house?

17  A.  I didn't make a mental note of it, no, sir.

18        THE COURT:  Anything further?

19        MR. MCLAURINE:  I -- No, sir.

20        THE COURT:  All right, sir.  Anything

21           further, Mr. White?

22        MR. WHITE:  No redirect at this time.

23        THE COURT:  All right.  Step down,

24           Officer, go back to the witness

25           stand.  Anyone need a break?  All

126

1      right.  If you need a break, raise

2      your hand.  All right.  Call your

3      next witness.

4      MR. WHITE:  City calls Lt. Matthews.

5      WILLIAM MATTHEWS

6      The witness, having first been duly

7   sworn to speak the truth, the whole truth and

8   nothing but the truth, testified as follows:

9      THE COURT:  Take your seat there and

10      speak directly into that

11      microphone.

12      DIRECT EXAMINATION

13   BY MR. WHITE:

14   Q.   State your name, please, sir.

15   A.   William Matthews.

16   Q.   How are you employed?

17   A.   I'm a lieutenant with the City of Auburn

18      Police Department.

19   Q.   How long have you been employed with the City

20      of Auburn as a police officer?

21   A.   Since 1992.

22   Q.   And how long have you been in law enforcement

23      in general?

24   A.   Fourteen years.

25   Q.   And you are now a lieutenant; is that

127

1    correct?

2    A.    That is correct.

3    Q.    Back on November 27, 2004, what was your

4          rank?

5    A.    Sergeant.

6    Q.    Let me direct your attention to that -- to

7          the early morning hours of November 27 and

8          ask, you did you have an occasion to be

9          involved in this investigation regarding

10         Mr. McLaurine?

11   A.    I did.

12   Q.    And how is it that you became aware of what

13         was going on out there?

14   A.    I was the shift supervisor that night and was

15         called to the scene by Officer Bean.

16   Q.    Officer Bean called you to the scene?

17   A.    He did.

18   Q.    Okay.  And do you recall where you were when

19         you first got the call?

20   A.    I was near the intersection of West Magnolia

21         and Donahue Drive.

22   Q.    And did you respond immediately upon

23         receiving the call?

24   A.    I did.

25   Q.    Okay.  And were you in a marked patrol car?

128

| | |
|---|---|
| 1 | A. It's what we call a semi-marked patrol car. |
| 2 | It's black and white, but it doesn't have a |
| 3 | light on top. |
| 4 | Q. And were you in uniform that evening? |
| 5 | A. I was. |
| 6 | Q. And did you respond to that location where |
| 7 | Mr. McLaurine was located? |
| 8 | A. I did. |
| 9 | Q. What, if anything, did you do upon arriving |
| 10 | there at the scene? |
| 11 | A. I spoke with Officer Bean about the |
| 12 | situation; you know, why he needed me there. |
| 13 | And then after getting the information from |
| 14 | Officer Bean, I spoke with Mr. McLaurine. |
| 15 | Q. Okay. What did you say to Mr. McLaurine? |
| 16 | A. I asked him basic questions; what was his |
| 17 | name, where did he live. And then after |
| 18 | getting no response or being told -- |
| 19 | Q. Let me ask you this. When you asked him |
| 20 | those questions, how did he respond to you? |
| 21 | A. He told me that he didn't think that he |
| 22 | needed to provide that information. |
| 23 | Q. Didn't think he needed to provide that |
| 24 | information? |
| 25 | A. That is correct. |

129

1    Q.   Okay.  How many times did you go through that

2         series of questions with Mr. McLaurine in an

3         effort to gather that information?

4    A.   I would say that I probably asked him

5         somewhere around four or five times from the

6         beginning, where I just asked him his name to

7         the end where I was telling him that if he

8         didn't provide it, that he was breaking the

9         law and would subsequently be arrested.  I

10        gave him every opportunity to comply.

11   Q.   And was there some conversation that y'all

12        had where he acknowledged you as a police

13        officer and acknowledged your authority to

14        ask him those questions and he stated that he

15        refused to answer those questions?

16   A.   Yes, sir.  I explained the law to him,

17        explained that we had reason to contact him.

18        I gave him the reason that we did contact

19        him.  I explained to him that it was his

20        obligation to give us that basic identifying

21        information if it was requested of him.  And

22        he would not.

23   Q.   And you say you explained to him the reason

24        that you did contact him.  What did you tell

25        him in that regard?

130

| | |
|---|---|
| 1 | A. That we had received a call for service |
| 2 | giving a description that fit his. |
| 3 | MR. MCLAURINE: Objection, hearsay. |
| 4 | THE COURT: Overruled. |
| 5 | Q. Go ahead. If you would give the entire |
| 6 | description that you were given as part of |
| 7 | dispatch? |
| 8 | A. Well, I wasn't actually dispatched to the |
| 9 | call originally. |
| 10 | Q. Okay. |
| 11 | A. But I knew that he -- that Officer Bean had |
| 12 | been dispatched to that area in reference to |
| 13 | a suspicious subject and that Officer Bean |
| 14 | had contacted a subject matching that |
| 15 | description. |
| 16 | Q. And you explained to him that because of |
| 17 | that, you had a right to ask him his name, |
| 18 | his address, what he was doing? |
| 19 | A. I told him that all he had to do was provide |
| 20 | his name and his address, and as long as he |
| 21 | wasn't wanted on a warrant, wasn't a career |
| 22 | burglar or a terrorist, he would be free to |
| 23 | leave. |
| 24 | Q. And even after you told him that, he refused |
| 25 | to give you the information? |

131

1    A.  That is correct.

2    Q.  Okay.  Was there some discussion about a

3        recent United States Supreme Court decision?

4    A.  There was.

5    Q.  Who brought that up?

6    A.  I did.

7    Q.  What was said in regards to that?

8    A.  When he told me that he didn't think we had

9        the right to elicit that information from him

10       I., explained that there had recently been a

11       Supreme Court decision that affirmed that a

12       police officer had the right to ask those

13       questions, and that it was the duty of the

14       person being stopped to answer.  He said that

15       he was aware of that but disagreed.

16    Q.  He told you that he was aware of that

17       decision but that he disagreed with the

18       decision of the United States Supreme Court?

19    A.  That is correct.

20    Q.  And the name of that decision, the case that

21       y'all were talking about, was Hiibel; is that

22       correct?

23    A.  That is correct.

24    Q.  And that's the name of one of the litigants

25       in that case was H-I-I-B-E-L?

132

1    A.    Correct.

2    Q.    And so Mr. McLaurine, when you approached

3          him, he was familiar with Supreme Court case

4          law on the very subject on which you were

5          stopping him for; is that correct?

6    A.    He said he was.

7    Q.    Okay.  He -- and he stated to you that he

8          disagreed with the decision of the United

9          States Supreme Court as to the Hiibel case?

10   A.    He said that he disagreed with the

11         interpretation.

12   Q.    The interpretation?

13   A.    Interpretation.

14   Q.    All right.  So what, if anything, did you do

15         after Mr. McLaurine repeatedly refused to

16         answer your questions?

17   A.    After we had gone through that for several

18         minutes, I called the shift commander, who

19         was Lt. Howell, asked him to respond to the

20         scene so that I could discuss a plan of

21         action with him.  I had already made up my

22         mind that if he didn't comply, that we would

23         place him under arrest, but I wanted to talk

24         to the shift commander and see if he had any

25         alternatives other than what I was thinking.

133

```
 1    Q.   And you didn't want to place him under
 2         arrest, did you?
 3    A.   Like I said, we gave him every opportunity to
 4         walk away from it.
 5    Q.   Okay.  And what -- Lt. Howell, what was he --
 6         as far as rank goes, what was he in relation
 7         to you?
 8    A.   He's my shift supervisor.
 9    Q.   And was he the highest ranking officer on
10         duty that night?
11    A.   Yes.
12    Q.   Okay.  And so you called Lt. Howell?
13    A.   I did.
14    Q.   And did he come to the scene?
15    A.   He did.
16    Q.   And what, if anything, did he do when he
17         arrived there at the scene?
18    A.   Well, prior to his arrival -- when I called
19         him, he was on the other side of town.  So
20         while he was on his way, I called him on the
21         phone and explained the situation.  He
22         concurred with me but said that he would be
23         there shortly, so we waited for his arrival.
24    Q.   Now, what, if anything -- what if any
25         conversation did you have with the defendant
```

134

```
 1          immediately prior to beginning your wait for
 2          Lt. Howell?  Do you remember there being a
 3          discussion about Mr. McLaurine's desire to
 4          leave?
 5     A.   Yes.  Just prior to me walking away from him
 6          to call Lt. Howell, he said that he was going
 7          to leave.  And I told him that he could not
 8          leave.  And he said that he was going to
 9          leave unless he was being detained, and I
10          told him to consider himself detained at that
11          time.
12     Q.   And what did he say after that?  After you
13          said consider yourself detained, what did he
14          say?
15     A.   I said, now are you going to stay here?
16               And he said, no; unless you physically
17          detain me, I'm going to walk away.
18               And so I placed my left hand on his
19          right arm, and I said, consider yourself
20          physically detained.  And I instructed
21          Officer Bean to keep him there until I
22          returned.
23     Q.   Okay.  And you've seen the video in this
24          case, have you not?
25     A.   Yes, I have.
```

135

```
 1    Q.   And what you have just described occurred
 2         immediately prior to the video being
 3         activated by Officer Bean; is that correct?
 4    A.   That is correct.
 5    Q.   So that's why we see Officer Bean standing
 6         there side by side with Mr. McLaurine in
 7         front of the car is because you have
 8         instructed Officer Bean to make sure he
 9         doesn't leave?
10    A.   That is correct.
11    Q.   Okay.  All right.  So what happened -- what
12         happened when Lt. Howell arrived at the
13         scene?
14    A.   Lt. Howell approached him, basically went
15         through the same statement or conversation
16         that he and I -- that Mr. McLaurine and I had
17         had.
18    Q.   Which was what?  If you would, just to the
19         best of your recollection, what did you hear
20         Lt. Howell say to the defendant?
21    A.   He basically told him that he had to give us
22         that information and that if he didn't, then
23         he would be arrested and taken to the county
24         jail.
25    Q.   Okay.  And did he respond -- did the
```

136

1         defendant respond to Lt. Howell?

2   A.  He told him that he understood that, but he

3         did not feel like he had to give that

4         information.

5   Q.  Didn't feel like he had to give that

6         information?

7   A.  That is correct.

8   Q.  And so he didn't -- ultimately did not

9         provide that information?

10  A.  That is correct.

11  Q.  So what happened after that?

12  A.  He was placed under arrest by Officer Bean.

13        Shortly or immediately after arrest, we

14        retrieved his wallet from his back pocket,

15        located his identification, checked him for

16        wants and warrants and transported him to the

17        county jail.

18  Q.  So after you arrested him, you did a pat-down

19        search -- you are authorized by law to pat

20        him down and retrieve any objects in his

21        pockets, and you got his wallet out at that

22        point after he was placed under arrest?

23  A.  That is correct.

24  Q.  And he had an identification card in his

25        wallet?

137

1   A.   He did.  A Colorado identification card.

2   Q.   And is that you we hear on the video calling

3        in a McLaurine ID card?

4   A.   That is correct.

5   Q.   And that happened immediately after he was

6        arrested and you retrieved his wallet?

7   A.   Correct.

8   Q.   Now, did you go with Officer Bean to the

9        jail?

10  A.   I did not.

11  Q.   I believe that's all I have at this time.

12            THE COURT:  All right.  Cross-

13                 examination?

14                 CROSS EXAMINATION

15  BY MR. MCLAURINE:

16  Q.   After you have physically contacted me, did I

17       disobey any direct command involving my

18       physical body as to where to stand, what to

19       do, how to position myself?

20  A.   After I contacted you?

21  Q.   Yes, sir.

22  A.   Just the part where you and I discussed

23       whether you were going to stay or leave.

24       After you were told that, you were being

25       detained.

138

1    Q.   But after physically contacting me is what
2         I'm asking.
3    A.   Where I touched --
4    Q.   Yes.  Did I disobey any command given by a
5         police officer in your presence --
6    A.   Just --
7    Q.   -- other than, again, focusing on my physical
8         body?
9    A.   No.  I mean, you went where we told you to
10        go.
11   Q.   Could you explain the plus 1 on the use of
12        force concept in police procedure?
13             MR. WHITE:  Object to form as to
14                  relevance, Your Honor.
15   Q.   The question becomes whether Officer Matthews
16        had to use any exceptional means in order to
17        convince me that I could not leave or whether
18        it was part of normal police practice.
19             THE COURT:  I believe he said he didn't
20                  have to.
21   Q.   Okay.  Did you observe me communicate with
22        anyone except police officers in the -- from
23        the moment you arrived until the moment I was
24        handcuffed?
25   A.   I did not.

139

1  Q.  Did you give any evidence that I was legally

2      required to present identification to you or

3      any other police officer other than verbal

4      commands or verbal statements about facts?

5      Did you show me a broken lock or play a tape

6      or do anything other than speak to me about

7      having to present identification?

8  A.  No.

9  Q.  Are you allowed to lie to a suspect in order

10     to obtain information?

11         THE COURT:  What's the relevance of

12             this?  Is there any evidence of

13             this?

14         MR. MCLAURINE:  The relevance is that

15             the only thing officers provided

16             were their verbal statements which

17             legally can be lies.  The officer

18             provided no writ, no evidence, or

19             anything other than their own word

20             to convince me that they had a

21             reason to make me be required to

22             present identification.

23         THE COURT:  If you understand the

24             question, you can answer.

25         MR. WHITE:  I object for the Record,

140

1      Your Honor, for whatever that's
2          worth.
3          THE COURT:  Do you understand the
4          question?
5   A.  Would you repeat it, please?
6   Q.  Did you offer anything except verbal
7      statements of fact from police officers?  Did
8      you offer any physical evidence, anything
9      over the radio, anything that you offered to
10     me to demonstrate that you had a reasonable
11     suspicion other than your own words or the
12     words of police officers?
13  A.  No.  That's all that I gave you was our
14     verbal conversation.
15         MR. MCLAURINE:  Nothing further at this
16             time, Your Honor.
17         THE COURT:  Anything further?
18         MR. WHITE:  Nothing further, Your
19             Honor.
20         THE COURT:  All right, sir.  You can
21             step down.  Do you need to retain
22             him or can he be released?  You
23             want to keep him here?
24         MR. WHITE:  I would like for him to
25             stick around.

141

 1          THE COURT:  All right.

 2          THE WITNESS:  I don't mind.

 3          THE COURT:  All right.  You stick

 4              around.

 5          THE COURT:  All right.  We will take

 6              about a 10-minute -- well about a

 7              15-minute break at this point.  If

 8              you would, go back to the jury

 9              room, please.

10                       (Jury left the

11                   courtroom, after which time

12                   there was a brief recess.)

13          THE COURT:  All right.  The jury is back

14              in the box.  The defendant,

15              attorneys, parties all are

16              present.  Call your next witness.

17          MR. WHITE:  City calls Lt. Howell.

18          THE COURT:  Raise your right hand to be

19              sworn.

20                   KEITH HOWELL

21      The witness, having first been duly

22  sworn to speak the truth, the whole truth and

23  nothing but the truth, testified as follows:

24          THE COURT:  Come around and have a seat

25              and talk directly into that

142

```
 1                        microphone.
 2                   DIRECT EXAMINATION
 3    BY MR. WHITE:
 4    Q.   State your name, please, sir.
 5    A.   It's Lt. Keith Howell.
 6    Q.   How are you employed?
 7    A.   I'm the shift commander on the 18 -- night
 8         shift at that particular time.
 9    Q.   Auburn Police Department?
10    A.   Auburn Police Department, yes, sir.
11    Q.   How long have you been employed in law
12         enforcement?
13    A.   24 years and 4 months.
14    Q.   And how -- at the time this incident
15         occurred, how long had you been lieutenant
16         shift commander?
17    A.   When I took the shift.
18    Q.   Well, how long have you been lieutenant?
19    A.   Eight years.
20    Q.   Okay.  Let me direct your attention to that
21         evening of November 27, 2004, early morning
22         hours.  Do you recall being called to the
23         location where these other officers had
24         detained Mr. McLaurine?
25    A.   Yes, I do.
```

143

1    Q.  And how was it that you were called to
2        respond to that location?
3    A.  My sergeant at the time, Matthews, called me
4        on my Southern Linc two-way radio, advised me
5        that they was out on a subject that was
6        refusing to give them his name and address.
7    Q.  All right.  And did you respond to that
8        location?
9    A.  Yes, sir, I did.
10   Q.  Okay.  And on your way -- Where were you when
11       Sgt. Matthews called you?
12   A.  When I was coming back from the hospital on a
13       previous call and I was on Opelika Road.
14   Q.  So it took you a little while to get there?
15   A.  About three or four minutes, yes, sir.
16   Q.  And during the time that you were en route,
17       were you talking with Lt. Matthews --
18       Sgt. Matthews about the situation there?
19   A.  Yes, sir, I was.
20   Q.  And did he explain to you the situation where
21       Mr. McLaurine was being asked to provide his
22       name and information and reason for him being
23       in that area, and he was refusing to give
24       that information?
25   A.  Yes, sir.

144

Q.   Okay.  And did he also provide to you -- did
     Sgt. Matthews also provide to you the reason
     why they had Mr. McLaurine detained?

A.   Yes, sir.  I actually heard the reason on
     call get put out about the suspicious male
     carrying something in his hands and looking
     at -- at houses.  So I actually heard the
     original call.

Q.   So you were familiar with their purpose for
     being out there?

A.   Yes, sir.

Q.   And you responded to the location.  What
     did -- What did you first do when you arrived
     there at the location?

A.   When I got out of my vehicle, I went to the
     front of the car where Officer Bean and
     Mr. McLaurine was at and Sgt. Matthews was
     at.

Q.   Let me stop you right there.  What kind of
     vehicle were you driving that night?

A.   I was a unmarked Crown Vic, light green in
     color.

Q.   And how were you dressed that evening?

A.   In a police uniform just like Lt. Matthews?

Q.   So not like you're dressed today?

145

```
 1    A.   No, sir.
 2    Q.   And so approached Mr. McLaurine and Officer
 3         Bean; is that correct?
 4    A.   Yes.
 5    Q.   Okay.  And what, if anything, did you say to
 6         Mr. McLaurine at that time?
 7    A.   I asked him was he familiar with the law
 8         about compelling you to give your name and
 9         your address to a law enforcement officer.
10              He said, yes, I am familiar with that; I
11         don't agree with that law.
12              I said, well, are you going to give your
13         name to us?
14              And he said no.
15              And I said, you know you will be
16         arrested if you do not give us your name.
17              He goes, well do whatever you want to
18         do.
19              And at that particular time I told him
20         he was under arrest.
21              MR. WHITE:  Okay.  That's all I have.
22              THE COURT:  All right.  Cross-
23                   examination?
24                   CROSS EXAMINATION
25    BY MR. MCLAURINE:
```

146

1    Q.    Are you sure that I said I disagree with the
2          law or I disagree with your interpretation of
3          it?
4    A.    You advised that you disagreed with the
5          interpretation of the law.
6    Q.    Did you ever personally explain to me what
7          the specific reasons why I had to present
8          identification were?
9    A.    No, because --
10              MR. MCLAURINE:  No further questions.
11              THE COURT:  No other questions.
12                   Anything on redirect?
13         MR. WHITE:  No redirect, Your Honor.
14         THE COURT:  All right.  Can this
15              witness be excused or you want to
16              keep him around?
17         MR. WHITE:  He can be excused, Your
18              Honor.
19         THE COURT:  All right.  You can step
20              down.  You are excused.
21         THE COURT:  Next witness?
22         MR. WHITE:  May I have a moment to
23              confer?
24              City rests, Your Honor.
25         THE COURT:  All right.  Approach.  You

147

1    want to make any kind of motion?

2    MR. MCLAURINE:  Yes, sir.  I would like

3    to make a motion for an

4    acquittal.  We can do that out of

5    the presence of the jury.

6    THE COURT:  All right.  I'm going to

7    let the jury go back in the jury

8    room for just a few minutes if you

9    would, and we will take something

10    up out here, and we will call you

11    right back.  It will just be a few

12    minutes.

13                    (Jury left the

14    courtroom)

15    THE COURT:  All right. The jury is

16    out.  The City has rested.

17    Mr. McLaurine indicates he wants

18    to make a motion.

19    MR. MCLAURINE:  Yes, sir.  I would like

20    to make a motion for acquittal.

21    And as a grounds for a motion, I

22    would like to point out that the

23    state has raised 15-5-30 as the

24    authorizing statute under which a

25    police officer is recognized or is

148

1    to be recognized as a government

2    official.  And the state reads all

3    the way down to describing him,

4    which includes Officer Bean as

5    someone who is eligible to be

6    recognized may stop any person in

7    a public place whom he reasonably

8    suspects is committing, has

9    committed, or is about to commit a

10   felony or other public offense,

11   and may demand of him his name and

12   address and his actions.

13       Officer Bean, the arresting

14   officer, testified that he knew of

15   no crime that was committed

16   involving me specifically; he knew

17   of no crime that was being

18   committed at that moment involving

19   me; and that he knew of no future

20   crime being committed in order to

21   justify this stop.  Furthermore,

22   he has only indicated that the

23   only specific reason he stopped me

24   was because I was in what amounts

25   to a relatively high crime area at

149

```
 1          a late night hour.
 2              Courts have routinely ruled
 3          that the location is not enough to
 4          justify a specific reason as
 5          suspicious, that there must be
 6          something such as stealthy
 7          movements, attempt to conceal
 8          one's self, and that that at night
 9          or in a high crime area the
10          threshold of what that is is
11          dramatically lowered, but it still
12          must require a specific -- a
13          specific objective criteria to
14          finding the particular individual
15          that the police are dealing with
16          is the person who is reasonably
17          suspected of being involved or in
18          that crime that has been
19          committed, being committed, or
20          about to be committed.
21              In addition to that, the
22          police never raised or introduced
23          the phone call that they alluded
24          to and it is not in the evidence
25          as a matter of record.  And this
```

150

1    demonstrates that the police --
2    the police officer, Officer Bean,
3    who made the contact had no legal
4    authority to do what he did.
5    Also within the statute,
6    Officer Bean testified that in
7    part A, the only section that
8    describes their criteria of what
9    constitutes a crime under the
10   statute charged --
11   THE COURT:  Which statute are you --
12   MR. MCLAURINE:  13-10-2-A, the
13   actual -- the criminal statute,
14   requires one of four things;
15   intimidation, physical force or
16   physical force/interference or any
17   independently unlawful act.  I
18   construe the independently
19   unlawful act to mean anything not
20   contained in 13A-10-2 meaning that
21   it must be criminal outside of
22   this statute is what that phrasing
23   means.  And also that the act that
24   he identified, there was the not
25   giving identification.  The

151

1    authorizing statute is not a

2    criminal act independent of this

3    statute; therefore, it does not

4    qualify as the independently

5    unlawful act as he claimed.

6        In addition, he indicated that

7    a statement similar to arrest me

8    or let me go amounted to

9    intimidation.  I don't believe

10   that qualifies.  I believe

11   intimidation requires threat of

12   physical or monetary damages along

13   those lines.

14       In addition, as I pointed out,

15   number 2, Section 2, the officer

16   was not prevented from acquiring

17   his goals.  It did take longer and

18   under his definition of what

19   happened, it must be only section

20   1 that is considered as a criminal

21   action.  In addition, both -- the

22   word intentionally appears in both

23   actions.  All of the two officers

24   who testified first demonstrated

25   that I indicated that I did not

1    believe that they had reasonably

2    convinced me that they had a legal

3    authority to be doing what they

4    were doing.

5        In addition, the only

6    information they provided that

7    would be even considered as

8    telling me that I was a suspect

9    and basically required to perform

10   were their own verbal admissions.

11   Since the police are allowed to

12   lie, I'm allowed to disbelieve any

13   statement they make.  They

14   provided no independent evidence

15   to demonstrate or try and convince

16   me that they actually did have

17   reasonable suspicion and the

18   statements they were making were

19   true.  I believe that concludes

20   what I have to present, sir.

21   THE COURT:  All right.  Thank you,

22       sir.  Mr. White, your response?

23   MR. WHITE:  Yes, sir.  First of all, I

24       would restate what I stated at the

25       beginning of this case, which is

153

1    that this court has already

2    decided the issue of reasonable

3    suspicion in this case.  You've

4    entered an order dated March 28,

5    2006, and I'll just read from your

6    order.  The Court denies each and

7    every motion and finds that there

8    was probable cause for his

9    arrest.  The Court in making its

10   determination of a finding that

11   probable cause existed at the time

12   of the arrest relies on Hiibel,

13   and then you give the cite for

14   Hiibel.

15        Then you go on and state, the

16   Court further finds that pursuant

17   to the stop and identify statute,

18   section 15-5-30 of the code, and

19   the telephone call from the

20   unidentified caller, did officers

21   have probable cause to confront

22   the defendant and to ask him for

23   his name, address, and what he was

24   doing in the area at this time of

25   night.

154

1    The defendant's failure to
2    provide the information pursuant
3    to this section of the code gave
4    the officers sufficient cause to
5    arrest the defendant in violation
6    of 13A-10-2.  Now, I would
7    reiterate to the court that the
8    issue of reasonable suspicion in
9    this case is a matter of law for
10   this court to decide.  It is not a
11   matter for the jury to decide.
12   And, in fact, I would ask you to
13   instruct the jury either prior to
14   closing arguments or in your jury
15   charge that you, as the court,
16   have already determined that you
17   have found that reasonable
18   suspicion exists.  The only issue
19   that they are here to determine is
20   whether Mr. McLaurine is in
21   violation of the law, not whether
22   or not reasonable suspicion
23   existed for these officers to
24   approach him.  So that's my
25   argument on a legal grounds.

155

1    Now, you heard the officer's

2    testimony that he received a call

3    from dispatch about a mysterious

4    man walking through the

5    neighborhood stopping and looking,

6    with a clothing description.  And

7    his testimony that this was during

8    the Thanksgiving holidays, a time

9    where there was a high crime area

10   where lots of burglaries and

11   thefts took place.  He clearly had

12   reasonable suspicion, based upon

13   that information, to approach

14   Mr. McLaurine and ask him basic

15   identifying information to

16   determine if a crime was afoot.

17   That's what we are here about.

18   And, clearly, he had reasonable

19   suspicion to do that.  In fact

20   this court has already decided

21   that.  So that's my response to

22   reasonable suspicion.

23        As to the obstructing

24   government operations, a person

25   commits a crime of obstructing

156

1  government operations if, by means

2  of intimidation, physical force or

3  an interference or by any other

4  independently unlawful act he

5  intentionally obstructs, impairs,

6  or hinders the administration of

7  law.

8  The fact that he did not give

9  his name and identifying

10  information when he was required

11  to do so, there's a statute on

12  point that says he's required to

13  do so. His refusal to give that

14  basic identifying information

15  interfered with a government

16  operation; i.e., these officers'

17  attempt to investigate a possible

18  crime in the area. His refusal to

19  give that information was an

20  obstruction of their function and,

21  therefore, it qualifies as

22  obstructing government

23  operations. That's our argument.

24  THE COURT: All right, sir. Any

25  response?

157

1    MR. MCLAURINE: Yes, sir. The previous

2        motion was based on several pieces

3        of information that were never

4        introduced, and I believe at the

5        beginning of this trial you said

6        you would rule based on what was

7        introduced. The prosecution never

8        entered the phone call into

9        evidence. The police officer

10       never qualified that I was

11       stopping, only that I was moving.

12       He never introduced any facts

13       along those lines. And the only

14       thing we have here are

15       nonobjective hunches by the police

16       which are specifically precluded

17       from being considered as part of

18       reasonable suspicion.

19           And while I agree is that you

20       have made a ruling, I believe you

21       also made a ruling that you would

22       re-evaluate the situation on what

23       was presented, and I do not

24       believe that what is presented

25       meets the criteria necessarily to

158

1          establish the reasonable suspicion

2          to empower the officers to be

3          authorized to do what he did.

4     THE COURT:  All right.  I'm going to

5          deny the motion to acquit.  I'm

6          going to look at your jury

7          charges.  I'm inclined to let the

8          probable cause go to the jury, but

9          we will -- if you want to prepare

10         a charge specifically on that,

11         I'll take a look at it.  Anything

12         further?  I'm going to call the

13         jury back for you to put on your

14         case.  Can you motion to the

15         bailiff there?

16                    (Jury entered the

17              courtroom)

18     THE COURT:  All right.  The jury is back

19         in the box and the parties and

20         attorneys are present.  The City

21         of Auburn last rested.  At this

22         time, the defense can put on its

23         case.  Mr. McLaurine?

24     MR. MCLAURINE:  I'll call myself.

25     THE COURT:  All right.

159

```
 1              WILLIAM S. MCLAURINE
 2          The witness, having first been duly
 3      sworn to speak the truth, the whole truth and
 4      nothing but the truth, testified as follows:
 5                      EXAMINATION
 6      BY MR. MCLAURINE:
 7      Q.   My name is William McLaurine.  On November
 8           27, 2004, roughly about 12:30, I decided I
 9           wanted to go to Subway.  I walked from my
10           apartment at 549 East Glenn, which is about
11           halfway between the Kroger shopping center
12           and the Spectrum.  Basically, it's about
13           halfway in between.  I walked from there.  I
14           was on my way to -- it was a cold night.  I
15           was on my way to get some food at Spectrum,
16           and I realized that it was too cold to walk
17           home while I was eating.
18               The reason I was walking is because I'm
19           epileptic.  I have a medically revoked
20           driver's license and I can't drive.  I got to
21           the Spectrum, realized it was too cold, and I
22           decided to proceed from the Spectrum to the
23           Subway, because the Subway was normally open
24           at that time of night, and they could -- I
25           could sit down and get out of the cold.
```

160

1    I chose the path of walking from --
2    walking down Glenn to Toomer because I
3    routinely walk there because I have a friend
4    who lives there.  One of the interesting
5    things about this pathway here is that it
6    circumvents the hill at Toomer's Corner.  So
7    this particular pathway offers the least
8    resistance to walk, and it's my normal path
9    that I walk.
10    I was contacted by Officer Bean when I
11    was approximately in this location right here
12    next to -- when his car pulled up to me.  But
13    this wasn't the first time I have been
14    stopped by the police.  This was the fourth
15    time I have been stopped by the police for
16    walking at night in the City of Auburn.  I
17    have been stopped in other cities.  Again, I
18    walk at night because I don't drive.  The
19    first time I was stopped was --
20    MR. WHITE:  I'll object to previous
21    occasions where you were stopped
22    by the police.  It has no
23    relevance to this incident.
24    THE COURT:  What's the relevance of
25    going into the entire --

161

1    MR. MCLAURINE:  The relevance goes to

2        show my understanding of the law,

3        that I recognize that police

4        officers under certain conditions

5        have a right to demand the

6        identification -- photo

7        identification of a person, but

8        not under all circumstances.  And

9        what I'm trying to demonstrate

10       here is that I have been harassed

11       by the police continually, and I

12       have made several efforts to

13       contact them about this and

14       demonstrate that I have a

15       knowledge of the law about what is

16       and is not required of me.  And

17       that on the night when the police

18       stopped me and arrested me, they

19       did not fulfill the requirements

20       as I understand them.  Because of

21       that, I did not believe they had a

22       legal reason to stop me and, as

23       such, I could not form an intent

24       to obstruct government operations

25       if I did not believe the officer

162

1      was acting as a legitimate

2      government official.

3          THE COURT: All right. Well, I'm going

4               to sustain the objection. You've

5               made your point as to the

6               relevance of the others, that you

7               acquired some information from

8               those prior stops that led you to

9               believe what you did on this night

10              was correct; is that right?

11         MR. MCLAURINE: Yes, sir. And also

12              that I have been harassed by the

13              police in the past and on multiple

14              occasions concerning this matter.

15         THE COURT: All right. Well, I'm not

16              going to let you go into all those

17              prior occasions. Go to the night

18              in question.

19         MR. MCLAURINE: All right.

20    Q.  Officer Bean pulled up, and I saw a car out

21        of my peripheral vision. Gentlemen, when I

22        walk -- if you're familiar with a runner's

23        high, you get it when you walk, too. It's

24        not as severe, but it's a -- it's kind of a

25        zone you're in. And generally, as I recall

163

1    the situation, I was deep in thought about

2    the cold and thinking.  I was looking at the

3    ground in front of me as I was walking

4    forward.

5        Officer Bean pulled up and, out of the

6    corner of my eye, I saw the car.  And I

7    realized, okay, not again.  Officer Bean

8    called out, and I didn't know what I was

9    going to do.  I had been stopped before

10   and --

11       MR. MCLAURINE:  May I introduce what I

12              had done before to demonstrate why

13              I would make the decision I made

14              this time?

15       THE COURT:  I don't see how you can tie

16              that up.  You've indicated you had

17              prior experience that led you to

18              do what you did this night.

19       MR. MCLAURINE:  All right.

20  Q.  So I had to think, what am I going to do?  I

21      had made attempts to rectify the situation.

22      I had to decide how I was going to proceed

23      with this officer.  Officer Bean called out a

24      second time and I decided, all right, he's

25      serious, so I turned to him.  And he asked

164

1  me, I need to see some identification.

2  Contrary to Officer Bean's statement, my

3  first words were not, I'm not going to give

4  that to you.  They were, why do you want to

5  know?

6      Because I realize, under certain

7  circumstances, the police can require you to

8  provide identification.  But that has to be

9  explained.  It has to be explained.  You

10  know, you have to tell me why.  You just

11  can't walk up and say, give me ID.

12      Officer Bean's response was, we got a

13  call about somebody carrying something.

14      At that point, I told him I don't find

15  that sufficient reason to provide you with my

16  identification.  From that point, we

17  basically went through a series of questions

18  of him asking me things.  And some of them I

19  may have answered, but they basically were

20  information that -- that I -- I don't even

21  remember what they were.  They were minor,

22  trivial things like -- I don't even remember

23  what the questions were.  I may have answered

24  some of his questions.

25      At some point, we get into a debate and

165

1    the police -- at some point, Officer Matthews
2    showed up.  And the police went on and on
3    about how, when you are contacted by a police
4    officer, you are required -- in their
5    official capacity you are required to present
6    identification to the police officer.  And I
7    disagreed with this.
8        I disagreed.  I believe that reasonable
9    suspicion was necessary and I deserved an
10   explanation of why.  At some point, they
11   started repeating the questions over and
12   over, same question.  What's your name?  Why
13   are you here?  We were there several
14   minutes.
15       And I finally got a little upset.  And I
16   said, all right, look, unless you're going to
17   physically detain me, I'm going to start
18   walking down the road in that direction.  And
19   I pointd with both of my fingers.  At this
20   time, I am facing Officer Bean, who was in
21   the street right about here, and I'm looking
22   in that direction.  So I was pointing in the
23   direction that I was going to move.
24       At this point, Officer Bean and
25   Sgt. Matthews had never indicated that I was

166

1    not free to leave.  When I said this, both of

2    them got a wide-eyed look on their face.  I

3    waited a moment -- not a long moment, but a

4    moment.  Neither one of them said anything.

5    I took a step.

6        At this point, Officer Bean and

7    Sgt. Matthews each grabbed one of my arms.

8    One of the police officers put a soft-lock on

9    my hand, but since I offered no resistance,

10   there was no real pressure applied.  At this

11   point, the officers asked me to put my hands

12   on my head.  They then began to pat me down,

13   and I recognized they had a right to do that

14   under the Terry stop rules to determine that

15   they were safe.

16       But I got a little excited and I did

17   raise my voice.  And I shouted, I refuse any

18   search.  It was a reflex, just to make sure

19   that, you know, I was following what I had

20   studied and what I knew I had to do to

21   preserve my rights.

22       The next thing that happened was at some

23   point during that investigation, Officer

24   Matthews asked Officer Bean if Sergeant

25   Bean -- Officer Matthews asked

1    Sgt. Matthews -- Officer Bean asked

2    Sgt. Matthews if he was recording this, and

3    he adjusted something on his microphone.

4        I was led in front of the police car and

5    then they began asking me questions.  The

6    section of tape that we observed, which has

7    no audio is the section -- is the time at

8    which Officer Bean asked me questions such

9    as, is it because I'm black?  What nation do

10   you work for?  Is it because you work for the

11   Confederate government, because I know some

12   guys who do?

13       Now, the only time in which I was

14   actually afraid was when that statement was

15   made.  Officer Bean was surrounded by several

16   of the officers who were white, and it was at

17   that moment that I really was afraid.  The --

18   At some point, Sgt. Matthews asked me if I

19   was familiar with the Hiibel decision at

20   which point I said, yes.  And I said, you may

21   want to look into the details of that case

22   before you make a decision.  And it was at

23   one of the points where I looked back over at

24   him near the end of the tape right before the

25   handcuffs were placed on me.

168

1      The reason I did that is because I was

2   aware of the Hiibel decision.  I had spoken

3   to the Chief of Police about it, and I knew

4   that the details of the case were not the way

5   the police were presenting them and that they

6   did not apply to my situation.  The other

7   reason I mentioned this is because if a

8   police officer seizes you and reasonable

9   suspicion is not met --

10        MR. WHITE:  Objection, Your Honor.

11             He's trying to state law from the

12             bench.  I submit it's inaccurate.

13        MR. MCLAURINE:  I will withdraw the

14             statement.

15        THE COURT:  Sustained.

16  Q.  The -- at that point, I was handcuffed.  I

17   was taken to the back of the car.  They

18   removed my wallet.  I remember hearing them

19   call my name.  I then was placed in the back

20   of the car and we went to the police station,

21   at which point Officer Bean made the

22   statement that if you don't tell me what I

23   want to know now, I'm going to lock you up in

24   the cell and I can leave you because,

25   basically, you're a John Doe and I don't have

1    to release you, I don't have to do anything.

2    At this point is when I asked him, am I

3    being charged? Am I being charged with a

4    crime? And, at this point, he said, yes, you

5    are being officially charged with a crime.

6    One of the reasons I asked this question is

7    because I cannot remember being Mirandized by

8    the officer. I still had no formal trapping

9    other than basically being handcuffed to

10    understand that I was truly arrested.

11    At that point, when I realized that the

12    officer had done that, I complied with

13    everything he wanted to do. In addition,

14    after the moment when I tried to leave, when

15    the police asked me to do anything physical,

16    from that moment on, I complied in any way,

17    shape, or form that they wanted me to do.

18    At that time, I still believed that I

19    had a right not to have to answer their

20    questions as they presented them. The -- and

21    that's basically my telling of what happened

22    that night.

23    THE COURT: All right. Cross-

24    examination?

25    MR. WHITE: Yes, sir.

170

                        CROSS EXAMINATION

BY MR. WHITE:

Q.   Mr. McLaurine, you admit, do you not, that
     you never provided any of these officers with
     your name, your address, or any reason for
     being in that area prior to you being placed
     under arrest?

A.   Yes, sir.

Q.   Okay.  And they asked you repeatedly, did
     they not, please provide us with your name,
     your address -- really, they just wanted your
     name.  They asked you that repeatedly, did
     they not?

A.   I don't believe that's true, sir.  I believe
     they asked me for all three of those
     criteria.

Q.   Okay.  So they asked you for all three of
     those criteria repeatedly?

A.   Yes, sir.

Q.   And you, in turn, repeatedly refused to give
     them that information; is that correct?

A.   Yes, sir.

Q.   And Officer Bean, when he arrived on the
     scene, he told you that they had -- or they
     have received a suspicious call of an

171

1    individual walking in that area -- a call of

2    a suspicious individual walking in that area;

3    is that correct?

4  A.  One moment, sir.

5        MR. MCLAURINE:  I'm going to object to

6            that, Your Honor, as the attorney

7            on the grounds that that is

8            evidence that has not been

9            introduced yet.

10        THE COURT:  It's overruled.  Go ahead

11            and answer the question.

12  A.  Officer Bean indicated that somebody was

13    looking at houses, I believe at some point

14    well into the thing.  He also indicated

15    something about crimes in the area without

16    alluding to any specific one.  But I don't

17    recall anything about a murder that he

18    testified to earlier.

19  Q.  Okay.  But it's -- I believe you just stated

20    it's your position in this case that the

21    officers, in conducting their investigation,

22    had to convince you that they had reasonable

23    suspicion to ask you questions.  Is that your

24    position?

25  A.  I believe that is supported in law.

1   Q.  That's your position, is that if I'm William

2       McLaurine and I'm walking down the street and

3       the police officer doesn't satisfy me that

4       he's got reasonable suspicion to ask me

5       questions, then I'm not answering any of this

6       guy's questions.  Is that your position?

7   A.  I believe the --

8   Q.  I'm asking you if that is your personal

9       position.  I'm not asking you to cite any

10      case law to me.

11  A.  If the police don't provide me with reason

12      why I have to provide it, then, yes, sir.  I

13      believe --

14  Q.  You think that's your right, to be convinced

15      by the police officer as to what they are

16      telling you you need to do?

17  A.  Yes, sir.

18  Q.  Okay.  Sgt. Matthews arrives on the scene.

19      Lavaro asks you several times for your

20      identifying information.  Sgt. Matthews also

21      asks you for your identifying information.

22      You refuse Sgt. Matthews and then Lt. Howell,

23      he also comes there and he asks you for the

24      same information and you refuse him as well.

25  A.  Yes, sir.

173

```
1   Q.  So there's no dispute that all three of these
2       men -- these officers of the law asked you
3       for basic identifying information and you
4       refused all three of them?
5   A.  Yes, sir.
6   Q.  Okay.  And they were all -- Lt. Howell is
7       dressed in a suit and tie, but they were all
8       in patrol uniforms when they came out there;
9       is that correct?
10  A.  Yes, sir.  Officer Lt. Howell showed up at
11      the end and asked me the questions once.  Not
12      repeatedly, but yes.
13  Q.  Okay.  And they told you, did they not,
14      listen, if you'll just tell us your name,
15      what you're doing out here, if you're not --
16      I think they said if you're not a career
17      burglar or a terrorist, we're going to let
18      you go.  Didn't they tell you that?
19  A.  Yes, sir.
20  Q.  And you still refused them?
21  A.  Yes, sir.
22  Q.  You refused them because you wanted to be
23      arrested; isn't that right?
24  A.  Did I want to be arrested?
25  Q.  You wanted to be arrested; isn't that
```

174

1        correct?

2   A.   I don't know that I wanted to be arrested,

3        but I did believe it was the last option

4        available to me in order to maintain my civil

5        rights.

6   Q.   And you understood -- Well, let me ask you

7        this.  You knew you weren't really wanted for

8        any crimes, did you not?

9   A.   I am not one hundred percent certain of that.

10  Q.   Okay.  So was there some concern in your mind

11       that if you gave them some identifying

12       information, you might have been -- been

13       found to be wanted for something and placed

14       under arrest?

15  A.   I'm not sure of the actual nature of the

16       law.  There was an issue with my bank and

17       Walgreen -- an account that had been closed,

18       that I had closed, that I was being pursued

19       by a creditor for something, and I didn't

20       know if that was -- I had been served --

21       tried to be served with a notice or something

22       and, at that time, I wasn't sure whether that

23       was a warrant or what.  Nothing has ever come

24       of it.  I've never heard from that issue but,

25       at the time, I didn't know what the situation

175

1    was.  So when the officer asked me, you know,

2    do you have any warrants out, I honestly told

3    him I didn't know.

4    Q.  Well, you knew, did you not, that if you

5    provided these officers with your name, your

6    information, they would likely send you on

7    your way?

8    A.  After a 20-minute delay, yes, sir.

9    Q.  After a 20-minute delay caused by your own

10    refusal to give them the information?

11    A.  That depends on whether you believe that

12    their contact was legal.

13    Q.  Okay.  And so you chose to be arrested.

14    Would that be a fair way to say it?  You

15    chose to stand by what you believe to be some

16    kind of right that you allegedly had and you

17    chose to be arrested other than give up your

18    name, what you were doing out there, and your

19    address?

20    A.  Let me make sure I understand the question.

21    I chose to believe that I had a fourth

22    amendment right that protected me from being

23    harassed and detained.

24    Q.  And that was based upon your own personal

25    beliefs because you've been harassed by the

176

1    police before and you've done research where
2    in you believe, based upon your own personal
3    research, that these officers didn't have a
4    right to be doing what they were doing out
5    there that night; is that correct?
6  A.  That's right.
7  Q.  Okay.  So you chose to be arrested?
8  A.  No, sir. I did not say that.
9  Q.  Well, you knew if you just provided them with
10    the name and your basic information you
11    weren't going to be arrested, didn't you?
12  A.  I knew that they would let me go.  The
13    situation is it would be this time, it would
14    also be the fact that I had complained about
15    this before to the Chief of Police and
16    nothing had come of it and, at this point, I
17    basically had to continually subject myself
18    to continual harassment or do something that
19    would retire them to break the law in order
20    for me to basically stop them from doing what
21    they are doing.
22  Q.  So you wanted to require them to put
23    themselves in a situation to break the law
24    for you to be able to do something about
25    this.  Is that what you just said?

1   A.   No, sir.  What I said was that was one of my
2        options.  And the situation here was they
3        they could have let me go anyway.
4   Q.   Okay.  So it's your position that these
5        officers have broken the law by demanding of
6        you basic identifying information, your name,
7        your address, what you were doing out there
8        that evening.  By doing that, these officers
9        broke the law.  Isn't that your position?
10  A.   In addition to the racial discrimination I
11       suffered at the hands of Lavaro Bean.
12  Q.   So the answer to my first question is yes?
13  A.   Yes.
14  Q.   And then you say, in addition, you were
15       racially -- tell me about that again.
16       Racially discriminated against?
17  A.   Yes, sir.  Intimidation was used.
18       Intimidation, I believe, is legal for the
19       police to use, but not when it is in the
20       context of racial discrimination.
21  Q.   And he discriminated against you by asking
22       you, hey, is the reason you're not talking to
23       me because I'm black?
24  A.   Yes, sir.
25  Q.   That's discrimination in your mind?

178

1    A.    Yes, sir.  He testified that the only

2          reason -- basically, he said I gave him no

3          reason, other than my basic physical

4          appearance, which indicates that he made a

5          decision based on my raise to ask that

6          question.

7    Q.    Okay.  And so he somehow discriminated

8          against you by doing that and, therefore,

9          that's illegal conduct; is that correct?

10   A.    Part of the illegal conduct, yes, sir.

11   Q.    Isn't there some more illegal conduct that I

12         don't know about?

13   A.    The -- in this particular case by the

14         officers, none that I can comment on at this

15         time.

16   Q.    Is there something that you're going to

17         comment on later?

18   A.    I have no facts to demonstrate that I know

19         the police broke the law in any other ways

20         than what I have just described, but I have

21         no facts to indicate that some of their

22         actions were not illegal.  At this point, I

23         want to put this behind me.  I want to put

24         this trial behind me so that I can deal with

25         that situation.  I don't intend to allow

179

1   these gentlemen to continue to harass me.

2       But, more importantly, I believe they

3   are violating due process as a matter of

4   policy in the department.  And, as such, they

5   are endangering the criminal justice system

6   for other individuals who may actually be

7   committing crimes.

8   Q.  Okay.  And that's why you wanted to be

9   arrested, so you could come here today and

10  make this argument to this jury, and it's

11  also why you wanted to be arrested, so that

12  you could file a claim against the city

13  asking the City to pay you $250 million for

14  this officer's illegal conduct?

15  A.  Sir, I believe you said earlier that all plea

16  agreements, negotiations involved and --

17          MR. WHITE:  Your Honor, I object.  This

18              is not a plea agreement.  This is

19              a notice of a claim he filed with

20              the City that goes to show his

21              bias or prejudice in his testimony

22              here today.  This is not the plea

23              agreement.

24          MR. MCLAURINE:  Okay.  I thought this

25              was a different issue.  Okay.

383

180

```
1                    Sorry about that.
2           THE COURT:  All right.  Answer the
3              question.
4    Q.   You filed a notice of claim with the City on
5         May 26, 2005.  Is that your signature?
6    A.   Yes, sir, it is.
7    Q.   And in your closing paragraph, you asked for
8         $250 million; is that correct?
9    A.   I said the damages were estimated at $250
10        million.
11   Q.   Oh, that's right.  And it said it could grow
12        as this situation progresses and more
13        information is made available.  So you may be
14        entitled to more than $250 million?
15   A.   Okay.  Yes, sir.
16           MR. WHITE:  That's all I have.
17           MR. MCLAURINE:  I would like to answer
18              that question about --
19           MR. WHITE:  I'm sorry.  I didn't ask
20              you another question.
21           MR. MCLAURINE:  I'm sorry.
22           THE COURT:  All right.  Do you have any
23              redirect?
24           MR. MCLAURINE:  Yes, sir.
25           THE COURT:  All right.
```

181

REDIRECT EXAMINATION

BY MR. MCLAURINE:

Q.  I would like to answer the question about the
    $250 million.  I became a licensed
    professional engineer in the state of
    California in 2004.  I am cross-trained in
    architecture and I have two degrees, one in
    civil engineering and one in mechanical
    engineering.  My professional experience is
    in residential home design and apartment
    complexes.  I am licensed in the state of
    California to sell architectural plans.
    Those plans sell at approximately $300,000 a
    use.  I can personally process, after a
    developmental stage, one plan a month for
    modifications.  That amounts to $300,000 a
    month off of my personal work, not including
    the fact that I am cross-trained basically to
    be a professional and licensed to operate in
    all the fields of an architectural firm.  I
    am a one-man architectural firm.

        My particular problem is that I'm
    epileptic.  It's difficult for me to drive
    and get around.  At this point, all of this
    notice was a notice to preserve my rights to

182

sue, because I was arrested in 2004. Under Alabama law, if I do not notify the City of Auburn within six months of any event that occurs, I am not eligible to sue them and recover damages from the City. All right. That's what I was doing.

I have filed more than one of those notices. Every six months, I have filed notices about different acts that the police, the prosecution, and other individuals in civic government have committed against me as they continue to delay this.

I was arrested in 2004. The complaint that was filed against me was filed in May. As I understand the procedural regulations, this court is required to process all -- one hundred percent of all complaints within one year. This is the last opportunity that the prosecution had to present this case.

I had filed a motion for a speedy trial back in like November after my trial was delayed over my objections or my attempt to object. I objected three times to further delays, the last one which occurred in December of this year in which the

183

1　prosecution delayed the trial -- requested a

2　delay that resulted in this May date instead

3　of a December date, that said we need time to

4　subpoena witnesses in order to develop

5　reasonable suspicion and probable cause.

6　　　　Okay.　Five months for them to come up

7　with a reason to arrest me.　I don't want to

8　get into the specifics of everything its done

9　to me, because we could be here all day

10　talking about that.　The police realize that

11　even if what they say is true about the

12　situation, whether I had to provide

13　identification or not, Officer Lavaro Bean's

14　conduct is criminal.　And they are trying to

15　avoid everything they can having to deal with

16　a lawsuit.　They want to sweep this under the

17　rug and hope it goes away.

18　　　　I have been harassed for years by the

19　police and more recently by this

20　prosecution.　Now, I didn't raise this issue,

21　the issue of the lawsuit.　The prosecution

22　did.　They are trying to paint me as somebody

23　who is out to get somebody.　The truth of the

24　matter is, I want justice.　I want to be left

25　alone.　I don't want to have to be harassed.

184

1   And I want you to realize that you could be

2   in the same position I am because right

3   now --

4           MR. WHITE:  Objection, Your Honor.

5           THE COURT:  Well, this is argument.

6                   You can make that in your closing

7                   argument.

8           MR. MCLAURINE:  I'm sorry.  I'll

9                   withdraw.  I'm sorry.

10          THE COURT:  All right.  Anything

11                  further?

12          MR. WHITE:  Nothing further.

13          THE COURT:  All right.  You can step

14                  down, Mr. McLaurine.  Do you have

15                  any other witnesses to call?

16          MR. MCLAURINE:  No, sir.

17          THE COURT:  Defense rests?

18          MR. MCLAURINE:  The defense rests.

19          THE COURT:  All right.  I believe I'm

20                  going to let the jury go until in

21                  the morning.  We have got some

22                  things that we have got to

23                  discuss.  Y'all come up here.  You

24                  want to go over these jury

25                  charges?

185

1    MR. WHITE:  I think we can do that real

2        quick and do closings.

3    THE COURT:  I think so.

4    MR. MCLAURINE:  I believe it's

5        possible.

6    THE COURT:  All right.  Let me let you

7        go back in there just for a few

8        minutes and let's see how much

9        time it takes to do this.

10            (Jury left the courtroom.)

11    THE COURT:  All right. The jury is

12        out.  It's 4 o'clock.  I want to

13        have a charge conference here and

14        see what the parties intend.  The

15        City has submitted ten requested

16        jury charges.  Do you have any

17        objections to those,

18        Mr. McLaurine?

19    MR. MCLAURINE:  Yes, sir.  I'm afraid I

20        am going to have to object to some

21        of these.

22    THE COURT:  All right.

23    MR. MCLAURINE:  I request that we pick

24        this up in the morning if

25        possible, give me time to review

186

1          everything.

2      THE COURT:  Well, I would like to hear

3          your objections now, see if we can

4          get through with this.

5      MR. MCLAURINE:  Well, I was just

6          presented with these this

7          morning.  I haven't had time to

8          identify them and go through them

9          in detail.  Might I have half an

10          hour to review them?

11     THE COURT:  Well, that's why I was

12          saying that -- to let the jury

13          go.  But I thought you said we

14          could do this in a few minutes.

15     MR. MCLAURINE:  I did not quite realize

16          how long --

17     MR. WHITE:  Well, I tell you what,

18          Judge.  If you want to just give

19          the standard jury charges on --

20          from the prosecution's point of

21          view, we will be satisfied with

22          standard jury charges.  Just the

23          law -- obstructing government

24          operations and give the charge on

25          15-5-30 and any elements thereto.

187

1           I'll be satisfied with that.

2           THE COURT:  Well, what I intend to do

3               is my standard oral charge simply

4               goes into what the complaint is,

5               what the burden of proof is, what

6               reasonable doubt is, read the two

7               statutes, must base their verdict

8               on the evidence, talk about the

9               weight of the evidence and the

10              verdicts -- I have two jury

11              verdict forms:  We, the jury, find

12              the defendant William S. McLaurine

13              guilty of obstructing government

14              operations as charges; we, the

15              jury, find the defendant William

16              S. McLaurine not guilty of

17              obstructing government operations

18              as charged.

19          MR. WHITE:  That's fine with me.

20          THE COURT:  You want to withdraw your

21              requested jury charges?

22          MR. WHITE:  I'll withdraw my motion,

23              yes.

24          THE COURT:  All right.  Have you seen

25              Mr. McLaurine's jury charges?

188

MR. WHITE:  Judge, I mean -- those are
questions.  Those are not
statements of law.  I think all of
the questions that are submitted
here are really included in your
standard jury charges.  He's
getting at the burden of proof and
the elements of the crime which
you are going to cover in your
standard jury charges.  So I don't
know that it would be appropriate
to ask these questions in an open-
ended manner like he has
suggested.

THE COURT:  Well, they are not in the
proper form.

MR. MCLAURINE:  May I ask a question?

THE COURT:  Yes.

MR. MCLAURINE:  Will those questions be
allowed to be addressed in that
form in my closing statement?

THE COURT:  Well, you can argue the law
in your --

MR. MCLAURINE:  Then I'll withdraw my
jury statements in lieu of your

189

1        standard jury charge as well.

2    THE COURT:  All right.  Both sides have

3        withdrawn their requested jury

4        charges.  All right.  How long do

5        y'all want to argue the case?

6    MR. WHITE:  I think same as opening,

7        about 15 minutes would be fine

8        with me.

9    THE COURT:  What do you say,

10        Mr. McLaurine?

11    MR. MCLAURINE:  I would like 15

12        minutes.

13    THE COURT:  Fifteen minutes per side?

14        All right.  Anything else?

15    MR. WHITE:  Nothing at this time, Your

16        Honor.

17    THE COURT:  All right.  Tell them to

18        come back in.

19                (Jury entered the

20        courtroom)

21    THE COURT:  All right.  The jury is back

22        in the box.  The parties and

23        attorneys are present.  Both sides

24        have rested.  All of the evidence

25        is in.  Your Exhibit #1, has it

190

1    been offered and admitted?

2    MR. WHITE:  It has been offered and

3         admitted.  And I would offer

4         Exhibit #2, which I believe --

5    THE COURT:  It's been offered and

6         admitted.

7    MR. WHITE:  Okay, sir.  That's all I

8         have.

9    THE COURT:  All right.  All of the

10        exhibits are in and the testimony

11        has been heard.  So at this point

12        we reach the stage of the case

13        where the attorneys will argue

14        their case to you.  And their

15        argument is not evidence.  It's an

16        argument based on the evidence.

17        So at this time they will argue

18        the case and then I will charge

19        you as to the law.  So at this

20        time, it's the City.

21    MR. WHITE:  If it please the Court,

22        good afternoon.  I appreciate

23        y'all's attention here today.  I'm

24        going to be real brief in my

25        summation.  I think this is a very

191

1    simple case.  Mr. McLaurine is

2    here.  He's obviously a very

3    intelligent young man, but I think

4    he has a basic misunderstanding of

5    the law as to how it applies to

6    him in this situation.  The law in

7    this case is very straightforward,

8    and the judge told you right from

9    the beginning what the law was,

10   and I want to tell you again.  I

11   told you in my opening.  I'm going

12   to tell you one more time.

13       Obstructing government

14   operations.  This is the crime he

15   is charged with right here.  He is

16   charged with obstructing

17   government operations.  A person

18   commits a crime of obstructing

19   government operations if, by means

20   of intimidation, physical force or

21   interference, or by any other

22   independently unlawful act he

23   intentionally obstructs, impairs,

24   or hinders the administration of

25   law or other government function

1    or intentionally prevents a public

2    servant from performing a

3    governmental function.  Okay?

4    Other independently unlawful

5    acts.  That goes back to 15-5-30,

6    which is the other code section I

7    showed to you -- I'm going to show

8    it to you again -- you got when

9    you are approached by an officer

10   who has reasonable suspicion.

11   You've got to give your name, your

12   address, and what you are doing in

13   the area, okay.

14        Mr. McLaurine admitted that he

15   repeatedly refused to give that

16   basic identifying information.  I

17   asked you in my voir dire -- I

18   asked you very few questions --

19   one question I asked you is can

20   you follow the law.  Everybody

21   indicated that you could follow

22   the law.  The law says when you

23   are approached by an officer who

24   has reasonable suspicion that a

25   crime has been committed, is being

193

1    committed, or may be about to be

2    committed, you have to give that

3    basic information.  That's the

4    law.  Like it or not, that's the

5    law.

6         Mr. McLaurine doesn't agree

7    with that law.  That's fine.

8    That's his prerogative not to

9    agree with the law.  But that law

10   applies equally to Mr. McLaurine

11   as it does to me, as it does to

12   you, as it does to these

13   officers.  He has a legal

14   obligation under the law to

15   provide the officers with that

16   information.  This says here --

17   You saw this earlier.  It talks

18   about sheriff or other officer.

19   Basically, it's talking about any

20   police officer may stop any person

21   abroad in a public place whom he

22   reasonably suspects is committing,

23   has committed, or is about to

24   commit a felony or other public

25   offense or may demand of him his

1   name, address, and an explanation

2   of his actions.

3   Now, Mr. McLaurine has some

4   misguided ideas that these

5   officers didn't have reasonable

6   suspicion to stop him. And you

7   heard Officer Bean testify he

8   got -- the dispatch called him,

9   said they had the 911 call of a

10   mysterious individual walking in

11   this area, that he was stopping

12   and looking, he had something in

13   his hand. You heard Officer Bean

14   testify to that.

15   You also heard Officer Bean

16   testify that this occurred over

17   the Thanksgiving Day holiday, a

18   period of time which is known by

19   Auburn Police Department to be a

20   high crime -- a period of high

21   crime. Lots of breaking and

22   entering, lots of things go

23   missing. There's very few

24   students out and about down

25   there. Clearly, there was

195

1  reasonable suspicion for him to

2  suspect a crime may be about to be

3  committed, is about to commit a

4  felony or other public offense.

5  Clearly, Officer Bean had

6  reasonable suspicion based upon

7  that information and his knowledge

8  of the situation.  He had --

9  there's nothing in this statute

10  that tells Officer Bean I have to

11  convince Mr. McLaurine of that.

12  It doesn't say that.  It said

13  Officer Bean has to have

14  reasonable suspicion.  It doesn't

15  say Mr. McLaurine has to agree

16  that Officer Bean has reasonable

17  suspicion.  Because if that were

18  the case, nobody would ever

19  agree.

20      You don't have reasonable

21  suspicion to stop me.  I'm not

22  going to give you anything.  It

23  doesn't say that.  It says Officer

24  Bean has to have a reasonable

25  suspicion.  And he clearly had

196

1      it.

2           Mr. McLaurine clearly had a

3      duty to respond with just basic

4      information; name, address, what

5      are you doing out here.  The law

6      says you have to give it, and he

7      refused to give it after given

8      multiple opportunities to give

9      it.

10          The officers testified we

11     didn't really want to put him

12     under arrest.  We wanted to see

13     what he was doing.  We wanted to

14     get his name, keep him on his way

15     if he wasn't involved in a crime

16     or if he wasn't wanted.  We wanted

17     to get him on out of there.  But

18     if he would not give us this basic

19     information, he was in violation

20     of the law and we had to arrest

21     him.

22          Mr. McLaurine chose to put

23     himself in that situation.  All he

24     had to do was give them that basic

25     information and we wouldn't be

1          here today.  And he chose to have

2          himself arrested.  And that's why

3          we are here.

4               And you have a duty to follow

5          the law.  And in following the

6          law, your duty is to convict him

7          of obstructing government

8          operations.  I'm going to have one

9          more closing after Mr. McLaurine

10          has a chance to talk to you.  I

11          get to come back and talk to you

12          briefly.  Thank you.

13     THE COURT:  All right.  Mr. McLaurine?

14     MR. MCLAURINE:  I'm going to go over

15          what I stated earlier.  At this

16          time, you get to consider the

17          evidence.  Reasonable suspicion is

18          a matter of law.  But it requires

19          a specific objective criteria that

20          a police officer has to have in

21          order to possess reasonable

22          suspicion.  At times in night or

23          high crime areas, the threshold

24          for that level of suspicion goes

25          way down.  But it still has to be

198

something specific.  Stealthy
movements, an attempt to conceal
location.  In certain drug
neighborhoods, being able to
pass -- see somebody pass
something is just enough.  You
heard no testimony about any
specific act that might relate to
a crime.  That's the reasonable
suspicion part.  I forgot to
mention the whole part about
crimes.

Officer Bean said he didn't
know of a crime that was
committed, didn't know of one
being committed now, and couldn't
name a specific crime that was
going to be committed.  So not
only did he not have reasonable
suspicion, he didn't even have a
crime to tell you about.

This is the statute that
authorizes him to ask those
questions and he couldn't fulfill
it.  This is the actual statute

1   I'm charged with.  We talked about

2   it.  There were four things that

3   Officer Bean could have -- four

4   descriptions of activity that he

5   observed that would be qualified

6   under this statute.

7   Intimidation.  Arrest me or I'm

8   going to -- or let me go is

9   intimidation by his definition.

10  That was the first thing.

11      The second thing was an

12  independently unlawful act.

13  Independently unlawful means not

14  in this statute.  Anywhere in the

15  code as far as I'm concerned.  The

16  reason you were obstructing

17  government operations is because

18  you were obstructing government

19  operations is the argument they

20  are presenting here.

21  Intentionally obstructs, impairs,

22  or hinders the administration of

23  law or other government function.

24      Intentionally.  I had to

25  recognize that the police were

200

1  forming a lawful investigation in

2  my mind in order to form any

3  intent to obstruct it.  If they

4  were performing a lawful action --

5  I mean a lawful government

6  function, then I can't form the

7  intent to obstruct it.  Same thing

8  for the second one, but the second

9  one goes even further because

10  Officer Bean got what he wanted

11  eventually.  This means Officer

12  Bean was not prevented.  He got it

13  in the end.  This means this is

14  the only one you can even remotely

15  consider as a crime in this

16  matter.

17  Intentionally.  I've done a

18  lot of research on this.  They

19  mention the Hiibel case.  The

20  important thing to consider about

21  the Hiibel case is, what does it

22  actually say?  Hiibel supports

23  previous decisions like Texas v.

24  Brown which states that if

25  everything I told you, you must

201

1    have an objective criteria that in

2    order to come up with this

3    reasonable suspicion.  Simply

4    being in an area at a time of

5    night or during a high crime area

6    is not enough.  It must be a

7    specific, articulatable, objective

8    fact.  And they couldn't produce

9    anything other than I was in the

10   area at night.

11       The complaint called.  There

12   was no articu-- there wasn't even

13   an allegation of a crime.  Who is

14   this guy walking at night was the

15   summation of this call.  That's

16   it.  So if your neighbor sees you

17   out in the yard at night, hey,

18   send the police over.  There's

19   somebody out there and I want to

20   know what they're doing.

21       The Fourth Amendment still

22   means something.  Every

23   prosecution that occurs and

24   results in a conviction in this

25   case -- in this type of thing ends

202

1  up because the defense didn't

2  raise the proper arguments.  I

3  raise that this law is void for

4  vagueness.  You can't understand

5  it.  That means you can't read

6  this law and know what it means.

7  There are three precedents.

8  The first is that the law is

9  narrowly construed to only ask for

10  a name, an unqualified name at

11  that, too.  And the fact that the

12  assent in the opinion says

13  something like Harry Strongarm or

14  something, a nonsense thing.

15  Because the courts have previously

16  ruled that credible and reliable

17  is not a constitutional

18  description of the name you have

19  to provide.  Because it's void for

20  vagueness.

21  What does credible and

22  reliable mean?  What if you don't

23  have an ID?  Brown, the other case

24  that I cited, basically goes on to

25  say that in addition to this name

203

1    issue, if you are required to
2    explain what you are doing, that's
3    a direct violation of the Fourth
4    Amendment.  And every law that
5    contains that provision is
6    unconstitutional.  So when they
7    told me, you have to tell me what
8    you're doing, I knew that no such
9    law could exist.
10   But more importantly, let's
11   look at what it says.  15-5-30.
12   May demand of his name, address,
13   and explanation of his actions.
14   The police said they repeated the
15   statements over and over and over
16   again.  They got to make their
17   demands.  This statute says
18   nothing about my duty to respond.
19   It is not clear.
20   In the Hiibel case, the
21   statute specifically says you have
22   to respond, and the Court ruled
23   that because of that, it wasn't
24   void for vagueness.  But it also
25   went on to say there are other

204

1   reasons that we are not going to
2   consider because Hiibel was an
3   appellate decision and, like I
4   told you before, the only way this
5   law stands is if the defense fails
6   to raise the arguments.
7   The three in Hiibel were the law
8   was void for vagueness.  I raised
9   it.  The law is not narrowly
10  construed to basically be what the
11  Supreme Court said they could do.
12  I just raised it.  And the
13  reasonable suspicion needed to
14  independently exist, I raised it
15  and I say it doesn't.  So Hiibel
16  has no bearing here.
17  Every other case the Supreme Court
18  has heard that says you have to
19  present identification to a police
20  officer has been struck down for
21  one reason or another.  And that's
22  what this is about.
23      Again, I come back and I
24  remind you they did not provide
25  the evidence to convict you even

205

1    if the laws as they described them

2    were true.  That's all I have,

3    Your Honor.

4    THE COURT:  All right.  Mr. White?

5    MR. WHITE:  Yes, sir.

6    THE COURT:  You got your nine minutes

7        left.

8    MR. WHITE:  I don't think it will take

9        that long, Your Honor.  Let me

10        just close a bit briefly by saying

11        again, I respect Mr. McLaurine.

12        He's a smart young man, but he's

13        very misguided as to the law that

14        applies in this case, okay.  The

15        law that applies in this case is

16        the two laws that you have seen on

17        the board here today and he's here

18        making some kind of appellate

19        argument that's very confusing to

20        me, and I think probably very

21        confusing to you about Hiibel and

22        other appellate decisions.

23        The bottom line is

24    Mr. McLaurine doesn't agree with

25    this law.  That's fine.  That's

206

1    his prerogative not to agree with
2    the law.  But the real bottom line
3    is if you disobey this law, even
4    though you disagree with it, it
5    still applies to you and you are
6    still going to be arrested for
7    breaking the law, and you are
8    still going to be convicted for
9    breaking the law even though you
10   disagree with it.
11        Now, if you want to change
12   that law, there's two ways to do
13   it.  And this is not one of them.
14   Well, one is to go all the way to
15   the United States Supreme Court
16   and convince them that he's right,
17   which apparently is the argument
18   he's trying to make to you, some
19   kind of Supreme Court argument.
20   Now, if he appeals all the way on
21   up and the Supreme Court agrees
22   with him, more power to him.
23        The other way is to go to the
24   legislature and ask the
25   legislature to change the law.

207

1   But short of that, this court, and
2   this court, we follow the law.
3   This is not a court to change the
4   law.  This is a court to follow
5   the law.  And that's why I asked
6   you that question in voir dire
7   this morning.  Can you follow the
8   law?  Because the law is you don't
9   give your name and you don't give
10  your address, you don't give basic
11  identifying information, then you
12  obstruct; therefore, a government
13  investigation of a potential crime
14  afoot, then you are guilty of
15  obstructing government
16  operations.  That's the law in
17  this case.
18      Mr. McLaurine doesn't like the
19  law.  He wants to -- he thinks we
20  are all criminals and he wants the
21  city to pay him $250 million for
22  it.  But the bottom line is,
23  that's the law that applies to
24  this case; that's the law that
25  applies to Mr. McLaurine; and if

208

1   you follow that law, you will

2   convict him of obstructing

3   government operations.  Thank you.

4   THE COURT:  All right.  Ladies and

5   gentlemen.  You have heard the

6   argument of the attorneys.  You

7   have received all the evidence in

8   the case.  At this point, it

9   becomes my duty to charge you as

10  to the law.  It's my job as judge,

11  sometimes referred to as the

12  Court, to tell you the law.  You

13  are not expected to know the law,

14  so that is why it is my job to

15  tell it to you.  You should not

16  think from anything that I tell

17  you now or in any way that I have

18  ruled that I am trying to express

19  an opinion about the facts.  I am

20  not.  Because you are the people,

21  the sole judges of the facts in

22  this case.  You have no interest

23  in the case, no personal interest

24  in the outcome of the case one way

25  or the other.  You are not

209

1  expected to know the law, so it's

2  my duty to tell you the law as it

3  applies in this case in order that

4  you can take the law and apply it

5  to the facts as you determine them

6  and then arrive at a verdict in

7  the case.

8      Sympathy or emotion are not

9  elements of evidence and must not

10  be allowed to influence you in the

11  consideration of the evidence.

12  Many, as I told you in the

13  beginning of this case, came to

14  the court by reason of a complaint

15  being filed.  That complaint is

16  not evidence in the case, but it

17  is the vehicle by which the case

18  comes to you today as a juror.

19  That complaint reads as follows.

20  Comes now the City of Auburn,

21  Alabama, a municipal corporation

22  of the State of Alabama, by its

23  undersigned attorney and complains

24  that said defendant, William S.

25  McLaurine, within 12 months before

210

1    the beginning of the prosecution

2    of this cause, within the city

3    limits of Auburn or the police

4    jurisdiction thereof, by means of

5    intimidation, physical force or

6    interference or by any other

7    independently unlawful act did

8    intentionally obstruct, impair, or

9    hinder the administration of law

10    or other governmental function, or

11    did intentionally prevent a public

12    servant from performing a

13    governmental function in violation

14    of Section 13A-10-2 of the Code of

15    Alabama as amended and as adopted

16    by ordinance 1130 as adopted by

17    the city council of the City of

18    Auburn.  Said ordinance is

19    codified in Section 13-1, code of

20    Auburn.

21         I'm going to read you those

22    two statutes in a minute, but that

23    is merely the complaint that

24    brings the case before you.  I'm

25    going to talk to you about the

211

1   burden of proof.  When this
2   complaint was filed in this court,
3   the defendant, as he had a right
4   to do, filed a plea of not
5   guilty.  The plea of not guilty
6   cast the burden of proof on the
7   City to prove guilt beyond a
8   reasonable doubt and to a moral
9   certainty that the defendant is
10  guilty as charged.  The defendant
11  has no burden of proof
12  whatsoever.  He does not have to
13  prove he is innocent.  He comes
14  into the court with a presumption
15  of innocence which surrounds him
16  throughout the trial of the case
17  and even attends him in the jury
18  room until each and every member
19  of the jury, after considering all
20  of the evidence in the case, are
21  convinced beyond a reasonable
22  doubt that he is guilty as
23  charged.

    And then at that time, and
24
25  only at that time, would he shed

212

1   his presumption of innocence,

2   sometimes referred to as the cloak

3   of innocence.  The presumption of

4   innocence is to be regarded by you

5   as evidence in favor of the

6   defendant.

7        Now, let me tell you what

8   reasonable doubt is.  In order to

9   find the defendant guilty, the

10  prosecution must prove guilt

11  beyond a reasonable doubt and to a

12  moral certainty.  What do I mean

13  by reasonable doubt?  A reasonable

14  doubt is not a fanciful doubt or a

15  conjectural doubt, but is a doubt

16  which appeals to your reason after

17  considering all the evidence in

18  the case.  The Court can better

19  express it this way.  In

20  connection with reasonable doubt,

21  you cannot establish guilt to a

22  mathematical certainty.  You can

23  only do it to that certainty as

24  you weigh the everyday affairs of

25  life that you come in contact

213

1    with.

2        A reasonable doubt does not

3    mean a capricious doubt.  It is

4    not a doubt based on conjecture or

5    speculation or guesswork.  It does

6    not mean beyond all doubt.  A

7    reasonable doubt means a real

8    doubt or a substantial doubt

9    growing out of the evidence.  It

10   is a doubt for which a reason can

11   be given.

12       What do I mean by moral

13   certainty?  Expression beyond a

14   reasonable doubt and to a moral

15   certainty are equivalent and,

16   therefore, mean the same thing.

17   Now, the two statutes that have

18   been shown to you over the period

19   of this trial several times are as

20   follows.  Section 13A-10-2 is the

21   statute regarding obstructing

22   governmental operations and reads

23   as follows:  A person commits the

24   crime of obstructing governmental

25   operations if, by means of

214

1    intimation, physical force or
2    interference, or by any other
3    independently unlawful act he,
4    number one, intentionally
5    obstructs, impairs, or hinders the
6    administration of law or other
7    governmental function or
8    intentionally prevents a public
9    servant from performing a
10   governmental function.  This
11   section does not apply to
12   obstruction, impairment, or
13   hindrance of the making of an
14   arrest.  Obstructing governmental
15   operations is a Class A
16   misdemeanor.
17       The other statute is Section
18   15-5-30 about the authority of a
19   police officer to stop and
20   question.  It reads as follows:  A
21   sheriff or other officer acting as
22   sheriff, his deputy, or any
23   constable acting within their
24   respective counties, any marshal,
25   deputy marshal, or policeman of

215

1    any incorporated city or town

2    within the limits of the county,

3    or any highway patrolman or state

4    trooper, may stop any person

5    abroad in a public place whom he

6    reasonably suspects is committing,

7    has committed, or is about to

8    commit a felony or other public

9    offense and may demand of him his

10   name, his address, and an

11   explanation of his actions.

12       Now, you are to base your

13   verdict on the evidence in this

14   case.  Evidence is to be

15   considered by you in the testimony

16   and the exhibits presented to you,

17   and the presumption not refuted by

18   the evidence.  You are not to

19   consider as evidence the

20   complaint, the arguments of the

21   lawyers, and the rulings of the

22   court.

23       In regard to the weight of the

24   evidence, all twelve of you must

25   agree before you reach any verdict

216

1   in this case.  Your verdict must

2   be the verdict of each and every

3   juror.  You are the sole judges as

4   to the weight that should be given

5   to all the testimony in the case.

6   You should take the testimony of

7   the witnesses, together with all

8   proper and reasonable inferences

9   therefrom, apply your common

10  sense, and in an honest and

11  impartial way, determine what you

12  believe to be the truth.  You

13  should weigh all of the evidence

14  and reconcile it if possible.

15      But if it cannot be

16  reconciled, you ought to take that

17  evidence which you think is worthy

18  of credit and give it such just

19  weight as you think it is

20  entitled.  You may take into

21  consideration any interest any

22  witness may have in the outcome of

23  this case.  If you believe that

24  any material part of the evidence

25  of any witness is false, you may

217

1  disregard all of the testimony of

2  such witness.

3      Now, to aid you in the proper

4  verdict in this case, I have

5  prepared two forms of verdict

6  agreed to by the parties.  These

7  are the two verdicts which you

8  will take with you to the jury

9  room.  We, the jury, find the

10  defendant, William S. McLaurine,

11  not guilty of obstructing

12  governmental operations as

13  charged.  There's a place for the

14  foreman to sign.  The other, we,

15  the jury, find the defendant,

16  William S. McLaurine, guilty of

17  obstructing government operations

18  as charged, and a place for the

19  foreperson to sign.

20      When you go back to the jury

21  room you should select one of your

22  number as the foreperson.  The

23  duty of the foreperson or foreman

24  is to preside over the

25  deliberations and to sign the

218

1    verdict of the jury.  The verdict,

2    as I have already told you, must

3    be the verdict of all twelve of

4    you.  When you have arrived at

5    your verdict, you will knock on

6    the jury door and you will be

7    returned in the courtroom to give

8    your verdict.  In the meantime,

9    until you return your verdict, it

10   is absolute necessary that all of

11   you stay together and that you not

12   separate even for a moment.

13       Now, therefore, it is your

14   duty just to determine the guilt

15   or innocence in this case.  It

16   will not be your duty to impose

17   the sentence.  That will be the

18   duty of the court.

19       And, at this point, I need to

20   reveal who the alternate juror is

21   and that juror will be excused.

22   The alternate juror is Vernell

23   Welch.  All right.  Thank you very

24   much.  It's a very important

25   service that you have rendered.

219

1    You were available in case we

2    needed a juror and, at this point,

3    you are excused.  And you need to

4    check with the code-a-phone

5    tonight and see what the

6    instructions are about tomorrow.

7    (Alternate juror excused.)

8    THE COURT:  Now, ladies and gentlemen,

9    when you get back to start your

10    deliberations as stated to you,

11    you first need to select the

12    foreperson.  At that point, you

13    will be totally in charge of what

14    takes place after that.  If you

15    want to take any breaks then it's

16    up to you.  If you want to

17    deliberate until 5 o'clock, if you

18    have not reached a verdict by that

19    time and you want to go home, then

20    we can let you go home.  The

21    security has asked us not to let

22    you stay after five, so if you

23    don't reach a verdict by five,

24    then you will come back in the

25    morning.

220

1          If you have any questions,

2    then what you should do is to have

3    the foreman write the question out

4    and then give it to the bailiff

5    and the bailiff will bring that in

6    to the court.  At that time, we

7    will decide whether or not we need

8    to bring you out back into the

9    courtroom to discuss that question

10    or to give you any further

11    information.  What says the state?

12    MR. WHITE:  City is satisfied Your

13        Honor.

14    THE COURT:  City.  All right.  What

15        says the defendant?

16    MR. MCLAURINE:  Defense is satisfied.

17    THE COURT:  All right.  You need to

18        take these two verdict forms and

19        evidence.

20          (Jury retired to the jury room

21         to deliberate)

22          (Jury entered the courtroom)

23    THE COURT:  Is that everyone?  All

24        right. The jury is back in the

25        box.  I understand you've reached

221

1    a verdict?  Is that correct?  Will

2    the foreperson hand that up,

3    please? The jury verdict rendered

4    is as follows:  We, the jury, find

5    the defendant, William S.

6    McLaurine, guilty of obstructing

7    governmental operations as

8    charged.

9        At this time, I need to poll

10   the jury to ask each one of you if

11   this is your individual verdict.

12       I'll start on the front row,

13   left to right.  Is this your

14   verdict?

15   JUROR:  Yes, it is.

16   THE COURT:  Is it your verdict?

17   JUROR:  Yes, sir.

18   THE COURT:  The second row, starting at

19       the right, is this your verdict?

20   JUROR:  Yes.

21   THE COURT:  Your verdict?

22   JUROR:  Yes, sir.

23   THE COURT:  Your verdict?

24   JUROR:  Yes.

25   THE COURT:  Your verdict?

222

1        JUROR:  Yes, sir.

2        THE COURT:  Is this your verdict?

3        JUROR:  Yes, sir.

4        THE COURT:  Starting at the left at the

5              top, is this your verdict?

6        JUROR:  Yes, sir.

7        THE COURT:  Is this your verdict?

8        JUROR:  Yes, sir.

9        THE COURT:  Is this your verdict?

10       JUROR:  Yes, sir.

11       THE COURT:  Is this your verdict?

12       JUROR:  Yes, sir.

13       THE COURT:  Is this your verdict?

14       JUROR:  Yes.

15       THE COURT:  All twelve jurors have

16             affirmatively stated that this is

17             their unanimous verdict.  At this,

18             time you will be dismissed, and

19             thank you very much for your

20             service.  It's very low pay and a

21             lot of interference with what you

22             do, but it's extremely important,

23             and we cannot operate the judicial

24             system without citizens like you

25             willing to give your time.  So we

223

1    want to thank you very much.  You

2    are hereby dismissed and you need

3    to turn in your note pads and you

4    need to check on the -- you are

5    not dismissed for the whole week

6    now.  You are just dismissed until

7    in the morning.  But really check

8    on the code-a-phone tonight and

9    see what they tell you about being

10   back tomorrow or when you should

11   be back.  So thank you very much

12   for your services.  You are

13   dismissed.

14               (Jurors dismissed)

15   THE COURT:  I need for you to put this

16        next in the record.  All right.

17        Mr. McLaurine, the jury has found

18        you guilty.  I'm going to continue

19        your case for sentencing until May

20        25 at 9 o'clock.  You need to go

21        to the probation office right now

22        and let them begin the interview.

23        And the purpose of putting that

24        off until May 25 is to allow the

25        probation officers to look at your

224

1    record and submit a report to me.

2    And so you need to go right out

3    this door and to the right and you

4    need to be back May 25 at 9

5    o'clock for the sentencing.  You

6    are continued on the same bond.

7    All right?  Court is adjourned.

8    Thank you.

9    * * * * * * * * * * *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

225

```
 1              REPORTER'S CERTIFICATE

 2

 3         I do hereby certify that the above and

 4    foregoing transcript of proceedings in the matter

 5    aforementioned was taken down in machine

 6    shorthand, and that the questions and answers

 7    thereto reduced to writing under my personal

 8    supervision, and that the foregoing represents a

 9    true and correct transcript of the proceedings.

10         I further certify that I am neither of

11    counsel nor related to the parties to the action,

12    nor am I in any wise interested in the result of

13    said cause.

14

15         DATED this the 20th day of July, 2006.

16

17

18

19              Willie T. Bennett

20              WILLIE T. BENNETT

21              OFFICIAL COURT REPORTER

22

23

24

25
```

226

1                    IN THE CIRCUIT COURT OF

2                     LEE COUNTY, ALABAMA

3              THIRTY-SEVENTH JUDICIAL CIRCUIT

4

5     CITY OF AUBURN,

6              Plaintiff,

7     vs.                      CASE NO. CC-05-289

8     WILLIAM MCLAURINE,

9              Defendant.

10            * * * * * * * * * * *

11    BEFORE:  The Honorable John V. Denson, III,
               Circuit Judge
12             Lee County, Alabama
               May 25, 2006
13

14    APPEARANCES

15

16    FOR THE PLAINTIFF:

17           Mr. Michael Short
             Attorney at Law
18           Opelika, Alabama

19    FOR THE DEFENDANT:

20           Pro Se
             Mr. William McLaurine

21            * * * * * * * * * * *

22           Kimberly Ingram, CSR
             Official Court Reporter
23           Opelika, Alabama  36803

24

25

227

MR. SHORT:  Judge, I'm standing
in for Matt White.  If I understand
correctly, I believe he's already
appealed.  This case is on appeal
now.

MR. MCLAURINE:  I've not filed
an appeal.  I filed a Notice of
Appeal for pre-trial motions.  I
will be appealing it, though.

MR. SHORT:  Judge, at this time
it's the City's position -- this is
a sentencing hearing.  It's the
City's position, pending the outcome
of any appeal, if the conviction is
upheld, it's the City's position
that he be sentenced to a year in
the county jail.

THE COURT:  All right, sir.  Do
you have something to say?

MR. MCLAURINE:  I have a few
letters here.

(The letters were handed to Judge.)

THE COURT:  All right, sir.  I
read your letters.  Do you have
anything to say?

228

1    THE WITNESS:   In addition to
2    that, sir, I believe that when Phil
3    Thompson was representing me, he
4    entered into the record that the
5    City offered a deal to nol pros the
6    case in which they would drop the
7    charges if I agreed not to sue the
8    City with no further problems or
9    situations attached to that.   I
10   don't understand why the City is now
11   asking for the maximum sentence
12   allowed on jail time at this point
13   if they didn't feel at that time
14   that anything other than civil
15   release was necessary.   In addition
16   to that, the situation was such that
17   I did nothing violent, I did nothing
18   that endangered the officers or
19   disobeyed the officers when they
20   were attempting to secure the scene
21   for their own personal safety.   And,
22   again, I believe the law is clear on
23   this, that the actions that I took
24   are not criminal, and that the
25   argument presented by the City did

229

```
1    not meet the requirements to be --
2    to prosecute this even under
3    declaration of what the law is.
4         THE COURT:  Well, I understand
5    your position that you think the law
6    is incorrect and you want to make a
7    test case and appeal it.  And I have
8    no problem with that.  But what came
9    out in the trial, it appeared that
10   you sought to be arrested so you
11   could file suit against the City and
12   that you made a claim for millions
13   of dollars against the City.
14        THE WITNESS:  Yes, sir, that is
15   true.  But the situation was not
16   that I sought to be arrested.  The
17   situation was that I sought to prove
18   the point that the police have been
19   harassing me and are continuing to
20   harass me.
21        THE COURT:  You can make a test
22   case out of that without threatening
23   to sue the City for millions of
24   dollars.
25        THE WITNESS:  I don't
```

230

1    understand.  That I do, understand,

2    sir, but that's a separate and

3    related issue.  The fact that I'm a

4    professional engineer is a problem.

5    It damages me financially.  Whether

6    or not there's any merit to that

7    case is a matter for a civil trial

8    court to decide.  And I don't know

9    how it has any bearing here.

10       THE COURT:  Well, it has a

11    bearing on your sentence.  It

12    appears to me what your motives

13    were, were mainly to file a lawsuit

14    rather than a test case.

15       THE WITNESS:  Okay.

16       THE COURT:  Do you have

17    anything else?

18       MR. SHORT:  No, sir.

19       THE COURT:  This is a very

20    small offense that you could have

21    handled in a much different way than

22    you did.  I'm going to sentence you

23    to three months in the county jail,

24    but I'm going to suspend that and

25    put you on one year of unsupervised

231

1    probation, and order you to pay a

2    fine of five hundred dollars.  And

3    you needed to start paying that in

4    June.  So I'm suspending your

5    sentence of three months, but if you

6    violate your probation or get in any

7    further trouble during that one

8    year, then the probation would be

9    revoked and you would start serving

10   that time.

11        If you take an appeal, you make

12   an appeal bond.  And you're still on

13   bond, isn't that right?

14        THE WITNESS:  Yes, sir.

15        THE COURT:  Okay.  All right.

16   Anything further?

17        MR. SHORT:  No, Your Honor.

18        THE WITNESS:  No, sir.  I would

19   like to make a vocal notice of

20   appeal and ask that the sentence be

21   suspended.

22        THE COURT:  Well, you need to

23   file a written appeal.

24        THE WITNESS:  Yes, sir, I know

25   that I need to do that.  But also,

232

1    at this point, since I'm going to be

2    filing an appeal --

3        THE COURT:  I can't give you

4    legal advice.  You declined to have

5    an attorney, you wanted to serve as

6    your own attorney, so the court

7    can't give you legal advice.

8        THE WITNESS:  I understand

9    that.  I am making a formal

10    declaration of notice of appeal --

11        THE COURT:  I don't think

12    that's going to be sufficient.

13        THE WITNESS:  I know that, sir,

14    I know that.  I know that there is a

15    written requirement part of that,

16    but there's also a verbal allowance

17    for appeal at the court.  Time -- at

18    this time I would also like to

19    motion that the record of appeal

20    include the orders for motions of

21    continuance and all pretrial

22    discovery material.

23        THE COURT:  Well, you need to

24    file all that in writing.

25        THE WITNESS:  Okay.

233

1    THE COURT: And you need to be
2    aware of all the rules. If you want
3    to continue to represent yourself,
4    you're going to be bound by the
5    rules that you would have even if
6    you had a lawyer.
7    THE WITNESS: I understand
8    that.
9    THE COURT: So if you decline
10   to be represented, then you need to
11   follow those rules.
12   THE WITNESS: All right. Who
13   do I --
14   THE COURT: Do what?
15   THE WITNESS: Who do I need to
16   see today?
17   THE COURT: You need to see the
18   probation -- do y'all need to see
19   him?
20   PROBATION OFFICER: No.
21   THE COURT: No, sir. That's
22   all.
23   THE WITNESS: When do I need to
24   do anything else, report to you?
25   THE COURT: I can't give you

234

1  legal advice.  If you're going to
2  take an appeal, you need to take an
3  appeal.
4      THE WITNESS:  Okay.  So I'm
5  free to go today?
6      LEGAL ASSISTANT:  Judge,
7  there's court costs, five hundred
8  dollars in fines, and how much to
9  the victim's restitution fund?
10     THE COURT:  Twenty-five dollars
11 to the victim's restitution fund.
12     (Whereupon, the aforementioned
13      matter was concluded at this
14      time.)
15
16
17
18
19
20
21
22
23
24
25

235

C E R T I F I C A T E

STATE OF ALABAMA)

COUNTY OF LEE)

1    I do hereby certify that the above and
foregoing transcript of proceedings in the
matter aforementioned was taken down by me in
machine shorthand, and the questions and
answers thereto reduced to writing under my
personal supervision, and that the foregoing
represents a true and correct transcript of
the proceedings given by said witness upon
said hearing.

    I further certify that I am neither of
counsel nor related to the parties to the
action, nor am I in any wise interested in
the result of said cause.

    DATED this the 20th day of July, 2006.


*Kimberly Ingram*

Kimberly Ingram, CSR

FILED

JUL 2 0 2006

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

| State of Alabama<br>Unified Judicial System<br><br>Form ARAP - 14     11/91 | CERTIFICATE OF COMPLETION AND<br>TRANSMITTAL OF RECORD ON<br>APPEAL BY TRIAL CLERK | Appellate Case Number |
|---|---|---|

| TO:  THE CLERK OF<br>      THE COURT OF CRIMINAL APPEALS OF ALABAMA | DATE OF NOTICE OF APPEAL:<br>5/8/06 |
|---|---|

| APPELLANT | WILLIAM S MCLAURINE |
|---|---|
| v. | CITY OF AUBURN |

I certify that I have this date completed and transmitted herewith to the appellate court the record on appeal by assembling in (a single volume of _____ pages) ( __2__ volumes of 200 pages each and one volume of __44__ pages) the clerk's record and the reporter's transcript and that one copy each of the record on appeal has been served on the defendant and the Attorney General of the State of Alabama for the preparation of briefs.

I certify that a copy of this certificate has this date been served on counsel for each party to the appeal.

Dated this __25TH__ day of _____JULY_____ , 20 __06__ .

_____
Circuit Clerk